UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY,

    Plaintiff,

v.

VERSATA SOFTWARE, INC. *et al.*

    Defendants.
_____/

Case No. 15-cv-10628
(*consolidated with Case No. 15-11624*)
Hon. Matthew F. Leitman

## OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY TO TRANSFER THIS ACTION TO THE EASTERN DISTRICT OF TEXAS (ECF #18)

## INTRODUCTION

For roughly ten years, Defendants Versata Software, Inc., Trilogy Developmental Group, Inc., and Trilogy, Inc. (collectively, "Versata") licensed a sophisticated computer software system called "ACM" to Plaintiff Ford Motor Company ("Ford"). Last year, Ford decided that it would not renew its license with Versata and would, instead, develop its own software to replace the ACM software. Ford primarily directed the development of the replacement software from its offices in this judicial district; performed much of the actual development work here; and operates the replacement software on its computer servers here.

Ford and Versata dispute whether Ford's replacement software infringes Versata's software patents. That dispute has resulted in two federal civil actions:

this action filed by Ford against Versata (the "Ford Action") and a related action filed by Versata against Ford in the United States District Court for the Eastern District of Texas (the "Versata Action"). In the Ford Action, Ford seeks a declaratory judgment that it "has not infringed any intellectual property rights owned by [Versata]." (Ford's First Amended Complaint, ECF #6 at 1, Pg. ID 150.) In the Versata Action, Versata alleges that Ford infringed its patents and misappropriated its intellectual property. (*See* Versata's Complaint, ECF #18-6 at 3-34, Pg. ID 409-440.) The two actions are substantially similar and address much of the same subject matter.

Versata now asks this Court to either (1) dismiss the Ford Action or (2) transfer the action to the Eastern District of Texas so it can be consolidated with the Versata Action (the "Motion to Dismiss/Transfer"). (*See* ECF #18.) Versata argues that the Eastern District of Texas is a more appropriate forum. This Court disagrees. This dispute is fundamentally about conduct undertaken by Ford within, and/or directed by Ford from, *this* district. Moreover, many important witnesses reside in this district, and the Court sees no meaningful connection between this dispute and the Eastern District of Texas. Accordingly, for the reasons explained in more detail below, Versata's Motion to Dismiss/Transfer is **DENIED**.

**RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Ford is an automobile manufacturer with its headquarters and principal place of business in Dearborn, Michigan. (*See* Frist Am. Compl. at ¶1.) Versata is a software developer with its headquarters and principal place of business in Austin, Texas. (*See* Declaration of Greg Gunwall, Versata's Vice President of Product Development, ECF #18-2 at 2, ¶3, Pg. ID 349.) Dearborn is located in the Eastern District of Michigan. Austin is located in the Western District of Texas.

From 2004-2015, Ford licensed a software system from Versata called "ACM" pursuant to an annual licensing agreement. (*See id.* at 3, ¶¶ 8-9, Pg. ID 350.) Versata says that the ACM software allowed Ford to "create, manage, and store configuration models [of automobiles] and enable[d Ford to conduct] … transactions based on [the] configuration models." (Declaration of Seth Krauss, former Versata consultant and software developer, ECF #18-3 at 2-3, ¶5, Pg. ID 398-399.) In mid-2014, Ford and Versata began negotiating a renewal of the annual license for the ACM software. (*See* Gunwall Decl., ECF #18-2 at 3, ¶10, Pg. ID 350.) Ford and Versata were unable to reach an agreement and the negotiations "ultimately broke down." (*Id.*) Ford then developed its own software to replace Versata's ACM software. According to Ford Program Manager Michael Sullivan, "[t]he design, development and administration of Ford's replacement configuration software … took place primarily at Ford in southeast Michigan."

(Sullivan Declaration, ECF #33 at 2, ¶9, Pg. ID 906-907; *see also* Sullivan Deposition at 308, ECF #48-2 at Pg. ID 1126.) In addition, Sullivan says that the "source code" for Ford's new software is "located in Dearborn" and the software "runs on a server located at a secure Ford data center in Dearborn." (*See id.* at 3, ¶¶ 11-12, Pg. ID 907; *see also* Sullivan Dep. at 308, ECF #48-2 at Pg. ID 1126.)

