THE VERSATA DEFENDANTS' AMENDED MOTION
FOR LEAVE TO FILE FIRST AMENDED COUNTERCLAIM
IN CASE NO. 15-10628
[THIS MOTION AMENDS AND SUPERSEDES DKT # 133]

**EXHIBIT A**

Answer to Plaintiff's Complaint and First Amended Counterclaim

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

FORD MOTOR COMPANY,

     Plaintiff/Counter-Defendant,

v.

VERSATA SOFTWARE, INC., F/K/A
TRILOGY SOFTWARE, INC., TRILOGY
DEVELOPMENT GROUP, INC. AND
TRILOGY, INC.,

     Defendants/Counter-Plaintiffs.

CASE NO. 15-10628-MFL-EAS
(Consolidated with
Case No. 15-11624-MFL-EAS)
Hon. Matthew F. Leitman

---

**DEFENDANTS' PROPOSED ANSWER TO PLAINTIFF'S COMPLAINT,
AFFIRMATIVE AND SPECIAL DEFENSES,
_FIRST AMENDED_ COUNTERCLAIM,
AND RELIANCE ON JURY DEMAND**

## ANSWER

Defendants Versata Software, Inc., f/k/a Trilogy Software, Inc., Trilogy Development Group, Inc., and Trilogy, Inc. (collectively, "Versata") by their attorneys, Steven J. Mitby of the Houston, Texas law firm of AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C., and Rodger D. Young of the Farmington Hills, Michigan law firm of YOUNG & ASSOCIATES, hereby file this Amended Answer to the Complaint of Plaintiff Ford Motor Company ("Ford"). Versata incorporates by reference Defendants' First Amended Answer to Plaintiff's Complaint Filed In Case No. 15-11624, Affirmative and Special Defenses, Defendants' Counterclaims, and Reliance on Jury Demand (Dkt. 92).

## PRELIMINARY STATEMENT

### Plaintiff Ford Motor Company Has Misappropriated Versata's Trade Secrets and Infringed Versata's Patents

Ford Motor Company is one of the biggest automotive companies in the world. Ford's success depends on complex software that works behind the scenes to enable Ford to design, develop, manufacture, distribute, market, and sell vehicles on four continents. The backbone of this global system is Versata's Automotive Configuration Management (ACM), a software program that Versata developed in Austin, Texas at a cost of hundreds of thousands of person-hours and millions of dollars.

Versata's ACM software enables Ford to "configure" vehicles from billions of potential combinations of parts, features, and options. By solving the complex mathematical, logical, and logistical problems involved in designing and configuring vehicles, ACM ensures that every Ford vehicle consists of compatible parts and features that Ford can manufacture. In addition, the software ensures that each Ford vehicle configuration complies with Ford's sales, marketing, and other business requirements. In short, ACM ensures that the automotive designs Ford develops are for vehicles that Ford can build, manufacture, and sell.

Ford began using Versata's automotive configuration technology in October 1998 after experimenting unsuccessfully with homegrown solutions. Ford tried, but ultimately failed, to develop software that was sophisticated, accurate, and efficient enough to meet its configuration needs. By the late 1990s, these needs had become critical because Ford had lost hundreds of millions of dollars because of configuration errors. Ford incurred these costs primarily because its existing configuration process – which depended heavily on large teams of engineers, involved extensive manual inputs, and was subject to significant risk of human error – caused multi-million dollar vehicle recalls and manufacturing delays.

Between October 1998 and January 2015, Versata became Ford's chief provider of configuration software. Ford integrated ACM throughout its business and came to depend on Versata to run its global operations. Because ACM provides

3

the configuration models that determine the products Ford can design and build, Ford has integrated ACM with its global design, development, finance, marketing, dealer ordering, and retail website software.  In short, Ford's global information technology infrastructure was totally dependent on – and could not function without – ACM.  Because of this dependence, Ford could not design, manufacture, or sell a single vehicle without Versata's technologies.

In or before 2011, Ford management became concerned about the extent of Ford's dependence on ACM and did not want to pay the relatively modest price increases that Versata requested as part of license renewals.  Even though Ford was receiving hundreds of millions and perhaps billions of dollars in benefits from Versata software, Ford's management decided it wanted to break ties with Versata. Ford vice president Elena Ford (who is also an influential shareholder within the company) expressed her distaste for Versata and told a colleague that Ford would not do business with Versata because Versata had allegedly "put Ford over a barrel." But Ford did not have any software that it could use to replace ACM or reduce its need for Versata's technologies.  So, based on this pressure from upper management, Ford launched a program called "Total Configuration Management" or "TCM" to replicate the functionality of ACM and provide a complete replacement for ACM software.

Ford now claims that TCM (which Ford later renamed "Product Definition and Offer" or "PDO") uses entirely different technologies from ACM, claiming that the company implemented a "Chinese wall" to protect Versata trade secrets and emphasizing the fact that Ford obtained a patent (U.S. Patent No. 8,812,375) on some of the technology used in this software. However, the functionality of the TCM software and the development process Ford used to create it refutes this assertion. Even without any fact discovery, it is evident that Ford incorporated Versata's patented technologies and trade secrets into TCM and used these technologies to replace ACM.

First, far from employing a "Chinese wall," Ford used at least twenty-six people – and possibly more – who had worked on or had access to Versata's configuration technologies to develop TCM. The head of this development project was Mike Sullivan, the Ford executive who had overseen Ford's implementation and integration of ACM since at least 2000. Indeed, Sullivan had unrestricted access to ACM for more than a decade before he was assigned to lead the TCM development process and Sullivan continued to work on ACM simultaneously with TCM. The other individuals on both sides of Ford's "Chinese wall" include Bryan Goodman, Gintaras Puskorius, Kurt Reinke, Sanjay Sisale, Ram Pillarisetty, Garghi Shah, David Wierzbicki, Sunil Gajula, Manisha Tambe, Darlene Coomer, Jian Lin, Fred Wilkinson, Linda Wu, Rachel Sims, Chris Andrews, Martin Pipoly, Yakov Fradkin,

Jim Beardslee, Ravi Kundoor, Ganesh Alla, Erin Jasso, Aaron Bush, Rachel Smith, Sai Viswanatha, and Colin Shury.  Versata expects to identify even more individuals through discovery.

Ford's deliberate use of people who had significant knowledge of and exposure to ACM confidential information was not a coincidence: These individuals could not simply "forget" or "separate" what they knew about ACM from their work on the TCM replacement software for ACM – especially when Ford was under pressure to develop replacement software that would eliminate Ford's dependence on Versata.

Second, Ford's public patent filings – which purport to describe the technologies used in TCM – actually demonstrate that Ford incorporated numerous Versata technologies into TCM.  These patent filings include U.S. Patent No. 8,812,375 and U.S. Patent Publication No. US20140279602.

Even if Ford added additional elements to its patent claims in order to secure Patent Office approval (a claim which is, at best, open to question), the fundamental basis of both of these patent filings is technology that Ford obtained and copied from Versata.  Not surprisingly, the named inventors on these Ford patent filings include at least eight people who gained knowledge of Versata configuration technologies such as Bryan Goodman, Gintaras Puskorius, Jian Lin, Martin Pipoly, Yakov Fradkin, Ravi Kundoor, Ganesh Alla, and Jim Beardslee.

Third, TCM functions as a complete replacement for ACM and was integrated with downstream design, development, finance, marketing, dealer ordering, and retail website systems without any change to those systems. The fact that Ford was able to remove ACM and replace it with TCM without changing any downstream systems highlights the overlap between TCM and ACM software.

Fourth, at the end of 2014, Ford made several desperate attempts to renew its ACM license by subterfuge, signaling that Ford was not ready to stop using ACM when its license expired in January 2015. For example, in October 2014, Ford sent an unsolicited $8.45 million check to Versata's corporate offices in Texas for a one-year ACM license renewal, even though Versata had rejected this proposal just days earlier. Ford also sent two unsolicited purchase orders to Versata's corporate offices based on this same proposal that Versata had rejected.

