UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY,

    Plaintiff,

v.

VERSATA SOFTWARE, INC. *et al.*

    Defendants.

_____/

Case No. 15-cv-10628
(*consolidated with Case No. 15-11624*)
Hon. Matthew F. Leitman

## ORDER SUSTAINING IN PART VERSATA'S OBJECTIONS (ECF #305) TO REPORT AND RECOMMENDATION OF THE SPECIAL MASTER TO DENY VERSATA'S MOTION TO COMPEL PDOR2 SOURCE CODE (ECF ## 300, 301)

In this action, Versata Software Inc. and other related Defendants (collectively, "Versata") allege that Ford Motor Company infringed certain patents and misappropriated certain trade secrets when Ford developed an automotive configuration software program called "PDO." During discovery, Versata asked Ford to produce the source code for computer software Ford called "PDOR2." Ford refused. Versata thereafter filed a motion to compel with attorney Lawrence D. Graham, the Court-appointed discovery master in this action.

Pursuant to the protocol established in the Court's order appointing Mr. Graham (*see* ECF #230), Mr. Graham issued a Report and Recommendation in which he recommended that the Court deny Versata's motion to compel (the "R&R"). (*See* ECF ## 300, 301.) On August 24, 2017, Versata filed objections to the R&R. (*See* ECF

1

#305.) Ford filed a response (*see* ECF #308) and the parties filed supplemental submissions (*see* ECF ## 312, 315). The Court held a telephonic hearing on Versata's objections on October 19, 2017. For the reasons explained below, the Court **SUSTAINS IN PART** Versata's objections and will require Ford to produce the PDOR2 source code at Versata's expense.

# I

For more than a decade, Ford licensed automotive software called "ACM" from Versata. (*See* First Am. Counterclaim at ¶8, ECF #163 at Pg. ID 8322.) ACM provided a rule-authoring function that assisted Ford in the configuration of its vehicles. (*See id.* at ¶38, Pg. ID 8239-30.)

Versata alleges that in 2011, "Ford began an internal project to replace [ACM] and develop software that would perform the same functions." (*Id.* at ¶41, Pg. ID 8330-31.) Ford named this software "Product Definition and Offer" or "PDO."[1] (*Id.*) Versata alleges that PDO, like ACM, is rule-authoring software that allows Ford to configure the vehicles it manufactures:

> [PDO]—like ACM—is a back-end system used to configure vehicles from billions of possible combinations of parts, features, and options. When a Ford dealer attempts to place an order through Ford's Web Based Dealer Ordering

---

[1] Ford initially named the software "Total Configuration Management" or "TCM." (First Am. Counterclaim at ¶41, ECF #163 at Pg. ID 8331.) Versata therefore refers to the software throughout its First Amended Counterclaim as "TCM." But Versata further alleges that Ford later changed the name of the software to "PDO." (*Id.*) Ford also refers to this software as "PDOR1." For ease of reference, the Court will refer to this software in this Order as "PDO."

2

> ("WBDO") system—for example, an order for 250 Ford Mustangs in different colors with sunroofs and 20 inch wheels—[PDO] supplies the 'rules' that ensure configuration results in an integrated, working vehicle system that Ford is able to manufacture and sell. Likewise, when a retail customer attempts to customize a Ford F-150 pickup using Ford.com, [PDO] ensures that the customer is only able to select options that Ford could build.

(*Id.* at ¶38, Pg. ID 8329-30.) Versata insists that "Ford incorporated Versata's patented technologies and trade secrets into [PDO] and used these technologies to replace [ACM]." (*Id.* at Pg. ID 8304; *see also* Pg. ID 8305.) Versata maintains that Ford "willfully continues to infringe [Versata's patents] by using [PDO]." (*Id.* at ¶¶ 73, 78, Pg. ID 8339-40.)

