UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY,

    Plaintiff,

v.

VERSATA SOFTWARE, INC., *et al.*

    Defendants.

Case No. 15-cv-10628-MFL-EAS
(*consolidated with Case No. 15-11624*)

Hon. Matthew F. Leitman

### REPORT AND RECOMMENDATION OF THE SPECIAL MASTER TO GRANT FORD'S MOTION TO STRIKE EXPERT REPLY REPORTS

This is a Report and Recommendation addressing the motion of Ford Motor Company ("Ford") to strike all or portions of certain expert reply reports submitted by Versata Software, Inc. ("Versata"). This matter is directed to me pursuant to the Court's Order Appointing Special Master for Resolving Discovery Disputes (Dkt. #230), and the subsequent Order related to this specific dispute (Dkt. #326).

Ford's motion raises two distinct issues. First, Ford asks that portions of two reply reports submitted by Versata expert Dr. Malek be stricken because they opine that Ford's PDO R2 software infringes Versata patents and trade secrets, but that such opinions are new in reply and are not sufficiently detailed. Second, Ford asks that a reply report of Versata expert Dr. Shamos be stricken because Dr. Shamos did not submit an opening report on the topics contained in his reply. These issues will be discussed separately below.

**Dr. Malek's Report and PDO R2**

The initial dispute relates to expert reports directed to software referred to as PDO R2. In 2014, Ford launched a rule-authoring computer application that it calls PDO. Ford developed

1

PDO as a replacement for an earlier rule-authoring application called ACM, which Ford alleges was developed jointly between the parties, and which Ford licensed from Versata. In this action, Versata alleges that Ford's PDO software infringes certain patents and incorporates trade secrets misappropriated from Versata. Ford denies these allegations and seeks a declaratory judgment that there has been no infringement or trade secret misappropriation. Ford has also developed additional computer applications which are collectively called PDO R2. For clarity the original PDO software is sometimes referred to as PDO R1.

There have been several discovery disputes between the parties concerning PDO R2 software, and the present dispute is a continuation of prior discovery disagreements. Principally, earlier disputes related to whether Versata had specifically accused PDO R2 in its infringement contentions, and whether Versata should be granted access to PDO R2 source code or other materials in light of the infringement contentions.

In a discovery motion on February 28, 2017, Versata contended that PDO R2 was an updated version or enhancement of PDO R1 and sought an order compelling Ford to produce all PDO R2 source code. Ford argued that PDO R2 comprised a suite of separate applications, not an updated or new version of PDO R1, and that PDO R2 was irrelevant and its source code should not be produced. Following a telephonic conference on March 17, 2017, on that same date my Preliminary Ruling required Ford to produce applicable manuals or similar documentation for PDO R2 sufficient to allow Versata to determine whether any further or revised infringement contentions should be made in order to thereby make PDO R2 relevant. Versata would be allowed to renew its request for access to the source code if its investigation led to an accusation of infringement that would place PDO R2 at issue.

On May 19, 2017, Versata submitted another motion directed to PDO R2 and asking for technical documents and access to the PDO R2 source code. Ford responded to that motion by again arguing that PDO R2 was not an updated version of PDO R1, but rather a suite of applications that provide different functionality. After further briefing and argument by the parties, on August 14 I submitted a report and recommended that the court deny Versata's request to compel the production of PDO R2 source code. This recommendation was based on the conclusions that PDO R2 was a separate suite of applications and not an upgraded version of PDO R1, and that Versata had not established relevance of the PDO R2 source code in the sort of "focused, particularized manner" that would make it relevant. At that time, none of Versata's infringement contentions directly accused the PDO R2 applications. Although Versata argued that the pleadings refer to PDO and that PDO should be understood to be a generic name for all versions of PDO, including PDO R2, Ford's declaratory judgment claim related to PDO was filed before PDO R2 had been created. Because PDO R2 did not exist at the time, it could not have been the express subject of the pleadings.

Versata objected to the above report and recommendation, and on October 25, 2017 the court issued an order sustaining in part Versata's objections. Specifically, the court concluded that Versata raised a sufficient question as to whether PDO R2 was an accused product to warrant at least some discovery into PDO R2, while at the same time observing that the link between PDO R2 and Versata's claims was not a strong one. Dkt. #320. Ford was ordered to make the PDO R2 source code available, but at Versata's expense. Versata was also precluded from conducting any additional discovery into PDO R2 without permission of the court. Apparently Versata's expert Dr. Malek first reviewed the PDO R2 source code on or about November 13, 2017.

