UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| FORD MOTOR COMPANY, | CASE NO. 15-10628-MFL-EAS |
| Plaintiff/Counter-Defendant, | (Consolidated with Case No. 15-11624-MFL-EAS) |
| v. | Hon. Matthew F. Leitman |
| VERSATA SOFTWARE, INC., F/K/A TRILOGY SOFTWARE, INC., TRILOGY DEVELOPMENT GROUP, INC. AND TRILOGY, INC., | |
| Defendants/Counter-Plaintiffs. | |

_____

# Versata Defendants' Response to Ford's Motion to Exclude Dr. Sam Malek's Opinions Regarding Copyright Infringement

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Should the Court allow Dr. Malek to testify about his findings related Ford's use of Versata code when the code is subject to enforceable Versata copyrights and Ford admits that the code that the code at issue was taken from Versata's copyrighted software?

Versata answers: Yes.

# **CONTROLLING AUTHORITY**

*Doe v. Claiborne Cnty.*, 103 F.3d 495 (6th Cir. 1996)

*Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131 (5th Cir. 2004)

*Kohus v. Mariol*, 328 F.3d 848 (6th Cir. 2003)

*R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133 (10th Cir. 2009)

*Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739 (2d Cir. 1998)

TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................... 1
II. Factual Background ................................................................................. 3
1. Ford copied ACM jar files into the PDO development environment. ................. 3
2. Dr. Sam Malek is a highly qualified software expert. ........................................ 5
III. Legal Analysis ........................................................................................ 7
1. Versata can enforce its copyrights in the software versions used by Ford ......... 7
2. Dr. Malek's opinions properly relate to direct copying rather than substantial similarity. ................................................................................................................. 9
3. The "substantial similarity test" is a guide for the court, not a *Daubert* standard 10
4. Dr. Malek properly determined that the ACM jar files Ford copied were substantially similar to the ones Versata copyrighted. .......................................... 12
IV. Conclusion ............................................................................................ 13

## I. INTRODUCTION

Ford admits that it took Versata code, known as "jar" files, from ACM, MCA, and ACS, and placed them into its PDO development environment. However, although Ford admits that it took these files from Versata's copyrighted software, Ford now argues that the Court should strike Dr. Malek's copyright testimony because he does not do a sufficient analysis to show that these jar files from ACM, MCA, and ACS are "substantially similar" to jar files from ACM, MCA, and ACS. As the Sixth Circuit has said numerous times, there is no need to perform a substantial similarity analysis when there is evidence, as here, of direct copying. ***To be clear, Ford does not dispute that the jar files in its PDO environment came from ACM, MCA, and ACS.*** (Ex. 1, Myers TS Rebuttal at ¶¶ 706-710; Ex. 2 Decommission Doc).

It is well established that Versata's copyright registrations cover not only the versions named on the copyright registration, but also earlier versions of the same program. Because Ford was admittedly using files from these earlier programs, there is no need for further analysis. Regardless, Dr. Malek's analysis is reliable, thorough, and accurate. Dr. Malek determined that Ford directly copied ACM code files based his review of PDO source code, as well as interviews with Seth Krauss, a key ACM architect.[1] Dr. Malek also determined that the ACM version from which

---

[1] *See* Ex. 3, Malek Report at ¶¶ 69-70, 425-429.

1

Ford copied these files is substantially similar to the version Versata registered with the Copyright Office. Dr. Malek spent at least 124 hours reviewing source code in this case and amply documented his findings.[2] Thus, there is no basis to exclude his opinions.

Furthermore, despite reviewing the same source code and other evidence, Ford's own experts do not dispute Dr. Malek's conclusions on these two issues. If Ford wants to challenge Dr. Malek's testimony, the proper means is "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" not exclusion. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 515 (6th Cir. 1996) (quoting *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993)) .Incredibly, Ford seeks to exclude opinions by Dr. Malek that its own experts had ample opportunity to – but, in fact, did not – dispute. Ford's *Daubert* challenge to Dr. Malek is without merit and should be denied.

---

[2] Ex. 5, Malek Declaration at ¶4.

