UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY,

    Plaintiff,

v.

VERSATA SOFTWARE, INC. *et al.*

    Defendants.
_____/

Case No. 15-cv-10628
(*consolidated with Case No. 15-11624*)
Hon. Matthew F. Leitman

**<u>ORDER (1) DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF ## 354, 358), (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF ## 379, 380), AND (3) GRANTING DEFENDANTS' REQUEST TO FILE SUPPLEMENTAL EXPERT REPORTS</u>**

Defendant/Counter-Plaintiffs Versata Software, Inc., Versata Development Group, Inc., and Trilogy, Inc. (collectively, "Versata") are computer software developers based in Austin, Texas. (*See* Sec. Am. Counterclaims at ¶6, ECF #244 at Pg. ID 12997.) For more than two decades, Versata licensed automotive configuration software programs called "ACM," "MCA," and "ACS" (collectively, the "Versata Software") to Plaintiff Ford Motor Company. (*See id.* at ¶8, Pg. ID 12997.) In 2014, Ford decided to replace the Versata Software with an automotive configuration software program that it developed internally. (*See* Sec. Am. Compl. at ¶46, ECF #226 at Pg. ID 11723.) Ford called this software "PDO." (*See id.*)

1

In this action, Ford seeks a declaratory judgment that PDO does not infringe and/or misappropriate patents, copyrights, and trade secrets belonging to Versata. (*See generally*, *id.*) Ford also claims Versata breached certain licensing agreements and contracts that the parties had executed, including a "Master Subscription and Services Agreement" executed in 2004 (the "MSSA"). (*See id.*) Versata has filed counterclaims for infringement of the same patents and copyrights, misappropriation of the same trade secrets, and breaches of the same contracts. (*See* Ans. and Sec. Am. Counterclaims, ECF #244.)

On February 1, 2018, and February 13, 2018, Ford and Versata filed cross-motions for summary judgment with respect to many of these claims and counterclaims. (*See* Ford Mot., ECF ## 354, 358; Versata Mot., ECF ## 379, 380.) On July 10, 2018, the Court entered an order referring the patent portions of the summary judgment motions to Special Master Lawrence Graham. (*See* ECF #509.) The Court then held a hearing on the non-patent portions of the cross-motions on July 24, 2018. (*See* ECF #497.) During that hearing, the Court ruled on some portions of the cross-motions, and it took other aspects of the motions under advisement. (*See* ECF #516.) The Court now issues this order resolving the remaining non-patent portions of the summary judgment motions.

# I

**(Ford's Motion for Summary Judgment on Counts 4 and 6 of its Second Amended Complaint and Counts 9 and 13 of Versata's Counterclaims – Dispute Regarding Who Owns the Relevant Trade Secrets)**

In Count 4 of Ford's Second Amended Complaint, Ford seeks a declaratory judgment that it "owns, or is licensed to reproduce" the ACM software. (*See* Sec. Am. Compl. at ¶¶ 73-78, ECF #226 at Pg. ID 11728-29.) In Count 6 of Ford's Second Amended Complaint, Ford seeks a declaratory judgment that it did not misappropriate, and indeed could not have misappropriated, the trade secrets embedded in the Versata Software because, among other things, it "either owns, or has a royalty-free license to reproduce the [Versata] [S]oftware." (*Id.* at ¶89, Pg. ID 11731.)

Versata raises the same ownership issues in Counts 9 and 13 of its counterclaims. In those counterclaims, Versata says that it "developed and owns" the trade secrets embedded in the Versata Software and that Ford "misused, misappropriated, and disclosed" those trade secrets. (Sec. Am. Counterclaims at ¶¶ 136-139, 160-166, ECF #244 at Pg. ID 13029-30, 13034-36.)

