UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY,

    Plaintiff,

v.

VERSATA SOFTWARE, INC., *et al*,

    Defendants.
_____/

Case No. 15-cv-10628
(*consolidated with Case No. 15-11624*)
Hon. Matthew F. Leitman

**OPINION AND ORDER GRANTING PLAINTIFF FORD MOTOR COMPANY'S MOTION FOR SUMMARY JUDGMENT ON (1) FORD'S CLAIM FOR DECLARATORY JUDGMENT OF NO COPYRIGHT INFRINGEMENT AND (2) DEFENDANTS' COPYRIGHT INFRINGEMENT CLAIM (ECF ## 526, 532)**

In this action, Versata Software, Inc., Versata Development Group, Inc., and Trilogy, Inc. (collectively, "Versata") assert, among other things, that Ford Motor Company committed copyright infringement when Ford copied automotive configuration software files known as ".jar" files belonging to Versata. (*See* Versata's Sec. Am. Counterclaims at ¶¶ 172-73, ECF #244 at Pg. ID 13036-37.) Ford denies that allegation and seeks a declaratory judgment that it did not infringe Versata's copyrights. (*See* Ford Compl. at ¶65, E.D. Mich. Case No. 15-cv-11264, ECF #1 at Pg. ID 14.[1])

---

[1] On July 14, 2015, the Court entered a stipulated order consolidating this action (E.D. Mich. Case No. 15-cv-10628) with the action Ford filed in E.D. Mich. Case

1

On August 28, 2018, Ford filed a motion for summary judgment with respect to (1) its request for declaratory judgment that it did not infringe Versata's copyrights and (2) Versata's affirmative claim of copyright infringement. (*See* Mot., ECF #526; Corrected Mot., ECF #532.[2]) For the reasons that follow, Ford's motion is **GRANTED**.

I

In 1998, Ford hired Versata to develop computer software that would allow Ford to more efficiently configure the millions of cars it manufactures each year. Versata created that software, called "ACM," and licensed ACM and other related software to Ford. Versata "provided" at least some of the ACM software "to Ford in the form of Java 'jar' files." (Declaration of Versata technical consultant Seth Krauss at ¶9, ECF 542-3 at Pg. ID 41197.) Many years later, Ford decided to replace ACM with its own automotive configuration software. Ford called this software "PDO."

At some time after Ford began developing PDO, Ford placed certain ".jar" files from the ACM software into a Ford software repository. Ford says that it used

---

No. 15-cv-11264. (*See* ECF #28.) The parties have made all subsequent filings in this action. Unless otherwise indicated, all citations and ECF references in this Opinion and Order correspond to the docket numbers in this action (E.D. Mich. Case No. 15-cv-10628).

[2] Ford filed a "corrected" motion that corrected some minor typographic and citation errors on August 30, 2018. (*See* Corrected Mot., ECF #532.)

2

these ".jar" files "to confirm that the Ford data output from the ACM[] software matched the data output" from Ford's replacement software. (Corrected Mot., ECF #532 at Pg. ID 40809-10.) Ford maintains that this use of the ".jar" files was consistent with its ACM software license and did not infringe Versata's copyrights. (*See id.* at Pg. ID 40818.)

Versata disagrees. It says that this copying and use of the ".jar" files was "outside the scope" of Ford's software license and constituted copyright infringement. (Versata Resp. Br., ECF #542 at Pg. ID 41114-15.)

## II

Versata initially supported its copyright claim with expert analysis from Dr. Samuel Malek. (*See* Malek Rpt. at ¶¶ 32-33, 70-71, 421-37, ECF #430-3 at Pg. ID 29477, 29490, 29663-65.) Dr. Malek opined that Ford "deliberately used" the ".jar" files in order to "help ensure that [Ford's] PDO software functioned and produced the same results as ACM." (*Id.* at ¶71, Pg. ID 29490.) He concluded that Ford's conduct constituted "copyright infringement based on its creation of unauthorized copies of .jar files." (*Id.* at ¶435, Pg. ID 29664.)

On July 9, 2018, the Court excluded Dr. Malek's copyright opinions in a written Opinion and Order. (*See* ECF #507 at Pg. ID 40234-43.) The Court excluded Dr. Malek's copyright opinions because his analysis failed to filter out and eliminate the elements of the ACM software that are unoriginal and unprotected under the

United States Copyright Act, 17 U.S.C. § 101 *et seq.* (the "Copyright Act"). Versata did not seek reconsideration of that portion of the Court's order, and Versata later informed the Court that it would not replace or supplement Dr. Malek's excluded opinions. (*See* ECF #514.) Versata therefore has no expert testimony supporting its copyright claim.

