## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**Ford Motor Company,**

       Plaintiff/
       Counter-Defendant,

**v.**

**Versata Software, Inc., f/k/a Trilogy Software, Inc., Trilogy Development Group, Inc. and Trilogy, Inc.,**

       Defendants/
       Counter-Plaintiffs**.**

**Case No. 15-10628-MFL-EAS**
*(consolidated with Case No. 15-cv-11624)*

**Hon. Matthew F. Leitman**

**JURY TRIAL DEMANDED**

# FORD MOTOR COMPANY'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' TRADE SECRET MISAPPROPRIATION CLAIMS AGAINST FORD'S PDO "R2" APPLICATIONS

## – REDACTED PUBLIC VERSION –



**– REDACTED PUBLIC VERSION –**

## CONCISE STATEMENT OF ISSUE PRESENTED

1.  Should the Court grant summary judgment in Ford's favor on Versata's trade secret misappropriation claims against Ford's two PDO "R2" applications ("Change Management" and "Mix-Rate") where (i) Versata does not attempt to prove that those applications include the alleged trade secret functionality, and (ii) Versata seeks no incremental damages based on those applications?

Ford answers:  **Yes.**



**– REDACTED PUBLIC VERSION –**

## **TABLE OF CONTENTS**

CONCISE STATEMENT OF ISSUE PRESENTED................................................. i

TABLE OF AUTHORITIES ...................................................................... iv

MOTION ...................................................................................................1

BRIEF IN SUPPORT ............................................................................2

I.     BACKGROUND ................................................................................2

     A.    The Original Pleadings Did Not Address Ford's "Change Management" or "Mix-Rate" Applications Because Those Applications Did Not Replace any Versata Software ..........................2

          1.    Ford's Originally-Accused PDO "R1" Software Performs "Product Definition" and—Unlike the PDO "R2" Applications—Replaced Versata's ACM and MCA Software ...................................................................... 3

          2.    Ford's R2 "Mix-Rate" Application............................ 5

          3.    Ford's R2 "Change Management" Application........................ 6

     B.    The Special Master Previously Determined that Versata's Trade Secret Claims Against Ford's "R2" Applications Were Conclusory and Unclear ....................................................................6

     C.    Versata Offered to Drop, and Does Not Seek Damages for, Ford's R2 Applications .............................................................8

II.    CONTROLLING AUTHORITY ..................................................9

     A.    Summary Judgment Standard.............................................9

III.   ARGUMENT...................................................................................10



**– REDACTED PUBLIC VERSION –**

A.     Ford is Entitled to Summary Judgment Because Versata Does Not Perform a Trade Secret Analysis In Connection With Ford's Change Management and Mix-Rate Applications....................10

       1.     Versata Does Not Attempt to Show that Ford's Mix-Rate Application Practices the Alleged "Buildability" Trade Secret Combination.................................................. 13

       2.     Versata Does Not Attempt to Show that Ford's Change Management Application Practices the Alleged "Workspaces" Trade Secret Combination ............................... 15

IV.     CONCLUSION..............................................................17



**– REDACTED PUBLIC VERSION –**

## <u>TABLE OF AUTHORITIES</u>

### Cases

*American Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.*,
     114 F.3d 108 (8th Cir. 1996) ...........................................................................12

*Anderson v. Liberty Lobby, Inc.*,
     477 U.S. 242 (1986)........................................................................................10

*Celotex Corp. v. Catrett*,
     477 U.S. 317 (1986)........................................................... 10, 13, 15, 16

*R C. Olmstead, Inc. v. C.U. Interface, LLC*,
     606 F.3d 262 (6th Cir. 2010) ...........................................................................13

*SEC v. Sierra Brokerage Servs., Inc.*,
     712 F.3d 321 (6th Cir. 2013) ................................................................... 9, 10

*Stratienko v. Cordis Corp.*,
     429 F.3d 592 (6th Cir. 2005) ...........................................................................12

### Statutes

Fed.R.Civ.P. 56 ...................................................................................................9



iv

**– REDACTED PUBLIC VERSION –**

## MOTION

This Court should grant Ford Motor Company's ("Ford's") motion for summary judgment on Defendants' (collectively "Versata's") trade secret misappropriation claims against Ford's "Change Management" and "Mix-Rate" software. Versata has not even attempted to demonstrate that these applications actually practice the asserted trade secrets. Thus, there is no genuine issue of material fact on Versata's trade secret claims. Versata also fails to assert any damages arising from its trade secret claims against these two applications. Thus, as set forth in greater detail in the accompanying Brief in Support, Ford is entitled to summary judgment on Versata's trade secret claims against these applications.



