# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**Ford Motor Company,**

       Plaintiff/
       Counter-Defendant,

**v.**

**Versata Software, Inc., f/k/a Trilogy Software, Inc., Trilogy Development Group, Inc. and Trilogy, Inc.,**

       Defendants/
       Counter-Plaintiffs**.**

**Case No. 15-10628-MFL-EAS**
*(consolidated with Case No. 15-cv-11624)*

**Hon. Matthew F. Leitman**

**JURY TRIAL DEMANDED**

## FORD MOTOR COMPANY'S OBJECTIONS TO VERSATA'S AMENDED OMNIBUS MOTIONS IN LIMINE





# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ......................................................................... 1

1.  Versata MIL #1: References to foreigners, outsourcing, and
    unpronounceable names............................................................ 1

2.  Versata MIL #2: Previously asserted causes of action, dismissed and
    abandoned claims................................................................. 5

    a.  Versata's shifting trade secret theories ................................. 5

    b.  Versata's dismissed or abandoned claims ................................. 9

3.  Versata MIL #3:  Parties' claim construction arguments and
    "reasoning" from the Court's claim construction Orders........................... 11

4.  Versata MIL #4: Comparison of Ford software to prior art with
    respect to Versata's patent infringement claims ............................. 13

5.  Versata MIL #5: Ford's alleged implementation of any design-
    arounds or non-infringing alternatives ....................................... 14

6.  Versata MIL #6: Assertion that Ford cannot infringe Versata's
    intellectual property merely because Ford has its own patents ................. 18

7.  Versata MIL #7: Ford patents, including any suggestion that a patent
    or patent application is a defense to infringement, except to the extent
    that Ford's experts or Versata's experts have specifically asserted that
    a Ford patent discloses a Versata trade secret............................... 21

8.  Versata MIL #8: Versata's current agreements or negotiations with
    automotive companies other than Ford ....................................... 21



i

## <u>TABLE OF AUTHORITIES</u>

### Cases

*AWGI, LLC. v. Atlas Trucking Co., LLC*, No. 17-12131,
    2019 U.S. Dist. LEXIS 222203 (E.D. Mich. Dec. 30, 2019) ......................13

*BDT Prod's, Inc. v. Lexmark Int'l*,
    274 F.Supp.2d 880 (E.D. Ky. 2003) ........................................................... 3

*Big Vision Private v. EI DuPont De Nemours & Co.*,
    1 F.Supp.3d 224 (S.D.N.Y. 2014) ...........................................................5, 6

*Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*, No. 09-290,
    2012 U.S. Dist. LEXIS 157335 (W.D. Pa. Nov. 2, 2012)...........................20

*Eidos Display, LLC v. Chi Mei Innolux Corp.*, Case No. 6:11-CV-00201-JRG,
    2017 U.S. Dist. LEXIS 157062 (E.D. Tex. May 26, 2017) ........................10

*Elledge v. Bacharach Instruments Co.,* Nos. 91-1931/1952,
    1992 U.S. App. LEXIS 20762 (6th Cir. Aug. 25, 1992).............................. 9

*Fannon v. Johnston*,
    88 F.Supp.2d 753 (E.D. Mich. 2000) ................................................9, 11, 13

*Finjan, Inc. v. Blue Coat Sys.*, No. 13-CV-3999,
    2015 U.S. Dist. LEXIS 88760 (N.D. Cal. July 8, 2015) .............................10

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970),
    *mod. and aff'd*, 446 F.2d 295 (2d Cir. 1971) ..............................................23

*Grain Processing Corp. v. American Maize-Products Co.*,
    185 F.3d 1341 (Fed. Cir. 1999)...........................................................15, 22

*Hoist Fitness Sys. v. Tuffstuff Fitness Int'l, Inc.*, No. ED CV 17-01388-AB,
    2019 U.S. Dist. LEXIS 209987 (C.D. Cal. Aug. 27, 2019) ........................20

*Lipian v. Univ. of Mich.*, No. 18-13321,
    2020 U.S. Dist. LEXIS 41935 (E.D. Mich. Mar. 11, 2020)........................13



*Metaswitch Networks Ltd. v. Genband US LLC*, 2016 WL 3618831,
No. 2:14-cv-744 (E.D. Tex. March 1, 2016) ...............................................18

*Plew v. Ltd. Brands, Inc.*, Case No. 08 Civ. 3741 (LTS)(MHD),
2012 U.S. Dist. LEXIS 14966 (S.D.N.Y. Feb. 6, 2012) .............................10

*Rainbow Nails Enterprises, Inc. v. Maybelline, Inc.*,
93 F.Supp.2d 808 (E.D. Mich. 2000) .......................................................... 2

*Riles v. Shell Exploration & Prod. Co.*,
298 F.3d 1302 (Fed. Cir. 2002) .......................................................15, 17, 22

