**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**Ford Motor Company,**

Plaintiff/
Counter-Defendant,

v.

**Versata Software, Inc., f/k/a Trilogy Software, Inc., Trilogy Development Group, Inc. and Trilogy, Inc.,**

Defendants/
Counter-Plaintiffs.

**Case No. 15-10628-MFL-EAS**
***(consolidated with Case No. 15-cv-11624)***

**Hon. Matthew F. Leitman**

**JURY TRIAL DEMANDED**

# FORD MOTOR COMPANY'S REPLY BRIEF IN SUPPORT OF ITS AMENDED MOTIONS *IN LIMINE*





# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

A. Ford MIL 1: The Court should exclude evidence and argument disparaging Ford or characterizing Ford using pejoratives, *e.g.*, asserting that Ford "copied" or "stole" Versata software ........ 1

B. Ford MIL 2: The Court should exclude evidence and argument concerning irrelevant Ford payments to Versata ........ 3

Ford MIL 3: The Court should exclude evidence and argument concerning Versata software other than ACM/MCA ........ 3

C. Ford MIL 4: The Court should exclude evidence and argument concerning ownership of Ford's data ........ 5

D. Ford MIL 5: The Court should exclude evidence and argument concerning Ford's IPR and CBM petitions ........ 5

Ford MIL 7: The Court should exclude evidence and argument that Ford breached the 2002 SSA ........ 5

E. Ford MIL 6: The Court should exclude evidence and argument that Ford improperly hired Paul Seiler ........ 7

F. Ford MIL 8: The Court should exclude evidence and argument regarding the filing under seal and service of Ford's complaint ........ 8

G. Ford MIL 9: The Court should exclude evidence and argument regarding interpretation of the Master Subscription and Services Agreement (MSSA) ........ 9

H. Ford MIL 10: The Court should exclude evidence and argument regarding hypothetical "right" vs. "wrong" ........ 10

I. Ford MIL 11: The Court should exclude evidence and argument regarding Ford's alleged "benefits" from using the ACM/MCA software ........ 11



J. Ford MIL 12: The Court should exclude evidence and argument regarding Dr. Malek's Excluded October 2018 Declaration ..............12

K. Ford MIL 13: The Court should exclude evidence and argument regarding "Jim Padilla" and related articles.......................................13

L. Ford MIL 14: The Court should exclude evidence and argument regarding Versata's excluded third-party licenses..............................14



# TABLE OF AUTHORITIES

## Cases

*Huawei Techs. Co., Ltd. v. Yiren Huang*, Case No. 4:17-CV-00893, 2019 U.S. Dist. Lexis 78765 (E.D. Tex. May 9, 2019) .................................. 2

*In re Garrido*, 646 Fed. Appx. 942 (Fed. Cir. 2016) .................................................... 1

*Siporin v. Adler*, 364 Mich. 549 (1961) ..................................................................... 6

*Teen-Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399 (3rd Cir. 1980) .................................................... 10

*Torres v. County of Oakland*, 758 F.2d 147 (6th Cir. 1985) .................................................... 10

*Warsaw Ortho. Inc, v. Nuvasive, Inc.*, 778 F.3d 1365 (Fed. Cir. 2015) .................................................... 4

## Rules

F.R.E. 402 ........................................................ 7, 8, 9, 15
F.R.E. 403 ........................................................ 7, 8, 9, 13, 15
F.R.E. 408 ........................................................ 9
F.R.E. 801 ........................................................ 12

Fed. R. Civ. P. 4 ........................................................ 8



### A. Ford MIL 1: The Court should exclude evidence and argument disparaging Ford or characterizing Ford using pejoratives, *e.g.*, asserting that Ford "copied" or "stole" Versata software

Versata reads Ford's motion *in limine* too broadly. Ford's motion does not prevent Versata from comparing aspects of PDOR1 to ACM to support its trade secret misappropriation and patent infringement claims. Ford's motion seeks only to preclude Versata from asserting that Ford "copied" because the Court dismissed Versata's copyright claim concluding at the summary judgment stage that Versata lacked evidence that Ford copied. (Dkt. #601.) Permitting Versata to re-argue "copying" at trial will confuse the jury and unfairly prejudice Ford. As Ford explained in its opening brief, many courts exclude the use of terms such as "copying" for that reason.

