### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| **Ford Motor Company,** | **Case No. 15-10628-MFL-EAS** |
| Plaintiff/ | *(consolidated with Case No. 15-cv-11624)* |
| Counter-Defendant, | |
| **v.** | **Hon. Matthew F. Leitman** |
| **Versata Software, Inc., f/k/a Trilogy Software, Inc., Trilogy Development Group, Inc. and Trilogy, Inc.,** | **JURY TRIAL DEMANDED** |
| Defendants/ | |
| Counter-Plaintiffs. | |

# FORD MOTOR COMPANY'S MOTION TO ADJOURN REBUTTAL EXPERT REPORTS AND SUBSEQUENT CASE DEADLINES



## <u>CONCISE STATEMENT OF ISSUE PRESENTED</u>

1.      Should the Court adjourn Ford's rebuttal expert reports for 60 days after Michigan's Governor lifts her "stay home" orders so that the necessary Ford employees, experts and counsel can work collaboratively together to perform the complex "apportionment" analysis necessary for Ford's rebuttal expert reports on the damages issue.  It is neither practical nor secure for the necessary individuals to perform the software apportionment remotely, and the adjournment will cause no harm to Versata.

Ford answers: **Yes**.



i

## **TABLE OF CONTENTS**

CONCISE STATEMENT OF ISSUE PRESENTED ............................................. i

TABLE OF AUTHORITIES ............................................................ iv

MOTION ............................................................................. 1

BRIEF IN SUPPORT OF MOTION ................................................... 1

I.      INTRODUCTION .......................................................... 1

II.     FACTUAL BACKGROUND ............................................... 3

        A.      COVID-19 created an unprecedented disruption nationally and
                in Michigan............................................................ 3

        B.      COVID-19 has materially disrupted the operations of Ford and
                its outside counsel.................................................... 5

        C.      Ford did what it could to move the case along in compliance
                with the Governor's stay-home order............................ 7

        D.      Versata did not object to Ford's proposal to suspend all "other
                items lacking an immediate deadline" until after the Governor's
                stay-home order(s) expire ......................................... 7

III.    ARGUMENT .................................................................. 8

        A.      Good cause exists for adjourning rebuttal expert reports until 60
                days following termination of the Governor's stay-home order ......... 8

                1.      Ford cannot practically conduct the rebuttal
                        apportionment analysis remotely in compliance with the
                        Governor's stay-home order ............................ 10

                2.      This Court and other courts have adjourned expert report
                        deadlines in view of COVID-19 and the Governor's
                        orders.......................................................... 13



B.  Versata will not be prejudiced by a short delay necessary to enable Ford to perform the apportionment and prepare rebuttal expert reports .......................................................................14

1.  Versata's actions have significantly delayed this case............ 14

2.  Neither Ford nor Versata are competing in the market with their respective software ................................................. 15

IV.  CONCLUSION .........................................................................................16



## <u>TABLE OF AUTHORITIES</u>

### Cases

*Alioto v. Town of Lisbon*,
    651 F.3d 715 (7th Cir. 2011) ......................................................................... 9

*Copeland v. Sadler et al.*,
    Case No. 19-cv-13404, Dkt. #16 (E.D. Mich. April 24, 2020) ...................13

*Elsherif v. Mayo Clinic*,
    2020 WL 1441959, *1 (D. Minn. Mar. 24, 2020).......................................13

*Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*,
    831 F.3d 815 (7th Cir. 2016) ......................................................................... 9

*Family Trust v. John Hancock Life Ins. Co.*,
    424 Fed. Appx. 377 (5th Cir. 2011) ............................................................ 8

*Fitzpatrick v. Bridgestone Retail Operations, LLC*,
    Case No. 1:18-cv-12576, Dkt. #59 (E.D. Mich. April 22, 2020) ................13

*Jackson-El v. City of Markham*,
    332 F.R.D. 583 (N.D. Ill. 2019) ................................................................... 9

