# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**Ford Motor Company,**

      Plaintiff/
      Counter-Defendant,

v.

**Versata Software, Inc., f/k/a Trilogy Software, Inc., Trilogy Development Group, Inc. and Trilogy, Inc.,**

      Defendants/
      Counter-Plaintiffs**.**

**Case No. 15-10628-MFL-EAS**
*(consolidated with Case No. 15-cv-11624)*

**Hon. Matthew F. Leitman**

**JURY TRIAL DEMANDED**

---

# FORD MOTOR COMPANY'S MOTION TO COMPEL IDENTITY OF ASSERTED "COMBINATION" TRADE SECRETS



# REDACTED PUBLIC VERSION



## **CONCISE STATEMENT OF ISSUES PRESENTED**

1. Should the Court require Versata to specifically identify the elements of its four asserted "combination" trade secrets where:

   a. Versata, as the party asserting "combination" trade secrets, knows, and has the legal obligation to disclose with specificity, the elements of each asserted combination;

   b. Liability and damages hinge on the specific elements of the asserted trade secret combinations;

   c. Versata directed Ford to over 550 pages of materials that do *not* specify the specific elements of the four asserted combinations;

   d. Versata's technical expert admitted that several aspects of his trade secret expert report are *not* asserted trade secrets; and

   e. Because no trial date has been set, Versata will suffer no prejudice from making this required disclosure?

Ford answers: Yes.

2. Should the Court allow Ford to serve its rebuttal damages and technical expert reports addressing Versata's four "combination" trade secrets where:

   a. The Court and Versata have agreed that Ford can serve a rebuttal damages expert report;

   b. The Court required a technical "apportionment" of damages to correspond with each asserted trade secret;

   c. Ford's technical expert cannot perform the apportionment without knowing the specific elements of each asserted trade secret "combination";

   d. Versata agreed that Ford's expert can rebut Seth Krauss' previously-excluded apportionment analysis; and

   e. Because no trial date has been set, Versata will suffer no prejudice from Ford serving its rebuttal expert reports?

Ford answers: Yes.

i



███████████████████

# <u>TABLE OF CONTENTS</u>

CONCISE STATEMENT OF ISSUES PRESENTED ............................................. i

TABLE OF AUTHORITIES ..................................................................... iii

I.     INTRODUCTION ................................................................................1

II.    BACKGROUND ..................................................................................3

    A.    Before Versata transitioned to a "four combination" trade secret theory in 2019, Versata asserted individual trade secrets ....................3

    B.    Versata accepted the "risk" it was taking when it transitioned to a combination trade secret theory ..........................................................4

    C.    Dr. Malek's expert report and deposition do not identify the specific elements of the four asserted "combination" trade secrets ...............................................................................................6

    D.    Versata refuses to identify the specific elements of the asserted combinations .........................................................................................12

III.    ARGUMENT .....................................................................................14

    A.    A party asserting trade secret misappropriation must identify the trade secrets "with specificity" ........................................................14

    B.    Versata's discovery disclosures fail to identify the its four "combination" trade secrets with specificity ......................................18

    C.    Ford should be allowed to serve its rebuttal expert reports after Versata identifies the specific elements of its "combination" trade secrets. ..........................................................................................19

IV.    CONCLUSION .................................................................................222



███████████████████████████

## TABLE OF AUTHORITIES

### Cases

*Big Vision Private, Ltd. v. E.I. Dupont De Nemours & Co.*,
　　1 F. Supp. 3d 224 (S.D.N.Y. 2014) ......................................... 16-19

*Bragg v. Sw. Health Sys.*, Civil Action No. 18-cv-00763-MSK-NRN,
　　2019 U.S. Dist. LEXIS 230416 (D. Colo. Dec. 19, 2019) ...........................21

*Dice Corp. v. Bold Techs.*,
　　556 Fed. Appx. 378 (6th Cir. 2014) .............................................14

*Dura Glob. Techs., Inc. v. Magna Donnelly Corp.*,
　　Civil Action No. 2:07-cv-10945-SFC-MKM,
　　2011 U.S. Dist. LEXIS 111479 (E.D. Mich. Sep. 29, 2011) ......................20

*Dura Global Techs., Inc. v. Magna Donnelly Corp.*,
　　662 F.Supp.2d 855 (E.D. Mich. 2009) .........................................14