On December 19, 2014, during a meeting between Versata and Ford at Ford's Dearborn, Michigan headquarters, Ford informed Versata that it "had decided to decommission ACM and replace [it] with software Ford had developed internally." (Declaration of Lance Jones, outside counsel for Versata, ECF #18-5 at 2, ¶4, Pg. ID 405; *see also* Declaration of Jennifer Qussar, Ford Contracts Manager, ECF #36 at 2, ¶¶ 3-4, Pg. ID 940.) According to Ford, during this December 19 meeting, Versata's outside counsel Lance Jones ("Jones") "made statements to the effect that Ford's replacement software 'must' violate Versata's intellectual property including trade secrets and confidential information." (Qussar Decl., ECF #36 at 2, ¶5, Pg. ID 940.)[1] Jones denies making those statements and further contends that Versata never "threatened Ford with litigation" during that meeting. (Jones Decl., ECF #18-5 at 3, ¶7, Pg. ID 406.)

---

[1] Ford insists this was not the only time Versata accused Ford of infringing its patents. Ford says Versata made a similar accusation during a February 2014 meeting. (*See* Declaration of Ford Direct employee Jeffrey Krupp, ECF #35 at 2, ¶5, Pg. ID 938.)

4

On February 19, 2015, Ford filed the Ford Action against Versata in this Court. (*See* ECF #1.) Ford did not immediately serve Versata with its Complaint. Instead, Damian Pocari ("Pocari"), who works for a Ford subsidiary, e-mailed a courtesy copy of the Complaint to Jones and "invited Jones to call [him] the following day to discuss the matter." (Declaration of Damian Pocari, ECF #32 at 2, ¶2, Pg. ID 903.) Jones and Pocari then spoke by phone on February 20. According to Jones, during this conversation Pocari said that "Ford had sued Versata to establish venue in Michigan because Ford was concerned about Versata filing suit first in Texas." (Jones Decl., ECF #18-5 at 3, ¶9, Pg. ID 406.) Pocari "do[es] not recall making" those statements. (Pocari Decl., ECF #32 at 2, ¶3, Pg. ID 903.)

For approximately the next eight weeks, the parties engaged in settlement negotiations, but they failed to resolve their dispute. (*See id.* at 2, ¶4, Pg. ID 903.) On May 7, 2015, Versata filed the Versata Action against Ford in the United States District Court for the Eastern District of Texas. (*See* ECF #18-6 at 3-34, Pg. ID 409-440.) Versata served Ford with a copy of the Versata Action that same day (May 7). (*See* Declaration of Steven Mitby, ECF #18-6 at 2, ¶2, Pg. ID 408; *see also* Pocari Decl., ECF #32 at 3, ¶6, Pg. ID 904.) Ford thereafter served Versata with the Ford Action.

5

On June 29, 2015, Versata filed the Motion to Dismiss/Transfer in which it asks this Court to either (1) dismiss the Ford Action or (2) transfer the action to the Eastern District of Texas, where the Versata Action is pending. (*See* ECF #18.) Ford filed a response (*see* ECF #31); Versata filed a reply (*see* ECF #45); Ford filed a surreply (*see* ECF #48); and, finally, Versata filed a sur-surreply (*see* ECF #49.) The Court then held a hearing on the Motion to Dismiss on September 22, 2015.

## GOVERNING LEGAL STANDARD

A. **Federal Circuit Law Controls the Motion to Dismiss/Transfer**

When presiding over a patent case, a district court applies "the law of the circuit in which the district court sits" to non-patent issues and the law of the Federal Circuit "to issues of substantive patent law and certain procedural issues pertaining to patent law." *In Re Cambridge Biotech Corp.*, 186 F.3d 1356, 1368 (Fed. Cir. 1999). More specifically, a district court applies Federal Circuit law to procedural matters that arise "from substantive issues in areas of law within the unique jurisdiction of [the Federal Circuit]." *Texas Instruments, Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1328 (Fed. Cir. 2000).