These tactics – apparently intended to prompt someone at Versata to create a binding contract by cashing the check or executing one of the purchase orders – show that Ford was not prepared to terminate its license to ACM at the beginning of 2015. Significantly, Ford also refused to allow Versata to review its TCM software or documentation as part of a contract audit process, stonewalling Versata's efforts to determine the full extent to which TCM incorporates its trade secrets and patented technologies.

For these reasons, and as further stated below, it is apparent that Ford is liable for breaching its software license agreements with Versata, misappropriating Versata's trade secrets, and infringing Versata's patents.

## PARTIES

1.     Versata lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

2.     Admitted.

3.     Versata admits that Trilogy Development Group, Inc.'s principal place of business is in Austin, TX.  Versata denies the remaining allegations of paragraph 3.

4.     Admitted.

5.     Admitted.

## JURISDICTION AND VENUE

6.     Versata incorporates by reference the allegations in paragraphs 1-5 of its Answer, and to the extent an answer is required, denied.

7.     Admitted that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, and 2201; otherwise denied.

8.      Versata lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

9.      Denied.

## **BACKGROUND FACTS**

10.     Versata incorporates by reference the allegations in paragraphs 1-9 of its Answer, and to the extent an answer is required, denied.

11.     The term "Original Equipment Manufacturer" is undefined; Versata lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

12.     Versata admits that Ford sells vehicles with many different configurations.  Versata lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations contained in this paragraph, and on that basis denies them.

13.     Admitted.

14.     Admitted to the extent that these allegations are not intended to preclude that billions of configurations may be possible for a vehicle line; otherwise denied.

15.    Versata lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

16.    Versata admits that Ford licensed software from Versata in October 1998; otherwise denied.

17.    Versata admits that it entered into a Contract Services Agreement ("CSA") with Ford in 1998.  For all other allegations herein, lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

18.    Versata admits that the CSA speaks for itself.  Versata denies any allegation that is inconsistent with the terms of the CSA.  Versata denies the remaining allegations.

19.    Denied.

20.    Versata admits that Ford's vehicle offerings required high levels of data volumes and complexity; otherwise denied.

21.    Denied.

22.    Versata admits that it entered into a Master Subscription and Services Agreement ("MSSA") with Ford in 2004 and that the MSSA speaks for itself. Versata denies any allegation that is inconsistent with the terms of the MSSA. Versata denies the remaining allegations.

23.    Versata admits that the MSSA speaks for itself.  Versata denies any allegation that is inconsistent with the terms of the MSSA.  Versata denies the remaining allegations.

24.    Denied.

25.    Denied.

26.    Denied.

27.    Versata admits that it entered into an addendum to the original software license.  Otherwise, denied.

28.    Versata admits that Ford paid Versata pursuant to the addendum. Otherwise denied.

29.    Versata admits that it sent a letter to Ford dated October 7, 2014, and that the letter speaks for itself; otherwise denied.

30.    Versata admits that it sent a letter to Ford dated November 13, 2014, and that the letter speaks for itself; otherwise denied.

31.    Denied.

32.    Denied

33.    Denied.

34.    Denied.

35.    Versata admits that a Ford employee stated orally that it planned to replace ACM software.  Otherwise, denied.

36.     Versata lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

37.     Versata lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

38.     Versata lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

39.     Denied.

40.     Versata lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

41.     Denied.

42.     Versata lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

43.     Versata admits that the United States Patent and Trademark Office (USPTO) issued Patent No. 8,812,375 in August 2014; otherwise denied.

44.     Denied.

45.    Denied.

46.    Denied.

47.    Denied.

48.    Denied.

49.    Denied.

50.    Denied.

51.    Versata lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

52.    Denied.

53.    Denied.

54.    Versata admits that it sent a letter to Ford dated October 7, 2014, and that the letter speaks for itself; otherwise denied.

55.    Versata admits that some of its representatives met with Ford representatives in Dearborn on December 19, 2014; otherwise denied.

56.    Versata admits that it has notified Ford of its intent to exercise its on-premises audit rights pursuant to the MSSA.  Otherwise denied.

57.    Versata admits that it requested interviews with Ford personnel pursuant to its on-premises audit rights under the MSSA.  Otherwise denied.

58.     Versata admits that it holds the following patents:  U.S. Patent No. 5,825,651 (the '651 Patent) (incorrectly identified in Ford's Complaint as the "'561 Patent"), U.S. Patent No. 6,405,308 (the '308 Patent), and U.S. Patent No. 6,675,294 (the '294 Patent).  Versata also admits that the claims of these patents cover aspects of ACM.  Otherwise, denied.

59.     Versata's October 7, 2014 letter speaks for itself.  Otherwise, denied.

60.     The context for the allegations in this are paragraph is vague. Accordingly, Versata lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in this paragraph, and on that basis denies them.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment That Ford Does Not Infringe The '651 Patent)

61.     Versata incorporates by reference the allegations in paragraphs 1-60 of its Answer, and to the extent an answer is required, denied.

62.     Denied.

63.     Denied.

64.     Denied.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment That Ford Does Not Infringe The '308 Patent)

65.     Versata incorporates by reference the allegations in paragraphs 1-64 of its Answer, and to the extent an answer is required, denied.

66.     Denied.

67.     Denied.

68.     Denied.

## THIRD CAUSE OF ACTION
### (Declaratory Judgment That Ford Does Not Infringe The '294 Patent)

69.     Versata incorporates by reference the allegations in paragraphs 1-68 of its Answer, and to the extent an answer is required, denied.

70.     Denied.

71.     Denied.

72.     Denied.

## FOURTH CAUSE OF ACTION
### (Declaratory Judgment That Ford Owns, Or Is Licensed To Reproduce, Software Versata Developed Pursuant to the 1998 Contract Services Agreement)

73.     Versata incorporates by reference the allegations in paragraphs 1-72 of its Answer, and to the extent an answer is required, denied.

74.     Denied.

75.     Versata admits that Versata and Ford entered into the CSA in October 1998 and that the CSA speaks for itself; otherwise denied.

76.     Denied.

77.     Denied.

78.     Denied.

## FIFTH CAUSE OF ACTION
**(Declaratory Judgment That Ford Owns, Or Is Licensed To Reproduce, Software Versata Developed Pursuant to the 2004 Master Subscription and Services Agreement)**

79.  Versata incorporates by reference the allegations in paragraphs 1-78 of its Answer, and to the extent an answer is required, denied.

80.  Denied.

81.  Versata admits that Versata and Ford entered into the MSSA in December 2004 and that the MSSA speaks for itself; otherwise denied.

82.  Denied.

83.  Denied.

84.  Denied.

## SIXTH CAUSE OF ACTION
**(Declaratory Judgment That Ford Did Not Misappropriate Defendants' Trade Secrets)**

85.  Versata incorporates by reference the allegations in paragraphs 1-84 of its Answer, and to the extent an answer is required, denied.

86.  Denied.

87.  Denied.

88.  Denied.

89.  Denied.

90.  Denied.

## SEVENTH CAUSE OF ACTION
**(Declaratory Judgment That Defendants Are Not Permitted To Inspect Ford's TCM Software or Interview Ford's TCM Developers Pursuant To The Audit Provisions Of The 2004 MSSA)**

91.  Versata incorporates by reference the allegations in paragraphs 1-90 of its Answer, and to the extent an answer is required, denied.

92.  Denied.

93.  Versata admits that it requested to interview Ford personnel, otherwise denied.

94.  Denied.

95.  Denied.

96.  Denied.

97.  Denied.

98.  Denied.

99.  Versata admits that Versata representatives met with Ford representatives in Dearborn on December 19, 2014; otherwise denied.

100.  Denied.

101.  Denied.

## EIGHTH CAUSE OF ACTION
**(Breach of Contract)**

102.  Versata incorporates by reference the allegations in paragraphs 1-101 of its Answer, and to the extent an answer is required, denied.