In January 2017, while Versata was conducting a discovery review of the PDO source code, Versata "discovered that in addition to the PDO [source] code repository, Ford also maintain[ed] on the same server a 'PDOR2' … code repository that Versata's reviewers could not access." (Versata Objections, ECF #305 at Pg. ID 15781.) Versata sought access to the PDOR2 source code repository, and Ford refused. Ford insisted that PDOR2 was not an accused product in this action. (*See* R&R, ECF #301 at Pg. ID 15180.) Ford contended that PDOR2 did not include a rule-authoring function and that it therefore had distinct functionality from PDO (the product that Versata did accuse), and Ford argued that producing the PDOR2 source code would impose a significant burden. (*See id.*)

On May 19, 2017, Versata filed a motion with Mr. Graham seeking entry of an order that compelled "Ford to produce all manuals and technical documents (including cases, design documents, and testing documents) related to PDOR2 and provide Versata with access to the PDOR2 source code." (ECF #301-2 at Pg. ID 15197.) Versata argued that it was entitled to the PDOR2-related documents and to the PDOR2 source code because "PDOR2 is…the second revision or iteration of PDO – the very software accused of patent, trade secret, and copyright infringement in this case." (*Id.* at Pg. ID 15195.) Versata further identified certain Ford documents that, according to Versata, demonstrated that "PDOR2 performs rule-authoring," just like PDO. (*Id.* at Pg. ID 15196, citing Pg. ID 15201.) Versata insisted that there was good reason to question the bright-line distinction Ford had drawn between the rule-authoring PDO software and PDOR2.

Ford responded that that PDOR2 was "not accused in this litigation and [was] not relevant to either party's claims or defenses." (*See* ECF #301-3 at Pg. ID 15243.) Ford explained that while PDO is a "rule-authoring application [that] replaced [Versata's] ACM application," PDOR2, in contrast, is "a set of [four] separate applications[] which provide a different set of functionality than the accused PDO[] rule-authoring application." (*Id.*) Ford stressed that PDOR2 was "neither a replacement for, nor a new version of, the accused PDO[] application." (*Id.*) Finally, Ford claimed that producing the PDOR2 source code would "impose a significant burden on Ford" that would require "months of work." (*Id.* at Pg. ID 15245.)

4

On August 14, 2017, Mr. Graham issued the R&R in which he recommended that the Court deny Versata's request for the PDOR2 source code and documents. (*See* R&R, ECF #301.) Mr. Graham first recounted the procedural history of Vesata's request that the Court described above. He then turned to the question whether "PDOR2 is a revised or upgraded version of PDO, as Versata contends, or whether it is a suite of separate applications, as Ford contends." (*Id.* at Pg. ID 15184.) Mr. Graham acknowledged that Versata had identified some Ford documents which "strongly suggest that PDOR2 applications work in some fashion with either PDO or data that is created or used by PDO, but appear to blur the distinction between the two." (*Id.* at Pg. ID 15185.) But Mr. Graham ultimately concluded that while those documents may "suggest certain functionality of the general type that is accused in this action (such as rule authoring) is performed by PDOR2 … the supporting documents do not clearly indicate that any of the four applications [that comprise PDOR2] provide such functionality." (*Id.*)

Next, Mr. Graham addressed whether PDOR2 was "relevant and discoverable." (*Id.*) He explained that "[t]he record demonstrates that [PDOR2] comprises a suite of four applications and that Versata has neither accused those four applications of infringement nor articulated how production of the source code is reasonably likely to lead to such an accusation." (*Id.* at Pg. ID 15188.) In reaching this conclusion, Mr. Graham rejected Versata's argument that its pleadings do accuse Ford of infringement with respect to PDOR2:

5

> Here, Versata has not established relevance of the PDOR2 source code in the sort of 'focused, particularized manner' that would make it relevant. As Ford points out, none of Versata's infringement contentions directly accuse the PDOR2 applications …. Versata argues that the pleadings refer to PDO, and that PDO should be understood to be a generic name for all versions of PDO, including PDOR2. Ford counters that PDOR2 is not a new version of PDO … and that its declaratory judgment claim related to PDO was filed before PDOR2 had been created. Because PDOR2 did not exist at that time, it could not have been the express subject of the pleadings.

(*Id.* at Pg. ID 15187.)