In the meantime, before the above October 25, 2017 ruling of the court, Versata submitted its opening expert reports on issues of patent and trade secret infringement, as the party bearing the burden of proof on those issues. Ford argues (and Versata concedes) that Dr. Malek's opening reports on the issue of infringement do not address the PDO R2 software. Ford submitted rebuttal expert reports, and on November 17, 2017 (four days after initial access to the PDO R2 source code) Versata submitted reply reports from Dr. Malek which address PDO R2 for the first time.

In the present motion, Ford asks that the portion of Dr. Malek's reply reports directed to PDO R2 be stricken as untimely because the opinions directed to PDO R2 are new in reply. Ford also argues that the opinions should be stricken because they are lacking in detail and unsupported.

*Timeliness*. There can be no dispute that the PDO R2 opinions are untimely. The Federal Rules of Civil Procedure require disclosure of expert reports, including a complete statement of the expert's opinions and the bases and reasons for them. Fed. R. Civ. P. 26(a)(2)(B). With respect to timing, Federal Rule 26(a)(2)(D) requires the disclosure "at the time and in the sequence that the court orders." The court issued a scheduling order on January 6, 2016 setting forth the discovery schedule and including deadlines for expert reports. Dkt. #71. The expert report deadlines were amended thereafter, requiring opening reports on August 17, 2017. Dkt. #295. Versata's brief literally states that Dr. Malek's Opinion as to PDO R2 was timely (Dkt. #332, at p. 9), but Versata does not contend that the opinions were submitted in accordance with the scheduling order and does not explain how they can be considered timely. Instead, Versata argues only that the delay was justified or was Ford's fault. Plainly, the PDO R2 content of Dr. Malek's reports was submitted after the deadline set in the scheduling order and is untimely.

*Content*. A further concern is the content of Dr. Malek's report and whether it complies with the Rule 26 requirements regarding completeness and support. The Sixth Circuit has held that "[u]nder Rule 26(a), a 'report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover, the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.'" *R C. Olmstead, Inc. v. C.U. Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) (quoting *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n. 6 (7th Cir. 1998) (citing *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir.1995)). Fundamentally, an expert report must contain a complete statement of the expert's opinions and the bases and reasons for them. This requires factual support for any conclusions and not mere conclusory statements. In addition, the timeliness and content requirements are interrelated in that the practice of submitting a deficient initial report with a more detailed supplement may mean that the complete report is not submitted until the time of the supplement.

Dr. Malek's report is thin at best with respect to his trade secret opinions. It appears that Dr. Malek does not actually independently accuse PDO R2 of trade secret misappropriation, as he opines that "PDOR2 comprises four relatively minor modules in Ford's configuration software architecture. In fact, PDOR2 relies entirely on functionality provided by PDO along with product definition data that is also provided by PDO." Malek Trade Secret Reply, Dkt. #333, Ex.1 at ¶280. He further states that the PDO R2 applications have very little logic built into them and are principally interfaces to PDO. *Id*. at ¶282. Dr. Malek does state that PDO R2 incorporates certain Versata trade secrets, but the assertions are conclusory or admittedly speculative. In some cases, the assertions appear to be based on nothing more than the name given to a function in PDO R2, without analyzing the underlying implementation and explaining

5

the basis for the conclusion. For example, Dr. Malek opines that some applications "likely" employ the same functionality accused in PDO. *Id.* at ¶285. In another instance, he opines that PDO R2 "appears" to implement a trade secret. *Id.* at ¶286. Dr. Malek concludes by saying that he is "conducting a further review of the PDOR2 depot source code to confirm my analysis of PDOR2's misappropriation of Versata's trade secrets," that his opinions are based "on a very limited review of the PDOR2 depot source code" and that he is "in the process of conducting a detailed review of the code" and reserves the right to supplement. *Id.* at ¶¶293-94.