## II. Factual Background

### 1. Ford copied ACM jar files into the PDO development environment.

Versata has registered copyrights on three software programs: ACM, MCA, and ACS the ("Registered Works").[3] These certificates were filed within five years of first publication and are presumed valid under the U.S. Code.[4]

Dr. Malek has done approximately 124 hours of code review in connection with this litigation. When reviewing Ford's PDO source code, Dr. Malek found transactions showing that Ford had been loading jar files[5] from ACM, MCA, and ACS into its PDO development environment from 2012 through at least 2014, and maintained those jar files in its PDO environment until at least 2015.[6] Dr. Malek noted that these jar files, which are normally not human-readable, would become human readable in Ford's PDO Development environment.[7] Furthermore, placing these Versata files in the PDO Development environment would make the jar files accessible to all PDO developers.[8] Dr. Malek further noted evidence that Ford had

---

[3] Ex. 6, Certificates of Registration. The versions used for registration are ACM v.4.23.13.01, ACM v.1.0, MCA v.2.2.14.01, and ACS v.2.26_01.
[4] *Id.*; 17 U.S.C. § 410
[5] A jar file is a type of object code, or executable code, written in the Java programming language. *See* Dkt. 354 at 29 n.16.
[6] Ex. 3, Malek Report at ¶¶ 70, 428 (citing to Ford source code); Ex. 4, Malek Reply at ¶¶304-314.
[7] Ex. 3, Malek Report at ¶427.
[8] Ex. 3, Malek Report at ¶72

used these jar files for testing PDO.[9] These jar files were in Ford's PDO development environment until at least February 2015, after Ford's licenses to ACM, MCA, and ACS had expired.[10] Dr. Malek noted that at least 33 PDO developers had Versata jar files on their workstations at Ford based on Ford documentation.[11]

Because Ford had deleted these files prior to Dr. Malek's review, he could not do a side-by-side comparison, but noted in documentation and testimony that Ford acknowledged these jar files came from ACM, MCA, and ACS.[12] Dr. Malek did an analysis to determine that these .jar files likely came from ACM v. 4.23.13, MCA v.2.2, and ACS v.2.2.[13] Dr. Malek noted that based on his visual inspection, standard software versioning conventions, and interviews with ACM architect Seth Krauss, these versions of Versata software were substantially similar to the versions registered by Versata, and that the registered versions were derivative of Ford's versions.[14] Dr. Malek further reviewed the code deposited with the Copyright Office to confirm that the code came from the registered versions.[15]

---

[9] Ex. 3, Malek Report at ¶71.
[10] Ex. 3, Malek Report at ¶72 (citing to Ford source code); Ex. 4, Malek Reply at ¶304-312
[11] Ex. 3, Malek Report at ¶429, 432
[12] Ex. 3, Malek Report at ¶¶432, 433 ; Ex. 2, Decommission Doc.
[13] Ex. 3, Malek Report at ¶423-24,
[14] Ex. 3, Malek Report at ¶423, Ex. 4, Malek reply at ¶298.
[15] Ex. 7, Malek Deposition (day 1) at 143:6-159:15.

Additionally, Dr. Malek noted that the ACM, MCA, and ACS source code contain numerous notations of Versata ownership and handwritten comments, and further noted that the works were functionally and aesthetically different than any of which he was aware and concluded that these computer programs were original.[16]

In rebuttal, Ford's expert does not dispute that these files came from Versata's software. In fact, Ford admitted that Versata's jar files were used to perform "side by side comparisons" between ACM outputs and PDO outputs.[17] Instead of denying that it copied the Versata jar files, Ford argued that its use of the jar files was within the scope of its license (a position which Versata vigorously disputes). Nowhere in rebuttal did Ford challenge the validity of Versata's copyrights in the ACM, MCA, and ACS software.

### 2. Dr. Sam Malek is a highly qualified software expert.

Dr. Sam Malek is a professor of computer science at the University of California Irvine and is an expert in Java programming and configuration software.[18] Dr. Malek has testified as an expert in numerous software cases and has never been struck or limited due to his qualifications, analysis, or methodology.[19] Dr. Malek has opined on a number of trade secret, patent, and copyright issues in this case and

---

[16] Ex. 3, Malek Report at ¶425.
[17] Ex. 1, Myers Report ¶¶706-710
[18] Ex. 8, Malek CV. Exhibit A to Malek report.
[19] Ex. 5, Malek Declaration at ¶5

his reports total more than 600 pages in length. The only opinion of Dr. Malek that Ford challenges under Daubert is his copyright opinion.