Ford moved for summary judgment on the claims and counterclaims identified above on the ground that it "owns" the trade secrets embedded within the

Versata Software.[1] (Ford Mot., ECF #354 at Pg. ID 18659.) The Court concludes that Ford is not entitled to summary judgment on that ground. When Ford agreed to the MSSA in 2004, it "irrevocably acknowledge[d] … that [it] ha[d] no ownership interest in the Software…." (MSSA at § 6.1, ECF #366-16 at Pg. ID 20774. *See also* MSSA at § 7.6, Pg. ID 20774: "Subject to the licenses granted herein, Ford has no ownership interest in the Software…."). And as defined in the MSSA, the "Software" that Ford disclaimed an ownership interest in included the Versata Software.[2] Based on this unambiguous acknowledgment, Ford cannot now claim an ownership interest in the trade secrets embedded in the Versata Software.

Ford counters that the trade secrets embedded within the Versata Software are distinct from the Versata Software itself. Ford therefore insists that even if it disclaimed ownership of the Versata Software, it still may claim an ownership

---

[1] Ford also argued that it is entitled to summary judgment on Count 6 of its Second Amended Complaint and Counts 9 and 13 of Versata's Second Amended Counterclaims because Versata did not take reasonable measures to maintain the secrecy of the trade secrets at issue. (*See* Ford Mot., ECF #354 at Pg. ID 18643-58.) The Court denied this portion of Ford's motion on the record at the summary judgment hearing. (*See* ECF #516 at Pg. ID 40420-21.)

[2] The MSSA defined "Software" as, among other things, "the Applications listed in any Subscription Schedule issued hereunder." (MSSA, ECF #366-16 at Pg. ID 20770.) Subsequent Subscription Schedules listed "Automotive Configuration Services (ACS) v.2.1," "Material Cost Analytics (MCA) v.05," and "the Trilogy ACM Software" as "Applications." (*See* ECF #372-2 at Pg. ID 22562; ECF #372-3 at Pg. ID 22572.) Therefore, the Versata Software qualifies as "Software" under the MSSA.

interest in the relevant trade secrets. The Court simply is not persuaded that, for ownership purposes, the trade secrets are distinct from the software that Ford "irrevocably acknowledge[d]" it did not own.

Accordingly, because Ford "irrevocably acknowledge[d]" in the MSSA that it did not own the Versata Software, the Court **DENIES** Ford's motion for summary judgment with respect to Counts 4 and 6 of its Second Amended Complaint and Counts 9 and 13 of Versata's Second Amended Counterclaims.

## II

**(Versata's Motion for Summary Judgment on Counts 4 and 5 of Ford's Second Amended Complaint – Dispute Regarding Who Owns the Relevant Trade Secrets)**

As noted above, in Count 4 of Ford's Second Amended Complaint, Ford seeks a declaratory judgment that it owns the ACM software. (*See* Sec. Am. Compl. at ¶¶ 73-78, ECF #226 at Pg. ID 11728-29.) And in Count 5 of Ford's Second Amended Complaint, Ford seeks a declaratory judgment that it owns other "software deliverables" that Versata produced and delivered to Ford (*i.e.*, the Versata Software). (*Id.* at ¶¶ 79-83, Pg. ID 11729-30.)

Versata sought summary judgment on these two counts of Ford's Second Amended Complaint on the basis that it (Versata), not Ford, owns the Versata Software and the trade secrets embedded within that software. (*See* Versata Mot., ECF #379 at Pg. ID 22787-89.) The Court agrees. For all of the reasons stated in

5

Section I above, Versata owns the Versata Software under the MSSA. Indeed, Ford "irrevocably acknowledge[d]" in the MSSA that it did not own the Versata Software. (MSSA at § 6.1, ECF #366-16 at Pg. ID 20774.)