### III

Ford filed its current summary judgment motion on August 28, 2018. (*See* Mot., ECF #526; Corrected Mot., ECF #532.) It seeks summary judgment on both its request for declaratory relief and on Versata's affirmative copyright infringement claim. The Court held a hearing on the motion on December 19, 2018.

### IV

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact . . . ." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)) (quotations omitted). At the summary judgment stage, the moving party has the initial "burden of production" to show that "'there is an absence of evidence to support the nonmoving party's case.'" *Moore v. Philip Morris Companies, Inc.*, 8 F.3d 335, 339 (6th Cir. 1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the moving party satisfies this burden, "the nonmoving party then must go beyond the pleadings and by affidavits, or by 'depositions,

answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celtoex*, 477 U.S. at 325). Indeed, the nonmoving party "must present significant probative evidence ... to defeat [a properly supported] motion for summary judgment." *Id.* at 340.

When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson*, 477 U.S. at 252. Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-252.

## V

"To succeed in a copyright infringement action, a plaintiff must establish that he or she owns a copyrighted creation, and that the defendant copied it." *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003). However, "[n]ot all copying [of a copyrighted work] is actionable." *Id.* That is because certain "aspects" of a registered work may not be "protectable by copyright." *Id.* at 855. For example, "unoriginal [] elements – elements that were not independently created by the inventor, and that possess no minimal degree of creativity" are not protected under the Copyright Act. *Id.* Indeed, "it is a constitutional requirement that a plaintiff

bringing an infringement claim must prove copying of constituent elements of the work *that are original*." *Id.* at 853 (internal quotation marks omitted; emphasis in original). In addition, elements of a disputed work "dictated by efficiency" are not protectable. *Id.* at 856. Furthermore, under the doctrine of merger, "if [a] patentable process is embodied inextricably in the line-by-line instructions of the computer program, [ ] then the process merges with the expression and precludes copyright protection." *Lexmark Intern. Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 535 (6th Cir. 2004). Finally, pursuant to the doctrine of *scenes a faire,* "the elements of a program dictated by practical realities—e.g., by hardware standards and mechanical specifications, software standards and compatibility requirements, computer manufacturer design standards, target industry practices, and standard computer programming practices—may not obtain [copyright] protection." *Id.*

A court confronted with a copyright infringement action must begin its analysis by identifying and "filter[ing] out" these "unprotected" elements of a disputed work. *Kohus*, 328 F.3d at 855. Stated another way, a court must start by "identif[ing] which aspects of the artist's work, if any, are protectible by copyright." *Id.*

In the Court's July 9, 2018, Opinion and Order striking Dr. Malek's expert copyright opinions, it concluded that this filtration analysis is required even where there is evidence of direct copying. (*See* ECF #507 at Pg. ID 40240-43.)

## VI

Ford argues that it is entitled to summary judgment on the copyright claims at issue because (1) Versata has not presented sufficient evidence that the allegedly-copied ".jar" files came from a registered version of the ACM software[3] and (2) Versata has not satisfied its burden with respect to the required filtration analysis. The Court agrees with both contentions and addresses them, in turn, below.

### A

The Copyright Act provides that "no civil action for infringement of the copyright in any United States work shall be instituted ... until registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Thus, subject to "certain exceptions … the Copyright Act [] requires copyright holders to register their works before suing for copyright infringement." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010).

Here, Ford has presented evidence that Versata did not register with the United States Copyright Office the version of the ACM software from which the allegedly-copied ".jar" files came. (*See* Malek Rpt. at ¶¶ 422-25, ECF #430-3;

---

[3] The Court recognizes that the version of the ACM software that Versata registered with the United States Copyright Office is not in the ".jar" file format. Instead, Versata registered human-readable source code that corresponds to computer-readable ".jar" files. Thus, as a technical matter, ".jar" files correspond to, and do not come from, registered software. However, for ease of reference, the Court will refer above to the ".jar" files as having come from the ACM software.

Krauss Decl. at ¶¶ 5-7, ECF #542-3 at Pg. ID 41197.) In fact, both parties *agree* that Versata registered only a *later* version of ACM. (*See id.*; *see also* Versata Resp. Br., ECF #542 at Pg. ID 41129.) Because Ford produced this undisputed evidence of non-registration, the burden shifted to Versata to show that the allegedly-copied ".jar" files should be treated as if they are protected by a registration.