1

– REDACTED PUBLIC VERSION –

## BRIEF IN SUPPORT

## I.   BACKGROUND

**A.   The Original Pleadings Did Not Address Ford's "Change Management" or "Mix-Rate" Applications Because Those Applications Did Not Replace any Versata Software**

Ford's "Change Management" and "Mix-Rate" applications are software programs located downstream of Ford's originally-accused PDO "R1" product definition software. (*See* Dkt. #308-3, Beardslee Dep. Tr. at 115:2-116:14.) These "R2" applications merely receive data from the originally-accused PDO product definition software. (*See* Ex. F, 2018 Beardslee Declaration [Dkt. #333-4[1]] at ¶¶4, 6.) They do not incorporate, replace, or otherwise supplant the product definition functionality that Versata's ACM and MCA software previously provided, or that Ford's replacement R1 product definition software provides today. (*See* Ex. G, 2017 Beardslee Declaration [Dkt. #301-5[2]] at ¶¶3-4, 7-8; *see also* Ex. A, Malek 3/26/19 Dep. Tr. at 667:15-23, 680:19-25, 689:14-21.)

Despite these facts, Versata now asserts that Ford's R2 Change Management and Mix-Rate applications misappropriate Versata's alleged trade secrets. As described below, Versata cannot maintain such an assertion because it simply has

---

[1] Mr. Beardslee's January 2018 declaration was previously submitted as Dkt. #333-4 and, for ease of reference, has been re-attached here as Exhibit F.

[2] Mr. Beardslee's June 2017 declaration was previously submitted as Dkt. #301-5 and, for ease of reference, has been reattached here as Exhibit G.



– REDACTED PUBLIC VERSION –

not shown that the accused R2 applications themselves practice the alleged trade secrets.  Versata's failure of proof leaves no genuine issue of fact and summary judgment in Ford's favor is appropriate.

### 1. Ford's Originally-Accused PDO "R1" Software Performs "Product Definition" and—Unlike the PDO "R2" Applications—Replaced Versata's ACM and MCA Software

Ford's PDO "R1" product definition software, which replaced the ACM/MCA software previously licensed from Versata, is the source of product definition data throughout Ford's organization.  (Ex. F, 2018 Beardslee Declaration [Dkt. #333-4] at ¶3.)  In addition to receiving, validating and storing user-input "rules" defining feature options, Ford's PDO R1 software—like the ACM software that it replaced—outputs data relating to Ford's product definition rules (defining buildable vehicle feature combinations) to other Ford systems and software applications.  (*See id.*; *see also* Dkt. #308-3, Beardslee Dep. Tr. at 115:2-16.)  Many of Ford's manufacturing and sales systems, for example, regularly receive data output from PDO R1.  Systems and software that receive Ford's product definition data exported from PDO R1 are generally referred to as "downstream" applications.

A suite of software applications known collectively as PDO "R2" is among the dozens of downstream applications within Ford that receive product definition data from PDO R1.  Ford's R2 suite includes four separate software applications,



– REDACTED PUBLIC VERSION –

which provide a variety of functionality: (1) Mix-Rate[3]; (2) Change Management; (3) Pricing Companion Tool[4]; and (4) a security application referred to as the Enterprise Authorization Service.  (*See, e.g.,* Ex. G, 2017 Beardslee Declaration [Dkt. #301-5] at ¶5; *see also* Ex. B, Malek R2 Report at ¶21 and Ex. A, Malek 3/26/19 Dep. Tr. at 658:8-18.)  As described in greater detail below, however Versata's trade secret allegations against Ford's R2 applications are limited to Ford's Mix-Rate and Change Management applications.[5]  (*See* Ex. B, Malek R2 Report at ¶8 and Ex. A, Malek 3/26/19 Dep. Tr. at 658:19-659:3; *see also* Dkt. #571 at 9.)