*Rogers v. Desa Internat'l, Inc.*,
183 F.Supp.2d 955 (E.D. Mich. 2002) ........................................................ 2

*Sperberg v. Goodyear Tire & Rubber Co.*,
519 F.2d 708 (6th Cir. 1975).......................................................................13

### Statutes

18 U.S.C. § 1836................................................................................................ 8
MCL § 445.1902...........................................................................................2, 3, 4

### Other Authorities

Milgrim on Trade Secrets, §1.03 Rel. 116-12/2017................................................ 3



## INTRODUCTION

The Court should deny Versata's eight motions *in limine* ("MILs") because they are either contrary to law, unfairly prejudicial to Ford and a fair trial, or are too vague to render an informed *in limine* ruling.  Ford responds to each Versata MIL separately below.

### 1.    Versata MIL #1: References to foreigners, outsourcing, and unpronounceable names

Versata Motion in limine ("MIL") No. 1 seeks to preclude Ford from introducing the undisputed fact that, when Versata downsized its operations in the United States, it outsourced support and development for the at-issue ACM and MCA software (including the alleged trade secrets) to dozens of foreign entities and individuals with whom Versata lacks any confidentiality agreement.   The Court should deny MIL #1.

Versata admits it has "employed at least 100 developers through the development of the software."  (Dkt. #355-5 [Ford MSJ Ex. 16, Versata's 11/21/17 Supp. Answer to Ford Int. No. 28].)   Versata's expert confirmed that "about a hundred developers that over the years have worked on ACM."  (Dkt. #354-9 [Ford MSJ Ex. 8, Malek Dep. Tr. at p. 45].)  Versata has produced approximately a dozen confidentiality agreements in connection with its relevant employees and third-party contractors.  The record in this case, however, demonstrates that there



1

are at least *160* Versata employees and third-party contractors who have had access to the ACM/MCA software and documentation for which Versata has *not* produced any confidentiality agreement.  (Dkt. #355-6 [Ford MSJ Ex. 17, Nikkila Decl., ¶¶2-4, attaching F.R.E. 1006 Summary].)

Versata hired third-party contractors located in foreign countries including Ukraine, United Arab Emirates, and India, including "gTeam," "DevFactory," "gDev" and "SoftServe" and various foreign individuals.  (*Id.*, ¶¶5-8.)  Versata has not provided, and its corporate representative is unaware of, any confidentiality agreements between Versata and its various third-party contractors who worked on ACM/MCA.  (Dkt. #355-9 [Ford MSJ Ex. 20, Krauss Dep. Tr., pp. 91].)

The fact that Versata downsized in the United States and outsourced access to alleged trade secrets to foreign entities without confidentiality obligations to Versata is directly relevant to rebut Versata's assertion under the Michigan Trade Secrets Act that it has undertaken "efforts that are reasonable under the circumstances to maintain [] secrecy."  MCL § 445.1902, *see also Rainbow Nails Enterprises, Inc. v. Maybelline, Inc.*, 93 F.Supp.2d 808, 827 (E.D. Mich. 2000) (Rosen, J.) (summary judgment where purported trade secret was disclosed to 39 entities allegedly subject to confidentiality obligations, but where only 6 such agreements were produced); *Rogers v. Desa Internat'l, Inc.*, 183 F.Supp.2d 955, 956-958 (E.D. Mich. 2002) (summary judgment where plaintiff allowed



individuals to access invention without confidentiality agreements); *BDT Prod's, Inc. v. Lexmark Int'l*, 274 F.Supp.2d 880, 895-896 (E.D. Ky. 2003) (summary judgment where alleged confidentiality agreement cannot be found); Milgrim on Trade Secrets, §1.03 Rel. 116-12/2017 ("disclosure of information to third parties without adequate confidentiality arrangements extinguishes the trade secret"). Clearly, the *absence* of confidentiality agreement with individuals whom had access to the alleged trade secrets is relevant and admissible.

The fact that these entities are located outside the United States and were outsourced as a result of Versata's domestic downsizing are some of the key "circumstances" the Michigan Trade Secrets Act *requires* the fact finder to consider.  MCL § 445.1902.  Because these individuals are subject to *foreign* laws enforceable only in their *domestic* courts, it was even less "reasonable" for Versata to disclose the alleged "trade secret" ACM software to them without obtaining confidentiality agreements pursuant to their country's laws and enforceable in their country's courts.

In addition, Versata's outsourcing access to the alleged trade secrets to many foreign entities and individuals without confidentiality obligations to Versata is relevant to rebut Versata's assertion that it operated under a "culture of protection." (Dkt. #429 at 8.)   These are relevant and admissible facts to rebut Versata's



3

assertion that it has taken steps that are reasonable "under the circumstances" to maintain secrecy.  MCL § 445.1902.