Versata's claims of "non-obviousness" and "willful" patent infringement do not make dismissed allegations of "copying" admissible. For non-obviousness, Versata's Dr. Shamos asserts there is a "strong inference of copying." (Ex. K, Shamos Report, at ¶¶104-107, 278.) But Dr. Shamos: (1) did not take into account the Court's dismissal of Versata's copyright claim (where reasonable "inferences" were resolved in Versata's favor), and (2) has not attempted to demonstrate the required "nexus between the copying and the novel aspects of the claimed invention." *In re Garrido*, 646 Fed. Appx. 942, 944 (Fed. Cir. 2016). Dr. Shamos' conclusory copying assertion is thus both legally and factually unfounded. Versata



similarly fails to connect its (dismissed) copying allegations to the claimed inventions underlying Versata's willful patent infringement assertions. The Court should not permit Versata to rely on improper expert opinion to introduce unnecessary pejorative terms contrary to the Court's summary judgment order. (Dkt. #601.)

Versata cites a single case—*Huawei*[1]—arguing it would be "absurd" to "force Versata to prove theft of trade secrets without using the word 'theft.'" (Versata Rsp. at 4.) But *Huawei* did not involve a dismissed copyright claim or co-pending patent infringement claims. (Ex. L, *Huawei* Second Amended Complaint.) And the correct word is "misappropriation," not "theft." "Theft" implies criminal activity, which is neither alleged nor present here. The trade secret statute mentions neither "copying" nor theft. Allowing Versata to label Ford a copier, or worse, will lead to jury confusion—not present in *Huawei*—about whether copyright claims remain in this case and whether Ford infringes Versata's patents.

Versata should not reference "copying," "stealing," etc. at trial. But if Versata is allowed to use such terms, or if Versata opens the door on the issue, the Court should permit Ford to tell the jury that the Court found that Versata failed to prove copying and dismissed Versata's copyright claim.

[1] *Huawei Techs. Co., Ltd. v. Yiren Huang*, Case No. 4:17-CV-00893, 2019 U.S. Dist. Lexis 78765 (E.D. Tex. May 9, 2018).



**B. Ford MIL 2: The Court should exclude evidence and argument concerning irrelevant Ford payments to Versata**

**Ford MIL 3: The Court should exclude evidence and argument concerning Versata software other than ACM/MCA**

Again, Versata reads Ford's motions *in limine* too broadly. Ford's motions concerning irrelevant payments and irrelevant software do not prevent Versata from "tell[ing] the jury about its extensive software experience" as Versata claims. (Versata Rsp. at 5.) Versata may present evidence and testimony regarding its *relevant* software including its pre-ACM/MCA product definition software. (Motion at 9.) Accordingly, Ford's motions do not prevent Versata from presenting evidence of the origin and ownership of the trade secrets. (*See* Versata Rsp. at 5.)

Versata's desire to present evidence and testimony regarding irrelevant software such as Retail Config—including Ford's payments for such software—highlights Ford's concern: if allowed to expand beyond relevant software and payments, Versata's trial presentation will confuse the jury regarding the scope of the alleged misappropriation and may improperly inflate Versata's claim for damages beyond the parties' licensing history for the at-issue ACM/MCA software. Additionally, Versata's introduction of such evidence will extend the length of trial, forcing Ford to present rebuttal witnesses and evidence concerning software and payments not at issue in this case.