*Johnson v. Mammoth Recreations, Inc.*,
    975 F.2d 604, 609 (9th Cir. 1992) ............................................................... 9

*Meaux Surface Protection, Inc. v. Fogleman*,
    607 F.3d 161 (5th Cir. 2010)......................................................................... 9

*Weidman v. Ford Motor Company*,
    Case No. 2:18-cv-12719, Dkt. #67 (E.D. Mich. April 15, 2020) ................13



## Other Authorities

MCL 10.33 ................................................................................................. 5

MCL 30.405 ............................................................................................... 5

## Rules

Fed. R. Civ. P. 16........................................................................................ 8



v

## MOTION

For the reasons set forth below in the accompanying Brief in Support, Ford Motor Company ("Ford") moves for an order adjourning its rebuttal expert report deadline, and subsequent case deadlines, until 60 days after Michigan's Governor lifts her executive "stay-home" orders.

Pursuant to Local Rule 7.1(a), counsel for Ford and counsel for Defendants (collectively "Versata") held a conference during which Ford explained the nature of the motion and the relief sought.  Versata did not concur.

## BRIEF IN SUPPORT OF MOTION

## I.     INTRODUCTION

Ford moves for an order adjourning its rebuttal expert report deadline, and subsequent case deadlines, until 60 days after Michigan's Governor lifts her executive stay-home orders.  This will provide Ford's relevant software developers, Ford's technical and damages experts, and Ford's counsel, the time necessary to perform the complex "software apportionment" required by law and this Court's prior exclusion orders on apportionment and damages.  Since vacating the last-entered case calendar (Dkt. #706), the Court set trial for October 6, 2020 but not pretrial calendar has been entered.



With over 4,300 confirmed deaths due to COVID-19, Michigan is among the hardest hit regions in America.  Michigan is in a state of emergency and Ford's relevant fact and expert witnesses, and counsel, remain subject to the Governor's stay-home orders through May and possibly June.  While Ford has attempted to do what it can in this case remotely, without in-person collaboration in violation of the Governor's orders, Ford is unable, as a practical matter, to effectively perform the software apportionment necessary for its rebuttal expert reports.  Ford's rebuttal analysis requires the combined and parallel input of Ford software developers, technical experts, and outside counsel to jointly sift through tens of thousands of lines of computer source code and software functions to "apportion" the software and functions relevant to Versata's various *trade secret* claims, from: (i) the software and functions relevant to Versata's *asserted patent* claims, (ii) the software relevant to Versata's *dropped patent* claims, (iii) *open-source* software third-parties developed, and (iv) the software and functions Versata *does not make a claim against*.  It is not practically possible to perform this complex and time-consuming exercise on an individual basis or remotely through a "portal."

In addition, the online collaboration portals, such as "WebEx" and "Zoom," have had published security vulnerabilities in which uninvited strangers could gain access to "private" online collaboration sessions.  Consistent with the source code



provisions of the parties' *stipulated* Protective Order (Dkt. #102, §10), Ford is not comfortable placing its proprietary computer source code online in these portals.

Versata was not hamstrung by a pandemic or stay-home orders, and was not forced to place its software online in an unsecure environment, when it prepared *two separate rounds* of expert reports. Had Versata's expert reports not been excluded (twice), this case would have been tried in July 2018 or November 2019.

Versata will suffer no prejudice from the requested adjournment because neither Versata, nor Ford, are marketing the at-issue software. Ford uses its accused software only internally and subject to confidentiality restrictions. Indeed, Versata did not oppose Ford's proposal *in March* to adjourn pretrial dates until after Michigan's Governor lifts her stay-home order.

For these reasons, and as explained in more detail below, Ford requests an order adjourning rebuttal expert reports, and subsequent case deadlines, until 60 days after the Michigan Governor lifts her executive stay-home orders.