*IDX Systems Corp. v. Epic Systems Corp.*,
　　285 F.3d 581 (7th Cir. 2002) .............................................. 17-19

*Indus. Control Repair, Inc. v. McBroom Elec. Co.*, No. 302240,
　　2013 Mich. App. LEXIS 1581 (Mich. Ct. App. Oct. 10, 2013)...................14

*MAI Sys. Corp. v. Peak Computer, Inc.*,
　　991 F.2d 511 (9th Cir. 1993) .................................................17

*Midfield Concession Enters. v. Areas USA, Inc.*,
　　130 F.Supp.3d 1122 (E.D. Mich. 2015) .........................................14

*Shen Wei (USA) Inc. v. Sempermed USA, Inc.*,
　　No. 05 C 6004, 2008 U.S. Dist. LEXIS 109486 (N.D. Ill. June 20, 2008)...20

*Sit-up Ltd. v. IAC/Interactive Corp.*, No. 05 Civ. 9292 (DLC),
　　2008 U.S. Dist. LEXIS 12017 (S.D.N.Y. Feb. 20, 2008) ........... 14, 15, 17-19



*Struthers Sci. & Int'l Corp. v. Gen. Food Corp.*,
    51 F.R.D. 149 (D. Del. 1970) .................................................................. 17, 19

*TNS Media Research, LLC v. TRA Global, Inc.*,
    984 F. Supp. 2d 205 (S.D.N.Y. Nov. 25, 2013) ...........................................16

*Utilase, Inc. v. Williamson*,
    188 F.3d 510 (6th Cir. 1999) .......................................................................14



███████████████████████████

## I.    INTRODUCTION

Ford Motor Company ("Ford") requests an order compelling Defendants (collectively "Versata") to specifically identify the elements of the four "combination" trade secrets that Versata asserts against Ford in this case.  A clear identification of the asserted combinations is critical to assessing liability and damages in this case.  Versata has acknowledged that its combination trade secrets are not misappropriated if even one element of a combination is absent from Ford's accused software.  But it is impossible for Ford to defend itself, or for the Court or the jury to adjudicate this case, without a clear disclosure of what, specifically, the elements of the alleged trade secret combinations are.

At the onset of discovery, Ford served Interrogatory No. 3 requesting that Versata disclose its trade secrets with specificity.  Versata answered by directing Ford to the 300+ page report of its expert, Dr. Malek, and 250+ pages of Dr. Malek's deposition testimony—all *before* Versata retreated to its "four combination" liability theory in June 2019.  But Dr. Malek's report and deposition do not specifically identify the elements of the four combination trade secrets Versata now asserts: "Grid," "Buildability," "Workspaces" and "MCA."  With respect to the alleged "Grid" combination, Dr. Malek admitted that many aspects of the "Grid" analysis in his expert report are not, in fact, asserted trade secrets in this case.  Dr. Malek testified that he's ████████████████████████████████████



1

████████ Ford thus has no way to determine the specific elements of the "Grid" combination.

With respect to the asserted "Buildability," "Workspaces" and "MCA" trade secrets, the Court has already found that Dr. Malek's expert report fails to disclose a "combination" theory. And Dr. Malek's deposition introduces confusion, rather than clarity, regarding the specific elements of each combination.

Ford's counsel and its authorized fact and expert witnesses have attempted to determine the specific elements of the asserted combinations from Versata's disclosures. But for the various reasons explained in this Brief, the precise identity and scope of the asserted combinations cannot be determined from these materials— materials which were prepared and served *before* Versata's transition to a "combination" theory.

Because both liability and damages hinge on the precise elements of the asserted "combination" trade secrets, Ford asked Versata to supplement its response to Ford Interrogatory No. 3 to clearly identify the elements of the asserted combinations. Versata refused. Consistent with controlling law regarding "combination" trade secrets, Ford requests an order compelling Versata to concisely disclose the specific elements of its asserted combination trade secrets so that Ford may serve its rebuttal expert reports and this case can proceed to trial.



███████████████████████

Pursuant to L.R. 7.1, Ford conferred with Defendants' counsel to request supplementation of Versata's answer to Ford Interrogatory No. 3 to disclose the specific elements of each asserted combination. Versata refused to supplement, necessitating this motion.