The Federal Circuit has squarely held that its law governs whether a first-filed action seeking a declaration of non-infringement should give way to a later-filed patent infringement action. *See Electronics for Imaging, Inc. v. Coyle*, 394

F.3d 1341, 1345-1346 (Fed. Cir. 2005); *Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) overruled on other grounds by *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). And at least two district courts in this Circuit have applied Federal Circuit law when considering whether to dismiss a first-filed declaratory judgment action. *See Healthspot, Inc. v. Computerized Screening, Inc.*, 66 F. Supp. 3d 962, 972 (N.D. Ohio 2014) (concluding that "Federal Circuit law governs [the] question" of whether court had jurisdiction over first-filed declaratory judgment action); *Veteran Medical Products, Inc. v. Bionix Development Corp.*, 2006 WL 2644985, at *2 (W.D. Mich. Sept. 14, 2006) ("For purposes of deciding whether this Court should decline to exercise jurisdiction over [p]laintiffs' first-filed [declaratory judgment] action in favor of [the defendants'] subsequently-filed [patent infringement] action, the Court must apply Federal Circuit law").

As counsel for both Ford and Versata acknowledged at the motion hearing, these clear holdings require the application of Federal Circuit law to the questions currently before the Court.

**B.    The Federal Circuit's Forum-Selection Framework**

When confronted with a motion to dismiss a first-filed declaratory judgment action in favor of a later-filed infringement action, the Federal Circuit applies the "general rule *favoring the forum of the first-filed case*, *unless* considerations of

judicial and litigant economy, and the just and effective disposition of disputes, requires otherwise." *Electronics for Imaging*, 394 F.3d at 1347 (emphasis added). Under this rule, the party seeking dismissal of a first-filed declaratory judgment action has the burden to show a "sound reason that would make it unjust or inefficient to continue the [] action," and the declaratory judgment action should give way to the later-filed infringement action only if the latter action is pending in "the forum in which all interests are best served." *Genentech*, 998 F.2d at 937-938.

The Federal Circuit has instructed that district courts have "unique and substantial discretion" in applying the first-filed rule to declaratory judgment actions, *Electronics for Imaging*, 394 F.3d at 1345, and it has directed district courts to consider the following factors in exercising that discretion:

> While it is true that a district court may consider whether a party intended to preempt another's infringement suit when ruling on the dismissal of a declaratory action, we have endorsed that as merely one factor in the analysis. Other factors include the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest. The considerations affecting transfer to or dismissal in favor of another forum do not change simply because the first-filed action is a declaratory action.

*Id.* at 1347-1348 (internal citations and punctuation omitted).

8

## ANALYSIS

**A.  The Court Will Not Dismiss the Ford Action Because Versata Has Not Shown it Would Be Unjust or Inefficient For the Parties to Proceed in This Forum or That the Eastern District of Texas is the Forum in Which All Interests Are Best Served**

This district is the most sensible forum in which to adjudicate the dispute between Ford and Versata.  The fundamental disagreement between the parties is whether Ford, acting in or from the Eastern District of Michigan[2], infringed Versata's patents and/or misappropriated Versata's trade secrets.  Because the alleged wrongdoing is centered in this judicial district, it was logical for Ford to file the Ford Action here, and it is logical for the parties to litigate their dispute here.  Versata has not provided a "sound reason" as to why it would be "unjust or inefficient" to continue the Ford Action in this district, nor has Versata shown that the Eastern District of Texas is "the forum in which all interests are best served." *Genentech*, 998 F.2d at 937-938.  Accordingly, the Court will not dismiss the Ford Action

### 1.  Ford's Alleged "Procedural Fencing"

The first factor in the Federal Circuit's forum-selection framework is "whether a party intended to preempt another's infringement suit" by filing an action seeking a declaration of non-infringement. *Electronics for Imaging*, 394

---

[2] To the extent Ford – or those working on Ford's behalf – acted in other jurisdictions, Ford directed those actions largely from the Eastern District of Michigan. (*See* Sullivan Decl., ECF #33 at 2, ¶9, Pg. ID 906-907.)

F.3d at 1347. Versata argues that this factor weighs strongly in favor of dismissal because Ford filed the Ford Action in this Court solely to preempt Versata from filing its infringement action in its chosen forum. (*See* Versata's Motion to Dismiss, ECF #18 at 12-14, Pg. ID 333-335.) Versata insists that the Court should not reward Ford's "rac[e] to the courthouse." (*Id.* at 12, Pg. ID 333.)