103.  Denied.

104.  Denied.

105.  Denied.

106.  Denied.

107.  Denied.

108.  Denied.

109.  Denied.

## **RELIEF REQUESTED**

WHEREFORE, the Versata Defendants deny the allegations in the Prayer for Relief and any other allegations of the Complaint not specifically responded to herein, and respectfully pray for the following relief:

A.  That the Court deny Ford's request for declaratory judgment, and otherwise dismiss Ford's Complaint with prejudice.

B.  That the Court provide for trial by jury on all issues triable by jury.

C.  That the Court award Versata its attorney's fees and costs in connection with this action.

D.  That the Court award such other and further relief in law or in equity to which Versata may be justly entitled.

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI &
MENSING P.C.

*/s/ Steven J. Mitby*
Steven J. Mitby
Texas State Bar No. 24037123
smitby@azalaw.com
Foster C. Johnson
Texas State Bar No. 24076463
fjohnson@azalaw.com
Reed N. Smith
Texas State Bar No. 24067875
AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI &
MENSING, P.C.
1221 McKinney, Suite 2500
Houston, Texas 77010
(713) 655-1101 (Phone)
(713) 655-0062 (Fax)

Rodger D. Young
Young & Associates
27725 Stansbury Blvd., Suite 125
Farmington Hills, Michigan 48334
(248) 353-8620
efiling@youngpc.com

**Counsel for All Defendants**

## AFFIRMATIVE AND SPECIAL DEFENSES

1.      Ford's claims for breach of contract are precluded by its ratification of Versata's actions.

2.      Ford's claims for breach of contract are precluded because Ford and Versata entered into a novation and accord.

3.      Ford's claims for breach of contract are precluded because of Ford's waiver.

4.      All of Ford's claims are barred because Ford has failed to state a claim for which relief can be granted.

5.      All of Ford's claims are barred by the doctrine of unclean hands.

6.      Ford's claims for breach of contract are barred because, even if it could show Versata breached the MSSA, Ford materially breached the MSSA first.

7.      Ford's claims for breach of contract are barred by estoppel and/or consent.

<div style="margin-left:40%">

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI &
MENSING P.C.


*/s/ Steven J. Mitby*
Steven J. Mitby
Texas State Bar No. 24037123
smitby@azalaw.com
Foster C. Johnson
Texas State Bar No. 24076463
fjohnson@azalaw.com

</div>

Reed N. Smith
Texas State Bar No. 24067875
AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI &
MENSING, P.C.
1221 McKinney, Suite 2500
Houston, Texas 77010
(713) 655-1101 (Phone)
(713) 655-0062 (Fax)

Rodger D. Young
Young & Associates
27725 Stansbury Blvd., Suite 125
Farmington Hills, Michigan 48334
(248) 353-8620
efiling@youngpc.com

**Counsel for All Defendants**

## VERSATA PARTIES' *FIRST AMENDED* <u>COUNTERCLAIMS AGAINST FORD</u>

Versata incorporates by reference Defendants' First Amended Answer to Plaintiff's Complaint Filed In Case No. 15-11624, Affirmative and Special Defenses, Defendants' Counterclaims, and Reliance on Jury Demand (Dkt. 92).

## <u>JURISDICTION AND VENUE</u>

1.     This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 271.

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1367, 1338(b).

3.     Venue is proper in this judicial district under 28 U.S.C. §§ 28 U.S.C. 1391(b) and (c).

## <u>PARTIES</u>

4.      These counterclaims are asserted by Defendants against Plaintiff Ford Motor Company.

## <u>FACTUAL ALLEGATIONS</u>

**A.     *Ford licenses Versata's configuration software for 17 years***

5.     Versata realleges and incorporates by reference herein the allegations in the foregoing paragraphs, including the Preliminary Statement contained in its Answer.

6.     Versata is an enterprise software company.  Versata develops some of the most successful, sophisticated, and powerful enterprise software in the United States.   One of Versata's key areas of innovation is automotive configuration technologies, a field in which Versata holds multiple patents.

7.     Versata and its subsidiaries have developed software comprised of technical data, formulas, patterns, compilations, programs, and other patented and trade secret information for the purpose of assisting automotive manufactures in designing and configuring automotive product lines as well as financially forecasting costs and profits.

8.     From October 1998 until January 2015, Ford licensed Versata's configuration technology – including ACM – pursuant to two master agreements that included multiple schedules and addenda.

9.     In 1998, Ford signed a contract services software licensing agreement with Versata (the "CSA"), which permitted Ford to license Versata's automotive configuration software in return for an annual licensing fee.  A true and correct copy of the CSA is attached hereto as Exhibit 1.

10.     The CSA specified that, except for certain custom portions to which Ford was specifically assigned ownership in written assignment orders, Versata "retain[ed] all rights, title and interest in and to the software and/or related documentation provided to [Ford] by [Versata], including, without limitation, the

Non-Custom Elements … and all copyright, trade secret and other rights relating thereto." (Ex. 1 at 2).

11. Ford also acknowledged in the CSA that "the 'Non-Custom Elements' include[d] … the know-how, technique, concepts, methods, coding, designs, inventions, procedures or other subject matter of the Developed Software, whether or not included in the Custom Portions, if such subject matter is not specific to, or can be made nonspecific to, [Ford]." (Ex. 1 at 3).

12. Ford further agreed to "restrict access to [Trilogy's] Confidential Information only to owners, employees, and contractors who (i) require access in the course of their assigned duties and responsibilities, and (ii) have agreed in writing to be bound by provisions no less restrictive than those set forth in [the CSA]." (Ex. 1 at 3).

13. By late 2001, Versata had licensed to Ford a version of software technology that would become known as Versata's "Automotive Configuration Manager" ("ACM"). Ford had also licensed software for Ford's retail website, Ford.com (which is different from the ACM technology). In addition, Versata also was providing Ford with consulting services to implement the Ford.com software.

14. In 2001, while negotiating the terms of a new license agreement, Ford and Versata reached two key areas of disagreement. First, Ford asserted ownership claims in the ACM technology and the Ford.com software. Versata strongly

disputed Ford's claims of ownership, especially with regard to ACM, which Versata was in the process of marketing to other automotive companies. Second, Ford had refused to pay almost $1.8 million in consulting invoices for work Versata performed on the Ford.com software. Versata contended that it had provided these services to Ford and considered this debt as past-due. Given the ongoing business relationship between the two companies, however, Versata was willing to negotiate a settlement.

15. In January 2002, Ford and Versata agreed to resolve their disputes and memorialized their settlement in the January 1, 2002 Software Subscription Amendment ("SSA"). The SSA was a settlement agreement that resolved existing legal disputes and it contains a full mutual release of liability for past claims. A true and correct copy of the SSA is attached hereto as Exhibit 8.

16. In the SSA, Ford obtained four key benefits: (1) a new subscription license to use Versata's ACM software in its worldwide business—albeit a license which would "cease immediately upon termination of this Amendment and/or the Agreement"; (2) reduction of Versata's outstanding consulting invoices by almost $900,000; (3) retention of the right to use ACM throughout its worldwide business— likely saving billions of dollars over the following thirteen years; and (4) a broad release of liability from Versata for any past claims.

17. In exchange, Ford agreed to "provide reasonable assistance in

perfecting and protecting GPD Software intellectual property for Trilogy" (which was Versata's name at the time). Exhibit A to the SSA specifically defines this "GPD Software" as version 3.2 of ACM. Ford also agreed to assist Versata in marketing ACM to other automotive companies (evidencing that, contrary to Ford's claims in this case, ACM was a marketable product and was not custom-developed for Ford). Ford reaffirmed its commitment to protect Versata's intellectual property in at least five agreements following the SSA.

18. In 2004, Ford and Versata entered into a second comprehensive license agreement for use of a new software technology known as the "Automotive Configuration Manager" ("ACM"). Like the earlier software that Ford licensed from Versata, the ACM technology was developed by Versata, which then licensed this propriety technology to Ford.