Mr. Graham also addressed Ford's contention that producing the PDOR2 source code would be unduly burdensome. He noted that the two parties were "very far apart on this issue, and that the correct measure of burden appears to be somewhere in the middle." (*Id.* at Pg. ID 15191.) He concluded that "the submissions establish[ed] that there would be considerable effort required in making the PDOR2 source code available, though the exact measure of that effort is less clear." (*Id.*)

Finally, Mr. Graham addressed Versata's request for the PDOR2 "cases, design documents, and testing documents." (*Id.* at Pg. ID 15188-89.) He determined that Versata's request for these documents was not properly before him because Versata had failed to show that it conducted a "meet and confer" with Ford with respect to those documents as the Court's local rules require. (*Id.*)

## II

Versata objects to the R&R on three grounds. The Court has conducted a *de novo* review of the portions of the R&R to which Versata has objected, and it will address each objection in turn.

## A

Versata first challenges Mr. Graham's conclusion that PDOR2 is not relevant to the claims or defenses in this action because PDOR2 is not an accused product. (*See* ECF #305 at Pg. ID 15784.) According to Versata, "PDOR2 is a component of PDO" and performs the same rule-authoring functions as PDO. (*Id.* at Pg. ID 15780, 15784-85.) Versata therefore insists that PDOR2 is part of the "accused software." (*Id.*) Ford responds that "Versata blurs the distinction between the accused PDO[] rule-authoring software and the separate PDOR2 suite of applications." (ECF #308 at Pg. ID 15852.) According to Ford, because the PDOR2 suite of applications is entirely separate from PDO, PDOR2 cannot be considered to be an "accused product" and is not relevant to this action.

The Court concludes that Versata has raised a sufficient question as to whether PDOR2 is an accused product to warrant at least some discovery into PDOR2. More specifically, Versata has submitted certain Ford documents that arguably support Versata's contention that PDOR2, like PDO, is rule-authoring vehicle configuration software. One such Ford document states that PDOR2's functionality "will be built on top of the [PDO] Authoring Foundation" and implies that part of PDOR2 will involve

7

"direct authoring of product definition." (ECF #305-1 at Pg. ID 15818.) Another Ford document states that the "future state vision" of PDOR2 includes creating "common global processes for authoring all aspects of product definition." (ECF #305-2 at Pg. ID 15200.) Finally, a slide from a Ford presentation appears to state that PDOR2 will include "direct authoring" and will "expand authoring to include all specialty vehicles." (ECF #301-2 at Pg, ID 15232.) As Mr. Graham correctly concluded, these Ford documents perhaps suggest PDOR2 performs "certain functionality of the general type that is accused in this action (such as rule authoring)…." (R&R, ECF #301 at Pg. ID 15185.)

To be sure, Ford counters with strong evidence that PDOR2 does not perform the same rule-authoring function as PDO. That evidence includes the sworn declaration of Jim Beardslee, an employee in Ford's product development department. (*See* ECF #308 at Pg. ID 15165-66.) Mr. Beardslee attests that while PDO "replaced the functionality of the [ACM software] that Ford formerly licensed from Versata," PDOR2 is "a separate set of applications that provide[s] distinct functionality from that provided by PDO[]." (*Id.* at Pg. ID 15165.) Mr. Beardslee adds that the various functions of the PDOR2 software "[did] not replace the functionality of the PDO[] application." (*Id.* at 15165-66.) He concludes that "PDO 'R2' is not a new release of PDO[]." (*Id.* at 15165.)

It is certainly possible, if not likely, that Ford will ultimately persuade the Court that PDOR2 is sufficiently distinct from PDO such that PDOR2 cannot be considered an accused product in this action. However, at this point in the proceedings, the Court

8

cannot conclusively determine that PDOR2 is not accused, and the Court believes that Versata has sufficiently connected PDOR2 to its claims so as to warrant at least some basic discovery into PDOR2. The link between PDOR2 and Versata's claims is, admittedly, not a strong one and does not yet warrant extensive and burdensome discovery into PDOR2. But, as described below, the Court will, at this time, permit Versata to review the PDOR2 source code.[2]

**B**

Versata next objects to Mr. Graham's conclusion that it would be burdensome for Ford to produce the PDOR2 source code to Versata. (*See* ECF #305 at Pg. ID 15788-89.) The Court shares Mr. Graham's assessment of the burden.