In sum, Dr. Malek's opinions are conclusory, uncertain, and lacking in detailed support. As such, they do not meet the requirements of Rule 26 and make it difficult or impossible for Ford to understand them and defend against them. It is unclear, for example, even at a basic level whether Dr. Malek asserts that any of the PDO R2 applications independently incorporate Versata trade secrets, or rather whether they are accused only because PDO R1 allegedly uses the trade secrets and the PDO R2 applications link to the PDO R1 applications. Perhaps this is the product of Versata's rush to submit Dr. Malek's trade secret opinions by the court's deadline for reply expert reports, and that at that time Dr. Malek had spent only a brief amount of time with the PDO R2 source code. Even if this is true (though it is uncertain), a party should not be allowed to rest on a defective expert report which is to be supplemented at some indefinite time later, and instead the better approach would be to seek permission of the court for relief from the deadline in order to submit a report in compliance with the rules. The report of Dr. Malek related to trade secret misappropriation in PDO R2 is deficient under the meaning of Rule 26 and appears to be crafted as a placeholder so that the details can be filled in later.

The cursory and generic nature of Dr. Malek's trade secret opinions is further confirmed by reviewing his opinion that PDO R2 infringes the asserted Versata patents, submitted in

6

paragraphs 70-75 of his reply report directed to patent infringement. Dkt. #33, Ex. 2, at ¶¶70-75. Dr. Malek's patent opinions are essentially a verbatim excerpt from his trade secret report without anything more of consequence. Paragraph 70 of the patent report is a brief introductory paragraph, which is identical to paragraph 278 of the trade secret reply report. Likewise, paragraphs 71-74 of the patent report are identical to paragraphs 279-282 of the trade secret report. None of this content is directed to patent or trade secret infringement specifically, and all of it is background. The patent report concludes with paragraph 75, which is identical to the closing paragraph 294 of the trade secret report.

Regarding the patent assertions specifically, Dr. Malek does not actually opine that any specific claim of any Versata patent is infringed by any aspect of PDO R2. There are no claim charts, and no references to claim language or claims by number. Although the reply report on patent infringement contains a heading which reads "Infringement of the Asserted Patents by PDOR2," the content under that heading does not opine that there is patent infringement and does not provide any basis for such an opinion. In fact, paragraphs 70-75 directed to PDO R2 do not even contain the word "patent" anywhere in them. Again, Dr. Malek's reply appears to be a placeholder that seeks to reserve the opportunity to advance opinions on patent infringement and to provide the details later. I conclude that Dr. Malek's replies directed to PDO R2 are both untimely and deficient in content.

*Substantial justification or harmlessness*. The late disclosure of Dr. Malek's report implicates Rule 37(c)(1), which provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The Sixth Circuit has interpreted this rule as requiring the

7

"automatic and mandatory [exclusion of non-disclosed evidence] unless non-disclosure was justified or harmless." *Dickenson v. Cardiax and Thoracic Surgery of Eastern Tenn.*, 388 F.3d 976, 983 (6th Cir.2004) (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir.2004)). The burden is on the potentially sanctioned party to prove harmlessness. *R C. Olmstead, Inc. v. C.U. Interface, LLC*, 606 F.3d 262, 271-72 (6th Cir. 2010). "District courts have broad discretion to exclude untimely disclosed expert-witness testimony." *Pride v. Bic Corp.*, 218 F.3d 566, 578 (6th Cir.2000) (citing *Trilogy Comm'ns v. Times Fiber Comm'ns*, 109 F.3d 739 (Fed.Cir.1997)).

Ford contends that the PDO R2 content in the reply brief is not substantially justified, and is prejudicial. Specifically, Ford argues that the assertion invokes different software that performs different functions and involves different witnesses. Ford further argues that it has no opportunity to address the new arguments such as in a further responsive expert report or in depositions, and that dispositive and evidentiary motions are a practical impossibility.

Versata responds that Ford has been aware of Versata's efforts to pursue an allegation against PDO R2 for over a year, and that the delay was caused by Ford's efforts to prevent such discovery. In this regard, Versata uses sharp language, asserting that Ford misrepresented the functionality of PDO R2, that it obstructed discovery, and is the dilatory party.