In its Daubert motion, Ford does not dispute that the ACM jar files are original or that Ford employees copied those jar files. Instead, Ford faults Dr. Malek for failing to perform a wholly irrelevant analysis – namely, a "substantial similarity" analysis of whether the copied jar files are "substantially similar" to the originals. Although this analysis would be important if there were differences between the original and copied works (such as when an author paraphrases instead of directly copying passages from a book), it is irrelevant to cases of direct copying. Here, Dr. Malek has established – and Ford does not deny – that Ford directly copied ACM jar files into the PDO development environment.

Dr. Malek has also opined that the files Ford copied are from a version of ACM that is substantially similar to the one Versata registered with the Copyright Office. This involved a comparison of two closely-related versions of ACM – version 4.23.13.01 (the version Versata registered) and 4.23.13 (the one from which Ford copied). Dr. Malek performed this comparison based on his review of ACM source code and software industry protocols and Ford's experts – who reviewed the same source code – do not dispute his conclusions.

### III. Legal Analysis

As a threshold matter, Ford misstates the elements of copyright infringement. A claim for copyright infringement does not necessarily require a substantial similarity analysis as Ford contends. Rather, as the Sixth Circuit said in *Kohus v. Mariol* (the case cited by Ford), a copyright plaintiff "must establish that he or she owns the copyrighted creation, and that the defendant copied it." 328 F.3d 848, 853 (6th Cir. 2003).

Using the Sixth Circuit's recitation of the elements of copyright infringement, Dr. Malek's testimony will "assist the trier of fact to understand or determine a fact at issue" – namely, whether Ford copied ACM jar files into a PDO development environment. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). Ford does not dispute that Dr. Malek is eminently qualified based on his education, professional background, and experience to opine on these issues.

**1. Versata can enforce its copyrights in the software versions used by Ford**

Versata has registered copyrights in ACM 4.23.13.01, MCA 2.2.14.01, and ACS 2.26_01. It is well settled that Versata's copyright registration not only covers those versions of these programs, but the earlier works they derive from. *See, e.g.*, *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1143 (10th Cir. 2009) ("[I]f the same party owns a copyright in both a derivative work ... and the underlying work that is incorporated in the derivative work, registration of a copyright in the

derivative work is sufficient to permit an infringement action on [ ] the preexisting [ ] material."); *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998) ("the registration certificate relating to the derivative work in this circumstance will suffice to permit [plaintiff] to maintain an action for infringement based on defendants' infringement of the pre-existing work.") *see also Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.*, 264 F.3d 622, 631 (6th Cir.2001), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010) (acknowledging "cases that permit infringement suits to proceed on registered derivative works even though some of the underlying foundational works were not formally registered").[20]

Dr. Malek analyzed the timing of Ford's use of the .jar files and noted that the .jar files likely came from ACM 4.23.13, MCA 2.2, and ACS 2.2. He compared the code of the relevant versions, interviewed a key ACM architect, and noted that under standard software versioning conventions and his visual review of the different source code versions, the registered versions were derivative of the versions from which Ford extracted the jar files.[21] Because Versata is entitled through its registrations to enforce the copyrights of its preexisting software, Versata is not required to show that there was substantial similarity between the registered version

---

[20] At least five circuits have recognized this doctrine. *See Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 268-69 & n.28 (5th Cir. 2014) (citing cases).
[21] Ex. 3, Malek Report at ¶423-24; Ex. 4, Malek Reply at ¶ 298.

and the infringed version. Versata can enforce the copyrights from those infringed versions *directly*.

### 2. Dr. Malek's opinions properly relate to direct copying rather than substantial similarity.

There are two ways to prove copyright infringement. The plaintiff can either rely on evidence of direct copying or perform a substantial similarity analysis to show that the defendant's work is substantially similar to the copyrighted work. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004) ("If no direct evidence of copying is available, a claimant may establish this element by showing that the defendant had access to the copyrighted work and that the copyrighted work and the allegedly copied work are substantially similar.") (citing *Kohus*, 328 F.3d at 853-54 (6th Cir. 2003)); see also *see also Norse v. Henry Holt & Co.*, 991 F.2d 563, 566 (9th Cir. 1993) (noting "the substantial similarity analysis is inapposite to the copying issue because appellees admit that they in fact copied phrases from Norse's letters.").[22]