Thus, because Versata owns the Versata Software and the trade secrets embedded within that software under the MSSA, the Court **GRANTS** Versata summary judgment on Counts 4 and 5 of Ford's Second Amended Complaint.[3]

### III

**(Versata's Motion for Summary Judgment of Count 11 of its Second Amended Counterclaims – Versata's Allegations that Ford Breached the MSSA By "Reverse Engineering" the Versata Software)**

In Count 11 of Versata's Second Amended Counterclaims, Versata alleges, among other things, that Ford breached Section 1.7 of the MSSA when Ford developed PDO. (*See* Sec. Am. Counterclaims at ¶¶ 148-156, ECF #244 at Pg. ID 13032-33.) Section 1.7 prohibits Ford from "reverse engineering" the Versata Software. (*See id.* at ¶155, Pg. ID 13033.) That section defines "reverse engineering" in relevant part as follows:

---

[3] The Court notes for clarity that in Counts 4 and 5 of Ford's Second Amended Complaint, Ford seeks only a declaration that it owns the Versata Software. Versata has not moved for summary judgment on its affirmative claim that Ford misappropriated Versata's trade secrets, and the Court makes no such holding today. The Court holds only that Versata, not Ford, owns the Versata Software – and the trade secrets embedded within that software – under the MSSA and that Versata is therefore entitled to summary judgment on Counts 4 and 5 of Ford's Second Amended Complaint. Whether Ford misappropriated Versata's trade secrets is an issue to be decided at trial.

6

> Disassembling, Decompiling, and reverse engineering include[s], without limitation, "(i) converting the Software from a machine-readable form into a human-readable form;" [….] (iii) examining the machine-readable object code that controls the Software's operation and creating the original source code or any approximation thereof by, for example, studying the Software's behavior in response to a variety of inputs;" [and] (iv) performing any other activity related to the Software that could be construed to be reverse engineering, disassembling, or decompiling.

(MSSA at § 1.7, ECF #366-16 at Pg. ID 20771.)

In Versata's summary judgment motion, it argues that Ford "reverse engineered" the Versata Software in violation of Section 1.7 when Ford inputted identical data into both ACM and PDO and then "studied" the "outputs" from Versata's software "for the purpose of ensuring that [PDO] produced identical outputs." (Versata Mot., ECF #379 at Pg. ID 22790.)

The Court declines to grant Versata summary judgment on the basis that Ford breached Section 1.7 by "reverse engineering" the Versata Software. For the reasons stated on the record in the Court's questions to the parties on this issue at the summary judgment hearing, the "reverse engineering" clause in Section 1.7 is ambiguous and not subject to interpretation as a matter of law. (*See* 7/24/2018 Hearing Tr., ECF #519 at Pg. ID 40587-95.) In particular, it is not clear whether Section 1.7 prohibits any and all "studying [of] the Software's behavior in response to a variety of inputs," or whether Section 1.7 prohibits only such studying that is part of an effort to "examin[e] the machine-readable object code that controls the

7

Software's operation and create[e] the original source code or any approximation thereof…." This ambiguity precludes summary judgment because, on this record, a jury could reasonably find that even if Ford studied the Versata Software's output in response to certain inputs, it did not do so as part of an effort to examine the Versata Software's machine-readable object code and/or to create the original source code or an approximation thereof.

Therefore, the Court **DENIES** Versata summary judgment on its claim in Count 11 of its Second Amended Counterclaims that Ford breached Section 1.7 by "reverse engineering" the Versata Software.

## IV

**(Versata's Motion for Summary Judgment of Count 14 of its Second Amended Counterclaims – Versata's Allegation That Ford Infringed Versata's Copyrights)**

In Count 14 of Versata's Second Amended Counterclaims, Versata alleges that Ford infringed Versata's "exclusive copyrights" in the Versata Software in a variety of ways. (Sec. Am. Counterclaims at ¶¶ 172-73, ECF #244 at Pg. ID 13036-37.) In Versata's summary judgment motion, it moved for summary judgment on its copyright infringement claim in two respects. The Court concludes that Versata is not entitled to summary judgment in either respect.