In an attempt to satisfy that burden, Versata argues that its registration of a later version of ACM protects the earlier, non-registered version from which the allegedly-copied ".jar" files came because the later version is "derivative" of the earlier version. Versata contends that since "a derivative work is cumulative of an earlier work, the registration of the derivative work relates back [and protects] the original work." (Versata Resp. Br., ECF #542 at Pg. ID 41129, citing cases.[4])

---

[4] Some courts have held that this theory – known as the "effective-registration doctrine" – does not afford protection to an earlier, non-registered work where "the registration certificate [for the later, registered work] did not properly identify the preexisting work upon which the infringement claim was based." *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1229-30 (11th Cir. 2008). Relying on this line of cases, Ford suggested earlier in this action that Versata's copyright infringement claim failed because the registration certificate for the later, registered version of ACM did not sufficiently identify the earlier, non-registered version from which the allegedly-copied ".jar" files came. This Court need not, and does not, decide the purely legal question of whether the effective-registration doctrine applies where a registration certificate does not identify an earlier, non-registered version of a work. Even if, as Versata contends, the doctrine does apply in those circumstances, for the reasons explained above, Versata's effort to invoke the doctrine would still fail due to a lack of evidence linking the two version of the ACM software at issue here.

But Versata has not presented enough evidence to support this theory. More specifically, Versata has not sufficiently linked the later, registered version of the ACM software to the earlier version from which the allegedly-copied ".jar" files came. The primary evidence that Versata presents to tie the two versions together is the declaration of its former employee and "technical consultant" Seth Krauss. (*See* Krauss Decl., ECF #542-3.) Krauss says that he "reviewed the registrations" of the registered version of the ACM software and concluded that:

> The versions [of the ACM software] registered with the Copyright Office are original and later updated versions of the software licensed to and used by Ford, and are therefore, derivative of that software. The code and functionality of the versions used by Ford overlaps substantially with the versions of the software registered with the Copyright Office.

(*Id.* at ¶¶ 6-8, Pg. ID 41197.)

Krauss' declaration does not create a genuine dispute of material fact as to whether the later version of the ACM software is, in fact, derivative of the earlier version. The relevant statements in the declaration are conclusory. Krauss does not identify sufficient facts or evidence to support his opinion that the two versions of the ACM software "overlap substantially" and that the registered version of the software is therefore "derivative" of the version from which the allegedly-copied ".jar" files came. For instance, he does not explain what methodology, if any, he used when conducting his analysis of the alleged overlap. Nor does he explain *how*

the two versions of the ACM software are similar or *which specific* portions of software overlap. Moreover, Krauss does not say whether the portions of the two versions that overlap are (1) the allegedly-original (and thus potentially-protected) portions or (2) the unoriginal (and thus unprotected) portions derived from open-source materials.[5] Finally, Krauss' use of the subjective term "overlaps substantially" does not provide the Court a sufficiently definite indication of the actual extent of the alleged overlap.

Simply put, Krauss' declaration does not provide sufficient competent evidence to support Versata's theory that the registration of the later version of the ACM software covers and protects the earlier version from which the allegedly-copied ".jar" files came.[6] *See*, *e.g.*, *Automated Solutions Corp. v. Paragon Data Sys.*, 756 F.3d 504, 521 (6th Cir. 2014) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment"). Accordingly, Ford is entitled to summary judgment on the

---

[5] As noted in sub-section VI(B) below, Versata has acknowledged that at least some portions of the ACM software are not original and came from open-source software created by others. (*See* Krauss Dep. at 187, ECF #542-7 at Pg. ID 41550; Versata discovery responses, ECF #528-3 at Pg. ID 40788.)

[6] Furthermore, it is not even clear from Krauss' declaration that he ever compared the two versions of the ACM software. Instead, he says only that he reviewed the registrations of the later version. The lack of clear evidence that Krauss reviewed the later version against the earlier version further counsels against accepting Krauss' conclusions.

copyright infringement claims on the ground that the allegedly-copied ".jar" files are not protected by a valid copyright registration.

B

As explained above, in analyzing Versata's copyright claim, the Court must "identify[] which aspects" of the ACM software from which the allegedly-copied ".jar" files came, "if any, are protectable by copyright," and must "filter out" the unprotectible elements. *Kohus*, 328 F.3d at 855. In Ford's summary judgment motion, it identified evidence that could support a finding that potentially significant portions of the software are not protectable. For instance, Ford directed the Court to evidence that (1) portions of the ACM software are comprised of "open source" software that is not original to Versata (*see* Krauss Dep. at 187, ECF #542-7 at Pg. ID 41550; Versata discovery responses, ECF #528-3 at Pg. ID 40788) and (2) other portions of the ACM software are dictated by efficiency, function, and/or regular business practices (*see* Krauss Decl. at ¶120, ECF #542-2 at Pg. ID 41194; Patent No. 7,200,582, ECF #549-2 at Pg. ID 42120, 42123, 42147-53.)