Neither Ford's original complaint, nor Versata's original counterclaim, referred to Ford's "Change Management" or "Mix-Rate" applications.  (*See* Dkt. #6 [Ford's Complaint] and Dkt. #59 [Versata's Answer & Counterclaims].)  The pleadings made no mention of these applications because they did not replace any

---

[3] Some early materials relating to this application refer to it as "Mix, Rate *& Price*" or "MRP."  But because the production version of the application was launched without pricing features, Ford currently refers to the application as "Mix-Rate" or "Mix & Rates."

[4] Ford decommissioned the Pricing Companion Tool and Versata makes no claims against it.

[5] In addition to the fact that Versata has limited its R2 trade secret claims to the Mix-Rate and Change Management applications, Versata is also not any asserting patent infringement claims against any R2 application.  (Dkt. #571 at 9: "Versata has not asserted any patents against PDO R2.")  Similarly, Versata has not made a copyright claim against any of Ford's R2 applications.



– REDACTED PUBLIC VERSION –

Versata software.  As explained below, these applications provide different services unrelated Versata's software and its alleged trade secrets.

### 2.    Ford's R2 "Mix-Rate" Application[6]

Ford's Mix-Rate application is a tool Ford uses to set the "mix" of offered vehicle variants (*e.g.*, SE, SEL, Platinum, etc.), and the anticipated "take-rates" for optional vehicle features (*e.g.*, moonroof, upgraded radio, etc.).  (*See* Ex. G, 2017 Beardslee Declaration [Dkt. #301-5] at ¶8; *see also* Ex. C, Mix-Rate User Guide at FV135584-92.)  Ford launched the Mix-Rate application in 2016.  (Ex. G, 2017 Beardslee Declaration [Dkt. #301-5] at ¶8.)

Like other "downstream" systems within Ford, the Mix-Rate application receives product definition data created in and exported from Ford's PDO "R1" product definition software.  (*See* Ex. F, 2018 Beardslee Declaration [Dkt. #333-4] at ¶6.)  Ford's R2 Mix-Rate application does not, however, replace any of the PDO R1 functionality.  (*See id*. at ¶¶4, 6-8; *see also* Ex. G, 2017 Beardslee Declaration [Dkt. #301-5] at 8.)  ***And Versata's expert, Dr. Malek, admits that the Mix-Rate application does not include any functionality provided in the ACM software Versata previously licensed to Ford.***  (Ex. A, Malek 3/26/19 Dep. Tr. at 689:14-21.)

---

[6] Again, various materials refer to this particular software application as "Mix-Rate," "Mix & Rates," "Mix, Rate & Price," and/or simply "MRP," which is commonly used by Versata's expert.



– REDACTED PUBLIC VERSION –

### 3.  Ford's R2 "Change Management" Application

Ford's R2 Change Management application is a utility Ford uses to manage approvals of its "product direction" information, which Ford calls "change requests." (*See* Ex. G, 2017 Beardslee Declaration [Dkt. #301-5] at ¶7; *see also* Ex. D, Change Management User Guide at FV098486-88.)   The R2 Change Management application launched in October 2016 as a direct replacement for an earlier Ford-built system called "GPLUS," which performed the same general functions.  (Ex. G, 2017 Beardslee Declaration [Dkt. #301-5] at ¶7.)

Ford's Change Management application does not replace any of Ford's originally-accused PDO R1 product definition software.  (*Id.*; *see also* Ex. F, 2018 Beardslee Declaration [Dkt. #333-4] at ¶¶4, 6-8.)   Additionally, ***Versata's expert admits that Ford's Change Management application—like Ford's Mix-Rate application—does not include any functionality contained in the ACM software Versata previously licensed to Ford.***  (Ex. A, Malek 3/26/19 Dep. Tr. at 667:15-23, 680:19-25.)