The two cases Versata cites, *Dyson Tech.* and *Ben-Trei Overseas*, are not trade secrets cases and did not involve granting foreign entities access to alleged trade secrets without any confidentiality obligations to the trade secret owner.

*Ben-Trie Overseas* concerned the last paragraph of an expert report containing a general "condemnation of foreign companies" who purportedly "do business differently than American companies."  *Ben-Trei Overseas, L.L.C. v. Gerdau Ameristeel US, Inc.*, No. 09-CV-153-TCK-TLW, 2010 WL 1541641, *6-7 (N.D. Okla. Apr. 16, 2010).  *Ben-Trei Overseas* is inapposite as Ford makes no such attacks in this case.

*Dyson Tech* provides no context for the witness' "foreigner" status, holding only that it had "marginal probative value" to the issues in that case.  *Dyson Tech. Ltd. v. Maytag Corp.*, No. CIV.A. 05-434GMS, 2007 WL 6599027, *2 (D. Del. May 25, 2007).  Ford, in contrast, has explained in detail the relevance of the fact that Versata provided multiple foreign entities with unfettered access to the alleged trade secrets without a confidentiality agreement, much less one that was enforceable in the countries in which the entities reside.



4

Versata separately requests that Ford not describe an individual's name as being difficult to pronounce.  Ford agrees not to do so.  With the exception of that agreement, the Court should deny MIL #1.

## 2.    Versata MIL #2: Previously asserted causes of action, dismissed and abandoned claims

### a.    Versata's shifting trade secret theories

Versata wants to prevent Ford from introducing the fact that **(1)** when Versata allegedly disclosed the "combination" trade secrets to Ford, Versata did not tell Ford that the combinations were a trade secret, and **(2)** that Versata's trade secret theories have shifted substantially over the course of the litigation, revealing that even Versata did not know what its trade secrets were.

Both facts are highly relevant to Versata's trade secret claim.  *See Big Vision Private v. EI DuPont De Nemours & Co.*, 1 F.Supp.3d 224, 248-250 and 263-266 (S.D.N.Y. 2014) (granting summary judgment due to Big Vision's failure to identify its trade secrets at the time of disclosure and its shifting trade secret positions during litigation), *aff'd*, 610 Fed. Appx. 69 (2d Cir. 2015).

In *Big Vision*, the court surveyed trade secret law, which holds that particularity in defining a trade secret is required ***both*** (i) at the time of disclosure, ***and*** (ii) throughout litigation.  *Id.* at 256.  The court explained "requirement of particularity exists for the simple reason that a defendant must know what



5

constitutes a plaintiff's trade secret, so that it does not infringe upon that trade secret and so that the defendant can defend itself at any trial." *Id.* at 257. The court noted, "each Circuit Court of Appeals to have opined on this issue has required a comparable degree of specificity." *Id.* at 258-259.

The court cataloged Big Vision's shifting trade secret disclosures—in its pleadings, its discovery disclosures, and in its expert report—to show that, at different times, the alleged trade secrets comprised varying combinations of elements. *Id.* at 248-251. The court granted summary judgment in DuPont's favor because Big Vision did not describe the final version of the alleged trade secret with particularity "at the time of the disclosure." *Id.* at 259-262. The Court also held that Big Vision's shifting theories during litigation compelled summary judgment in DuPont's favor:

> Perhaps because Big Vision did not define its trade secret with sufficient particularity at the time of disclosure, it has similarly struggled to define it with sufficient particularity throughout the litigation. It does not require a chemistry degree to realize that the putative trade secret has differed meaningfully and materially throughout the litigation.

*Id.* at 263.

*Big Vision* makes clear that *what* a plaintiff identifies as its trade secret, and *when* those identifications are made, are both relevant to liability for misappropriation—especially where the scope of the alleged trade secrets have changed over time. Like Big Vision, Versata (**1**) never told Ford that the purported



6

"combination" trade secrets were secrets comprising specific elements when first disclosed to Ford, and **(2)** substantially changed the descriptions of its trade secret over the course of this litigation.