Versata's response also refers to its contract and business relationship with [redacted] As detailed in Ford's MIL No. 14, the Court should exclude evidence and argument regarding such third-party licenses to avoid confusion given the long licensing history between the parties in this case. Versata's license with [redacted]—involves different license fees and contractual obligations, all of which the parties would have to address extending trial and risking jury confusion.[2]

Finally, Versata's sole legal basis for introducing irrelevant software payments at trial relies on the damages theory of "convoyed sales under Georgia Pacific factor number 6" (Versata Rsp. at 7)—a newly concocted damages theory Versata has ***never disclosed*** despite its various discovery obligations to do so. Elson/Bokhart's single paragraph analysis of "Georgia Pacific factor number 6" does not mention, let alone discuss, "convoyed sales." (Ex. M, Elson/Bokhart Supp. Rpt., ¶172.) To obtain "convoyed sales" damages, a patent holder must prove that the other ***non-patented*** products sold are "functionally related" to the patented device and lack "use independent of the patented device." *See, e.g.*, *Warsaw Ortho. Inc, v. Nuvasive, Inc.*, 778 F.3d 1365, 1375 (Fed. Cir. 2015). Because Versata and its experts have never disclosed this damages theory, they

---

[2] As explained in greater detail below, if Versata is permitted to introduce evidence regarding its [redacted], Ford intends to present the full scope of Versata's relationship with [redacted] [redacted].



have failed to establish the required nexus between the ACM/MCA software at issue and *other* software. The Court should exclude this irrelevant damages theory.

### C. Ford MIL 4: The Court should exclude evidence and argument concerning ownership of Ford's data

Versata does not appear to dispute that Ford owns its vehicle definition data stored in ACM/MCA. Ford seeks only to prevent Versata from asserting that "*it owns or has any proprietary rights to*" Ford's vehicle definition data. (Motion at 10, emphasis added.) This limitation is appropriate given that there is neither a contractual nor factual basis for such an assertion, which is contrary the terms of the MSSA. Ford's ownership of its vehicle definition data is relevant to rebut Versata's "reverse engineering" claim. There is no basis for Versata to allege—contrary to the at-issue agreements—that it has some undisclosed ownership interest in, or proprietary rights to, Ford's vehicle data in ACM/MCA.

### D. Ford MIL 5: The Court should exclude evidence and argument concerning Ford's IPR and CBM petitions

### Ford MIL 7: The Court should exclude evidence and argument that Ford breached the 2002 SSA

Versata contends that Ford's IPR and CBM petitions are relevant to Versata's claim that Ford breached the 2002 SSA. But, as Ford established in its opening brief for MIL 7, Versata admitted that "[t]he MSSA superseded all the



previous software agreements between Ford and Versata relating to ACM, MCA." (Dkt. #371, at 7.)

Despite its own admissions, Versata now claims it did not concede the MSSA superseded the SSA in "all respects." But Versata's contention is contrary to the MSSA itself, which states that the MSSA "supersede[s] ***all proposals and prior discussions and writings between the parties with respect thereto***." (Dkt. #418-13, at §13.10.) Because both the 2002 SSA and the 2004 MSSA control software licensing between Ford and Versata (including the at-issue ACM software), the 2004 MSSA supersedes the 2002 SSA. Indeed, Versata has not complied with the 2002 SSA since the 2004 MSSA came into existence—that was the whole point of the 2004 MSSA. In any event, the Court must resolve which contract governs ***before*** the contract claims go to the jury. *See Siporin v. Adler*, 364 Mich. 549, 552 (1961).

Even if the Court decides the 2002 SSA is not superseded, the only relevance of the IPRs and CBMs is the fact that Ford filed them, allegedly breaching the 2002 SSA. (Dkt. #244, at ¶159 (Versata counterclaim: "Ford materially breached these provisions by ***filing*** Inter Partes Review petitions"). Ford's IPR and CBM petitions were denied for ***procedural*** reasons. As such, the U.S. Patent and Trademark Office ("USPTO") never addressed the validity of Versata's patents. Introducing evidence that Ford's petitions were denied will



likely confuse the jury into believing that the USPTO determined Versata's patents are valid.

Thus, Ford's petitions are irrelevant under F.R.E. 402 because the 2002 SSA has been superseded, and the USPTO's refusal to take up Ford's petitions on the merits is more prejudicial than probative under F.R.E. 403.