## II.    FACTUAL BACKGROUND

### A.    COVID-19 created an unprecedented disruption nationally and in Michigan

The World Health Organization declared COVID-19 a global pandemic, emphasizing it is "not just a public health crisis[;] it is a crisis that will touch every



3

sector."[1]  As of May 6, 2020, the WHO reported 1,171,185 confirmed cases in the U.S.  *Id.*  On March 13, 2020, President Trump proclaimed that the COVID-19 outbreak constitutes a national emergency.[2]  President Trump also announced that the United States, Canada, and Mexico have closed their borders to nonessential travel.[3]  Furthermore, the State Department issued a Global Level 4 Health Advisory – "Do Not Travel," recommending United States citizens avoid global travel and advised that the United States has closed its borders to such travel by international visitors.[4]

As of May 7, 2020, Michigan had nearly 45,000 confirmed COVID-19 cases and over 4,300 confirmed deaths due to the virus.[5]  Michigan's Governor has recognized that the virus brought "deep disruption to this state's economy, homes, and educational, civic, social, and religious institutions."  (Executive Order 2020-42.)  On March 23, 2020, the Governor issued a statewide stay-home order, restricting non-essential business operations. (Executive Order 2020-21.)  The

---

[1]  *See*  https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020

[2]  *See*  https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ .

[3] *See* https://www.nytimes.com/article/coronavirus-travel-restrictions.html.

[4]  *See*  https://travel.state.gov/content/travel/en/traveladvisories/ea/travel-advisory-alert-global-level-4-health-advisory-issue.html.

[5]  *See*  https://www.google.com/search?q=united+states+covid+19+map&rlz=1C1GCEA_enUS900US900&oq=united+states+covi&aqs=chrome.2.69i57j0l7.4543j0j4&sourceid=chrome&ie=UTF-8



Governor issued her most recent stay-home order on May 7, 2020, which extends through May 28, 2020.  (Executive Order No. 2020-77.)  The Governor's order states, subject to exceptions, which do not apply to relevant witnesses in this case, that "all individuals currently living within the State of Michigan are ordered to stay at home or at their place of residence," and that "all public and private gatherings of any number of people occurring among persons not part of a single household are prohibited."  *Id.,* ¶2.  The order additionally prohibits "operat[ing] a business or conduct[ing] operations that require workers to leave their homes or places of residence except to the extent that those workers are necessary to sustain or protect life."  *Id.,* ¶4.  Willful violations of the Governor's order are punishable as a misdemeanor under MCL 10.33 and MCL 30.405(3).  *Id.,* ¶20.

**B.      COVID-19 has materially disrupted the operations of Ford and its outside counsel**

Many businesses, including Ford and the law firms representing Ford, have implemented efforts to help prevent the spread of COVID-19, including instituting travel bans, prohibiting visitors at business facilities, and moving to a remote workforce.

Ford's U.S. plants, and many of its non-U.S. plants, have suspended production and much of Ford's workforce has been ordered to work from home,



with only essential workers reporting to work.[6]  While the Governor is permitting[7] certain manufacturing plants to begin "pre-production work" next week as part of a "phased-in reengagement," there is no indication that the Ford employees relevant to this case (*i.e.*, Ford IT professionals and counsel), will be permitted to return to work during the COVID-19 pandemic and state of emergency.

Remote operation of Ford's relevant business, and of Ford's outside counsel in this case, creates significant and unprecedented obstacles to conducting the in-depth work necessary for Ford's rebuttal expert reports.  For example, Brooks Kushman and Dykema have closed their physical workplaces and no return date has been set.  All schools in Michigan have closed, as have all recreational activities, leaving school-age children at home through the end of the school year and beyond.  Like many Ford employees, some of Ford's counsel have children at home who currently require homeschooling during business hours, who create nearly continuous distractions (talking, screaming, laughing, crying, playing musical instruments, fighting, etc.), and who compete for Internet access during business hours to access and complete their online schoolwork.  It is exceptionally

---

[6]       https://media.ford.com/content/fordmedia/fna/us/en/news/2020/03/13/ford-coronavirus-statement.html

[7]       https://www.cnbc.com/2020/05/07/michigan-governor-to-allow-states-auto-manufacturing-to-reopen-monday.html



difficult to perform complex technical and legal work under these circumstances for any prolonged period of time.