## II. BACKGROUND

### A. Before Versata transitioned to a "four combination" trade secret theory in 2019, Versata asserted individual trade secrets

Early in discovery, Ford asked Versata to identify each alleged trade secret:

> **INTERROGATORY NO. 3:** Identify the particular feature and/or functionality of the ACM software that Versata contends is covered by any . . . alleged trade secret that Versata alleges Ford has . . . misappropriated. Include in your response, without limitation, the date the software corresponding to each such feature and/or functionality was developed and a chart showing how each . . . trade secret is allegedly practiced by the ACM software.

(Ex. A, Ford Int. No. 3.)

Versata's operative answer, served March 12, 2019, directed Ford to "the expert reports and depositions of Dr. Sam Malek." (Ex. A.) By that time, Dr. Malek served two trade secret expert reports totaling over 300 pages. (Exs. B and C.) Dr. Malek's deposition on the trade secret issues spans over 250 pages. (Ex. D). Versata thus directed Ford to more than 550 pages of material from which to glean Versata's asserted trade secrets in this case – all issued *before* Versata transitioned to a four-combination trade secret theory.



3

███████████████████████

In its July 24, 2019 Order excluding Seth Krauss's "apportionment" analysis, the Court rejected Versata's assertion that Dr. Malek's expert report asserts four "combination" trade secrets:

> According to Versata, Dr. Malek's report makes clear that Versata is asserting only the four trade secrets that comprise his category headings (The Grid, Buildability, Workspaces, and MCA). And Versata says that those four trade secrets identified in Dr. Malek's headings consist of the combination of the individual trade secrets listed below them in each category. Versata insists that it is not asserting any of the trade secrets listed individually under the four category headings. The Court disagrees with Versata's interpretation of Dr. Malek's report.

> While Dr. Malek organized his discussion of the trade secrets under four broad headings, his report verifies that Versata is *individually* asserting each particular trade secret identified under those headings.

(ECF No. 678, PageID.52172, emphasis added.)

The Court initially excluded Krauss's apportionment analysis because Versata (through Dr. Malek's expert report) had asserted *individual* trade secrets. *Id.* at PageID.52175-76.

## B. Versata accepted the "risk" it was taking when it transitioned to a combination trade secret theory

In "trying to save [its] damages model" and "survive [Ford's] apportionment challenge," Versata acknowledged the "risk" it was taking in its shift from an "individual" trade secret theory to a four "combination" trade secret theory:

> THE COURT: [L]et me be as pointed as I can. Did you, in trying to save a damages model, risk winning the battle and losing the war? The damages model that you have come up with, the way you get to -- the way you survive this apportionment challenge on trade secrets, if at all,



is to say we only had to apportion into four buckets. But the problem that I was concerned with is this all-or-nothing approach. *If the jury finds 19 elements of the grid stolen or infringed or whatever the word is but not the 20th, how – your damages expert has not given them a way to determine a damages figure for that finding.* So how do you – how can you be entitled to any – if your damages theory only fits an all-or-nothing approach, then if I let this case go to a jury on trade secrets, *don't I have to instruct them in order to line up with your damages theory, that you only – jury, you can only even consider damages on the grid if you find every one of these components satisfied.*

MR. MITBY: I understand your question now. The answer to that, I will be very blunt, is yes. *The answer is yes.*

* * *

MR. MITBY: Well, let me -- let me explain it because I think you're focusing on *a risk that Versata is taking and a risk that we thought about a lot, that if we don't prove that they misappropriated all the elements of a trade secret, that we can't prove liability and we can't get damages. And that is absolutely right.* That is why Ford should not be complaining about the fact that we have only four trade secrets and those trade secrets consist of multiple elements because it makes their defense at trial considerably easier if -- if indeed they believe that they didn't steal every element of this.

* * *

But you're absolutely right, your Honor, that we're taking -- that *we run the risk that if the jury finds that only four out of five elements were misappropriated and infringed, that there would be a finding of no liability.* In other words, they would be able to take the four out of five elements and use them without -- without a consequence. And that's -- that's the way trade secret law works.

(Ex. E, 6/10/2019 Hrg. Tr. at 65:19-67:8, emphasis added.)



████████████████████████████████████

In its January 22, 2020 Order reconsidering its July 24, 2019 Order excluding Krauss's apportionment, the Court held "[t]his case is in a different posture than it was when the Court excluded Krauss' apportionment analysis" in part because "Ford conceded that it would not object to Versata pursuing the theory that Ford misappropriated only four trade secrets." (ECF No. 724, PageID.53962-63.)