But "the stakes of a race to the courthouse are less severe" in a patent action because the creation and existence of the Federal Circuit "has in large part tempered the impact of traditional forum shopping." *Serco Services Company, L.P. v. Kelley Company, Inc.*, 51 F.3d 1037, 1039-40 (Fed. Cir. 1995). Indeed, the Federal Circuit's appellate jurisdiction over patent actions from all of the regional circuits has "create[d] national uniformity" in patent law that makes the choice of forum far less significant. *Veteran Medical Products*, 2006 WL 2644985, at *3. Thus, the mere fact that a declaratory judgment plaintiff filed first in order to secure a particular forum does not weigh heavily in favor of dismissal. *See id.* at **3-4. It is "merely one factor in the analysis." *Electronics for Imaging*, 394 F.3d at 1347.

However, an anticipatory declaratory judgment filing may weigh more heavily in favor of dismissal "where the first-filer's conduct was in bad faith or where the first-filer otherwise engaged in inequitable conduct." *Veteran Medical Products*, 2006 WL 2644985, at *4. For example, "a court may permit a second-

filed action to proceed 'where the plaintiff in the first-filed action was able to file first only because it had misled the filer of the second-filed action as to its intentions regarding filing suit in order to gain the advantages of filing first.'" *Id.* (quoting *Brower v. Flint Ink Corp.*, 865 F. Supp. 564, 569 (N.D. Iowa 1994)).

But that did not happen here.  Ford did not say or do anything that lulled Versata into believing that (1) it (Ford) would not file its own action and/or (2) Versata could refrain from filing suit secure in the knowledge that it could file first in its chosen forum.  Indeed, the Court does not consider Ford's conduct in filing the Ford Action in this forum to have been in bad faith or inequitable.  Ford had a good-faith basis to seek a declaratory judgment, and it filed the Ford Action in a logical forum at a time the parties were not engaged in active settlement negotiations.  Moreover, Ford did not act in bad faith by, for instance, hiding from Versata the fact that it filed the Ford Action.  *See, e.g., Zide Sport Shop of Ohio, Inc. v. Ed Tobergate Associates, Inc.*, 16 Fed. App'x 433, 438 (6th Cir. 2001) (concluding that declaratory judgment plaintiff acted in bad faith where plaintiff "did not inform defendants that a federal action had been filed against them")[3].  On the contrary, Ford sent Versata a courtesy copy of the Complaint as soon as Ford

---

[3] *Zide Sport Shop of Ohio* did not apply the Federal Circuit forum-selection framework applicable here, but its conclusion that a declaratory judgment plaintiff acted in bad faith by not informing the defendants that it had filed suit has some relevance to the Court's analysis of whether Ford acted in bad faith here.

filed it, and Ford then engaged in settlement discussions with Versata. (*See* Pocari Decl., ECF #32 at 2, ¶2, Pg. ID 903.) That is not bad faith.[4]

Two decisions from district courts in this Circuit (applying Federal Circuit law) confirm that Ford's act of filing first does not amount to bad faith and does not weigh heavily in favor of dismissal. In *Veteran Medical Products, supra*, the declaratory judgment plaintiffs received a letter from the defendant threatening to file suit if the plaintiffs did not accept the terms of a proposed consent judgment by a specific deadline. *See Veterans Medical Products*, 2006 WL 2644985, at \*2. Before the deadline expired, the plaintiffs filed their own suit in their preferred forum seeking a declaration of non-infringement. *See id.* The court concluded that the filing was not an act of "bad faith" and that the declaratory judgment plaintiffs "were entitled, rather than to continue to negotiate, to file suit seeking a declaration that they have neither infringed on [the declaratory judgment defendant's] patent nor misappropriated its trade secrets." *Id.* at \*4. Likewise, in *Healthspot, supra*, the district court concluded that a declaratory judgment plaintiff did not act in bad faith when it filed its declaratory action in response to a deadline presented by the

---

[4] Versata argues that "[t]he Court cannot allow a party to secure a more favorable forum by filing an action for declaratory judgment *when it has notice that the other party intends to file suit* involving the same issues in a different forum." (Versata Mot. to Dismiss at 12, Pg. ID 333, quoting *Innovation Ventures, L.L.C. v. CB Distributors, Inc.*, 652 F. Supp. 2d 841, 844 (E.D. Mich. 2009) (emphasis added).) But Versata specifically *denied* that it threatened to file suit. (*See* Jones Decl., ECF #18-5 at 3, ¶7, Pg. ID 406.)

defendant but never said that it would "refrain from filing suit." *Healthspot*, 66 F. Supp. 3d at 973-974 (denying motion to dismiss first-filed declaratory judgment action in favor of second-filed infringement action).