19. In December 2004, Ford and Versata entered into a Master Subscription and Services Agreement ("MSSA"), governing Ford's licensing of the Versata's proprietary ACM technology. A true and correct copy of the MSSA is attached hereto as Exhibit 2.

20. Like the CSA, the MSSA granted Ford a license to use Versata's proprietary ACM software. It did not, however, grant Ford any ownership rights in this software or the underlying technology. While Ford owned the rights to certain minor customizations of the software, it did not own the underlying ACM

technology.  Versata's ACM software was the engine that drove Ford's entire configuration process.  And just as a Ford Taurus would not run without a Ford engine, Ford's configuration and financial forecasting systems would not run without Versata's ACM software.

21.    The MSSA made plain that Versata retained all rights to its proprietary ACM technology.

22.    For example, in Section 6 ("Ownership"), the MSSA specifically provides that "[b]y signing this Agreement, Ford irrevocably acknowledges that, subject to the licenses granted herein, Ford has no ownership interest in the Software, Deliverables that are owned by [Versata] pursuant to Section 1.8, or [Versata] Materials provided to Ford."  ]."  (Ex. 4 at 3).

23.    The MSSA further specified in Section 7.4 ("Ownership of Confidential Information") that "[n]othing in this Agreement shall be construed to convey any title or ownership rights to the Software or other [Versata] Confidential Information to Ford or to any patent, copyright, trademark, or trade secret embodied therein, or to grant any other right, title, or ownership interest to the [Versata] Confidential Information." (Ex. 2 at 5).

24. The MSSA also contained a number of additional safeguards to protect Versata's Confidential Information.

25.    Like the CSA, Ford agreed in Section 7.5 that it would "at all times use

Reasonable Care in preventing the disclosure of Confidential Information belonging to [Versata]." Ford further agreed "to restrict access to [Versata's] Confidential Information only to those employees and third-party contractors or agents who (i) require access in the course of their assigned duties and responsibilities and (ii) have agreed in writing to be bound by provisions no less restrictive than those set forth in the [MSSA]." (Ex. 2 at 5).

26.    Ford agreed in Section 1.7 that "[i]n no event shall Ford disassemble, decompile, or reverse engineer [Versata's] Software or Confidential Information … or permit others to do so." (Ex. 2 at 2).

27.    Ford also agreed that "Ford may use [Versata's] Confidential Information solely in connection with the Software and pursuant to the terms of this Agreement." (Ex. 2 at 2).

28.    In order to ensure that Ford would comply with the restrictions on its use of Versata's Confidential Information, Versata negotiated the right to conduct verification audits at Ford.

29.    Under Section 3.5 of the MSSA, Ford agreed that "[Versata] may, upon thirty (30) days prior written notice, enter Ford's premises to verify Ford's compliance with the provisions of this Agreement at [Versata]'s expense." (Ex. 2 at 4).

30.    Ford also agreed in Section 12 ("Ford Obligations") that "Ford [would]

upon reasonable request, reasonably make available to [Versata] certain of its facilities, computer resources, software programs, networks, personnel, and business information as are required to perform any Work, service, or **other obligation hereunder**."  (Ex. 2 at 7).

31.    Finally, the MSSA provides in Section 1.3 that, unless it was terminated by one of the parties, the license agreement would "automatically renew for successive twelve-month periods ("Annual Renewal Periods") upon issuance of a valid Ford purchase order to Versata.  (Ex. 2 at 1.3).

32.    Between 1998 and 2014, Versata and its corporate parent, Trilogy, provided configuration software, technical documentation, and limited amounts of source code to Ford.

33.    Through this process, Versata disclosed certain trade secret and other confidential information that it developed and owns, including its proprietary technology for configuring, designing, pricing, and comparing vehicles (the "Confidential Information"), pursuant to the terms of a series of agreements between Ford and Trilogy.

### B.    *Ford becomes dependent on Versata's technology*

34.    Versata's ACM proved immensely valuable to Ford.  The ACM technology allowed engineers and marketing agents from Ford's facilities across the world to collaborate and design Ford vehicles with seamless real time updates.  The

ACM software also allowed Ford's financial managers to forecast pricing and demand with hitherto unrivaled accuracy and precision.

35.    Versata's ACM technology was so powerful that Ford rapidly adopted Versata's propriety software, integrated the software throughout its worldwide business.

36.    Because TCM is the only software that Ford uses for vehicle configuration, Ford has integrated TCM with a multitude of software programs that require valid, up-to-date vehicle configuration data.  Those programs include Ford's dealer ordering systems, retail website, sales and marketing systems, engineering systems, and manufacturing systems.

37.    All of these systems depend upon accurate and current vehicle configuration data so Ford can build, market, and sell functional vehicles.  Without access to TCM, these other Ford software systems would be useless because they would not have access to valid vehicle configuration data.  These programs receive regular data updates from TCM, often on a daily basis.  In fact, the whole purpose of TCM is to provide the configuration backbone for other software programs, which Ford uses on a nationwide and worldwide basis.

38.    TCM—like ACM—is a back-end system used to configure vehicles from billions of possible combinations of parts, features, and options.  When a Ford dealer attempts to place an order through Ford's Web Based Dealer Ordering

("WBDO") system—for example, an order for 250 Ford Mustangs in different colors with sunroofs and 20 inch wheels—TCM supplies the "rules" that ensure configuration results in an integrated, working vehicle system that Ford is able to manufacture and sell. Likewise, when a retail customer attempts to customize a Ford F-150 pickup using Ford.com, TCM ensures that the customer is only able to select options that Ford could build.

39.     Much like Microsoft Office or Adobe Acrobat, Versata's ACM software rapidly became embedded across Ford's global technology platform. Ford became so dependent on Versata that it could not manufacture or sell a single vehicle without Versata's ACM technology.

**C.     _Ford seeks to eliminate its dependence on Versata by copying ACM_**

40.     Versata's ACM technology revolutionized Ford's business practices, and saved Ford at least hundreds of millions of dollars. But Ford's cost to license this technology was relatively low in comparison to the cost-savings and other benefits it provided. Beginning in 2004, Ford paid Versata an $8.45 million annual license fee—a license fee that remained unchanged over the next decade. But even this $8.45 million annual license fee was more than Ford wanted to pay.

41.     In 2011, weary of the annual cost of licensing Versata's software, Ford began an internal project to replace ACM and develop software that would perform the same functions. The objective of this project was to develop a complete

replacement for ACM.  Initially, Ford even mimicked the ACM name, calling its project "Total Configuration Management" ('TCM'), before later changing the name to "Product Definition and Offer" ('PDO').

42.    On information and belief, Ford breached its obligations to Versata by reverse engineering Versata's patented and copyrighted software and disseminating Versata's Confidential Information to unauthorized users tasked with creating a copycat configuration technology.

43.    At no time between 2011 and 2014, did Ford inform Versata that its engineers where developing a rival configuration software.  On October 7, 2011, Ford filed a patent application on technologies that it admits to using in its rival configuration software.  In August 2014, Ford received a patent covering this "invention," U.S. Patent No. 8,812,375 (the '375 patent).  A true and correct copy of the '375 patent is attached hereto as Exhibit 3.

44.    Inventors on the '375 patent include Bryan Goodman and Gintaras Puskorius, both of whom had access to Versata configuration technologies. Numerous aspects of the '375 patent are based on Versata patented technologies and trade secrets.

45.    On March 15, 2013, Ford filed another patent application which was published as U.S. Patent Publication No. US20140279602.  This also describes configuration technologies used in TCM.  A true and correct copy of the '602

publication is attached hereto as Exhibit 4.

46.    Inventors on the '604 publication include Bryan Goodman, Jian Lin, James Beardslee, Ganesh Alla, Ravi Kundoor, Gintaras Puskorius, Yakov Fradkin, and Martin Pipoly, all of whom had access to Versata configuration technologies. Numerous aspects of the '604 publication are based on Versata patented technologies and trade secrets.