Mr. Graham carefully evaluated the competing arguments both Ford and Versata made with respect to the burden required to make the source code available, and he concluded that "there would be a considerable effort required [by Ford] in making the PDOR2 source code available." (R&R, ECF #301 at Pg. ID 15191.) While Mr. Graham could not definitively define "the exact measure of that effort" (*id.*), there is support in the record for his conclusion. Specifically, Ford submitted the declaration of IT employee Samantha Balinski, who declared that:

---

[2] Nothing in this Order should be understood to suggest that the Court is inclined to conclude that PDOR2 is an accused product or that the Court will permit introduction of evidence concerning PDOR2 at trial. The Court's sole determination here is that Versata should be permitted to review the PDOR2 source code during discovery.

9

> [The] [c]urrent source code for the PDR2 applications is maintained in an active repository that is used to support Ford's day-to-day business activities. Because of this, establishing a review environment that can be inspected and analyzed by Versata's experts requires that Ford create a separate repository that is isolated from the active repository supporting Ford's day-to-day business activities.

(ECF #316 at ¶11, Pg. ID 15945-46.)

Based on the Court's independent review of the record, it agrees with Mr. Graham's assessment that "there would be considerable effort required in making the PDOR2 source code available." (R&R, ECF #301 at Pg. ID 15191.) Given that "considerable effort," and the fact that Versata has only minimally established the relevance of PDOR2 for discovery purposes, the Court does not believe that Ford should bear the expense of making the PODR2 source code available to Versata to review. Accordingly, if Versata wishes to review the PDOR2 source code, it shall pay Ford's reasonable costs associated with making that code available. *See*, *e.g.*, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978) ("The presumption is that the responding party must bear the expense of complying with discovery requests, but he may invoke the district court's discretion under Rule 26(c) to grant orders protecting him from 'undue burden or expense' in doing so, including orders conditioning discovery on the requesting party's payment of the costs of discovery"); *Laethem Equipment Company v. Deere & Company*, 261 F.R.D. 127, 145-46 (E.D. Mich. 2009) (quoting *Oppenheimer* and requiring "the party seeking discovery to pay for the cost of finding and producing it"). To the extent Versata objects to the

reasonableness of the costs claimed by Ford to make the PDOR2 source code available, those disputes shall be submitted to and resolved by Mr. Graham (pursuant to the protocol previously established by the Court).

### III

Finally, Versata objects to a portion of Mr. Graham's R&R that is not related to the PDOR2 source code. In this objection, Versata challenges Mr. Graham's refusal to recommend that the Court compel Ford to produce certain "cases, design documents, and testing documents" related to the PDOR2 software. (ECF #305 at Pg. ID 15789-90.) Mr. Graham determined that Versata's request for these documents was not properly before him because Versata did not meet and confer with Ford concerning the request. (R&R, ECF #301 at Pg. ID 15188-89.)

The Court does not reach the question of the sufficiency of the meet and confer process because, for the time being, the Court is limiting discovery related to PDOR2 to Versata's review of the PDOR2 source code. If Versata's review of that code reveals further reason to believe that PDOR2 is an accused product, then the Court will consider whether to allow Versata to conduct additional discovery regarding PDOR2.

### IV

The Court believes that allowing Versata to review the PDOR2 source code on the terms set forth above (while at the same time barring Versata from conducting any further discovery into PDOR2 without further permission) strikes an appropriate and reasonable balance between the parties' competing interests for the time being.

11

Accordingly, for the reasons stated above, Versata's objections to the R&R (ECF #305) are **SUSTAINED IN PART** as follows:

- Ford shall make the PDOR2 source code available for Versata's review;

- Versata shall be responsible for all reasonable costs associated with making the PDOR2 source code available for review; and

- Versata shall not conduct any additional discovery into PDOR2 unless and until this Court enters a written order permitting it to do so.

**IT SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: October 25, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 25, 2017, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764