If Dr. Malek's reports currently satisfied the content requirements of Rule 26, the tardiness would be substantially justified and the prejudice at this time could likely be remedied by affording Ford the opportunity to serve a responsive expert report and to depose Dr. Malek on his new opinions. Versata has been aware of and investigating PDO R2 for a long time, and it should not be surprising to Ford that Versata might accuse PDO R2 of infringement, even if Ford disagrees on the merits. Indeed, the court's prior order granting Versata permission to access the

PDO R2 source code necessarily contemplated the possibility that Versata might accuse PDO R2 of infringement, and that the court might allow Versata to pursue such a claim. Thus, Versata's delay would be substantially justified by its pursuit of PDO R2 in the discovery motions described above, together with the prompt submission of reply reports within a few days after first reviewing the PDO R2 source code.

Dr. Malek's reports, however, do not satisfy the requirements under Rule 26 because they do not contain complete opinions and the bases for those opinion. Instead, they are hollow assertions so that the details can be filled in later. At this stage, Ford would be prejudiced in its ability to challenge the opinions and refute them. Ordinarily, the prejudice attendant to new opinions set forth in a reply can be remedied by allowing a deposition and a responsive expert report, but the deficiencies in Dr. Malek's replies are so severe that these would be ineffective in this case. Versata has not met its burden of proving that Ford would not be prejudiced by allowing Dr. Malek to opine that PDO R2 infringes Versata patents and trade secrets. Perhaps with more analysis of the PDO R2 source code Dr. Malek may (or may not) be able to offer a more detailed and therefore complete opinion as to infringement. That possibility is unclear and not presently before me, however, and at this stage Dr. Malek's replies do not satisfy Rule 26 and the submission would be prejudicial under Rule 37. Consequently, I recommend that the patent opinions of paragraphs 70-75 in Dr. Malek's reply report be stricken and that the trade secret opinions of paragraphs 278-294 in Dr. Malek's reply report be stricken.

### Dr. Shamos' Trade Secret Reply Report

The second issue is directed to a reply report submitted by Versata's expert Dr. Shamos. After Versata submitted an opening report from its expert Dr. Malek with respect to trade secrets, Ford submitted a responsive report. Versata then served two reply reports, including one

from Dr. Shamos and one from Dr. Malek. Ford seeks to have Dr. Shamos' report stricken because he did not serve an opening report and therefore should not be permitted a reply.

The parties cite to little authority on either side of this question, with Ford relying heavily on *Oracle Am., Inc. v. Google Inc.,* Case No. C 10-03561, 2011WL 5572835 (N.D. Cal. Nov. 15, 2011). In *Oracle*, the court explained that there is no apparent express rule prohibiting a reply report by a witness who did not submit an opening report, but that the system contemplates a narrowing of issues and that the case management report at issue could not be read to allow new experts disclosed in reply. The court further found that while Rule 26 does not expressly forbid a reply by a different expert, neither can anything in Rule 26 be read as supporting it. Versata urges that *Oracle* is distinguishable because of its unique case management provision calling for depositions of experts prior to the reply, but the court made it clear that the decision was rooted in other principles as well. Specifically, the court expressed concern with the ability to secretly prepare rebuttal experts whose work would not be subject to a direct response from an opposing expert, noting that this immunity would be unfair. *Id*. at *3. The court then said, in addition, that it would frustrate case management objectives. *Id*. There was no reason why the original expert was unqualified to address the issues in reply, or why the new expert was in a unique position to address them, and for these reasons the reply was stricken.

In another case, a reply by a different expert was allowed. *In re Cathode Ray Tube (CRT) Antitrust Litig*., 14-CV-2058-SC, 2015 WL 4451579 (N.D. Cal. July 20, 2015). The *CRT* court distinguished *Oracle* by observing that sometimes a party may not be able to anticipate all of the arguments that may be made in an opposition report, and therefore the party may need a different expert with the proper qualifications to be able to fully reply. That was not the case in *Oracle*, but was relevant in *CRT*.

10

The Federal Rules of Civil Procedure support the logic in *Oracle* and *CRT*, requiring parties to disclose the identity of expert witnesses in opening reports in accordance with the case schedule, but allowing rebuttal experts to be disclosed at a later time if their testimony is intended solely to contradict or rebut evidence on a subject identified by an initial expert witness. Fed. R. Civ. P. 26(a)(2)(D)(ii). This provision, however, is specifically directed to a newly disclosed opposition witness, not a newly disclosed reply witness as is the case here.