---

[22] Indeed, numerous cases cited by Ford acknowledge that a substantial similarity analysis is not required in cases of direct infringement. *See R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 274 (6th Cir. 2010) ("A plaintiff can show copying in two ways, either through direct evidence of copying, or by indirect evidence."), *R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp.2d 878, 893 (N.D. Ohio 2009) ("Where there is not sufficient direct evidence of copying, a plaintiff may indirectly establish copying by showing (1) access to the original work, and (2) substantial similarity between the original work and the allegedly infringing work."), *Auto Inspection Servs., Inc., v. Flint Auto Auction, Inc.*, 2006 WL 3500868,

9

Here, Versata is able to demonstrate that Ford directly copied jar files from ACM, MCA, and ACS. There is no need for Versata to undertake a substantial similarity analysis of files that Ford directly copied. Such an analysis would be entirely superfluous, given that the copied files are identical – not merely similar – to the originals. Dr. Malek properly establishes the identity of the original and copied files based on the fact that they have the same file names and based on Ford's admissions that it copied ACM jar files for the purpose of performing a "side by side comparison" between ACM and PDO.[23]

Furthermore, by its own admission, Ford deleted the actual jar files from the PDO development environment, making it impossible for Dr. Malek to open up individual code files and analyze their contents in detail.[24] Ford's objection that Dr. Malek should have performed an impossible and unnecessary "substantial similarity" analysis is unfounded

### 3. The "substantial similarity test" is a guide for the court, not a *Daubert* standard

Even if a substantial similarity test were applicable, the test is one for the Court rather than a standard by which to exclude experts. See *Kohus*, 328 F.3d at 855 (noting that the substantial similarity test is "a methodological tool courts can

---

at *5 (E.D. Mich. Dec. 4, 2006) ("the plaintiff can either present direct evidence that the defendant copied or circumstantial evidence.").
[23] Ex. 1, Myers TS Rebuttal at ¶¶707-710.
[24] Ex. 7, Malek Depo at 146:21-148:14

use . . ."); *id*. at 858 (holding that "the court's substantial similarity determination is invalid."); *see also R.C. Olmstead v. CU Interface, LLC*, 606 F.3d 262, 274 (6th Cir. 2010) ("In *Kohus*, this court applied a two-step approach for determining whether substantial similarity exists[.]"). Indeed, Ford fails to point to a ***single case*** in which an expert is excluded for failure to perform a substantial similarity analysis.

The Court can consider all evidence, not just the testimony of Dr. Malek, in determining whether Ford has infringed Versata's copyrights. Notably, Ford did not move for summary judgment on whether the jar files in its PDO system are substantially similar to Versata's jar files. They undisputedly are, because they are Versata's jar files. Instead, Ford asks the Court to prevent Versata's expert from being able to discuss to the jury about how he found the jar files, the significance of Versata's jar files being found in Ford's PDO development environment, and the significance of Ford's admitted testing using Versata's .jar files. This is precisely the type of testimony that should be subject to "rigorous cross-examination" rather than excluded. Whether Versata met its burden to prove infringement is not for the Court to decide in this *Daubert* challenge. Here, Ford *admits* it copied Versata's .jar files into its source code environment. Ford's only argument in defense has been that its use of Versata's .jar files fell within the scope of its license;[25] Ford has not disputed the validity of Versata's presumptively valid copyrights. *See Goldman v.*

---

[25] Ex. 1, Myers Report at ¶¶ 711-17.

*Healthcare Management Sys., Inc.*, 628 F. Supp. 2d 748, 754 (W.D. Mich 2008) ("The defendant, rather than the plaintiff, bears the burden of establishing, at trial, the application of the [merger and scenes á faire] doctrines."); *see also Dahlen v. Michigan Licensed Beverage Ass'n*, 132 F. Supp.2d 574, 582 n.7 (noting that "Defendant has not shown" that the merger doctrine is applicable).

### 4. Dr. Malek properly determined that the ACM jar files Ford copied were substantially similar to the ones Versata copyrighted.