First, Versata argued in its summary judgment motion that Ford infringed its (Versata's) copyrights when Ford used the Versata Software in a manner that

8

exceeded Ford's license under the MSSA. (*See* Versata Mot., ECF #379 at Pg. ID 22797.) For example, Versata asserted that Ford copied Versata's copyrighted ".jar" files into Ford's "PDO repository" for the purpose of "reverse engineering" the Versata Software. (*Id.*) Versata insisted that because Section 1.7 of the MSSA prohibited "reverse engineering," Ford's copying and use of Versata's copyrighted files in this manner was unlicensed, and thus constituted copyright infringement. (*See id.*) However, for all of the reasons stated in Section III above, a jury could reasonably find that Ford did not conduct "reverse engineering" in violation of Section 1.7. Therefore, the Court cannot conclude as a matter of law that Ford's actions exceeded the scope of its software license under the MSSA and constituted infringement of Versata's copyrights.

Second, Versata argued in its summary judgment motion that its copyrighted ".jar" files "existed in Ford's PDO environment after [Ford's] license to the ACM software expired." (*Id.* at Pg. ID 22798.) Versata insisted that this unlicensed use of the Versata Software also infringed its copyrights. But Ford has presented evidence that, if credited by a jury, could establish that it did not have any of Versata's copyrighted files in its possession after Ford's license to use the files terminated. (*See* ECF #464-10.)[4] Therefore, there is a material factual dispute with respect to

---

[4] This exhibit consists of screenshots from Ford's PDO software repository which show, according to Ford, that Versata's copyrighted ".jar" files were "missing" and

9

whether Ford possessed any of Versata's copyrighted software files after its software license expired.

For all of these reasons, the Court **DENIES** Versata's motion for summary judgment on its claim in Count 14 of its Second Amended Counterclaims that Ford infringed Versata's copyrights.

V

**(Ford's Motion for Summary Judgment of Count 1 of Ford's Complaint in Case No. 15-cv-11264 and Count 14 of Versata's Second Amended Counterclaims – Versata's Allegation That Ford Infringed Versata's Copyrights)**

In Count 1 of Ford's Complaint in Case No. 15-cv-11264, Ford seeks a declaratory judgment that its PDO software "does not infringe any rights [Versata] claim[s] under the Copyright Act or otherwise violate other applicable federal or state laws."[5] (Compl. at ¶65, Case No. 15-cv-11264, ECF #1 at Pg. ID 14.) As described above, in Count 14 of Versata's Second Amended Counterclaims, Versata alleges that Ford infringed Versata's copyrights in the Versata Software. (Sec. Am. Counterclaims at ¶¶ 172-73, ECF #244 at Pg. ID 13036-37.) In Ford's summary

---

did not exist in the repository after Ford's license to use the Versata Software expired.

[5] On July 14, 2015, the Court entered a stipulated order consolidating this action (Case No. 15-cv-10628) with the action Ford filed in Case No. 15-cv-11624. (*See* ECF #28.) The parties have made all subsequent filings in this action. Unless otherwise indicated, all citations and ECF references in this order correspond to the docket numbers in this action (Case No. 15-cv-10628).

judgment motion, it moved for summary judgment on these claims on two grounds. The Court concludes that Ford is not entitled to summary judgment on either ground.

First, Ford argued that it only used the Versata Software in accordance with its license, and it did not "reverse engineer" the Versata Software in violation of Section 1.7 of the MSSA. (*See* Ford Mot., ECF #354 at Pg. ID 18664-65.) Ford therefore insisted that its use of the Versata Software could not have infringed Versata's copyrights. (*See id.*) However, as described above, the "reverse engineering" language in Section 1.7 is ambiguous and is not susceptible to interpretation as a matter of law. A jury could reasonably conclude that Ford's study of the outputs of the Versata Software *did* violate Section 1.7 and did exceed the scope of Ford's license under the MSSA. Thus, Ford is not entitled to summary judgment on Versata's copyright infringement claim on the ground that Ford's use of the Versata Software fell entirely within the scope of Ford's license (and permitted uses) under the MSSA.