In the face of this showing by Ford, Versata was obligated to conduct a filtration analysis and present specific evidence that identified the portions of the ACM software, if any, that *do* contain elements that are both original and not dictated by efficiency, function, and/or regular business practices and that are thus protectable. *See*, *e.g.*, *Kohus*, 328 F.3d at 853-56. Versata has failed to do so.

First, Versata has not sufficiently countered Ford's showing that potentially substantial portions of the ACM software are dictated by efficiency, function, and/or regular business practices. Versata's response brief does not respond to this showing. At the hearing on Ford's motion, Versata said that its technical consultant and fact witness Seth Krauss addressed this argument in paragraphs 8 and 9 of his declaration. (*See* Krauss Decl. at ¶¶ 8-9, ECF #542-3 at Pg. ID 41197.) But those cited paragraphs do not identify any specific portions of the ACM software that are not dictated by efficiency, function, and/or regular business practices. Versata has failed to present evidence as to which portions, if any, of the ACM software are not dictated by efficiency, function, and/or regular business practices and are therefore protected.

Second, Versata has also failed to provide sufficient evidence of which portions of the ACM software are original. Here again, Versata relies on the Kruass declaration. But Krauss says only that the *registered* version of the ACM software is "original." (Krauss Decl. at ¶8, ECF #542-3 at Pg. ID 41197.) What Krauss does not say in his declaration is that the *unregistered*, earlier-created version of the software from which the allegedly-copied ".jar" files came from is "original." More importantly, Krauss does not support his opinion that the registered version of the ACM software is "original" with sufficient facts or analysis. For example, Krauss does not identify *which portions* of the software are original and he does not filter

out the unoriginal portions of the software (such as the portions that are comprised of open-source material).

In sum, Krauss' declaration does not satisfy Versata's filtration obligation because he has not identified "*which* portions of [the ACM software] are unique, *what* makes them unique, or why their particular form is not dictated by practical realities [], and therefore not subject to copyright protection." *Automated Solutions*, 756 F.3d at 535 (emphasis in original) (affirming summary judgment on copyright claim where proffered expert witness "focuse[d] solely on his legal conclusion" that allegedly-copied computer software contained "unique protectable expression" but failed to "explain[]" "how or why" the software was original and protectable).

Versata asserted at the hearing on Ford's motion that Krauss could and would filter the protected portions of the ACM software from the unprotected portions during his testimony at trial. But Versata's promise to produce that testimony later does not satisfy its burden now to identify evidence that creates a genuine issue of material fact. *See*, *e.g.*, *del Carmen Guadalupe v. Negron Agoso*, 29 F.3d 15, 23 (1st Cir. 2002) ("A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial") (internal punctuation omitted); *SG Industries, Inc. v. RSM McGladrey, Inc.*, 2011 WL 6090247, at *6 (E.D. Mich. 2011) ("Under Federal Rule of Civil Procedure 56, once a properly supported summary judgment motion has been made seeking

dismissal of a claim, a plaintiff must come forward—*at the summary judgment stage*—with admissible evidence supportive of its claim. A promise that such evidence will be forthcoming at trial does not suffice to overcome summary judgment") (internal citations omitted; emphasis added).[7] Accordingly, Ford is entitled to summary judgment on the copyright infringement claims for the additional and independent bases set forth in this sub-section (VI(B)).[8]

## VII

For all of the reasons stated above, **IT IS HEREBY ORDERED** that Ford's motion for summary judgment (ECF ## 526, 532) on (1) its request for declaratory judgment that it did not infringe Versata's copyrights and (2) Versata's affirmative claim of copyright infringement is **GRANTED**.

s/Matthew F. Leitman<br>
MATTHEW F. LEITMAN<br>
UNITED STATES DISTRICT JUDGE

Dated: January 29, 2019

---

[7] *See also Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (A "party opposing summary judgment must show that she can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary").

[8] Versata argues that because Ford copied the relevant ".jar" files in whole, Ford "necessarily copied protectable elements of Versata's copyrighted works, and no [filtration analysis] is necessary." (Versata Resp. Br., ECF #542 at Pg. ID 41121.) But the Court rejected this argument and held that filtration is required when it held that Dr. Malek's copyright analysis was inadmissible due to his failure to conduct a filtration analysis. Versata did not seek reconsideration of that ruling, and it has not persuaded the Court here that it erred when it issued that decision.

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 29, 2019, by electronic means and/or ordinary mail.

                                                    s/Holly A. Monda
                                                    Case Manager
                                                    (810) 341-9764