### B.  The Special Master Previously Determined that Versata's Trade Secret Claims Against Ford's "R2" Applications Were Conclusory and Unclear

Versata first asserted trade secret claims against Ford's "R2" Change Management and Mix-Rate applications in Dr. Malek's November 17, 2017 "reply" expert report.  On January 12, 2018, Ford filed a motion to exclude Dr. Malek's



**– REDACTED PUBLIC VERSION –**

"reply" opinions because they were conclusory, untimely, and because Ford's R2 applications do not perform the "product definition" at the center of this case. (Dkt. #328.) The Court referred Ford's motion to the Special Master to "offer his recommendation with respect to whether PDO-R2 is accused in this action and whether PDO-R2 is relevant to Versata's claims." (Dkt. #329.)

On February 8, 2018, the Special Master issued his Report and Recommendation ("R&R") to grant Ford's motion to strike Dr. Malek's "reply" expert report on Ford's R2 applications. (Dkt. #375.) According to the Special Master, Dr. Malek's R2 opinions were "thin at best with respect to his trade secret opinions" because Dr. Malek "does not actually independently accuse PDO R2 of trade secret misappropriation." *Id.* at 5. The Special Master found that Dr. Malek's R2 "assertions are conclusory or admittedly speculative" and "do not meet the requirements of Rule 26 and make it difficult or impossible for Ford to understand them and defend against them." *Id.* at 5-6.

The Special Master noted another deficiency in Dr. Malek's early opinions—he did not clearly assert that Ford's R2 applications "independently incorporate" Versata's alleged trade secrets.

> It is unclear, for example, even at a basic level whether Dr. Malek asserts that any of the PDO R2 applications independently incorporate Versata trade secrets, or rather whether they are accused only because PDO R1 allegedly uses the trade secrets and the PDO R2 applications link to the PDO R1 applications.



– REDACTED PUBLIC VERSION –

*Id.* As explained in the Argument section below, the Special Master's observations regarding Versata's PDO R2 allegations remain true today and are the focus of Ford's motion for summary judgment.

Versata objected to the Special Master's R&R, and Ford opposed Versata's objection. (Dkts. #385, 404.) The Court overruled the Special Master's R&R and permitted "full blown discovery on R2" including Ford's Change Management and Mix-Rate applications. (Dkt. #444, 3/9/18 Hrg. Tr. at 120.)

## C.  Versata Offered to Drop, and Does Not Seek Damages for, Ford's R2 Applications

At the hearing on the Special Master's R&R, Versata's counsel offered to "get [R2] out of the case." (Dkt. #444, 3/9/18 Hrg. Tr. at 116.) Versata's counsel proposed "[n]o claims, no arguments about [R2], no more analysis, we shut it down." *Id.* At that time, Versata asserted that its R2 claims were merely a "defensive measure" to prevent Ford from "whittl[ing] down" Versata's billion-dollar damages claim. *Id.* at 118. As Ford explained at the hearing, Versata's focus on Ford's R2 software had more to do with Versata's damages claim that Versata's trade secret claim. *Id.* at 109-110 and 117-119.

Following that hearing, the Court limited Versata's trade secret damages case to a theory based on the parties' "licensing history" for the ACM and MCA software that Ford replaced with its PDO R1 software. (Dkt. #507 at 24-29.) Of course, the parties lack a "licensing history" in connection with the R2 applications or the



8

– REDACTED PUBLIC VERSION –

functionality they provide because those applications have nothing to do with Versata or the previously-licensed ACM software. Indeed, following the Court's *Daubert* ruling, Versata's trade secret damages expert, Craig Elson, confirmed that ***Versata is not seeking additional damages arising from Versata's claims against Ford's "R2" Change Management and Mix-Rate applications***. (Ex. E, Elson 12/10/18 Report at ¶16: ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████)

Versata's expert did not calculate damages based on those applications (*id.*) and Versata has now unequivocally confirmed that it "is not asserting that the amount of damages increases as a result of PDO R2." (Dkt. #571 at 9.)

## II.   CONTROLLING AUTHORITY

### A.   Summary Judgment Standard

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact...." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326-27 (6th Cir. 2013) (citing Fed.R.Civ.P. 56(a) (quotations omitted)).

A movant can meet its summary judgment burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence



– REDACTED PUBLIC VERSION –

of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Moreover, the "mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *SEC*, 712 F.3d at 327.