The following chart summarizes Versata's evolving trade secret disclosures.

| Date | # of Alleged Secrets | Disclosure |
|---|---|---|
| 2000-2014 | 0 | *No disclosure* to Ford that ACM/MCA contains any trade secret "combinations" |
| December 31, 2015 | 14 | Versata's Disclosure of Asserted Claims and Infringement Contentions (Dkt. #359-6) |
| February 1, 2016 | 14 | Versata's Amended Trade Secret Contentions (Dkt. #260-6) |
| July 18, 2016 | 12 | Versata's Motion for Preliminary Injunction (Dkt. #128) |
| February 28, 2017 | 29 | Versata's Supplemental Amended Trade Secret Contentions (Dkt. #568-8) |
| June 20, 2017 | 27 | Versata's Second Supplemental Amended Trade Secret Contentions (Dkt. #421-9) |
| August 17, 2017 | 31 | Versata's Opening Trade Secret Expert Report (Dkt. #568-9) |
| Feb. 1, 2019 | 4 | Versata's Response to Ford's Motion to Exclude Krauss (Dkt. #605, p. 13) |
| March 6, 2019 | 4 | Versata's Response to Ford's Second Motion for Reconsideration (Dkt. #628) |

Versata's counsel expressly acknowledged the increased "risk" Versata faced in establishing liability due to its shift to a "combination" trade secret theory in 2019:



> MR. MITBY:  Well, let me -- let me explain it because I think you're focusing on ***a risk that Versata is taking and a risk that we thought about a lot***, that if we don't prove that they misappropriated all the elements of a trade secret, that we can't prove liability and we can't get damages.  And that is absolutely right.

(Ex. 1, 6/10/19 Hrg. Tr. at p. 66.)

Versata's failure to tell Ford that the "combinations" were trade secrets when they were purportedly disclosed to Ford, and Versata's continuously shifting disclosures in the litigation, cannot be disputed.  These facts are highly relevant to Versata's ability to establish liability for misappropriation.

Versata's shifting positions on the identity of its alleged trade secrets is also highly relevant to Versata's assertion that Ford's alleged misappropriation was "willful and malicious."  (Dkt. #244, Counterclaim at p. 66, ¶165.)  Versata seeks "double the amount of damages and losses" as a result of Ford's alleged "willful and malicious" misappropriation pursuant to 18 U.S.C. § 1836(b)(3).  (*Id.*, pp. 78-79.)  How can Ford have willfully infringed trade secret "combinations" that it did not know about and Versata did not identify until long after the close of discovery in this case?   The absence, timing, and shifting of Versata's trade secret contentions is directly relevant to Versata's willfulness claim.

Versata cites no authority prohibiting a defendant from presenting the jury with the trade secret owner's shifting and contrary descriptions of its trade secrets.  The only case Versata cites concerning trade secret disclosures, *CardiAQ Valve*



8

*Techs., Inc. v. Neovasc Inc.*, 2016 WL 8203206, at *1 (D. Mass. Apr. 25, 2016), held "Neovasc ***can***[1] contest, question and challenge the accuracy of CardiAQ's written list of alleged trade secret claims." In other words, *CardiAQ Valve* undermines Versata's position that its trade secret disclosures are inadmissible at trial.

For these reasons, the court should deny Versata's request to exclude the fact that its trade secret disclosures changed throughout the litigation.

### b. Versata's dismissed or abandoned claims

Unless Versata opens the door on the issue, Ford has no intention of introducing the fact that some of Versata's prior claims have been dismissed or abandoned. *See Fannon v. Johnston*, 88 F.Supp.2d 753, 763 (E.D. Mich. 2000) (once a party "has opened the door, and testimony of both a general and specific nature may be elicited to provide a complete picture of the subject raised"); *Elledge v. Bacharach Instruments Co.,* Nos. 91-1931/1952, 1992 U.S. App. LEXIS 20762, at * 6-7 (6th Cir. Aug. 25, 1992) ("the introduction of inadmissible evidence by one party opens the door for an opponent to introduce evidence on the same issue to rebut any false impression that was given").

An issue over Versata's copyright claim arises because, despite the Court dismissing Versata's copyright claim on the merits, Versata intends to assert at trial

---

[1] Unless otherwise indicated, Ford added all emphasis.



that Ford "copied" aspects of the ACM/MCA software.  (Versata Am. MIL, p. 6.)
As Ford explained in Ford MIL #1, courts generally prohibit use of the term
"copying" and other pejorative terms such as "stealing.  *See Finjan, Inc. v. Blue
Coat Sys.*, No. 13-CV-3999, 2015 U.S. Dist. LEXIS 88760, at *6 (N.D. Cal. July 8,
2015); *Plew v. Ltd. Brands, Inc.*, Case No. 08 Civ. 3741 (LTS)(MHD), 2012 U.S.
Dist. LEXIS 14966, at *6 (S.D.N.Y. Feb. 6, 2012); *Eidos Display, LLC v. Chi Mei
Innolux Corp.*, Case No. 6:11-CV-00201-JRG, 2017 U.S. Dist. LEXIS 157062, at
*7 (E.D. Tex. May 26, 2017).

Versata cites *Mike's Train House, Inc. v. Lionel, LLC*, 472 F.3d 398, 404
(6th Cir. 2006) to support Versata's use of the term "copying" to support its trade
secret claim.  But in that case, the defendant "copied design drawings for MTH
trains onto computer disks" and "admitted to copying."  *Id.*  In the present case, in
contrast, it is undisputed that Ford's replacement PDO software does not include a
single line of code from Versata's ACM/MCA software.  Versata has no evidence
of "copying" in this case, and its use of that term at trial is unfairly prejudicial—
especially in view of the Court's dismissal of Versata's copyright claim.  (Dkt.
#601, Summary Judgment Order.)