### E. Ford MIL 6: The Court should exclude evidence and argument that Ford improperly hired Paul Seiler

Although Versata agrees that Ford's decision to hire Mr. Seiler was *not* improper (Versata Rsp. at 11), Versata intends to confuse the jury by linking Mr. Seiler's work at Ford in connection with PDO ***R2*** with Versata's trade secret misappropriation claims against PDO ***R1***. But Versata voluntarily dropped its claims against PDO R2 in August 2019, making Mr. Seiler irrelevant. (Dkt. #691.) Versata agreed at that time that it "will not make any claim, assertion or argument directed to PDO "R2" at trial. *Id.* [REDACTED] (Ex. D, Seiler Dep. Tr. at 291:5-9; 293:2-3; 321:19-20; Ex. E, Sullivan Dep. Tr. at 239:6-7, 21-24.)

Despite claims now made in its brief, neither Versata's disclosures nor its experts' reports previously asserted that Mr. Seiler had any role in Ford's alleged trade secret misappropriation. Dr. Malek's trade secret expert report fails to identify Mr. Seiler as having a role in the alleged misappropriation of any asserted



trade secret and none of Versata's trade secret misappropriation disclosures mention Mr. Seiler.

Because Versata expressly authorized Ford's hiring of Mr. Seiler (Ex. C at VRS00850770), and because he was not involved in the design or development of PDO R1, the Court should not permit Versata to state or imply to the jury that it was improper for Ford to hire Mr. Seiler. Such testimony is irrelevant under F.R.E. 402 and more prejudicial than probative under F.R.E. 403.

### F. Ford MIL 8: The Court should exclude evidence and argument regarding the filing under seal and service of Ford's complaint

Versata agrees not to reference Ford's filing of the Complaint under seal—resolving that dispute. (Versata Rsp. at 12.) However, Versata continues to insist that the time it took Ford to serve the Complaint is relevant and admissible. ***First***, Ford formally served the Complaint well within the 90 days allowed under the Civil Rules. *See* Fed. R. Civ. P. 4. Ford followed the rules; permitting this evidence will only confuse the jury into thinking Ford did not follow the rules. And, the day after Ford filed the Complaint, Ford sent a copy to Versata as a courtesy. (Dkt. #55 at 5, 11.) Versata could have answered the Complaint if it had wanted the case to proceed immediately.

***Second***, the record refutes Versata's unsupported theory. Without evidence, Versata asserts that Ford delayed service of the complaint as part of some "master scheme to copy Versata's intellectual property without any legal consequences."



(Versata Rsp. at 12, 13.) But Ford launched PDO R1 in December 2014—***before*** filing its Complaint in February 2015. (Dkt. #1.) Ford did not delay service of its complaint "to copy Versata's intellectual property" as Versata alleges. On the contrary, the parties were engaging in F.R.E. 408 discussions. (Dkt. #55, at 5, 11-12.) Allowing Versata to use the alleged "delay" against Ford is contrary to the Federal statute controlling service and would undermine a party's willingness to engage in F.R.E. 408 discussions before serving a complaint contrary to public policy. The alleged delay is thus not relevant to any claim or defense in the case and is certainly more prejudicial than probative. F.R.E. 402, 403.

Versata's request that Ford not tell the jury that Ford filed suit in order to vindicate its rights is unfounded and contrary to the Declaratory Judgment Act. As the Court already determined, Ford properly filed this case in Michigan where Ford resides and where the alleged wrongdoing took place. (Dkt. #55.)

### G. Ford MIL 9: The Court should exclude evidence and argument regarding interpretation of the Master Subscription and Services Agreement (MSSA)

Ford's motion *in limine* seeks only to exclude fact witness testimony regarding the ***interpretation*** of the provisions of the MSSA (and other contracts)—not testimony regarding the contract's existence or the circumstances of its enaction and extension. As demonstrated by the examples provided in the motion, Ford seeks to preclude Versata's questioning of fact witnesses concerning the legal



interpretation of contracts between Ford and Versata. Versata's deposition questioning indicates, for example, an intention to ask Ford witnesses at trial hypotheticals about what was, and was not, permitted under the terms of the parties' various contracts. Such questioning is improper as contract interpretation is a legal function for the Court, not the jury.