## C. Ford did what it could to move the case along in compliance with the Governor's stay-home order

On February 27, 2020, the Court set a briefing schedule on amendments to motions *in limine* that the parties previously filed in August 2019. (Dkt. #684, #686, #726.5.) Ford filed its amended motions before the Governor's first stay-home order entered March 23, 2020, and Ford's work on its response brief was also largely complete before the order. Similarly, Ford filed its reply brief surrounding its objection to the Special Master's R&R on claim construction for the '080 Patent. Claim construction is a legal issue.

Because replies in support of Ford's *in limine* and claim construction motions were limited in scope and did not require input from Ford fact witnesses or Ford's technical or damages experts, Ford's outside counsel was able to complete them from home in compliance with the Governor's stay-home order.

## D. Versata did not object to Ford's proposal to suspend all "other items lacking an immediate deadline" until after the Governor's stay-home order(s) expire

While Ford was able to complete the briefing on the *in limine* motions and claim construction, Ford informed Versata of its intention to pick-up all "other items lacking an immediate deadline . . . after Michigan's governor lifts her lock-



7

down order." (Exhibit A, 3/26/2020 email from LeRoy to Krajewski.) Versata did not object to Ford's proposal. (*Id.* 3/26/2020 email from Mitby to LeRoy.) But more than a month later, Versata reversed course stating that "it is essential to finalize a scheduling order." (Exhibit B, 5/1/2020 email from Mitby to LeRoy.)

Versata's reversal has forced Ford to promptly file this motion to ensure the health and safety of its employees and representatives, and to ensure compliance with the Governor's stay-home orders.

### III.   ARGUMENT

**A.    Good cause exists for adjourning rebuttal expert reports until 60 days following termination of the Governor's stay-home order**

A scheduling order issued under Rule 16 may be modified for good cause. *See* Fed. R. Civ. P. 16(b)(4). "The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Family Trust v. John Hancock Life Ins. Co.*, 424 Fed. Appx. 377, 381 (5th Cir. 2011) (internal quotations and citation omitted). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.' Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment)." *Johnson v.*



*Mammoth Recreations, Inc*., 975 F.2d 604, 609 (9th Cir. 1992) (additional citations omitted).

Generally, courts have found good cause for the requested extension where the parties have diligently attempted to meet the deadline, and their anticipated inability to do so is through no fault of their own.  *See e.g. Jackson-El v. City of Markham*, 332 F.R.D. 583 (N.D. Ill. 2019) (*citing Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 832 (7th Cir. 2016) (good cause requirement for modification of schedule is "a standard that 'primarily considers the diligence of the party seeking amendment.'"); *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011) ("In making a Rule 16 (b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment.").  Whether to allow an amendment to a scheduling order, a court considers: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010) (citations omitted).



### 1. Ford cannot practically conduct the rebuttal apportionment analysis remotely in compliance with the Governor's stay-home order

The next deadline in this case concerns Ford's rebuttal to the software "apportionment" analysis that Versata's Seth Krauss performed, and the related damages calculations that Versata experts Elson and Bokhart performed on the asserted trade secrets and patents, respectively.  Versata proposes that Ford complete that complex rebuttal analysis by June 15, 2020.  But for several reasons, Ford cannot practically perform the rebuttal apportionment and damages analysis remotely, and still comply with the Governor's order, to meet Versata's proposed deadline.