**C.   Dr. Malek's expert report and deposition do not identify the specific elements of the four asserted "combination" trade secrets**

Versata did not supplement its answer to Ford Interrogatory No. 3 following its transition to a four-combination trade secret theory. Ford has attempted, unsuccessfully, to determine the scope of the four asserted "combination" trade secrets from Dr. Malek's trade secret expert reports and deposition testimony.

With respect to the "Grid" combination referenced in Dr. Malek's report, Dr. Malek does not identify the specific elements of the combination. Dr. Malek's "Grid" combination, which begins at Paragraph 184 of his expert report, broadly references ███████████████████████ (Ex. B, Malek Opening Report at 91, ¶184.) But during his deposition, Dr. Malek testified—with respect to the "Grid"— that he's ██████████████████████████████████ ███████ (Ex. D, Malek Dep. Tr. at 169:1-2.)

For example, Dr. Malek asserts in his expert report that Ford's █████████████ ████████████████████████████████████





(Ex. B, Malek Opening Report at 77, ¶165.)  But during his deposition, Dr. Malek retreated from his expert report, asserting that

(Ex. D, Malek Dep. Tr. at 23:14-24:10, emphasis added.)

Dr. Malek's deposition retreat is at odds with his expert report, which clearly compares the toolbars between the ACM and PDO programs, and asserts "copying."





(Ex. B, Malek Opening Rept. at 77-78.)[1]

       Dr. Malek also asserted, ███████████████████████

████████████████████████████ (Ex. B, Malek Opening

Report at 85, ¶176.)  But when cross-examined on the fact that this pop-up window

is conventional and ubiquitous, Dr. Malek testified ██████████████████

█████████████████████ (Ex. D, Malek Dep. Tr. at 19:7-

8.)

---

[1] The ACM toolbar is not a trade secret because Versata published it in U.S.
Patent No. 7,953,779 (*see* ECF No. 594-12, PageID.45813 (Fig. 8)):

'779 Patent:



██████████████████████████████████████████████

In another example, Dr. Malek asserted in his expert report that Ford's PDO software "copied" the "Master Dictionary" screen from ACM, and that ███████████ ████████████████████████████████████████████████ (Ex. B, Malek Opening Report at 87-88, ¶178.)  But when cross-examined about the fact that Ford introduced the master dictionary to Versata, not *vice-versa*, Dr. Malek retreated stating ███████████████████████████████████████████ ██████████████████████████████████████████ (Ex. D, Malek Dep. Tr. at 212:23-24 and 213:17-18.)

Dr. Malek's several deposition *retractions* of aspects of the "Grid" concept described in his report is at odds with his testimony that *everything* in his "Grid" analysis (including "all" cited documents) defines the "Grid" trade secret:

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████

(Ex. D, Malek Dep. Tr. at 71:16-21, *repeated* at 168:15-19 and 234:11-14.)

But Dr. Malek later took the conflicting position that he is ███████████ ████████████████████████████████████████ (Ex. D, Malek Dep. Tr. at 169:1-2.)  Dr. Malek's expert report does not identify aspects of the ACM "Grid" screens that are "not" asserted trade secrets—they are *all* discussed and compared under the "Grid" heading of his expert report, typically with allegations of "copying."  Against this backdrop, Ford (and the jury and the Court) have no



ability to determine where the "Grid" combination trade secret begins and ends, and what the specific elements are of the asserted combination.

With respect to "Buildability," "Workspaces," and "MCA," the Court has already determined that Dr. Malek "did not include a separate 'combination' trade secret." (ECF No. 678, PageID.52174.) With respect to "Buildability," Dr. Malek stated in his opening expert report that the ████████████████ aspects of the software were trade secrets. (Ex. B at ¶¶215-217 and 289-290.) But in his reply report, Dr. Malek retreated, stating that the concepts he previously identified are **not** the asserted trade secrets. (Ex. C at ¶¶190 and 219.) In another example, Dr. Malek asserts in his expert report that Ford's use of a ████████████████ is a misappropriation of Versata trade secrets. (Ex. B at ¶¶190-206.) But in his deposition, Dr. Malek testified:



(Ex. D, Malek Dep. Tr. at 82:14-17.)