Furthermore, Ford's actions here pale in comparison to the actions taken by the plaintiffs in the cases cited by Versata in which courts have held that first-filers acted in bad faith. For example, in *AmSouth Bank v. Dale*, 386 F.3d 763 (6th Cir. 2004), the declaratory judgment plaintiff "race[d] to the courthouse" after it "had signed a tolling agreement, indicating some willingness to negotiate a settlement rather than forcing a legal action, had engaged in preliminary negotiations, and had in fact asked for a formal settlement demand that was being prepared as it filed suit." *Id.* at 787. Likewise, in *Foundations Worldwide Inc. v. Oliver & Tate Enterprises*, 2013 WL 4054636 (N.D. Ohio Aug. 12, 2013), the declaratory judgment plaintiff engaged in a "series of delay tactics" – including asking the declaratory judgment defendant, on multiple occasions, to push back the filing of its own infringement suit while the parties negotiated a potential settlement – in order to "buy [itself] enough time to file [its] own Complaint to secure [its] preferred forum." *Id.* at \*\*3-4.[5] Ford never took any of these actions. On balance, Ford's act of filing first – even if done to secure this forum – does not weigh heavily in favor of dismissal.

---

[5] Moreover, *AmSouth* and *Foundations Worldwide* did not involve patent disputes, and the courts in those cases applied Sixth Circuit law, not Federal Circuit law.

13

## 2. The Convenience and Availability of Witnesses

The next factor the Court must consider is the convenience and availability of witnesses. This factor strongly favors adjudicating the parties' dispute in this forum. As described above, the conduct at issue in this action is Ford's development and implementation of software to replace Versata's ACM software, and Ford largely completed that process within, and/or directed it from, this district. (*See* Sullivan Decl., ECF #33 at 2, ¶9, Pg. ID 906-907; *see also* Sullivan Dep. at 308, ECF #48-2 at Pg. ID 1126.) In addition, Ford has provided the Court the names of 33 third-party witnesses "who assist[ed] Ford in the design, development and launch of Ford's replacement software" and who "reside in and around" this district. (*See* Sullivan Decl. at 4-5, ¶15, Pg. ID 908-909.) Finally, Versata's "primary point of contact with Ford," Michael Richards, lives in Novi, Michigan, less than thirty miles from the Court. (*See id.* at 5-6, ¶16, Pg. ID 909-910.) The location of so many potentially important witnesses in this district weighs strongly in favor of adjudicating the parties' dispute here.

Versata counters that "important witnesses regarding Versata's patent and trade secret claims," including many third-party witnesses, "live and work in Austin, Texas" where Versata is located and where the ACM software was designed. (Versata Mot. to Dismiss at 20, Pg. ID 440; *see also* Gunwall Decl., ECF #18-2 at 2-3, ¶¶ 4-5, Pg. ID 349-350.) Versata also points out that its

14

headquarters is in Austin, and that all of its key employees, such as its CEO, CFO, and COO are located in Austin. (*See* Gunwall Decl., ECF #18-2 at 2-3, ¶¶ 4-5, Pg. ID 349-350.) But Versata did not file the Versata Action in Austin (or even in the judicial district that includes Austin, the *Western* District of Texas). Instead, Versata filed suit in Sherman, Texas – which lies in the *Eastern* District of Texas, approximately *250 miles from Austin*.[6]

Versata has not identified a single witness who is located in the *Eastern* District of Texas. And while Versata highlights that Ford has a regional sales office in the Eastern District of Texas, it has not shown that any Ford employees from that office have any meaningful connection to the current dispute between the parties. Moreover, Versata acknowledged at the motion hearing that many of its own witnesses have agreed to fly to Sherman, if necessary, to testify at potential hearings and trials in the Versata Action. It would not be substantially more inconvenient for these witnesses to fly to Detroit instead.