### D.    *Ford attempts to renew its ACM license through subterfuge*

47.    In 2014, Ford and Versata, which by now had become part of Versata Software, Inc., began negotiating a renewal of the ACM software license.

48.    During the negotiations, Versata informed Ford that it was unwilling to extend the software licensing agreement without an increase in the annual licensing fee.  To facilitate negotiations, Versata made a number of proposals, including a proposal that Ford could license all of its major software products, including the ACM software, for a single $17 million a year annual license fee.

49.    Ford refused to negotiate with Versata.  Instead, Ford attempted to renew the license under the old terms through subterfuge.

50.    In fall 2014, Ford sent a check for $8.45 million to Versata's accounting department, apparently in the hope that Versata would knowingly—or unknowingly—cash the check and renew the ACM license.  Versata returned the check to Ford.

51.     When Ford's initial scheme failed, it then attempted to renew the ACM license by submitting purchase orders through both its European and American offices requesting renewal of the "2015 ACM License."  Versata rejected those purchase orders as well.

**E.      *Versata terminates Ford's ACM license***

52.     Finally, on October 7, 2014, with no deal in sight and facing an automatic renewal of the license agreement if it did not act, Versata was forced to notify Ford in writing that it was terminating the existing license agreement as of January 15, 2015.  Versata also notified Ford that, pursuant to Section 11.4 of the MSSA, Ford was "required to cease using all … Versata Software and Materials … and return the same to Versata or destroy all such Versata Software and Materials and Confidential Information from all Ford systems, records or repositories."

53.     In the hope that the parties could reach an agreement, Versata continued to negotiate with Ford.  But Ford refused to pay any increase for its use of the ACM license—despite the fact that it had enjoyed the same (now heavily discounted) price for a decade.

54.     By November 2014, Versata became concerned that Ford intended to breach the MSSA by continuing to use Versata's ACM software without paying any licensing fees.  To address this concern, Versata sent Ford a letter on November 20, 2014 informing Ford that Versata intended to conduct visit Ford's facilities "to

verify your compliance with the terms of the Agreement concerning your deletion [of the ACM software] and return of all of the … Software, the licenses of which have been terminated and all the materials related to such terminated Software." But, in breach of the parties' contract, Ford refused to allow Versata to visit its facilities, speak with its employees, or conduct the audit that Ford had specifically agreed to in sections 3.5 and 12.2 of the MSSA.

**F.**    ***Ford falsely claims that it implemented a "Chinese wall"***

55.    On December 19, 2014, Versata met with Ford management at the Ford headquarters in Michigan.  At that meeting, Ford informed Versata that they were terminating the ACM software license.  Ford further informed Versata for the first time that Ford was switching to its own, newly developed configuration software.

56.    During this December 19, 2014 meeting Ford further claimed that it had put a "Chinese Wall" in place to ensure that people who had access to Versata's software did not work on, or use the trade secrets in, the replacement software.  But when asked who was in charge of this replacement project, Ford conceded that it was Mike Sullivan, a manager who had supervised Ford employees working on ACM for more than a decade.  Versata subsequently discovered that at least 26 individuals who used, or had access to, Versata software worked on TCM.  These individuals included Bryan Goodman, Gintaras Puskorius, Kurt Reinke, Sanjay Sisale, Ram Pillarisetty, Garghi Shah, David Wierzbicki, Sunil Gajula, Manisha

Tambe, Darlene Coomer, Jian Lin, Fred Wilkinson, Linda Wu, Rachel Sims, Chris Andrews, Martin Pipoly, Yakov Fradkin, Jim Beardslee, Ravi Kundoor, Ganesh Alla, Erin Jasso, Aaron Bush, Rachel Smith, Sai Viswanatha, Colin Shury, and Mike Sullivan.

## G. *Ford refuses to let Versata verify its compliance with its software license*

57.    Following the termination of Ford's ACM license, Versata exercised its contractual right to request an on-premises verification to confirm whether Ford was still using ACM or had incorporated ACM components or trade secrets into TCM.  When Ford refused, Versata requested that Ford put its position in writing. Instead, on February 19, 2015, Ford filed the present lawsuit seeking a declaratory judgment that its new, copycat configuration software did not infringe Versata's patents or otherwise reflect that Ford had stolen Versata and Versata's Confidential Information.

58.    On information and belief, Ford has misappropriated Versata and Versata's Confidential Information and continues to use Versata's patented and copyrighted software in violation of the ACM, including in its use of TCM and its "super configurator."

59.    The Confidential Information includes specific trade secrets from which Ford derives, and has derived, significant value and competitive advantage. Versata and Versata have treated the Confidential Information as confidential and

restricted information, and have taken reasonable steps to protect such Confidential Information from unauthorized use or disclosure to maintain its secrecy. The Confidential Information was developed by Versata and Versata at great expense, and constitutes valuable trade secrets that give Ford a competitive advantage over others in its industry.

60.    Ford was—and continues to be—under an obligation not to disclose, claim, and/or use as their own, the Confidential Information disclosed by Versata and Versata.

## H.    *Ford is liable for breaching its license agreements with Versata, for trade secret misappropriation, and for patent infringement*

61.    Versata is informed and believe, and based thereon allege, that Ford violated its obligations with respect to the Confidential Information by misusing and misappropriating the Confidential Information within its companies and facilities for its personal gain. In addition, Ford disclosed the Confidential Information to third parties, including, but not limited to, the United States Patent and Trademark Office.

62.    Versata did not become aware that Ford had violated its obligations not to misuse, misappropriate or disclose the Confidential Information until approximately February 19, 2015, when Ford filed its Complaint seeking declaratory relief for patent infringement and misappropriation of trade secrets. At that time, it became clear to Versata that Ford had misappropriated the Confidential Information, disclosed it, and converted it to Ford's own use, in violation of Ford's statutory and

contractual obligations.  Ford's business is such that were Ford to misuse and misappropriate Versata's proprietary technology as alleged, Ford would (and Versata alleges Ford did) benefit from its misdeeds even if they never applied for, obtained or licensed any patents based on the technology.  Versata is informed and believes that Ford continues to run major portions of its business operations based on its misuse and misappropriation of Versata's proprietary technology.

63.    On October 20, 1998, the USPTO duly and legally issued United States Patent No. 5,825,651 (the '651 patent), entitled "Method and Apparatus for Configuring Systems."  Versata holds all right, title, and interest in and to the '651 patent (a true and correct copy of which is attached as Exhibit 5).

64.    On June 11, 2002, the USPTO duly and legally issued United States Patent No. 6,405,308 (the '308 patent), entitled "Method and Apparatus for Maintaining and Configuring Systems."  Versata holds all right, title, and interest in and to the '308 patent (a true and correct copy of which is attached as Exhibit 6).

65.    On January 6, 2004, the USPTO duly and legally issued United States Patent No. 6,675,294 (the '294 patent), entitled "Method and Apparatus for Maintaining and Configuring Systems."  Versata holds all right, title, and interest in and to the '294 patent (a true and correct copy of which is attached as Exhibit 7).

66.    On August 12, 2014 the USPTO duly and legally issued United States Patent No. 8,805,825 (the '825 patent), entitled "Method and Apparatus for

Maintaining and Configuring Systems." Versata holds all right, title, and interest in and to the ''825 patent (a true and correct copy of which is attached as Exhibit 8).

67.    On April 3, 2007, the USPTO duly and legally issued United States Patent No. 7,200,582 (the '582 patent), entitled "Method and Apparatus for Maintaining and Configuring Systems." Versata holds all right, title, and interest in and to the '582 patent (a true and correct copy of which is attached as Exhibit 9).

68.    On June 15, 2010, the USPTO duly and legally issued United States Patent No. 7,739,080 (the '080 patent), entitled "Method and Apparatus for Maintaining and Configuring Systems." Versata holds all right, title, and interest in and to the '080 patent (a true and correct copy of which is attached as Exhibit 10).