The content of the expert report at issue has been characterized as an important consideration in similar disputes, including whether it is directed to matters on which the party bears the burden of proof. If so, then Rule 26 fairly calls for disclosure of the witness (and the report) at the deadline of opening reports. *See California v. Kinder Morgan Energy Partners*, 159 F. Supp. 3d 1182, 1191-92 (S.D. Cal. 2016) ("Here, knowing that in its case-in-chief it would argue that the Mission Valley aquifer is viable as a source of supply and storage of groundwater, is therefore valuable, and entitles the City to millions in damages, the City's designation of Dr. Huntley as a mere rebuttal expert seems to be disingenuous, at best."). In *California*, the court excluded an expert opinion offered in rebuttal after the expert had not been disclosed through the submission of an opening report. The failure to make the original disclosure was not deemed substantially justified or harmless even though the opposing party was able to depose the expert and submit further rebuttal reports, because of the disruption of the schedule of the court and the parties. *Id.* at 1193.

Versata further relies on *Masimo Corp. v. Philips Elec. N.A. Corp.*, No. 09-cv-80-LPSMPT, 2016 WL 4394359, at *2 (D. Del. Aug. 15, 2016) as a case in which a rebuttal from an expert who did not submit an opening report was allowed. Though the opinion in *Masimo* is brief, it is clear that the rationale for allowing the report was consistent with the discussion in

*California*. Thus, the *Masimo* court explained that the rebuttal report at issue was directed to matters first raised in the opposing party's rebuttal expert reports, and which could not fairly have been anticipated at the time of the opening reports.

In a similar context, this court has stricken a supplemental report from an expert who did not write the original opening report. *Innovation Ventures, L.L.C. v. N.V.E., Inc*., No. 08-11867, 2014 U.S. Dist. LEXIS 141499, at *7 (E.D. Mich. Oct. 5, 2014). Although *Innovation Ventures* addressed the propriety of a supplemental report, rather than a reply or rebuttal report, it is nonetheless a report from a witness other than the one who wrote the original report. The rationale in *Innovation Ventures* is also analogous in that the purpose behind the supplemental disclosure is to supplement the opinions of the originally disclosed witness, not to provide opinions of a different witness.

Ford contends, and Versata does not dispute, that Versata bears the burden of proof on the matters addressed in the reply report of Dr. Shamos. As such, the topics are all required to be addressed in an opening report. Versata also offers no reason why Dr. Shamos was uniquely qualified to address the matters in his report, and does not contend that Dr. Malek was unqualified to address them. In fact, Versata offers no explanation of any sort, and instead rests its argument on the proposition that it is generally permissible to use a different expert in reply. Ford cites to the response of Versata's counsel that the reasoning was "above my pay grade," and Versata neither denies the response nor advances a justification. Instead, the decision to use Dr. Shamos in rebuttal appears to be a pure strategic choice and nothing more.

In addition, the reply reports of Dr. Shamos and Dr. Malek appear to be largely redundant. Ford urges that they are repetitive, and Versata contends that they are not the same, but neither side addresses the issue in detail. In part, this is presumably because the reports

themselves are lengthy and the analysis would be complex and voluminous. In comparing the two reports, there is plainly a great deal of overlap between them. In any event, Versata does not identify anything with particularity that is alleged to be uniquely in the report of Dr. Shamos, and does not argue that Dr. Malek would have been unable to address such matters.

Despite the lack of justification, Versata argues that there is no prejudice and that Ford has been able to depose Dr. Shamos. But Versata does not account for the prejudice caused by the disruption to the discovery schedule, the unfair surprise, the ability to offer a report on matters on which Versata bears the burden of proof in a rebuttal report, and Ford's inability to offer a responsive report directly to the opinions of Dr. Shamos. In addition, Dr. Shamos serves primarily as a witness who will bolster the opinions of Dr. Malek rather than to address the merits of the case. Given the proximity of trial and related deadlines, this prejudice cannot be cured. Accordingly, I recommend that the reply report of Dr. Shamos be stricken.

**Conclusion**

For the reasons in the report above, I recommend that Ford's motion be granted, and that the patent opinions of paragraphs 70-75 in Dr. Malek's reply report be stricken, the trade secret opinions of paragraphs 278-294 in Dr. Malek's reply report be stricken, and the reply report of Dr. Shamos be stricken.

DATED this 7th day of February, 2018.

_____
Lawrence D. Graham
Special Master
Lowe Graham Jones PLLC
701 Fifth Avenue, Suite 4800
Seattle, Washington 98104