This case is far different from *R.C. Olmstead*, where the expert only claimed unidentified "key elements" were copied.[26] Dr. Malek has identified numerous specific jar files that Ford placed in is PDO Development environment outside of the scope of its license.[27] Ford suggests that Dr. Malek was required to compare the .jar files to source code, but this is wrong as a matter of law. Although the copyright office requires source code for deposit, the registration extends copyright protection to source code and object code, as well as non-literal elements.[28]

---

[26] 657 F. Supp.2d at 893.
[27] *See* Ex. 3, Malek Report ¶¶432-433.
[28] *See, e.g.*, *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 142 (5th Cir. 2004) (noting that copyright protection "extends not only to the 'literal' elements of computer software—*the source code and object code*—but also to a program's nonliteral elements, including its structure, sequence, organization, user interface, screen displays, and menu structures."); *Consul Tec, Inc. v. Interface Sys., Inc.*, No. 90-V-70757-DT, 1991 WL 427891, at *1 (E.D. Mich. Oct. 31, 1991) ("copyright protection encompasses literal as well as non-literal aspects [of computer programs]").

12

Finally, the copyright-registered version of ACM is version 4.23.13.01, while the version of ACM from which Ford copied jar files was version 4.23.13. As the version numbers indicate, these versions of the software are closely related. Dr. Malek personally reviewed the source code and determined that the two versions are nearly identity copied jar files are substantially similar – and indeed, virtually identical – to the ones in the registered work. Dr. Malek spent at least 124 hours on source code review in this case, demonstrating the thoroughness and care of his analysis.

Furthermore, Ford's experts have had access to and reviewed exactly the same source code. Yet Ford's experts do not dispute the fact that the ACM jar files Ford copied are substantially identical to the ones found in the registered works. Once again, Ford seeks to exclude an opinion that its own experts do not challenge.

## IV. Conclusion

Ford seeks to strike Versata's expert of copyright on the premise that Versata's jar files are not necessarily "substantially similar" to themselves, but this is for the Court, not Dr. Malek, to ultimately determine after hearing all of the facts. Dr. Malek's testimony will undoubtedly help the Court in making this determination. For the foregoing reasons, the Court should deny Ford's Motion to Exclude Dr. Malek's Opinions Regarding Copyright Infringement.

Date: March 08, 2018                    Respectfully submitted,

*/s/ Steven J. Mitby*
**AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.**
Steven J. Mitby
Texas State Bar No. 24037123
smitby@azalaw.com
Iftikhar Ahmed
Texas State Bar No. 24064795
iftiahmed@azalaw.com
Reed N. Smith
Texas State Bar No. 24067875
rsmith@azalaw.com
Kyril Talanov
Texas State Bar No. 24075139
ktalanov@azalaw.com
Matthew Caldwell
Michigan State Bar No. P79462
mcaldwell@azalaw.com
1221 McKinney, Suite 2500
Houston, Texas 77010
(713) 655-1101 (Phone)
(713) 655-0062 (Fax)

Rodger D. Young
Jaye Quadrozzi
**YOUNG & ASSOCIATES**
27725 Stansbury Blvd., Suite 125
Farmington Hills, MI 48334
248.353.8620
efiling@youngpc.com
P22652

**ATTORNEYS FOR DEFENDANTS VERSATA SOFTWARE, INC., F/K/A TRILOGY DEVELOPMENT GROUP, INC., AND TRILOGY, INC.**

14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| FORD MOTOR COMPANY, | CASE NO. 15-10628-MFL-EAS |
| Plaintiff/Counter-Defendant, | (Consolidated with Case No. 15-11624-MFL-EAS) |
| v. | Hon. Matthew F. Leitman |
| VERSATA SOFTWARE, INC., F/K/A TRILOGY SOFTWARE, INC., TRILOGY DEVELOPMENT GROUP, INC. AND TRILOGY, INC., | |
| Defendants/Counter-Plaintiffs. | |

## **PROOF OF SERVICE**

Steven J. Mitby certifies that on March 8, 2018, he served the Versata's Response to Ford's Motion to Strike Reply Report of Dr. Malek and this Proof of Service upon all counsel of record via electronic filing.

I declare under the penalty of perjury that the statements made above are true to the best of my knowledge, information, and belief.

*/s/ Steven J. Mitby*

**AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.**
Steven J. Mitby
1221 McKinney, Suite 2500
Houston, Texas 77010
(713) 655-1101 (Phone)

15