Second, Ford argued that it did not infringe Versata's copyrights by using or possessing Versata's copyrighted software files after Ford's right to use or possess those files expired. (*See id.* at Pg. ID 18664.) But there is a material factual dispute with respect to whether Ford had Versata's copyrighted software files in the PDO environment after the term of Ford's license to use those files ended. Indeed, Versata has identified evidence that, if credited by a jury, could establish that Ford did have

11

Versata's copyrighted files in its possession after Ford's license to use the files terminated. (*See* Supplemental Declaration of Seth Krauss at ¶¶ 2-8, ECF #201 at Pg. ID 9631-34.) Ford is therefore not entitled to judgment as a matter of law on the basis that it did not use or possess Versata's copyrighted software files after the term of its license expired.

Accordingly, the Court **DENIES** Ford summary judgment with respect to Count 1 of its Complaint in Case No. 15-cv-11264 and Count 14 of Versata's Second Amended Counterclaims.

## VI

**(Versata's Motion for Summary Judgment of Count 8 of Ford's Second Amended Complaint – Ford's Allegation that Versata Breached the MSSA by Improperly Terminating the Agreement)**

In Count 8 of Ford's Second Amended Complaint, Ford alleges that Versata improperly terminated the MSSA and "prohibited Ford from exercising its option to continue use of [the Versata] [S]oftware through December 31, 2015." (Sec. Am. Compl. at ¶106, ECF #226 at Pg. ID 11734.) In Versata's summary judgment motion, it argued that it is entitled to summary judgment on this claim for two reasons. The Court concludes that neither ground supports judgment as a matter of law in Versata's favor.

First, Versata argued that it did not breach the MSSA when it terminated that agreement. According to Versata, the termination provision of the MSSA allowed

it to terminate the agreement "by providing written notice sixty days prior" to what the MSSA defined as the "Annual Renewal Period." (Versata Mot., ECF #379 at Pg. ID 22785.) Versata said that the last relevant "Annual Renewal Period" began on January 15, 2014, and ended on January 14, 2015. (*See id.* at 22785-86.) Versata therefore insisted that it fully complied with the MSSA's termination provision when it provided Ford termination notices on October 7, 2014, and November 13, 2014, and then terminated Ford's access to the Versata Software on January 15, 2014.

However, as the Court indicated in its questions to the parties on the record during the motion hearing, an addendum to the MSSA creates an ambiguity concerning when Versata could start the termination process. (*See* 7/24/18 Hearing Tr., ECF #519 at Pg. ID 40601-08.) A jury could reasonably conclude that under the addendum, Versata was not permitted to start the termination process by sending notices of termination until January 15, 2015. Thus, a jury could reasonably conclude that Versata breached the MSSA when it sent termination notices to Ford in October and November of 2014. Moreover, there are material factual disputes concerning when the last Annual Renewal Period started and ended. For these reasons, the Court cannot conclude as a matter of law that Versata properly terminated the MSSA.

Second, Versata argued in its summary judgment motion that even if it breached the termination provision of the MSSA, Ford did not suffer any damages

13

from that breach. (*See* Versata Mot., ECF #379 at Pg. ID 22784-22787.) But Ford has presented evidence from which a jury could reasonably conclude that it did suffer damages from Versata's termination of the MSSA. For example, Ford's manager of software development, Mike Sullivan, said in a sworn declaration that Versata's improper termination of the MSSA caused "Ford [to] incur[] more than $50,000 in unexpected overtime costs due to the accelerated deployment of [PDO] and decommissioning of [the Versata Software]." (Sullivan Declaration at ¶6, ECF #427-18 at Pg. ID 28931.) In addition, even if Ford did not suffer actual damages from Versata's improper termination, it still is entitled to seek "nominal damages" for breach of contract under Michigan law. *See McElwee v. Wharton*, 7 F. App'x 437, 438 (6th Cir. 2001) (affirming award of $1 in nominal damages in breach of contract action under Michigan law). For all of these reasons, Versata is not entitled to summary judgment on the basis Ford did not suffer damages from Versata's alleged breach of the MSSA.