## III.   ARGUMENT

### A.   Ford is Entitled to Summary Judgment Because Versata Does Not Perform a Trade Secret Misappropriation Analysis In Connection With Ford's Change Management and Mix-Rate Applications

Versata does not *attempt* to perform a trade secret misappropriation analysis on Ford's Mix-Rate and Change Management applications themselves.  Versata's expert, Dr. Malek, asserts that "Versata's claims against PDO R2 involve trade secrets previously asserted against PDO R1."  (Ex. H, Malek R2 Reply Report at ¶14.)  Specifically, Dr. Malek asserts (1) that Ford's Mix-Rate application practices the previously-asserted "Buildability" trade secret category, and (2) that Ford's R2 Change Management application practices the previously-asserted "Workspaces" trade secret category.  (Ex. B, Malek R2 Report at ¶8; Ex. A, Malek 3/26/19 Dep.



**– REDACTED PUBLIC VERSION –**

Tr. at 658:19-659:3.) Dr. Malek confirmed during his deposition that Versata is not asserting any "new" trade secrets against Ford's R2 applications. (*Id.* at 730:9-15.)

Despite Versata's "full-blown discovery" on Ford's R2 applications, Dr. Malek's expert report ***lacks a misappropriation analysis***. He does not *attempt* to show, for example, how and where those applications allegedly practice the "Buildability" and "Workspaces" trade secret categories he has identified.

Dr. Malek's lack of analysis is compounded by the fact that Versata recently redefined its "Buildability" trade secret ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

As explained in greater detail below with respect to each accused R2 application, however, ***Dr. Malek's R2 trade secret report does not analyze any of these "elements" let alone the new "combinations" in the accused applications.*** He does not attempt to show how, or where, Ford's Mix-Rate and Change Management applications allegedly practice these "elements" or "combinations."



**– REDACTED PUBLIC VERSION –**

According to Dr. Malek, Versata's trade secret claims against Ford's R2 applications rise and fall with Versata's trade secret claims against Ford's previously-accused **R1** software.

> Q.    If a jury were to disagree with you and decide that there is no misappropriation of Versata trade secrets in Ford's R1 application, is there any basis set forth in your reports for a different liability decision with respect to R2?
>
> A.    *So if I understand correctly, what you're asking me is if there are – if suppose, let's say, that there are no misappropriation of trade secrets in PDOR1, would there be misappropriation by PDOR2; is that what you're asking?*
>
> Q.    Right.
>
> A.    *I – I don't think so.*

(Ex. A, Malek 3/26/19 Dep. Tr. at 730:16-731:4.)

Consistent with this testimony, and as explained in greater detail below, Dr. Malek fails to show that Ford's R2 Change Management and Mix-Rate applications practice alleged Versata trade secrets.  Accordingly, summary judgment in Ford's favor is appropriate.  *See*, *e.g.*, *Stratienko v. Cordis Corp.*, 429 F.3d 592 (6th Cir. 2005) (affirming the district court's grant of summary judgment where the non-moving party failed to provide sufficient evidence that its alleged trade secret was actually incorporated into the accused product); *see also American Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.*, 114 F.3d 108, 111-12 (8th Cir. 1996) (affirming the district court's grant of summary judgment where non-moving party had only shown the existence of "at most…four of the five elements" of the alleged trade



– REDACTED PUBLIC VERSION –

secret); *R C. Olmstead, Inc. v. C.U. Interface, LLC*, 606 F.3d 262, 270-272 (6th Cir. 2010) (affirming the district court's grant of summary judgment and decision to strike plaintiff's trade secret expert report because the report failed to provide or explain the basis for the expert's conclusion).

Where there is insufficient showing to establish an essential element to the case, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23 (internal citations omitted).

### 1. Versata Does Not Attempt to Show that Ford's Mix-Rate Application Practices the Alleged "Buildability" Trade Secret Combination

Dr. Malek alleges that Ford's Mix-Rate application "misappropriates Versata's buildability trade secret." (Ex. B, Malek R2 Report at ¶8.) Dr. Malek's "analysis" in connection with this claim is set forth in paragraphs 95-99 of his report. (*Id.* at ¶¶95-99.) But Dr. Malek does not allege—let alone analyze based on cited evidence—that the Mix-Rate application includes or practices the six required "elements" of the alleged buildability trade secret "combination" discussed above. (*Id.*)

Dr. Malek *mentions* the ███████████████ element, but he admits the Mix-Rate application "has no [such] ability itself." (*Id.* at ¶8: "PDOR2's MRP



**– REDACTED PUBLIC VERSION –**

component…has no ability itself to █████████████████████

███████████████ During his deposition, Dr. Malek confirmed that the Mix-

Rate application *lacks* ████████████████

█ ████████████████████████████████

█ █████████████████████████████████████████

(Ex. A, Malek 3/26/19 Dep. Tr. at 728:22-729:5, emphasis added.)