If Versata refrains from alleging at trial that Ford "copied" or "stole"
Versata's ACM/MCA software, Ford will not introduce the Court's order
dismissing Versata's copyright claim on the merits.  But if Versata opens the door



10

and uses such pejorative and improper terms over Ford's objection here, and Ford's objection in MIL #1, Ford should be permitted to introduce the Court's substantive dismissal of Versata's copyright claim. *See Fannon*, 88 F.Supp.2d at 763.

In addition, Ford will address—consistent with the Court's two Exclusion Orders—the fact that Mr. Krauss did not properly carve-out Versata's non-asserted intellectual property, including its non-asserted, abandoned, and dismissed patents, and its dismissed copyrights. In doing so, and unless Versata opens the door, Ford's experts will not introduce the fact that a particular Versata patent or copyright was previously-asserted, abandoned or dismissed—just that Krauss did not properly carve them out of his apportionment analysis.

### 3. Versata MIL #3: Parties' claim construction arguments and "reasoning" from the Court's claim construction Orders

MIL #3 seeks to preclude Ford from introducing "claim construction positions, evidence, or arguments advocated by the parties" and the Court's "reasoning" set forth in its claim construction Orders. (Versata Am. MIL, pp. 6-7.)

Versata's motion is an improper attempt to avoid the Court's findings in its claim construction order which flatly *reject* Versata's infringement theory on, at least, the asserted '308 and '294 patents.



11

In its claim construction Order, the Court held "[i]t may be fair to conclude that the '651 patent describes an invention having a maintenance system and a configuration system *fulfilling distinct roles*."[2] (Dkt. #181, Report and Recommendation at 11, adopted "in its entirety" at Dkt. #317.) The Court's Order noted Versata's *admission* that "[t]here is no dispute that the *maintenance system* 'is used to *define a product*,' while the *configuration system* 'is used to *configure a system using a definition* created by the maintenance system.'" (*Id.* at 10.) These statements draw an important legal distinction between product "definition" on the one hand, and product "configuration" on the other—two *different* functions.

For example, ignoring these distinctions, Versata's expert (Dr. Malek) improperly asserts that "product definition" features of Ford's PDO software satisfy "product configuration" limitations of the asserted claims of the '308/'294 patents. Ford's technical expert explained that Dr. Malek's infringement opinions on the '308 and '294 patents are contrary to the Court's claim construction Order. (Ex. 2, Myers Patent Inf. Rebuttal, ¶¶63-70, 77-79.)

To the extent Dr. Malek opens the door and introduces improper infringement theories that are contrary to the Court's findings in its claim construction ruling(s), the Court should permit Ford to introduce the relevant

---

[2] Although Versata is no longer asserting the '651 patent against Ford in this litigation, it is the parent patent to both the '308 and '294 patents with which it shares a specification. Accordingly, the Court's holdings with respect to the described invention of the '651 patent apply equally to the '308 and '294 patents.



aspects of those rulings into evidence to rebut Dr. Malek's assertions. *See Fannon*, 88 F.Supp.2d at 763. Versata appears to agree that, in the event it presents evidence or argument at trial that is contrary to the "reasoning" set forth in the Court's claim construction rulings, Ford may bring that issue to the Court's attention at the bench and outside the presence of the jury. (Versata Am. MIL, p. 8.) Ford agrees with this approach.

**4.    Versata MIL #4: Comparison of Ford software to prior art with respect to Versata's patent infringement claims**

MIL #4 seeks to preclude Ford from asserting non-infringement of Versata's patents by comparing Ford's accused PDO software to the prior art. (Versata Am. MIL, p. 8.) The Court should deny Versata's motion at the threshold because the motion is not specific as to the particular evidence or assertions Versata is concerned about. *See Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) ("Orders *in limine* which exclude broad categories of evidence should rarely be employed."); *AWGI, LLC. v. Atlas Trucking Co., LLC*, No. 17-12131, 2019 U.S. Dist. LEXIS 222203, at *12 (E.D. Mich. Dec. 30, 2019) (denying the movant's motion *in limine* because it failed to identify any specific evidence it sought to exclude.).[3]

---

[3] It would be improper for Versata to introduce new arguments and evidence for the first time in its reply brief. *See Lipian v. Univ. of Mich.*, No. 18-13321, 2020 U.S. Dist. LEXIS 41935, at *8 (E.D. Mich. Mar. 11, 2020).