With respect to the Court's denial of Versata's "reverse engineering" summary judgment claim, Ford's motion would not extend to the interpretation of relevant contract terms should the Court determine that there is an appropriate role for the jury in interpreting the relevant terms.[3]

### H. Ford MIL 10: The Court should exclude evidence and argument regarding hypothetical "right" vs. "wrong"

Versata conflates presenting witnesses' ***fact*** testimony concerning at-issue ***liability*** questions with unqualified lay ***opinion*** testimony on ***legal*** issues. The former is appropriate, the latter is not. *See Teen-Ed, Inc. v. Kimball Int'l, Inc.*, 620 F.2d 399, 404 (3rd Cir. 1980); *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985).

[3] While the Court's Summary Judgment ruling describes the "reverse engineering" clause as ambiguous (Dkt. 534 at 7-8), it is unclear whether the Court has made the additional determinations necessary for application of the parol evidence rule or the conditions for presenting that issue to the jury.



## I. Ford MIL 11: The Court should exclude evidence and argument regarding Ford's alleged "benefits" from using the ACM/MCA software

Versata's response is limited to generalities regarding "benefits" of ACM/MCA and ignores the specific basis underlying Ford's motion *in limine*. Versata cannot proceed at trial in a manner that is fundamentally at odds with legal precedent and this Court's rulings regarding damages. It is clear from Versata's trial exhibit list that it intends to admit into evidence, for example, Versata-created documents purporting to estimate the benefits to Ford at ██████████ (Motion Ex. A) and ███████████████ (Motion Ex. B). The introduction of these documents and/or similar evidence purporting to disclose the "benefits" provided to Ford is inconsistent with the Court's unambiguous rulings excluding Versata's damages theories "based upon the value of benefits Ford obtained by using Versata's software." (*See*, *e.g.*, Dkt. #507 at 26, n.7.)

And, again, such documents and other evidence suffer the same core defects they did when Ford first moved to exclude Versata's damages analysis: (1) most are over a decade out-of-date; (2) they do not reflect the parties' licensing history; (3) they are not linked or otherwise apportioned to the asserted trade secrets or patents; (4) some do not even relate to the at-issue software; and (5) none address savings that ACM/MCA actually achieved or could have achieved. (*See* Dkt. #347 at pp. 21-23.)



### J. Ford MIL 12: The Court should exclude evidence and argument regarding Dr. Malek's Excluded October 2018 Declaration

Malek's declaration is directed solely to information about ***cost savings***, which is used only as an input into ***Elson's scenarios 2 and 3***; scenarios that remain ***excluded*** in the Court's recent reconsideration Order. (Ex. N, Malek Dec., at ¶¶4, 47; Ex. M, Elson/Bokhart Supp. Rpt., at 73-77; Dkt. #724 at 41.) Thus, Malek's declaration should remain excluded.

Versata incorrectly asserts that Malek's declaration is relevant to Elson's Scenario 1. Versata cites a block of 10 pages, but those 10 pages relate to the now-excluded "cost approach" to calculating damages. Instead, Elson's Scenario 1 reasonable royalty was calculated using a "market approach" based on the parties' licensing history. (*See, e.g.*, Ex. O, Bokhart 11/13/18 Dep. at 46:17-48:18.)

Even if Malek's declaration were somehow relevant to Scenario 1, the Court should exclude it for the independent reasons set forth in Ford's motion to exclude Malek's declaration. (Dkt. #578 and #617.) In its original *Daubert* rulings, the Court did not address Ford's independent bases for excluding Malek's declaration because the Court excluded Elson's report in its entirety. (Dkt. #678 at 33.) But if the Court is going to revisit Malek's declaration, it should likewise revisit Ford's motion to exclude. Finally, Malek's declaration itself is impermissible hearsay under F.R.E. 801.



### K. Ford MIL 13: The Court should exclude evidence and argument regarding "Jim Padilla" and related articles

Versata posits, without explanation or elaboration, that these articles "are relevant to prove Versata's trade secrets claims" because they "constitute [] evidence" that the trade secrets possess independent economic value under Michigan law. (Versata Rsp. at 21.) But Versata has volumes of admissible evidence to support the alleged "independent economic value" of the asserted trade secrets. The Jim Padilla articles are inadmissible for multiple reasons.