***First***, the necessary apportionment requires the parallel participation of (i) Ford software developers familiar with the various aspects of the at-issue software comprising tens of thousands of lines of code, (ii) Ford's technical and damages experts who must understand and ultimately adopt the apportionments, and (iii) Ford's outside counsel familiar with the asserted trade secrets, the law of apportionment and damages, as well as the Court's two orders setting parameters on the apportionment and damages determinations in this particular case.  These individuals must collaboratively review thousands of lines of computer source code to apportion software and functions that are relevant to Versata's ever-evolving *trade secret* claims from: (i) the software and functions relevant to



10

Versata's *asserted patent* claims, (ii) the software relevant to Versata's *dropped patent* claims, (iii) open-source software that *third-parties* developed, and (iv) the software and functions in the accused software that Versata *did not make a claim against*. Each participant in this process needs the others' input and participation to collectively make the necessary apportionment determinations and damages calculations. It is not possible, as a practical matter, to do this complex analysis remotely through a small "portal" in which the code cannot effectively be reviewed or compared to the myriad alleged trade secret elements and "combinations."

> ***Second***, Ford is concerned about sharing its proprietary source code in

online meeting rooms. Indeed, Versata *stipulated* to a Protective Order in which:

> access to a Party's Source Code Material shall be provided only on "stand-alone" computer(s) (that is, the computer may not be linked to any network, including a local area network ("LAN"), an intranet or the Internet).

(Dkt. #102, Section 10(a).) Versata required Ford to strictly adhere to these provisions while reviewing *Versata's* software. But in demanding that Ford perform its apportionment rebuttal "remotely" while the Governor's stay-home order is in place, Versata is unconcerned about protecting to *Ford's* software.

In addition, the most popular video conferencing utilities, such as "Zoom" and "WebEx," have suffered from significant security vulnerabilities. In late January 2020, WebEx fixed a "high-severity" vulnerability in its video conferencing platform, after it was discovered that strangers could access



11

password-protected meetings without authentication.[8] On April 23, 2020, Zoom announced a "90-day" plan to improve security and privacy on the platform and address "an onslaught of security concerns surrounding the service."[9] This case is thus only *two weeks* into Zoom's "90-day" plan to improve security. Ford is not comfortable presenting the proprietary source code at issue in this case through these online collaboration portals.

***Finally***, the identity and scope of Versata's asserted trade secrets have been a moving target. Versata has described its alleged trade secrets very differently at different stages and times of this case. Most recently, long after the close of discovery, Versata shifted from an individual trade secret theory (with over 20 individual secrets) to a four "combination" trade secret theory where each combination includes various "elements," many of which Versata admits are well-known. To meaningfully perform the apportionment analysis, Versata's shifting positions must be addressed and reconciled in real-time with Ford's technical expert and relevant software developers as the at-issue software is reviewed. This is separate layer of complexity making the apportionment and rebuttal damages analysis practically impossible to perform remotely through a "portal."

---

[8] https://www.siliconrepublic.com/enterprise/cisco-resolves-security-vulnerability-webex and https://tools.cisco.com/security/center/content/CiscoSecurityAdvisory/cisco-sa-20200124-webex-unauthjoin

[9] https://www.theguardian.com/technology/2020/apr/23/zoom-update-security-encryption-bombing



**2.    This Court and other courts have adjourned expert report deadlines in view of COVID-19 and the Governor's orders**

In recent weeks, judges in this district (and elsewhere) have adjourned expert report deadlines, and other pretrial deadlines, in view of COVID-19.   In *Weidman v. Ford*, for example, Judge Drain extended discovery deadlines into July, and expert reports to January 2021.  *See Weidman v. Ford Motor Company*, Case No. 2:18-cv-12719, Dkt. #67 (E.D. Mich. April 15, 2020).  Judge Goldsmith recently extended a discovery calendar setting August 6, 2020 for disclosure of expert reports.  *See Copeland v. Sadler et al.*, Case No. 19-cv-13404, Dkt. #16 (E.D. Mich. April 24, 2020).  Judge Ludington recently extended a pretrial calendar, setting July 21, 2020 for disclosure of expert reports (for a trial set for September 22, 2020).  *See Fitzpatrick v. Bridgestone Retail Operations, LLC*, Case No. 1:18-cv-12576, Dkt. #59 (E.D. Mich. April 22, 2020).