With respect to "Workspaces," Dr. Malek asserts, under the heading "Description of Trade Secrets" that:

(Ex. B, Malek Opening Report at ¶327.)



███████████████████████████

Does that mean that everything in the identified "two chapters" of the ACM Engineering Users Guide is an element of the asserted "Workspaces" combination, or merely a portion of those materials (which is not identified in Dr. Malek's report)?

Under the same "Workspaces" heading, and also as a "Description of Trade Secrets," Versata asserts that the overall 11-step "modelling process" is a trade secret. (Ex. B, Malek Opening Report at ¶365.) Are these 11 steps *in addition to* the two chapters of the ACM Engineering Users Guide discussed above? Or are they separate? Does Ford avoid liability of the overall "Workspaces" combination if it does not perform one of the 11 steps? What if Ford performs the 11 steps, but in a different order than the order disclosed in Dr. Malek's report? Because Versata has not specifically identified the purported "combination," Ford, the Court, and the jury cannot answer these questions.

With respect to "MCA," Dr. Malek cites, in his "Description of the Trade Secrets," dozens of Versata documents and "interviews" with Seth Krauss and several others. (Ex. B, Malek Opening Report at ¶¶380-391.) Are the contents of *each* identified document an element of the trade secret? What role do the various interviews play in the scope of the trade secret? Will Seth Krauss testify about the scope of the "MCA" trade secret at trial? Versata's lack of specificity makes it impossible to answer these questions. Dr. Malek's reply report only compounds the confusion by stating that he ████████████████████████████████



███████████████████████████████

████████████████████████████████████████████

████████████████████████ (Ex. C at ¶269, emphasis added.) Again, how are Ford, the Court, and the jury to determine the bounds of an alleged "MCA combination" that has never been defined by Versata or its experts?

These examples illustrate the problem with Versata simply directing Ford to more than 550 pages of materials and telling Ford (and the Court) to decipher the elements of the four asserted "combination" trade secrets. That is an impossible task for Ford and the Court.

## D. Versata refuses to identify the specific elements of the asserted combinations

Ford's counsel and its authorized fact and expert witnesses have reviewed the more than 550 pages of materials Versata identified to determine the elements of Versata's asserted "combination" trade secrets. While some aspects of Dr. Malek's reports are apparently relevant to the asserted combinations, the specific elements of each combination are much less clear for the reasons expressed above.

Because the "elements" of each combination are determinative of both liability and damages, Ford asked Versata to identify its "combination" trade secrets with specificity as Ford's Interrogatory and controlling law require. In an attempt to resolve this dispute without court intervention, Ford requested that Versata (1) supplement its response to Interrogatory No. 3 to identify, with particularity, the elements of each alleged trade secret "combination" asserted against Ford in this



██████████████████████████████

case, and (2) allow Ford to present rebuttal evidence (including expert testimony if necessary) specific to those yet-unidentified combinations. (Ex. F, LeRoy 1/21/2021 Letter to Mitby.)

Versata responded stating, "Versata's written discovery and expert reports define these trade secrets with sufficient detail to permit Ford to mount a defense." (Ex. G, Mitby 2/1/2021 Letter to LeRoy.) But as explained above, neither Versata nor Dr. Malek have specifically identified the elements of the four asserted "combination" trade secrets.

Versata asserts that Ford has known of Versata's asserted combinations since "its March 8, 2018 motion to exclude expert testimony." (Ex. G, Mitby 2/1/2021 Letter to LeRoy.) But Ford did not serve a motion to exclude expert testimony in March 2018. Regardless, while Ford is now aware that Versata is asserting four "combination" trade secrets, Ford does not know the *specific elements* of each combination. By law, and by operation of Federal Rules 26 and 33, Versata must identify its trade secret "combinations" with specificity in response to Ford Interrogatory No. 3.