Considering the many witnesses who reside in this judicial district, the absence of any relevant witnesses in the Eastern District of Texas, and the fact that

---

[6] To put the distance between Sherman, Texas, and Austin, Texas, in some perspective, Detroit, Michigan (the home of this Court) is closer to Toronto, Ontario, Canada (approximately 230 miles), Niagara Falls, New York (approximately 240 miles), and Cleveland, Ohio (approximately 170 miles), than Sherman is to Austin. The distance between the courthouses in Austin and Sherman thus lives up to Texas's unofficial state motto: "Everything is bigger in Texas."

15

Versata's witnesses will have to fly to judicial proceedings even if they were held in Versata's chosen forum, the convenience-of-witnesses factor weighs strongly in favor of litigating the parties' dispute in this district.

### 3. The Absence of Jurisdiction Over All Necessary or Desirable Parties

It is undisputed that this Court has personal jurisdiction over both Ford and Versata.  Therefore, this factor does not favor dismissal of the Ford Action.

### 4. The Possibility of Consolidation with Related Litigation

The Versata Action could be consolidated with, and made part of, the Ford Action pending here.  Thus, the entire dispute between the parties could be resolved in this judicial district. This factor therefore does not weigh in favor of dismissing the Ford Action.

### 5. Other Relevant Factors in the Court's Forum Selection Analysis

Versata presents two additional arguments as to why the Court should decline to exercise jurisdiction over the Ford Action.  Neither persuades the Court that dismissal is appropriate here.[7]

First, Versata argues that it "maintains its corporate books and records in Texas" and that the "accessibility of physical evidence favors Texas."  (Versata Mot. to Dismiss at 21, Pg. ID 442.)  But Versata concedes that "the physical

---

[7] Neither party has addressed the final factor of the Federal Circuit's forum-selection framework – considerations relating to the real party in interest – and the Court does not find that factor particularly relevant here.

16

evidence in this case largely consists of electronically-stored information" (*id.*), and this information can easily be accessed anywhere. Moreover, to the extent Versata maintains records in "Texas," it does so in *Austin* which is 250 miles away from the court in which the Versata Action is pending. Thus, the location of physical evidence does not favor dismissing the Ford Action.

Second, Versata argues that "[s]ubstantial activity has already occurred in the Texas case." (*Id.* at 23, Pg. ID 444.) Versata explains that the court in the Eastern District of Texas set a scheduling conference and "proposed a scheduling order with a trial setting of January 2017." (*Id.*) Versata also contends that the dispute could be resolved in that court much faster than it would be resolved here. But the district court in the Versata Action adjourned the scheduling conference, and it is not clear that the January 2017 trial date remains a firm date. And even if the court in the Eastern District of Texas will be in a position to try this case before this Court, that timing would not outweigh the many other factors that support keeping the action here.

Versata has failed to satisfy its burden to show that the Court should not exercise its jurisdiction over the Ford Action. The Court will therefore deny Versata's motion to dismiss.

**B.     The Court Will Not Transfer the Ford Action to the Eastern District of Texas**

Versata has also asked the Court to transfer the Ford Action to the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a).  As Versata's counsel acknowledged at the motion hearing, the analysis of Versata's transfer request closely parallels the analysis of Versata's request that the Court dismiss the Ford Action.  Indeed, "when the discretionary determination of whether to entertain a declaratory judgment action is presented after the filing of an infringement action, the jurisdiction question is basically the same as a transfer action under 28 U.S.C. § 1404(a)." *Healthspot*, 66 F. Supp. 3d at 973 (internal brackets omitted) (quoting *Micron Technology, Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008)).

For all of the reasons stated above, the Court does not believe that transfer is warranted here. Accordingly, this district is the more appropriate forum in which to adjudicate this action.  The Court will therefore deny Versata's request to transfer.

## CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that Versata's Motion to Dismiss or Alternatively to Transfer This Action to the Eastern District of Texas (ECF #18) is **DENIED**.

                                                      s/Matthew F. Leitman
                                                    MATTHEW F. LEITMAN
Dated:  October 14, 2015           UNITED STATES DISTRICT JUDGE

  I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 14, 2015, by electronic means and/or ordinary mail.

           s/Holly A. Monda
           Case Manager
           (313) 234-5113