69.    On December 9, 2008, the USPTO duly and legally issued United States Patent No. 7,464,064 (the '064 patent), entitled "Method and Apparatus for Maintaining and Configuring Systems." Versata holds all right, title, and interest in and to the '064 patent (a true and correct copy of which is attached as Exhibit 11).

70.    On February 1, 2011, the USPTO duly and legally issued United States Patent No. 7,882,057 (the '057 patent), entitled "Method and Apparatus for Maintaining and Configuring Systems." Versata holds all right, title, and interest in and to the '057 patent (a true and correct copy of which is attached as Exhibit 12).

71.    On March 15, 2013 Ford submitted patent application 13/840,497 to the USPTO, which was subsequently published as Pub. No. US2014/0279602 (the

'602 Publication).  The '602 Publication's abstract indicates that it relates to, among other things, a "method or system identifying the one or more rules that provide a relationship connecting the one or more feature families of interest."

72.    On information and belief, Ford makes, uses, licenses, sells, offers for sale, or imports in the State of Michigan, in this judicial district, and elsewhere within the United States, software, including Ford's "super configuration technology" described in Ford's Complaint for Declaratory Relief, that infringes the '651, '308, '294, '528, '064, '825, '080, and '057 patents.

### I.  Ford Files Inter Partes Review Petitions on Six of the Eight Patents-in-Suit

73.    For the first sixteen months of this litigation, Ford did not take any offensive actions to invalidate Versata's ACM-related patents.  Ford did not assert any claims or counterclaims seeking a finding of invalidity.  Ford also did not initiate any Patent Office proceedings to invalidate Versata's patents.   Ford only asserted affirmative defenses of invalidity, which are purely defensive in nature and related directly to Versata's infringement claims this case.

74.  On May 9, 2016, Ford filed Inter Partes Review ("IPR") petitions seeking to have the Patent Office declare six of the eight patents-in-suit invalid.  These IPR petitions are *offensive* attack on the validity of Versata's ACM-related patents, and once instituted by the Patent Office, cannot be dismissed at Ford's discretion or by agreement between Ford and Versata.

## FIRST COUNTERCLAIM

### Infringement of the '651 Patent

75.    Versata realleges and incorporates by reference herein the allegations contained in Paragraphs 1 through 74.

76.    Ford has been and is now directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of '651 patent in the State of Michigan, in this judicial district, and elsewhere within the United States by, among other things, making, using, licensing, selling, offering for sale, or importing software covered by one or more claims of the '651 patent, all to the injury of Versata.

77.    As noted in the abstract of the '651 patent, Versata's invention, among other things, "provides the ability to interactively select and configure a product among a set of related products based on the availability and compatibility of features and options" such that "only valid selections can be made at any time."

78.    Ford's acts of infringement have been willful, deliberate, and in reckless disregard of Versata's patent rights, and will continue unless permanently enjoined by this Court.

79.    Versata has been damaged by Ford's infringement of the '651 patent in an amount to be determined at trial, and has suffered and will continue to suffer irreparable loss and injury unless Ford is permanently enjoined from infringing the

'651 patent.

## SECOND COUNTERCLAIM

### Infringement of the '308 Patent

80.     Versata realleges and incorporates by reference herein the allegations

contained in Paragraphs 1 through 79.

81.     Ford has been and is now directly infringing, and indirectly infringing

by way of inducing infringement and/or contributing to the infringement of '308

patent in the State of Michigan, in this judicial district, and elsewhere within the

United States by, among other things, making, using, licensing, selling, offering for

sale, or importing software covered by one or more claims of the '308 patent, all to

the injury of Versata.

82.     As noted in the abstract of the '308 patent, Versata's invention

"provides the ability to interactively select and configure a product among a set of

related products based on the availability and compatibility of features and options"

such that "only valid selections can be made at any time."

83.     Ford's acts of infringement have been willful, deliberate, and in

reckless disregard of Versata's patent rights, and will continue unless permanently

enjoined by this Court.

84.     Versata has been damaged by Ford's infringement of the '308 patent in

an amount to be determined at trial, and has suffered and will continue to suffer

irreparable loss and injury unless Ford is permanently enjoined from infringing the '308 patent.

## THIRD COUNTERCLAIM

### Infringement of the '294 Patent

85. Versata realleges and incorporates by reference herein the allegations contained in Paragraphs 1 through 84.

86. Ford has been and is now directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of '294 patent in the State of Michigan, in this judicial district, and elsewhere within the United States by, among other things, making, using, licensing, selling, offering for sale, or importing software covered by one or more claims of the '294 patent, all to the injury of Versata.

87. As noted in its abstract, the '294 patent covers, among other things, a system that "validates a configuration using the system definition, the current state of the configuration and user input."

88. Ford's acts of infringement have been willful, deliberate, and in reckless disregard of Versata's patent rights, and will continue unless permanently enjoined by this Court.

89. Versata has been damaged by Ford's infringement of the '294 patent in an amount to be determined at trial, and has suffered and will continue to suffer

irreparable loss and injury unless Ford is permanently enjoined from infringing the '294 patent.

## FOURTH COUNTERCLAIM

### Infringement of the '825 Patent

90. Versata realleges and incorporates by reference herein the allegations contained in Paragraphs 1 through 89.

91. Ford has been and is now directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of '825 patent in the State of Michigan, in this judicial district, and elsewhere within the United States by, among other things, making, using, licensing, selling, offering for sale, or importing software covered by one or more claims of the '825 patent, all to the injury of Versata.

92. As noted in its abstract, the '825 patent covers, among other things, a "combined configuration-rules attribute configuration system [that] allows [a] query to be answered in a single step."

93. Ford's acts of infringement have been willful, deliberate, and in reckless disregard of Versata's patent rights, and will continue unless permanently enjoined by this Court.

94. Versata has been damaged by Ford's infringement of the '825 patent in an amount to be determined at trial, and has suffered and will continue to suffer

irreparable loss and injury unless Ford is permanently enjoined from infringing the '825 patent.

## FIFTH COUNTERCLAIM

### Infringement of the '582 Patent

95.     Versata realleges and incorporates by reference herein the allegations contained in Paragraphs 1 through 94.

96.     Ford has been and is now directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of '582 patent in the State of Michigan, in this judicial district, and elsewhere within the United States by, among other things, making, using, licensing, selling, offering for sale, or importing software covered by one or more claims of the '582 patent, all to the injury of Versata.

97.     As noted in its abstract, the '582 patent covers, among other things, a "consistency checking system that operates on subsets of the configuration space by consolidating data within the configuration space into minimized subsets that represent a portion of the configuration space where a particular consistency error can occur."

98.     Ford's acts of infringement have been willful, deliberate, and in reckless disregard of Versata's patent rights, and will continue unless permanently enjoined by this Court.

99.    Versata has been damaged by Ford's infringement of the '582 patent in an amount to be determined at trial, and has suffered and will continue to suffer irreparable loss and injury unless Ford is permanently enjoined from infringing the '582 patent.

## SIXTH COUNTERCLAIM

### Infringement of the '064 Patent

100.   Versata realleges and incorporates by reference herein the allegations contained in Paragraphs 1 through 99.

101.   Ford has been and is now directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of '064 patent in the State of Michigan, in this judicial district, and elsewhere within the United States by, among other things, making, using, licensing, selling, offering for sale, or importing software covered by one or more claims of the '294 patent, all to the injury of Versata.

102.   As noted in its abstract, the '064 patent covers, among other things, a "consistency checking system that operates on subsets of the configuration space by consolidating data within the configuration space into minimized subsets that represent a portion of the configuration space where a particular consistency error can occur."

103.   Ford's acts of infringement have been willful, deliberate, and in

reckless disregard of Versata's patent rights, and will continue unless permanently enjoined by this Court.

104.   Versata has been damaged by Ford's infringement of the '064 patent in an amount to be determined at trial, and has suffered and will continue to suffer irreparable loss and injury unless Ford is permanently enjoined from infringing the '064 patent.