Accordingly, the Court **DENIES** Versata's motion for summary judgment with respect to Count 8 of Ford's Second Amended Complaint.

## VII

### (Versata's Request to Serve Supplemental Expert Reports)

On July 9, 2018, the Court issued an Opinion and Order on several motions that the parties had filed to exclude expert witnesses. (*See* ECF #507.) Among other

14

things, the Court granted Ford's motions to exclude the testimony of Versata damages experts Christopher Bokhart and Craig Elson as to the damages that Versata allegedly suffered as a result of Ford's implementation of the PDO software. (*See id.*) The Court concluded that Bokhart's damages model was flawed because, among other things, he did not "apportion" damages between the patented and unpatented features of the Versata Software. (*Id.* at Pg. ID 40210-14.) And the Court held that Elson's damages model was insufficient because he did not use a "reasonable royalty" model and did not take into consideration the parties' licensing history when he calculated Versata's claimed damages. (*Id.* at Pg. ID 40219-26.) The Court also determined that Elson did not properly apportion Versata's alleged damages. (*See id.* at Pg. ID 40227-34.)

On July 16, 2018, Versata requested that the Court "give Versata an opportunity to revise its damages model in light of the Court's July 9, 2018," Opinion and Order. (ECF #514 at Pg. ID 40348.) Specifically, Versata asked for leave to "supplement the reports of [] Bokhart and [] Elson to provide reasonably royalty calculations for patent damages and trade secrets damages based on the parties' past business relationship, as well as [to] address the Court's guidance regarding apportionment [of damages]." (*Id.* at Pg. ID 40352.) Ford opposed Versata's request. (*See* ECF #513.)

15

Ford and Versata have each acknowledged that whether to allow a party to serve supplemental expert reports to address defects identified in a *Daubert* ruling is left to a court's discretion. (*See* ECF #513 at Pg. ID 40344; ECF #514 at Pg. ID 40350.) District courts have exercised that discretion to allow a party to supplement expert reports after an expert is excluded in a *Daubert* ruling. *See*, *e.g.*, *Digital Reg of Texas, LLC v. Adobe Systems, Inc.*, 2014 WL 4090550, at *4 (N.D. Cal. Aug. 19, 2014) (excluding expert report but allowing expert "to submit a revised damages report curing [] the problems identified in [the court's] order"); *Golden Bridge Technology v. Apple, Inc.*, 2014 WL 2194501, at *14 (N.D. Cal. May 18, 2014) (refusing to admit expert opinions "in their current form" but allowing expert "another shot" to "tender a new damages report in accordance with the [court's] guidance"); *Prism Technologies, LLC v. Sprint Spectrum L.P.*, 2015 WL 350503, at ** 2-3 (D. Neb. Jan. 23, 2015) (granting motion to supplement expert reports following entry of order resolving *Daubert* motions).[6]

---

[6] Ford relies on two cases from the United States Court of Appeals for the Sixth Circuit for the proposition that the Court should not grant Versata leave to supplement its expert reports: *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 250 (6th Cir. 2001), and *Pride v. BIC Corp.*, 218 F.3d 566, 579 (6th Cir. 2000). In both *Nelson* and *Pride*, the Sixth Circuit recognized that district courts have discretion to allow a party to supplement an expert report and held that the trial courts did not abuse that discretion where the trial courts denied leave to supplement. But those holdings do not prohibit a district court from exercising its discretion to allow a party to file supplemental reports.