When asked about another element of the alleged buildability trade secret

about which his R2 report is entirely silent—namely, use of █████████—Dr. Malek

testified that the only element he has considered with respect to Mix-Rate is the

█████████ element:



(Ex. A, Malek 3/26/19 Dep. Tr. at 738:13-23.)

With this total lack of proof, Versata cannot sustain its trade secret claim

against Ford's Mix-Rate application. *See Celotex*, 477 U.S. at 322-23 (holding that



– REDACTED PUBLIC VERSION –

where a party fails to make a showing sufficient to establish the existence of an element on which it bears the burden, "there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.") (internal citations omitted).  Ford thus requests summary judgment on this aspect of Versata's trade secret claims.

### 2. Versata Does Not Attempt to Show that Ford's Change Management Application Practices the Alleged "Workspaces" Trade Secret Combination

Dr. Malek alleges that Ford's Change Management application "misappropriates Versata's workspaces trade secret." (Ex. B, Malek R2 Report at ¶8.)  The "analysis" allegedly supporting this claim is set forth in paragraphs 100-104 of his R2 report.  (*Id.* at ¶¶100-104.)  As with his allegations against the Mix-Rate application, Dr. Malek fails to state—let alone analyze based on cited evidence—that the Change Management application includes or practices the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "elements" of the alleged trade secret.

The only element related to the alleged "workspaces" trade secret that Dr. Malek even mentions is the ▮▮▮▮▮▮▮▮▮▮ feature.  Yet, when asked about this element of the combination, Dr. Malek confirmed that he is ***not*** alleging that the Change Management application includes or practices the trade-secret



**– REDACTED PUBLIC VERSION –**

functionality—pointing instead to functionality in Ford's originally-accused PDO "R1" product definition software:

> Q.   You're not pointing to any portion of the change management application itself that implements the workspace's trade secret; is that correct?
>
> **A.   *As I've said, I mean, change management represents new functionality in PDO that is a new usage of the trade secret.***
>
> Q.   But we're not talking about a new ▇▇▇▇▇▇▇▇▇. We're talking about its use or reliance on ▇▇▇▇▇▇ in R1; is that right?
>
> **A.   *That's right. That's where the misappropriation of the trade secret is.***

(Ex. A, Malek 3/26/19 Dep. Tr. at 756:5-15.)

Having failed to prove, or even attempt to prove, that Ford's Change Management application practices the alleged "workspaces" trade secret, Versata simply cannot sustain its trade secrets claim. *See Celotex*, 477 U.S. at 322-23. Ford thus requests summary judgment on this aspect of Versata's trade secret case.



**– REDACTED PUBLIC VERSION –**

## IV.   CONCLUSION

Because Versata has not shown that Ford's R2 Change Management and Mix-Rate applications practice any Versata trade secret, Ford is entitled to summary judgment on Versata's claims against those applications.

Respectfully submitted,

Dated:  April 11, 2019

By:   /s/ John S. LeRoy
John S. LeRoy (P61964)
Thomas A. Lewry (P36399)
Jonathan D. Nikkila (P75666)
Christopher C. Smith (P73936)
1000 Town Center, 22nd Floor
Southfield, MI  48075
Tel.: 248-358-4400 / Fax: 248-358-3351
jleroy@brookskushman.com
tlewry@brookskushman.com
jnikkila@brookskushman.com
csmith@brookskushman.com

James P. Feeney (P13335)
**DYKEMA GOSSETT PLLC**
39577 Woodward Ave, Suite 300
Bloomfield Hills, MI 48304
Ph: 248-203-0841
jfeeney@dykema.com

*Attorneys for Plaintiff, Ford Motor Company*