The Court should deny Versata's motion for additional reasons as well. ***First***, the asserted patents expressly describe prior art when introducing the purported inventions. For example, each asserted patent includes a "Background of the Invention" and "Background Art" section explaining the context in which the purported inventions arise. (Ex. 3, *e.g.*, '308 patent, col. 1, lines 7-62.) This information is relevant background information for each asserted patent. There is no basis for excluding it; it is already *in evidence* as part of the patents. Versata cites no authority for excluding descriptions of prior art expressly stated in the patent specifications.

***Second***, Ford's patent and trade secret experts have identified prior art software in their reports that is directly relevant to *other* issues in the case, such as Ford's patent invalidity counterclaims, and Ford's rebuttal to Versata's trade secret claims, as set forth in the relevant expert reports. Versata does not address these other claims and defenses in MIL #4. Thus, evidence of Ford's prior art software remains both relevant and admissible at trial.

For these reasons, the Court should deny MIL #4.

## 5.   Versata MIL #5: Ford's alleged implementation of any design-arounds or non-infringing alternatives

MIL #5 seeks to prevent Ford from introducing the fact that Ford successfully tested the commercially available "Configit" software to prove that



14

Configit was an acceptable low-cost alternative to the at-issue ACM/PDO software. The court should deny MIL #5 because these facts are directly relevant to the damages issues this case. Configit is more capable than, and costs much less than, the ACM software for which Versata charged Ford ▮▮▮▮ annually. The Federal Circuit has long recognized the relevance of available non-infringing alternatives in determining a "reasonable royalty" for alleged infringement. *See Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1347 (Fed. Cir. 1999); *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002) ("The economic relationship between the patented method and non-infringing alternative methods, of necessity, would limit the hypothetical negotiation.").

Ford disclosed Configit as a non-infringing alternative throughout discovery. As Versata acknowledges, Ford disclosed Configit in its original and supplemental interrogatory responses. (Versata Am. MIL, p. 9, Exs. B and E.) Ford produced demonstrations of Configit in discovery, and hundreds of pages of communications between Ford and Configit concerning Ford's evaluation and testing of the software. Ford attaches representative examples of these documents at Exhibit 4. Ford's damages expert disclosed Configit, its pricing, and its relevance to the damages issues, in her October 26, *2017* rebuttal damages report. (Ex. 5 at 65-70.) She also explained that Jaguar Land-Rover had successfully implemented Configit



15

(coincidentally to replace Versata's "End of Life" ACM software). *Id.* Similarly, Ford's technical expert explained in his expert report that the commercially available Configit software did not practice any of Versata's patents asserted against Ford. (Ex. 2, Myers Patent Inf. Rebuttal, pp. 156-168.) The commercial availability and commercial success of Configit reveals that, at the time of the "hypothetical negotiation" in this case, ACM was dramatically over-priced.

Versata requests that the Court prevent Ford from asserting that Ford "actually implemented" Configit because, according to Versata, "Ford has never disclosed that it actually implemented any of these alternatives, including Configit." (Versata Am. MIL, p. 9.) But Ford disclosed to Versata the evidence that it had, in fact, implemented Configit software and confirmed that the software could meet the demands of even Ford's most complex vehicles—something Versata's ACM software could *never* do. For example, the 2017 "PDO Compile Prototype" specification prepared by Ford and Configit expressly defines and details multiple phases of Ford's integration of Configit's configuration software. (Ex. 6, FV_129978-130001.) Additionally, Ford produced numerous workshop agendas and related notes along with multiple rounds of software pricing proposals and negotiations underlying the joint Ford-Configit work. (*See, e.g.,* Ex. 4 at FV_129324-38, FV_129780-81, and FV_127056-66.) In addition to producing these and many other documents describing Ford's installation and testing of



Configit software, Ford also identified a representative set of such documents in its responses to Interrogatory Nos. 18 and 38.

Moreover, in May 2017, Versata questioned Ford's 30(b)(6) witness Michael Sullivan about Ford's relationship with Configit, which was just beginning at that time.  (Ex. 7, Sullivan 5/25/17 Dep. Tr. at 264-65, 269-70, and 275-76.)  Mr. Sullivan confirmed both that Configit's software appeared to provide a viable alternative to PDO and that Ford was "plan[ning] on pursuing Configit." (*Id.*)  More than a year later, Versata served a second 30(b)(6) deposition notice. Versata's notice included three topics expressly relating to Ford's implementation and analysis of non-infringing alternatives.  (Ex. 8, Topic Nos. 32-34.)  Although Ford prepared its 30(b)(6) witness extensively on these issues—including Ford's continued work with Configit—Versata's counsel did not ask any questions relating to Configit or any other non-infringing alternatives Ford identified.

Ford has the right to present its evidence of Configit as a non-infringing alternative to the jury in this case.  *Riles*, 298 F.3d at 1312.  Ford disclosed its implementation of Configit throughout discovery and Versata largely ignored it.