***First***, as Ford explained in its motion, the Jim Padilla articles are further examples of the outdated "benefits" documents the Court already excluded in this case.

Second, Versata asserts that "POM" referenced in the articles is "a suite of products" that included ACM. (Versata Rsp. at 22.) Versata does not dispute (i) that POM includes *additional* software that is not at issue in the case, and (ii) that none of the articles mention, let alone apportion, value to *any* asserted trade secret. The articles thus reference large figures without the required apportionment, and no expert has apportioned the figures. Consistent with the concerns the Court has already addressed in its various exclusion orders, the Jim Padilla articles overstate the license value that the parties already bargained for with respect to the at-issue software. Admitting the articles is thus contrary to the Court's prior exclusion orders and is more prejudicial than probative. F.R.E. 403.



## L. Ford MIL 14: The Court should exclude evidence and argument regarding Versata's excluded third-party licenses

Versata opposes this motion *in limine* on the basis that its third-party licenses, while admittedly "not relevant to the value of ACM / MCA software," are allegedly relevant to "Versata's expertise in configuration software" and "why Ford chose Versata to solve its configuration problems." (Versata Rsp. at 22-23.) Versata cites neither authority nor evidence to support those assertions.

Versata does not address the licenses raised in Ford's motion [redacted] or the specific objections Ford raised with respect to their presentation to the jury.[4] Versata does not dispute that the [redacted] are unrelated to the at-issue ACM/MCA software, and the Court already excluded testimony about them. (Dkt. #507 at 12-13.) Versata also does not dispute that the [redacted] include different terms and fees than those set forth in the relevant Ford licenses.

---

[4] As noted above in connection with MILs 2 and 3, Versata separately argues that its business and licensing relationship [redacted] is relevant in part because it "rebuts Ford's allegations that ACM is problematic software." (Versata Rsp. at 6.) While Ford continues to oppose the introduction of third-party licenses into evidence, if Versata is permitted to introduce evidence regarding its business relationship [redacted], Ford will present additional witnesses and evidence at trial concerning that relationship—including evidence relating to [redacted].



The Court should exclude these third-party licenses as they are not relevant to any claim or defense under Rule 402 and they more prejudicial than probative under Rule 403.

Respectfully submitted,

Dated: April 9, 2020

By: /s/ John S. LeRoy
John S. LeRoy (P61964)
Thomas A. Lewry (P36399)
Christopher C. Smith (P)
Jonathan D. Nikkila (P75666)
1000 Town Center, 22nd Floor
Southfield, MI 48075
Tel.: 248-358-4400 / Fax: 248-358-3351
jleroy@brookskushman.com
tlewry@brookskushman.com
csmith@brookskushman.com
jnikkila@brookskushman.com

James P. Feeney (P13335)
**DYKEMA GOSSETT PLLC**
39577 Woodward Ave, Suite 300
Bloomfield Hills, MI 48304
Ph: 248-203-0841
jfeeney@dykema.com

*Attorneys for Plaintiff, Ford Motor Company*



## CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify that on April 9, 2020, I electronically filed an UNREDACTED CONFIDENTIAL copy of **FORD'S REPLY BRIEF IN SUPPORT OF ITS AMENDED MOTIONS *IN LIMINE*** and all **Exhibits in Support** with the Clerk of the Court using the ECF System's SEALED DOCUMENT EVENT which will send notification to all registered participants of the ECF System. I have also submitted paper copies of all sealed documents via electronic means to counsel using the following information:

> *Counsel for Defendants:*
> *Versata Software, Inc., f/k/a Trilogy Software, Inc., Trilogy Development Group, Inc. and Trilogy, Inc.*
>
> AZA-Versata-Ford@AZALAW.COM
> (which includes all the ECF Registered users)

/s/ John S. LeRoy
John S. LeRoy (P61964)
**BROOKS KUSHMAN P.C.**

*Attorneys for Plaintiff*