Other courts have issued opinions and guidance recognizing that given the unprecedented pandemic situation, civil litigation often cannot, and should not, proceed under schedules set before the pandemic, and that extensions of deadlines are justified and may be required to serve the best interests of the parties.  *See Elsherif v. Mayo Clinic*, 2020 WL 1441959, *1 (D. Minn. Mar. 24, 2020) ("It is essential that all Minnesotans work together to slow the spread of this terrible pandemic.  In addition, counsel and litigants need to be patient and understanding



with one another, and they should work cooperatively to adjust schedules as needed.").

**B.     Versata will not be prejudiced by a short delay necessary to enable Ford to perform the apportionment and prepare rebuttal expert reports**

Versata will not be prejudiced by the short delay necessary to enable Ford's developers, expert and counsel to perform the software apportionment in person following expiration of the Governor's stay-home order.

### 1.     Versata's actions have significantly delayed this case

This case was originally set for trial on ***July 24, 2018***.  (Dkt. #295.)  The Court adjourned that trial date when (1) the Court excluded Versata's original damages expert reports seeking windfall damages over $1.4 billion (Dkt. #507), and (2) Versata introduced claims against PDO "R2" causing the parties to, in the Court's words, "take a timeout [for] full blown discovery on R2" (Dkt. #444 at 120).[10]

Versata served a second round of damages expert reports, but the Court excluded those as well.  (Dkt. 678.)  The Court set a new trial date of ***November 5,***

---

[10] A full year later, following a separate round of fact and expert discovery and Ford's motion for summary judgment, Versata withdrew its claims against Ford's "R2" software.  (Dkt. #691.)



*2019* (Dkt. #675) but adjourned that date to reconsider its earlier exclusion orders. (Dkt. #706.)

Had Versata not made windfall damages claims, and had Versata not pursued unfounded claims against Ford's "R2" software, this case would have proceeded to trial in July 2018 or in November 2019. Versata's assertion today that Ford must perform the apportionment and rebuttal work remotely during the COVID-19 pandemic, in a hamstrung manner, is unfounded.

### 2. Neither Ford nor Versata are competing in the market with their respective software

No harm is caused to Versata by a short extension of the case pending COVID-19 and compliance with the Governor's orders because neither party is marketing the at-issue software or competing for market share. Versata declared its ACM and MCA software "End of Life" in early 2011 – nearly 10 years ago. (Dkt. #354 at 5-6.) Versata is no longer actively marketing its ACM or MCA software to customers. Similarly, Ford uses its accused PDO software only internally and subject to confidentiality restrictions.

For these reasons, a short delay of the calendar in this case in the wake of COVID-19 and the Governor's stay-home orders will not prejudice Versata.



## IV.    CONCLUSION

For the above reasons, Ford moves for an order adjourning rebuttal expert reports, and subsequent case deadlines, until 60 days after Michigan's Governor lifts her executive stay-home orders.

Respectfully submitted,

Dated:  May 8, 2020

By: /s/ John S. LeRoy
John S. LeRoy (P61964)
Thomas A. Lewry (P36399)
Frank A. Angileri (P45611)
Chanille Carswell (P53754)
Jonathan D. Nikkila (P75666)
1000 Town Center, 22nd Floor
Southfield, MI  48075
Tel.: 248-358-4400 / Fax: 248-358-3351
jleroy@brookskushman.com
tlewry@brookskushman.com
fangileri@brookskushman.com
ccarswell@brookskushman.com
jnikkila@brookskushman.com

James P. Feeney (P13335)
**DYKEMA GOSSETT PLLC**
39577 Woodward Ave, Suite 300
Bloomfield Hills, MI 48304
Ph: 248-203-0841
jfeeney@dykema.com

*Attorneys for Plaintiff, Ford Motor Company*