13

██████████████████████████████

### III.    ARGUMENT

### A.    A party asserting trade secret misappropriation must identify the trade secrets "with specificity"

"To sustain a claim under [the Michigan Uniform Trade Secrets Act], it is incumbent on the plaintiff to identify *with specificity*[2] the 'trade secret' allegedly misappropriated." *Indus. Control Repair, Inc. v. McBroom Elec. Co.*, No. 302240, 2013 Mich. App. LEXIS 1581, at *18 (Ct. App. Oct. 10, 2013) *citing Dura Global Techs., Inc. v. Magna Donnelly Corp.*, 662 F.Supp.2d 855, 859 (E.D. Mich. 2009), *see also Dice Corp. v. Bold Techs.*, 556 F. App'x. 378, 385 (6th Cir. 2014) (plaintiff must identify trade secret with specificity) *citing Utilase, Inc. v. Williamson*, 188 F.3d 510 (6th Cir. 1999); *Midfield Concession Enters. v. Areas USA, Inc.*, 130 F.Supp.3d 1122, 1145-47 (E.D. Mich. 2015) (granting defendant's motion for summary judgment on plaintiff's misappropriation claim because plaintiff failed to specify its allegedly misappropriated trade secret).

In *Sit-up Ltd. v. IAC/Interactive Corp.*, 2008 U.S. Dist. LEXIS 12017 (S.D.N.Y. Feb. 20, 2008), the court addressed the level of specificity required for disclosing "combination" trade secrets in discovery. Sit-up, like Versata, directed the defendant to *thousands of pages* of documents from which to determine the asserted combination. *Id.* at *15. In subsequent disclosures, Sit-up, like Versata,

---

[2] All emphasis is added unless otherwise indicated.



provided "lengthy" descriptions of the alleged disclosures which "outlined general categories into which the alleged trade secrets fell." *Id.* at *17. At a hearing regarding Sit-up's non-specific disclosures, the court "reminded plaintiff of its eventual burden at trial" stating:

> Plaintiff is asserting trade secret violations. Plaintiff is the only one who can know what it believes its trade secrets are. No one else can do this work for you. If you can't do this work – we've been down this road before – you can't open to a jury, much less sum up to a jury, nor can you defend a summary judgment motion. And it is unfair to your clients and to the defendants to conduct discovery without knowing what the assertions are.

*Id.* at 18-19.

Sit-up "submitted a twenty-eight-page narrative" describing its alleged trade secrets. *Id.* at *19. IAC moved for summary judgment on, *inter alia*, Sit-up's failure to disclose its "unique combination" trade secret with sufficient particularity. *Id.* at *26-28. The court held "the law requires the [combination] trade secret claimant to describe the secret with sufficient specificity that its protectability can be assessed and to show that its compilation is unique."

The court granted IAC's motion for summary judgment finding:

> Here, sit-up has not demonstrated the way in which [the] various components fit together as building blocks in order to form the unique whole, and thus has not raised a triable issue of fact as to its unique combination. Therefore, defendants' motion for summary judgment on this claim is granted.

*Id.* (citations and quotations omitted.)



15

In *Big Vision Private, Ltd. v. E.I. Dupont De Nemours & Co.*, 1 F. Supp. 3d 224 (S.D.N.Y. 2014), the court granted Dupont's motion for summary judgment for Big Vision's trade secret claim due to Big Vision's failure to identify its "combination" trade secret with particularity. The court summarized Big Vision's various disclosures finding "the trade secret descriptions advanced by Big Vision have changed dramatically over the course of the litigation." *Id.* at 248-250. "Big Vision's expert witness proffered yet another version of its trade secret, this one a five-element trade secret that the expert claimed was novel in combination." *Id.* at 250.

The Court surveyed district and circuit court caselaw concerning the requirement that trade secrets be disclosed with particularity:

> The requirement of particularity exists for the simple reason that a defendant must know what constitutes a plaintiff's trade secret, so that it does not infringe upon that trade secret and so that the defendant can defend itself at any trial.

*Id.* at 257.

The court rejected Big Vision's argument that it had disclosed its alleged trade secret in over 70 pages of "abstruse laboratory papers." The court adopted the principle that a plaintiff could not "reserve the right to rely upon additional documents or testimony related to each trade secret among the hundreds of pages it claimed represented its trade secret." *Id.* at 264 *citing TNS Media Research, LLC v. TRA Global, Inc.*, 984 F. Supp. 2d 205, 238-239 (S.D.N.Y. Nov. 25, 2013).



███████████████████████████

In *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583-584 (7th Cir. 2002), the Seventh Circuit similarly rejected the notion that "a 43-page description of the methods and processes underlying and the inter-relationships among various features making up IDX's software package is specific enough."