## SEVENTH COUNTERCLAIM

### Infringement of the '080 Patent

105.   Versata realleges and incorporates by reference herein the allegations contained in Paragraphs 1 through 104.

106.   Ford has been and is now directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of '080 patent in the State of Michigan, in this judicial district, and elsewhere within the United States by, among other things, making, using, licensing, selling, offering for sale, or importing software covered by one or more claims of the '294 patent, all to the injury of Versata.

107.   As noted in its abstract, the '080 patent covers, among other things, a process that "combines multiple configuration models into a single unified configuration model that contains the union of the allowable combinations from each of the original models."

108.   Ford's acts of infringement have been willful, deliberate, and in reckless disregard of Versata's patent rights, and will continue unless permanently enjoined by this Court.

109.   Versata has been damaged by Ford's infringement of the '080 patent in an amount to be determined at trial, and has suffered and will continue to suffer irreparable loss and injury unless Ford is permanently enjoined from infringing the '080 patent.

## EIGHTH COUNTERCLAIM

### Infringement of the '057 Patent

110.   Versata realleges and incorporates by reference herein the allegations contained in Paragraphs 1 through 109.

111.   Ford has been and is now directly infringing, and indirectly infringing by way of inducing infringement and/or contributing to the infringement of '057 patent in the State of Michigan, in this judicial district, and elsewhere within the United States by, among other things, making, using, licensing, selling, offering for sale, or importing software covered by one or more claims of the '294 patent, all to the injury of Versata.

112.   As noted in its abstract, the '057 patent covers, among other things, a procedure that "break[s] a configuration problem down into a set of smaller problems, solving them individually and recombining the results into a single result

that is equivalent to a conventional inference procedure."

113.   Ford's acts of infringement have been willful, deliberate, and in reckless disregard of Versata's patent rights, and will continue unless permanently enjoined by this Court.

114.   Versata has been damaged by Ford's infringement of the '057 patent in an amount to be determined at trial, and has suffered and will continue to suffer irreparable loss and injury unless Ford is permanently enjoined from infringing the '057 patent.

## NINTH COUNTERCLAIM

### Trade Secret Misappropriation

115.   Versata realleges and incorporates by reference the allegations contained in Paragraphs 1 through 114.

116.   As set forth above, Versata developed and owns the Confidential Information. Such Confidential Information has been treated as confidential and restricted information, and Versata has taken reasonable steps to protect it from unauthorized use or disclosure.

117.   Ford has breached its obligations to not use or disclose the trade secrets and associated Confidential Information, by doing the acts set forth above. Specifically, Ford has misused, misappropriated, disclosed and made public the Confidential Information including trade secrets disclosed to them in confidence, by

sharing this information with the PTO and other third parties within and outside its companies. Additionally, Ford has misused and misappropriated the Confidential Information within its companies to develop technology based on the Confidential Information, for its own personal gain.

118.   Ford's breaches have caused damage to Versata in an amount to be determined at trial.

## TENTH COUNTERCLAIM

### Conversion (Common Law and Statutory)

119.   Versata realleges and incorporates by reference the allegations contained in Paragraphs 1 through 118.

120.   Versata provided its Confidential Information to Ford.  Ford was at all times and continues to be under an obligation not to disclose, or claim as their own, the Confidential Information disclosed by Versata.

121.   However, despite its obligations, Ford has wrongfully exercised dominion and control over such Confidential Information and converted to its own use the technology disclosed in the Confidential Information, and to obtain from the PTO United States Patent No. 8,812,375.

122.   After becoming aware of this misappropriation and conversion, Versata has demanded the return of the Confidential Information as well as the fruits of its conversion and misappropriation by Ford, including the patent described above and

any revenue obtained therefrom.

123. Ford has refused to return the Confidential Information, to provide any legal or beneficial interest in the patents derived therefrom, or to provide just compensation of any kind, to Versata.

124. Ford's conversion has caused damages to Versata in an amount to be determined at trial.

125. Ford's actions described above were taken with malice, fraud, oppression and forethought, were intentionally done to steal from Versata the Confidential Information in question and to illegally profit thereby, and later were taken to obtain a patent from the PTO without disclosing to the PTO that the patent applications were based on and derived from the Confidential Information of Versata. Thus, Ford's actions justify an award of punitive or exemplary damages in a favor of Versata and against Ford in an amount to punish Ford and deter such future conduct by Ford and others.

126. Versata is entitled to treble damages and its attorney fees for statutory conversation, pursuant to MCL 600.2919a.

## ELEVENTH COUNTERCLAIM

### Declaration to Quiet Title

127. Versata realleges and incorporates by reference the allegations contained in Paragraphs 1 through 126.

128.   On August 19, 2014, Ford caused to be recorded with the USPTO an assignment of the '375 Patent rights to itself.

129.   The assignment under which Ford claims ownership of the '375 Patent, although appearing valid on its face, is in fact invalid and of no force and effect. Ford's claim of ownership results from Ford's conversion and misappropriation of Versata's technology and Confidential Information, and other wrongful conduct as alleged herein. Ford's invalid assignment and claim of ownership interferes with Versata's title to its technology and Confidential Information. Ford is holding itself out as owner of technology that does not in fact belong to Ford but instead belongs to Versata.

130.   By reason of the fraudulent and otherwise wrongful manner in which Ford obtained its alleged right, claim or interest in and to the '375 Patent, Ford has no legal or equitable right, claim or interest therein, but, instead, Ford is an involuntary trustee holding said Patent and profits therefrom in constructive trust for Versata, with the duty to convey the same to Versata forthwith.

## TWELTH COUNTERCLAIM

### Breach of Contract

131.   Versata realleges and incorporates by reference the allegations contained in Paragraphs 1 through 130.

132.   On October 19, 1998, Ford and Versata entered into a valid software

licensing contract for the provision of Versata's patented configuration software.

133.   On December 22, 2004, Ford and Versata entered into a second valid software licensing contract for the provision of Versata's patented ACM software.

134. Ford materially breached these contracts by misusing, misappropriating, failing to return, and disclosing at least some of the Confidential Information to various third parties, including but not limited to the USPTO, in direct violation of the CSA and the MSSA.

135.   Ford further breached the MSSA by refusing to permit Versata to exercise its audit rights under the contract, and by continuing to use Versata's software without a license and without payment of licensing fees.

136.   Ford further breached the CSA and MSSA by reverse engineering Versata's software for its own commercial use.

137.   Ford's actions have caused Versata damages in an amount to be determined at trial.

## THIRTEENTH COUNTERCLAIM

### Breach of 2002 Settlement Agreement

138.   Versata realleges and incorporates by reference the allegations contained in Paragraphs 1 through 137.

139.   As set forth above, on or about January 1, 2002, Ford and Versata settled a previous dispute by executing the Software Subscription Agreement

("SSA").  Article 2F of the SSA requires Ford to "provide reasonable assistance in perfecting and protecting GPD Software intellectual property for Trilogy."  Exhibit A to the SSA specifically defines this "GPD Software" as version 3.2 of ACM.  Ford reaffirmed its commitment to protect Versata's intellectual property in at least five agreements following the SSA.  These included amendments to the SSA dated, July 1, 2002; February 28, 2003; July 1, 2004; November 1, 2003; December 23, 2003.

140.   The SSA was and is a valid contract, and Versata has performed its obligations thereunder. Ford materially breached these provisions by filing Inter Partes Review petitions seeking to have the Patent Office declare six of the eight Versata patents-in-suit invalid.  These IPR petitions are a direct, offensive attack on the validity of Versata's ACM-related patents and are therefore a violation of Ford's duty to provide reasonable assistance to protect this intellectual property.  Ford's breaches caused damage to Versata.

## FOURTEENTH COUNTERCLAIM

**Trade Secret Misappropriation Under Defend Trade Secrets Act of 2016
18 U.S.C. 1832 et seq.**

141.   Versata realleges and incorporates by reference the allegations contained in Paragraphs 1 through 140.

142.   As set forth above, Versata developed and owns the Confidential Information. Such Confidential Information has been treated as confidential and restricted information, and Versata has taken reasonable steps to protect it from

unauthorized use or disclosure. Such Confidential Information also constitutes trade secrets that belong to Versata.  Versata owns these trade secrets.