16

The Court concludes that allowing Versata to serve supplemental expert reports, under the strict conditions described in this order, is appropriate for two reasons. First, allowing Versata to supplement its expert reports will not cause a material disruption in the schedule in this action. There is no currently-scheduled trial date, and there is a substantial amount of work left to be done before this case could conceivably go to trial. That additional pre-trial work includes, at a minimum: (1) the Special Master must issue a Report and Recommendation on the patent portions of the summary judgment motions, (2) the Court must review that recommendation and rule on any objections the parties may raise to it, (3) the parties must fully brief, and the Court must rule on, Ford's recently-filed summary judgment motion with respect to Versata's claims that Ford infringed Versata's copyrights (*see* ECF ## 526, 532), (4) the parties must complete discovery with respect to Ford computer software commonly referred to as "PDOR2" and resolve any potential disputes related to that discovery, (5) the parties must file *Daubert* and summary judgment motions with respect to the issues related to PDOR2, and (6) the Court must rule on those motions. In short, the Court does not believe that the schedule will be significantly affected if Versata is allowed to serve supplemental expert reports.

Second, precluding Versata from supplementing its expert reports and presenting its proposed expert testimony would create a risk of jury confusion. At

17

trial, Versata will be seeking trade secret and patent infringement damages based upon Ford's use and development of *both* the PDO software and the PDOR2 software. Versata's damages experts completed their analysis and reports concerning damages related to PDOR2 after the Court issued its ruling on their PDO damages reports, and thus the experts presumably modified their PDOR2 reports and analysis to conform to the Court's requirements. Thus, as things currently stand, even though the jury will be asked to award damages related to PDO and PDOR2, Versata will only be permitted to present expert testimony as to how to determine those damages with respect to PDOR2 alone. The Court is concerned that this dichotomy may confuse the jury and that the jury would be left to speculate as to how to reconcile the lack of expert testimony on PDO damages with the presence of such testimony on PDOR2 damages. The Court believes that permitting Versata to present expert damages testimony with respect to claimed damages from both PDO and PDOR2 will enhance the reliability of the jury's analysis and conclusions.[7]

The Court recognizes that there are important policy considerations that weigh against allowing Versata to supplement its expert reports. The parties spent

---

[7] The Court does not mean to suggest that it has already decided to admit Versata's expert damages testimony on PDOR2 or that the Court will necessarily admit the revised analysis of Bokhart and Elson concerning PDO damages. If Ford challenges the admissibility of such testimony, the Court will evaluate the admissibility of the testimony at that time. At this time, the Court is simply ruling that Versata should have the opportunity to present supplemental reports from its experts.

18

substantial time and money preparing the first round of expert reports and *Daubert* motions, and the Court is loath to allow a party to submit an expert report, have the Court explain why that expert report is insufficient, and then get a "second bite of the apple." But under the circumstances of this action, and given the posture of these proceedings, the Court concludes that allowing Versata to serve supplemental expert reports is appropriate. However, the Court will place strict conditions on these reports. Versata must serve the supplemental reports on Ford within 30 days of this order, and Versata must make Bokhart and Elson available for deposition within 30 days after serving their supplemental expert reports. Ford will not be required to serve rebuttal reports in response to the supplemental reports, nor will Ford be required to make its own damages experts available for another deposition with respect to the issues addressed in the supplemental reports.

## VIII

For all of the reasons stated above, and the reasons stated at the hearing on the parties' cross-motions for summary judgment, **IT IS HEREBY ORDERED** that:

- Ford's motion for summary judgment (ECF ## 354, 358) is **DENIED** with respect to Counts 4 and 6 of its Second Amended Complaint (ECF #226), Count #1 of its Complaint in Case No. 15-cv-11264, and Counts 9, 13, and 14 of Versata's Second Amended Counterclaims (ECF #244);

19

- Versata's motion for summary judgment (ECF ## 379, 380) is **GRANTED** with respect to Counts 4 and 5 of Ford's Second Amended Complaint and **DENIED** with respect to Count 8 of Ford's Second Amended Complaint and Counts 11 and 14 of its Second Amended Counterclaims; and

- Versata's experts Christopher Bokhart and Craig Elson may file supplemental expert reports under the conditions described in this order.

Dated: September 7, 2018

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 7, 2018, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764