For these reasons, the Court should deny MIL #5.



17

6.   **Versata MIL #6: Assertion that Ford cannot infringe Versata's intellectual property merely because Ford has its own patents**

MIL #6 seeks to exclude references to Ford patents for all patent and trade secret issues. Versata asserts that Ford's patents are irrelevant "to the infringement analysis with respect to Versata's asserted patents" and "to Versata's trade secret misappropriation claims." (Versata Am. MIL, p. 11.)[4]  None of the three cases Versata cites support this MIL—and one confirms that Ford may use its patents to rebut Versata's allegations of "copying" and willful infringement.

Versata asserts that *Two-Way Media LLC v. AT&T Operations, Inc.*, No. 5:09-cv-476-OLG (Dkt. #501) (W.D. Tex. Feb. 27, 2013) granted an "identical motion in limine with respect to patent infringement." (*Id.*)  That decision, however, merely lists several dozen MILs by number, without explanation or discussion.  (Ex. 9.)  Versata does not identify which of the MILs purportedly relates to this issue, let alone explain how it is "identical" to Versata's MIL #6.

Likewise, *Metaswitch Networks Ltd. v. Genband US LLC*, 2016 WL 3618831 at *2, No. 2:14-cv-744 (E.D. Tex. March 1, 2016) does not support Versata's MIL #6.  There, the parties "agreed" to exclude evidence "that practicing

---

[4] Versata also asserts that Ford's patents "are indisputably different than the Versata patents at issue in this case." (Versata Am. MIL, p. 11.)  Ford is not certain what Versata means by "different than" in this context.  Ford's patents cover its accused PDO software and Versata asserts that *its* patents cover Ford's PDO software.  Because both sets of patents cover the same software, Ford's patents are *not* "different than the Versata patents at issue in this case."



18

a party's own patent or patent application is a defense to infringement." *Id.* ("Agreed Motion in Limine No. 15"). The Court did not discuss or analyze the issue.

Only one of Versata's cases analyzes the issue, and it supports Ford's use of its patents to defend against Versata's baseless allegations of "copying" and willfulness. *Retractable Techs., Inc. v. Becton, Dickenson & Co.*, No. 2:07–CV–250 (Dkt. #262) at 13 (E.D. Tex. Oct. 8, 2009) (Ex. 10). Like Versata here, the plaintiff in *Retractable Techs.* "claimed that BD has 'copied' RTI's technology." *Id.* (Dkt #261, p. 3) (Ex. 11.) Like the defendant in *Retractable Techs.*, Ford contends that it developed its software independently and did not copy.

Affirming that the defendant could use its patents for this purpose, the Court held, "Defendants should be allowed to present evidence of independent development to rebut allegations that Defendant willfully infringed or that Defendant copied Plaintiffs' technology." *Id.* (Dkt #262, p. 13) It also held, "evidence of Defendant's development efforts and intellectual property, including patents, may be relevant to a reasonable royalty analysis." *Id.* The Court said it would give a limiting instruction that owning or licensing patents "is not a defense to infringement in this case." *Id.*

Another case Versata cites, albeit in connection with MIL #2, holds that evidence of a defendant's patents on to the accused technology is relevant and



19

admissible to "show lack of malicious theft of trade secrets." *VIA Techs., Inc. v. ASUS Computer Int'l*, 2017 WL 3051048, *1 (N.D. Cal. July 19, 2017). Thus, two of the cases Versata cites undermine Versata's requested exclusion.

Other cases are consistent with the cases Versata cited—allowing evidence of a defendant's patents to rebut claims of willful infringement and copying. *See Hoist Fitness Sys. v. Tuffstuff Fitness Int'l, Inc.*, No. ED CV 17-01388-AB, 2019 U.S. Dist. LEXIS 209987, at *3-4 (C.D. Cal. Aug. 27, 2019) (denying plaintiff's Motion *in limine* to exclude defendant's patents to as evidence of independent development and to rebut plaintiff's claims of willful infringement); *Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*, No. 09-290, 2012 U.S. Dist. LEXIS 157335, at *7 (W.D. Pa. Nov. 2, 2012) (finding the evidence regarding defendant's patents relevant to several issues including alleged copying and willfulness).

Versata cites no case supporting its requested exclusion. Ford should be allowed to present its evidence of independent development, including its work before contracting with Versata and its patents obtained afterward, to rebut Versata's allegations of copying and willful infringement.

For these reasons, the Court should deny MIL #6.