> No, it isn't. These 43 pages describe the software; although the document was created for this litigation, it does not separate the trade secrets from the other information that goes into any software package. Which aspects are known to the trade, and which are not? That's vital under the statutory definition.

Like in *Sit-up* and *Big Vision*, the district court in *IDX Systems* had granted defendant's motion for summary judgment because the asserted trade secrets had not been identified with particularity. *Id.*; *see also MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 522 (9th Cir. 1993) (reversing summary judgment of trade secret misappropriation where plaintiff failed to identify software trade secrets with particularity).

In *Struthers Sci. & Int'l Corp. v. Gen. Food Corp.*, 51 F.R.D. 149 (D. Del. 1970), the district court granted General Food's motion to compel a more complete interrogatory answer on the identification of the asserted "combination" trade secrets, holding:

> If Struthers is, in fact, relying for its trade secret allegations on a unique combination of known components disclosed to General Foods, ***Struthers should be required to specifically describe what particular combination of components it has in mind, how these components are combined, and how they operate in a unique combination***. This matter cannot be left to pure speculation and conjecture. A more definite and



████████████████████

responsive answer to this question will undoubtedly sharpen the ultimate issues for trial . . . .

51 F.R.D. at 153 (emphasis added).

Like Struthers, Versata is asserting a combination trade secret theory and should be compelled to supplement its integratory response to provide the same information required for "combination" trade secret status.

**B.  Versata's discovery disclosures fail to identify the its four "combination" trade secrets with specificity**

Ford Interrogatory No. 3 is the vehicle through which Versata must identify the asserted trade secrets. (*See* Ex. A, Ford Int. No. 3.) Versata's operative answer, served March 12, 2019, blindly directs Ford to "the expert reports and depositions of Dr. Sam Malek." (*Id.*) Dr. Malek's expert reports on trade secrets total over 300 pages (Exs. B and C), and Dr. Malek's deposition transcript on Versata's trade secret claim spans more than 250 pages (Ex. D).

Versata's omnibus identification of more than 550 pages is much *less specific* than the 28-page, 70-page and 43-page disclosures in *Sit-up, Big Vision,* and *IDX Systems,* upon which the respective courts granted summary judgment against each plaintiff. Like the plaintiff in *Sit-Up,* Versata "has not demonstrated the 'way in which [the] various components fit together as building blocks in order to form the unique whole'." *Sit-up Ltd,* 2008 U.S. Dist. LEXIS 12017 at *27. Like in *Big Vision,* "the trade secret descriptions advanced [] have changed dramatically over



the course of the litigation" and Versata relies upon "documents or testimony" related to each trade secret "among the hundreds of pages it claimed represented its trade secret." *Big Vision*, 1 F. Supp. 3d at 248, 264. Like the plaintiff in *IDX Systems*, Versata's citation to over 550 pages "does not separate the trade secrets from the other information that goes into any software package." *IDX Systems*, 285 F.3d at 584. And like the plaintiff in *Struthers*, Versata has not "specifically describe[d] what particular combination of components it has in mind, how these components are combined, and how they operate in a unique combination." *Struthers*, 51 F.R.D. at 153.

Only Versata knows the specific elements of its alleged trade secret combinations and how those combinations are purportedly unique, but Versata refuses to share that information with Ford. The Court should order Versata to specifically identify the elements of the asserted trade secret combinations, or face dismissal like the plaintiffs in in *Sit-up, Big Vision*, and *IDX Systems*.

## C. Ford should be allowed to serve its rebuttal expert reports after Versata identifies the specific elements of its "combination" trade secrets.

Versata has never disputed Ford's right to serve rebuttal damages expert reports. *See* ECF No. 755; see also ECF No. 753, PageID.55306 and ECF No. 752, PageID.55282. And with respect to Mr. Krauss's apportionment analysis, Versata



agreed Ford is "entitled to rebut what Mr. Krauss is saying if they don't agree with him." (Ex. E, 6/10/2019 Hrg. Tr. at 78:12-14.)

But as the Court and Versata are aware, a key input to both parties' damages opinions is the technical "apportionment" of the accused software to the four now-asserted trade secret "combinations." (ECF No. 507, PageID.40227-28 holding based on controlling law that trade secret damages must be apportioned to the asserted trade secrets "and no more.") Because Versata has not identified the specific elements of its asserted combinations, however, Ford's technical expert cannot perform the required apportionment analysis and Ford's damages expert cannot serve her rebuttal report.