143.   Versata's trade secrets and associated Confidential Information are related to Versata's products, including at least ACM, that is used in interstate or foreign commerce.

144.   Ford has actual possession of Versata's trade secrets and associated Confidential Information.

145.   Ford has breached its obligations to not use or disclose the trade secrets and associated Confidential Information, by doing the acts set forth above. Specifically, Ford has misused, misappropriated, disclosed and made public the Confidential Information including trade secrets disclosed to them in confidence, by sharing this information with the PTO and other third parties within and outside its companies. Additionally, Ford has misused and misappropriated the Confidential Information within its companies to develop technology based on the Confidential Information, for its own personal gain.

146.   Ford's breaches constitute acts of misappropriation that have been willful and malicious, and will continue unless permanently enjoined by this Court.

147.   Versata has been damaged by Ford's misappropriation of Versata's trade secrets in an amount to be determined at trial, and has suffered and will continue to suffer irreparable loss and injury unless Ford is permanently enjoined

from misappropriating Versata's trade secrets.

## APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTION

148.   Versata incorporates by reference herein Paragraphs 1 through 147.

149.   The actionable conduct of Ford has recently threatened and is starting to cause imminent and irreparable harm to Versata.

150.   Specifically, Ford's refusal to honor its contractual obligations to return Versata's software documentation and to remove Versata's proprietary software from its global computer networks and servers has resulted in widespread dissemination of Versata's trade secrets to Ford employees and potentially other third-parties in violation of the license agreement.  Versata have no remedy at law for the widespread dissemination of their trade secrets to the general public in form of Ford's stolen "super configurator" technology.

151.   Although Ford claims that it is no longer using Versata's ACM software, it has refused to return permit an audit of its systems to ensure the software has been deleted or to return Versata's documentation and user manuals.

152.   To preserve the status quo until trial in this cause, Versata hereby request the Court to preliminarily enjoin and restrain Ford, and its agents, servants, employees and all persons acting under, and in concert with, or for them, through both a temporary restraining order and a preliminary injunction, from: (i) providing Versata's trade secrets to Ford employees or third-parties engaged in the

development of ACM and automotive configuration software; (ii) copying, reverse engineering, or disseminating Versata's trade secrets and confidential information; (iii) taking action or encouraging others to take action restrained above or otherwise to harm Versata or Versata's businesses; and (iv) from pursuing IPRs or other post-grant review before the Patent Office.  Versata also requests that the Court order Ford to immediately comply with the audit provision of the MSA or otherwise fashion relief to ensure that Ford is not continuing to use, copy, reverse-engineer, and disseminate Versata's trade secrets and copyrighted proprietary software.

153.   Following trial on the merits, Versata hereby request that the Court enter a permanent injunction enjoining the foregoing acts as well as (i) all further infringement of all patents found to be infringed; (ii) all further misappropriation, use, possession, or infringement of Versata's trade secrets; (iii) all further use or possession of Versata's software and related documentation; and (iv) all further challenges to the validity of Versata's patents and intellectual property.

## **PRAYER FOR RELIEF**

WHEREFORE, the Versata Defendants and Counterclaimants pray for judgment as follows:

A.    That the Court dismiss Ford's Complaint.

B.    That the Court enter judgment in favor of Versata that Ford has infringed, directly and indirectly by way of inducing infringement and/or

contributing to infringement of Versata's '651, '308, '294, '582, '064, '825, '080, and '057 patents.

C.      That Court enter a permanent injunction, enjoining Ford and its officers, directors, agents, servants, employees, affiliates, divisions, subsidiaries, and parents from infringing, inducing the infringement of, or contributing to the infringement of Versata's '651, '308, '294, '582, '064, '825, '080, and '057 patents.

D.      That the Court enter a judgment and order requiring Ford to pay Versata damages for Ford's infringement of the '651, '308, '294, '582, '064, '825, '080, and '057 patents, together with interest (both pre and post-judgment), costs, and disbursement as fixed by this Court under 35 U.S.C. § 284.

E.      That the Court enter a judgment and order finding Ford's infringement willful and awarding treble the amount of damages and losses sustained by Versata as a result of Ford's infringement under 35 U.S.C. § 284.

F.      That the Court enter a judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding Versata its reasonable attorney's fees.

G.      That Court enter a permanent injunction under 18 U.S.C. § 1836(b)(3)(A), enjoining Ford and its officers, directors, agents, servants, employees, affiliates, divisions, subsidiaries, and parents from misappropriating Versata's  trade secrets.

H.    That the Court enter a judgment and order finding Ford's misappropriation of Versata's trade secrets willful and malicious and awarding double the amount of damages and losses sustained by Versata as a result of Ford's misappropriation under 18 U.S.C. § 1836(b)(3).

I.    That the Court enter an award in favor of Versata and against Ford for such damages as Versata has sustained in consequence of Ford's breach of contract.

J.    That the Court enter an award in favor of Versata and against Ford for such damages as Versata has sustained in consequence of Ford's misappropriation of Versata's trade secrets.

K.    That the Court enter a preliminary injunction prohibiting Ford from pursuing IPRs before the Patent Office until such time that this Court resolves the relevant contract issues.

L.    That the Court enter injunctive relief preventing Ford's further use or disclosure of Versata's trade secret information.

M.    That the Court enter a preliminary and permanent injunction requiring Ford to stop using and return all Versata's software, product documentation, and derivative works that are in Ford's possession.

N.    That the Court enter a preliminary and permanent injunction prohibiting Ford employees or contractors with access to Versata's configuration software from developing or implementing other configuration software for Ford;

O.     That the Court enter a permanent injunction prohibiting all further infringement of all patents found to be infringed, all further misappropriation, use, possession, or infringement of Versata's trade secrets, and all further use or possession of Versata's software and related documentation.

P.     That the Court enter an award in favor of Versata and against Ford for such damages as Versata has sustained in consequence of Ford's conversion of Versata's Confidential Information.

Q.     That the Court provide for trial by jury on all issues triable by jury.

R.     That the Court grant such other and further relief in law or in equity to which Versata may be justly entitled.

## <u>RELIANCE ON JURY DEMAND</u>

Defendants Versata Software, Inc., f/k/a Trilogy Software, Inc., Trilogy Development Group, Inc., and Trilogy, Inc. relies on the Jury Demand previously filed in the above-captioned matter.

DATED: AUGUST 8, 2016

AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING P.C.

*/s/ Steven J. Mitby*
Steven J. Mitby
Texas State Bar No. 24037123
smitby@azalaw.com
Foster C. Johnson
Texas State Bar No. 24076463
fjohnson@azalaw.com
Reed N. Smith
Texas State Bar No. 24067875
AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.
1221 McKinney, Suite 2500
Houston, Texas 77010
(713) 655-1101 (Phone)
(713) 655-0062 (Fax)

Rodger D. Young
Young & Associates
27725 Stansbury Blvd., Suite 125
Farmington Hills, Michigan 48334
(248) 353-8620
efiling@youngpc.com

**COUNSEL FOR DEFENDANTS VERSATA DEVELOPMENT GROUP, INC., F/K/A TRILOGY DEVELOPMENT, GROUP, INC., VERSATA SOFTWARE, INC., F/K/A TRILOGY SOFTWARE, INC.,**

**TRILOGY DEVELOPMENT GROUP, INC. AND TRILOGY, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 8, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

Frank A. Angileri
Chanille Carswell
Amy Leshan
John LeRoy
John Rondini
Brooks & Kushman PC – Southfield
100 Town Center
22nd Floor
Southfield, Michigan 48075

James P. Feeney
Dykema Gossett PLLC
39577 Woodward Ave., Suite 300
Bloomfield Hills, MI  48304

*/s/ Steven J. Mitby*
Steven J. Mitby