**7.      Versata MIL #7: Ford patents, including any suggestion
that a patent or patent application is a defense to
infringement, except to the extent that Ford's experts or
Versata's experts have specifically asserted that a Ford
patent discloses a Versata trade secret**

MIL #7 is a subset of MIL #6.  MIL #7 asks for the relief of MIL #6 with an

exception to allow a party to present "Ford patents . . . to the jury if a party has

directly relied on a Ford patent as disclosing an asserted trade secret."  (Versata

Am. MIL, p. 14.)  This MIL is unnecessary because MIL #6 resolves this issue and

because Ford does not seek to exclude any Versata expert from asserting that a

Ford patent discloses an asserted trade secret if raised in an expert report.

For these reasons, the Court should deny MIL #7.

**8.      Versata MIL #8: Versata's current agreements or
negotiations with automotive companies other than
Ford**

MIL #8 seeks to prevent Ford introducing relevant facts that undermine

positions Versata's damages experts have taken in this case.  The Court should

deny MIL #8.

In their October 9, 2018 joint expert report, Versata's damages experts

(Bokhart and Elson) asserted that Versata's ACM license with ███████ is a

"market indicator" of the "reasonable royalty" the jury should award for Ford's

alleged misappropriation of trade secrets and patent infringement.  (Ex. 12, pp. 36-



37.) At that time, Versata's relationship with ███████ was, from Versata's perspective, both relevant and admissible.

Today, Versata's ACM license with ███████ is expiring and ███████ has no apparent intention of renewing the license. ███████ has publicly announced its conversion to "Configit," a lower-cost and commercially available alternative to ACM addressed in Ford's response to MIL #5 above. Ford's technical and damages experts have extensively addressed Configit as a viable and lower-cost alternative to (and improvement over) ACM. Configit is relevant to the "reasonable royalty" in this case. *See Grain Processing*, 185 F.3d at 1347; *Riles*, 298 F.3d at 1312.

Versata seeks to prevent Ford from introducing the fact that ███████ ███████, a fact that undermines Bokhart's and Elson's assertions that Versata's license with ███████ is a "market indicator" of a reasonable royalty in this case. From Ford's perspective, ███████ unwillingness to renew the ACM license corroborates Versata's statement to Ford that the ACM software is "End of Life" and was "Redlining"—statements Versata is attempting to distance itself from in this case. Also, the fact that Versata has tried, but failed, to license ACM to others is directly relevant to the determination of a reasonable royalty under the well-established *Georgia–Pacific* factors, specifically Factor No. 8: "The established profitability of the product made under



22

the patent; *its commercial success*; and *its current popularity*." *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *mod. and aff'd*, 446 F.2d 295 (2d Cir. 1971).

The facts surrounding Versata's current "negotiations" with ███████ are directly relevant to the damages issue, as Versata's experts have already indicated. It would be unfair to permit Versata's damages experts to introduce Versata's ACM license with ███████ as evidence of damages but prevent Ford from introducing the fact that ███████ is dissatisfied with ACM, is not renewing the ACM license, and is transitioning to the lower-cost and more reliable alternative that Ford's experts have identified in their respective reports as an acceptable non-infringing alternative.

For these reasons, the Court should deny MIL #8.

Respectfully submitted,

Dated: __March 26, 2020__    By: /s/ John S. LeRoy _____
John S. LeRoy (P61964)
Thomas A. Lewry (P36399)
Christopher C. Smith (P73936)
Jonathan D. Nikkila (P75666)
1000 Town Center, 22nd Floor
Southfield, MI 48075
Tel.: 248-358-4400 / Fax: 248-358-3351
jleroy@brookskushman.com
tlewry@brookskushman.com
csmith@brookskushman.com
jnikkila@brookskushman.com



James P. Feeney (P13335)
**DYKEMA GOSSETT PLLC**
39577 Woodward Ave, Suite 300
Bloomfield Hills, MI 48304
Ph: 248-203-0841
jfeeney@dykema.com

*Attorneys for Plaintiff, Ford Motor
Company*



## <u>CERTIFICATE OF ELECTRONIC SERVICE</u>

I hereby certify that on <u>March 26, 2020</u>, I electronically filed an ■**REDACTED CONFIDENTIAL** copy of **FORD MOTOR COMPANY'S OBJECTIONS TO VERSATA'S AMENDED OMNIBUS MOTIONS IN LIMINE** and all **Exhibits in Support** with the Clerk of the Court using the ECF System's SEALED DOCUMENT EVENT which will send notification to all registered participants of the ECF System. I have also submitted paper copies of all sealed documents via electronic means to counsel using the following information:

---

*Counsel for Defendants:*
*Versata Software, Inc., f/k/a Trilogy Software, Inc., Trilogy Development Group, Inc. and Trilogy, Inc.*

AZA-Versata-Ford@AZALAW.COM
(which includes all the ECF Registered users listed above)

---

/s/ John S. LeRoy
John S. LeRoy (P61964)
**BROOKS KUSHMAN P.C.**

*Attorneys for Plaintiff*