Ford requests a calendar requiring Versata to promptly disclose the specific elements of its asserted trade secret combinations to Ford, followed by Ford's rebuttal technical and damages expert reports. *See Dura Glob. Techs., Inc. v. Magna Donnelly Corp.*, Civil Action No. 2:07-cv-10945-SFC-MKM, 2011 U.S. Dist. LEXIS 111479, at *32 (E.D. Mich. Sep. 29, 2011) ("Magna may serve a supplemental expert report from its damages expert to address Dura's new positions."); *Shen Wei (USA) Inc. v. Sempermed USA, Inc.*, No. 05 C 6004, 2008 U.S. Dist. LEXIS 109486, at *10 (N.D. Ill. June 20, 2008) ("If the Court allowed Dr. Wickett's and Mr. McFadden's new infringement opinions based on substances other than Vitamin E, then fairness would demand that Sempermed be entitled to



20

have its expert review these opinions and submit supplements."); *Bragg v. Sw. Health Sys.*, Civil Action No. 18-cv-00763-MSK-NRN, 2019 U.S. Dist. LEXIS 230416, at *4 (D. Colo. Dec. 19, 2019) ("[T]o the extent that Mr. Penrod's expert report can be considered an affirmative expert report based on new theories, fairness dictates that SHS be permitted to respond. Because no trial date has been set in this case, the Court finds that SHS will not be prejudiced if Mr. Penrod is not excluded, provided that SHS be given an opportunity to file a rebuttal to Mr. Penrod's report.").

Because no trial date has been set in this case, allowing Ford to serve its rebuttal reports following Versata's supplemental disclosure will not prejudice Versata.  Not allowing Ford to respond to Versata's yet-undisclosed "combination" trade secret theory, in contrast, would violate principles of due process and unfairly prejudice Ford.



███████████████████████████

## IV.  CONCLUSION

As Versata stated at the June 10, 2019 hearing, liability rises and falls with the precise elements of the asserted "combination" trade secrets. (Ex. E, 6/10/2019 Hrg. Tr. at 65:19-67:8.)  Ford cannot defend itself, and the Court and jury cannot assess liability, without clearly knowing the precise elements of the asserted "combinations."  The Court should order Versata to identify the elements of its "combination" trade secrets with specificity in response to Ford Interrogatory No. 3, and permit Ford to serve rebuttal expert reports on a stipulated calendar.

Respectfully submitted,
**BROOKS KUSHMAN P.C.**

Dated:  March 3, 2021

By:  */s/ John S. LeRoy*
John S. LeRoy (P61964)
Thomas A. Lewry (P36399)
Christopher C. Smith (P73936)
Jonathan D. Nikkila (P75666)
1000 Town Center, 22nd Floor
Southfield, MI  48075
Tel.: 248-358-4400 / Fax: 248-358-3351
jleroy@brookskushman.com
tlewry@brookskushman.com
csmith@brookskushman.com
jnikkila@brookskushman.com

James P. Feeney (P13335)
**DYKEMA GOSSETT PLLC**
39577 Woodward Ave, Suite 300
Bloomfield Hills, MI 48304
Ph: 248-203-0841
jfeeney@dykema.com

*Attorneys for Plaintiff*



22

███████████████████

## <u>CERTIFICATE OF ELECTRONIC SERVICE</u>

I hereby certify that on <u>March 3, 2021</u>, I electronically filed an **UNREDACTED CONFIDENTIAL** copy of **FORD MOTOR COMPANY'S MOTION TO COMPEL IDENTITY OF ASSERTED "COMBINATION" TRADE SECRETS** and all **Exhibits in Support** with the Clerk of the Court using the ECF System's SEALED DOCUMENT EVENT which will send notification to all registered participants of the ECF System. I have also submitted paper copies of all sealed documents via electronic means to counsel using the following information:

> *Counsel for Defendants:*
> *Versata Software, Inc., f/k/a Trilogy Software, Inc., Trilogy Development Group, Inc. and Trilogy, Inc.*
>
> AZA-Versata-Ford@AZALAW.COM
> (which includes all the ECF Registered users)

      /s/ John S. LeRoy
John S. LeRoy (P61964)
**BROOKS KUSHMAN P.C.**

*Attorneys for Plaintiff*

