## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**Ford Motor Company,**

　　　　　*Plaintiff/*
　　　　　*Counter-Defendant*,

**v.**

**Versata Software, Inc., f/k/a Trilogy Software, Inc., Trilogy Development Group, Inc. and Trilogy, Inc.,**

　　　　　*Defendants/*
　　　　　*Counter-Plaintiffs*.

Case No. 15-10628-MFL-EAS
*(consolidated with Case No. 15-cv-11624)*

Hon. Matthew F. Leitman

JURY TRIAL DEMANDED

# FORD MOTOR COMPANY'S
# MOTION *IN LIMINE* AND SUPPORTING BRIEF TO PRECLUDE DEFENDANTS FROM RELYING ON CONTRACT DAMAGES THEORIES AND CALCULATIONS NOT DISCLOSED IN DISCOVERY



## **CONCISE STATEMENT OF ISSUES PRESENTED**

Should the Court prohibit defendants from offering argument, testimony, or other evidence of contract damages, which Versata did not disclose during discovery?

Ford answers: <u>Yes</u>.



## <u>CONTROLLING AUTHORITY</u>

- *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358 (Fed. Cir. 2021);

- *Gorman v. Am. Honda Motor Co.*, 302 Mich. App. 113, 839 N.W.2d 223 (2013);

- *Chelsea Inv. Grp. v. City of Chelsea*, 288 Mich. App. 239, 792 N.W.2d 781 (2010).



# **TABLE OF CONTENTS**

CONCISE STATEMENT OF ISSUES PRESENTED ........................................... i

CONTROLLING AUTHORITY ........................................................... ii

TABLE OF AUTHORITIES ............................................................. iv

MOTION ................................................................................. 1

BRIEF IN SUPPORT ..................................................................... 1

I. BACKGROUND ....................................................................... 1

    A. Versata's initial disclosures and discovery responses relied on experts for contract damages ............................................. 1

    B. Versata's belated supplemental interrogatory answer continued to rely on experts for contract damages and added a new theory ........ 9

    C. Ford attempted to resolve this matter without Court intervention ...... 12

II. ARGUMENT ......................................................................... 16

    A. Michigan law requires a party seeking breach of contract damages to show a causal link between the damages and the alleged breach ..................................................................... 16

    B. Versata repeatedly Ford told during discovery that only Versata's experts would quantify and supply evidentiary support for contract damages .......................................... 17

    C. Versata's Rule 26(a) and discovery disclosures do not permit Versata to seek "at least" $17 million/year for belatedly alleged "use" of confidential information ...................................... 19

III. CONCLUSION ...................................................................... 23



## <u>TABLE OF AUTHORITIES</u>

### Cases

*Chelsea Inv. Grp. v. City of Chelsea*,
    288 Mich. App. 239, 792 N.W.2d 781 (2010) ............................................16

*Erskine v. Consol. Rail Corp.*,
    814 F.2d 266 (6th Cir. 1987) ......................................................................19

*Gorman v. Am. Honda Motor Co.*,
    302 Mich. App. 113, 839 N.W.2d 223 (2013) ......................................16, 20

*Kaminski v. Grand Trunk W. R. Co.*,
    347 Mich. 417, 79 N.W.2d 899 (1956) ......................................................16

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
    No. 14-cv-03657-SI, 2019 U.S. Dist. LEXIS 110882,
    2019 WL 2847285 (N.D. Cal. July 2, 2019),
    *aff'd,* 10 F.4th 1358 (Fed. Cir. 2021) ........................................................20

*Rochlani v. Aaron*,
    2016 Mich. Cir. LEXIS 1147 (2016) ..........................................................16

*Woods v. DeAngelo Marine Exhaust, Inc.*,
    692 F.3d 1272 (Fed. Cir. 2012) ..................................................................22



## MOTION

Ford Motor Company ("Ford") moves *in limine* to prohibit Versata from offering argument, testimony, or other evidence of contract damages, which Versata did not disclose during discovery.

Pursuant to L.R. 7.1, Ford conferred with Defendants' counsel on January 18, 2022 and explained the nature of the motion. Versata does not concur with the relief sought.

## BRIEF IN SUPPORT

### I.     BACKGROUND

**A.     Versata's initial disclosures and discovery responses relied on experts for contract damages**

Throughout discovery, Ford asked Versata for its damages theories and calculations. Versata repeatedly and consistently replied that such theories and calculations were the domain of its experts and Versata's expert reports would supply the requested information. Versata's initial disclosures, which it supplemented four times during discovery, said the same.

Breach of contract has always been one of Versata's claims against Ford. In early 2017, Ford asked Versata to "identify each category of damages Versata is seeking" and to "state the theories of recovery, factual support for those theories, and computations of damages within each category, and identify the evidence



1

Versata will rely upon in support." (Ex. A, Versata's Second [*sic*-First] Suppl. Resp. to Int. No. 23, pdf p. 5, served April 18, 2017.)[1]

Versata identified only two sources of alleged contract damages: "[D]amages suffered by Versata due to Ford's failure to [**1**] abide by provisions prohibiting the disclosure of Versata's confidential information and [**2**] Ford's reverse engineering of Versata's software." (*Id*., p. 8, bracketed numbers added.)[2] Versata also described, qualitatively, the damages it suffered: "Versata was damaged by not being allowed to negotiate ***the fee that it would have charged*** to give Ford a right to [1] reverse engineer Versata's software or [2] to disclose Versata's software to unauthorized employees and contractors, including companies specifically identified as competitors in the relevant agreements." (*Id*., bracketed numbers added.)[3]

Versata refused to quantify or supply evidence of its damages, saying, "Damages calculations and evidence material to those calculations are ***the domain***

---

[1] Versata did not number the pages of its supplemental interrogatory response, so Ford cites the pdf page.

[2] Versata delineated the "reverse engineering" breach in its 2018 summary judgment motion (ECF No. 379, PageID.22789-91): "[Versata] argues that Ford 'reverse engineered' the Versata Software in violation of Section 1.7 when Ford inputted identical data into both ACM and PDO and then 'studied' the 'outputs' from Versata's software 'for the purpose of ensuring that [PDO] produced identical outputs.'" (ECF No. 534, PageID.40833.)

[3] All emphasis added unless otherwise noted.



*of expert testimony*, and Versata will supplement its response in accordance with the court's deadline for the submission of expert reports." (*Id.*)

Ford served a Rule 30(b)(6) deposition notice on Versata, which included a topic on "[a]ll harm and damages Versata claims to have incurred due to Ford's … alleged breach of contract … and all factual bases for that assertion." Versata refused to produce a witness, objecting "this topic *seeks expert testimony* and is therefore not a proper topic for a rule 30(b)(6) deposition." (Ex. B, p. 23.)

The following table catalogs Versata's repeated representations throughout discovery that experts would supply evidence of alleged contract damages:

## Table 1

| Year | Document | Location | Text |
|------|----------|----------|------|
| | | | Initial Disclosures |
| 2015 | Versata Initial Disclosures (Ex. C) | p. 9 | "Versata asserts claims of **breach of contract**, patent infringement, trade secret misappropriation, and conversion. . . . ***Versata intends to introduce expert testimony in support of its damages calculations.*** Versata reserves all rights to amend and supplement these disclosures as discovery is ongoing." |
| 2017 | Versata's Amended Initial Disclosures (Ex. D) | p. 7 | "Versata asserts claims of **breach of contract**, patent infringement, trade secret misappropriation, and copyright infringement. . . . ***Versata intends to introduce expert testimony in support of its damages calculations.*** Versata reserves all rights to amend and supplement these disclosures as discovery is ongoing." |



3

| Year | Document | Location | Text |
|------|----------|----------|------|
| 2018 | Versata's 2nd Amended Initial Disclosures (Ex. E) | P. 7 | "Versata asserts claims of **breach of contract**, patent infringement, trade secret misappropriation, and copyright infringement. . . . **Versata intends to introduce expert testimony in support of its damages calculations.** Versata reserves all rights to amend and supplement these disclosures as discovery is ongoing." |
| 2018 | Versata's 3rd Amended Initial Disclosures (Ex. F) | p. 8 | "Versata asserts claims of ***breach of contract***, patent infringement, trade secret misappropriation, and copyright infringement. . . . ***Versata intends to introduce expert testimony in support of its damages calculations***. Versata reserves all rights to amend and supplement these disclosures as discovery is ongoing." |
| 2018 | Versata's 4th Amended Initial Disclosures (Ex. G) | p. 8 | "Versata asserts claims of ***breach of contract***, patent infringement, trade secret misappropriation, and copyright infringement. . . . ***Versata intends to introduce expert testimony in support of its damages calculations***. Versata reserves all rights to amend and supplement these disclosures as discovery is ongoing." |
| | | | Versata's Responses to ROGs and RFPs |
| 2015 | Versata's Responses to Ford's 1st RFPs (Nos. 1-63) (Ex. H) | RFP 2, p. 5 | *Request*: "All documents and things Versata intends to rely upon to support its claim for damages in this case." *Response*: "This request is premature for the additional reason that ***Versata intends to rely on expert testimony to support its damages claims***." |



| Year | Document | Location | Text |
|------|----------|----------|------|
| 2017 | Versata's Responses to Ford's 3rd ROGs (Nos. 22-23) (Ex. I) | ROG 23, pp. 7-8 | *Interrogatory*: "***Separately for each cause of action asserted by Versata, identify each category of damages Versata is seeking*** (*i.e.*, actual or compensatory damages, unjust enrichment, entitlement to a reasonable royalty, and/or any other form of damages), and ***further state the theories of recovery, factual support for those theories, and computations of damages within each category, and identify the evidence Versata will rely upon in support***."<br><br>*Response*: "Versata objects on the grounds that this interrogatory is unduly burdensome and calls for information outside the scope of discovery and is premature in that ***it calls for expert testimony*** before the Court-imposed deadline for the exchange of such information." |



| Year | Document | Location | Text |
|------|----------|----------|------|
| 2017 | Versata's 2nd [*sic*-1st] Supplemental Response to Ford's ROGs (Nos. 23, 24, 26, & 27) (Ex. A) | ROG 23, pp. 7-8 | *Supplemental Response*: "***Breach of Contract***: Versata states that Ford has breached its contract with Versata by, at a minimum, continuing to use Versata's software beyond the term of the relevant licenses and by using Versata's software beyond the scope of Ford's licenses. In connection with its breach of contract cause of action, ***Versata seeks actual damages, including damages suffered by Versata due to Ford's failure to abide by provisions prohibiting the disclosure of Versata's confidential information and Ford's reverse engineering of Versata's software.*** Versata was damaged by not being allowed to negotiate the fee that it would have charged to give Ford a right to reverse engineer Versata's software or to disclose Versata's software to unauthorized employees and contractors, including companies specifically identified as competitors in the relevant agreements. ***Damages calculations and evidence material to those calculations are the domain of expert testimony***, and Versata will supplement its response in accordance with the court's deadline for the submission of expert reports. |



6

| Year | Document | Location | Text |
|---|---|---|---|
| | | | Expert Reports |
| 2017 | Elson Damages Report (Ex. J) | ¶ 1.1, Page 1 | "***I was asked to assess Versata's damages associated with certain claims asserted by Versata in the Counterclaim. More specifically***, I quantified Versata's damages as measured by the economic benefits enjoyed (and reasonably expected to be enjoyed prospectively) by Ford Motor Company ("Ford") as a result of Ford's alleged trade secret misappropriation, as well as the ***economic losses experienced by Versata resulting from Ford's alleged*** copyright infringement and ***breach of contract***, under an assumption that Ford will be adjudicated liable as alleged in the Counterclaim." |
| | | Fn. 4, Page 3 | "I also note that Versata has asserted breach of contract claims against Ford. . . . ***Quantitatively, the damages associated with certain of Versata's breach of contract claims (assuming liability) are subsumed in the trade secret misappropriation damages quantified herein. I have not otherwise addressed damages associated with Ford's breach of contract***." |
| 2018 | Elson & Bokhart Joint Damages Report (Ex. K) | p. 7, fn. 11 | "We have been advised that this unauthorized use constitutes misappropriation. Economically, ***if such unauthorized use is alternatively (or additionally) considered a breach of existing license agreements, reasonable royalty damages as calculated herein would also be reflective of damages under that construct***." |
| | | | Expert/30(b)(6) Depositions |
| 2017 | Elson Deposition (Ex. L) | pp. 9-11 | Q. Versata has asserted claims of breach of contract in addition to trade secrets and patent infringement. **You're not offering an opinion on the amount of Versata's damages for its alleged breach of contract – well, for the** |



| Year | Document | Location | Text |
|------|----------|----------|------|
| | | | **breach of contract claims it's asserted, correct**? |
| | | | A. **Discretely, that's correct.** As I think I indicated in my report, **any quantifications associated there with would be subsumed** in the quantifications that I prepared in connection with my assessment of the trade secret misappropriation damages in this case. |
| | | | * * * |
| | | | Q. **You didn't do a separate analysis of** how much of the trade secret damages pertains to the alleged reverse engineering, correct? |
| | | | A. **As a discrete consideration as related to the breach of contract allegation in that regard, no.** |
| | | | Q. Okay. **And you didn't quantify the damages that might arise from Versata's claim that it was denied its audit rights, correct**? |
| | | | A. **Correct**. |
| | | | Q. **And the same is true with respect to Ford's alleged continued use of Versata's trade secrets without a license, correct**? |
| | | | A. As we just talked about a moment ago, **I would envision that claim to be subsumed in the quantifications that I prepared in connection with my assessment of the trade secret misappropriation damages.** |
| | | | Q. **You haven't separately determined for each of those sections the monetary value or the** |



| Year | Document | Location | Text |
|---|---|---|---|
| | | | **monetary damages for each of those claims in respect to the breach of contract claims?**<br><br>**A. In isolation, that's correct.** |
| 2018 | Versata's Objections to Ford's 30(b)(6) Deposition Notice (Ex. B) | Topic 92, p. 13; p. 23 | "***All harm and damages Versata claims to have incurred due to Ford's*** alleged patent infringement, alleged trade secret misappropriation, alleged copyright infringement, ***alleged breach of contract***, and alleged conversion, and all factual bases for that assertion."<br><br>"OBJECTION: Versata objects that ***this topic seeks expert testimony*** and is therefore not a proper topic for a rule 30(b)(6) deposition." |

## B. Versata's belated supplemental interrogatory answer continued to rely on experts for contract damages and added a new theory

Discovery closed on March 12, 2019. At 7:22 p.m. that evening, Versata served another supplemental response to interrogatory 23. In that response, Versata incorporated the "expert reports and deposition testimony of Craig Elson." (Ex. N, Versata's Third Suppl. Resp. to Int. No. 23, pp. 42, served March 12, 2019.)

In his 2018 report, Elson (Versata's trade secret damages expert) mentions contract damages only in footnote 11, where he says his trade secret reasonable royalty "reflect[s]" contract damages:

> We have been advised that this unauthorized use constitutes misappropriation. Economically, if such unauthorized use is alternatively (or additionally) considered a breach of existing license



> agreements, ***reasonable royalty damages as calculated herein would also be reflective of damages under that construct***.

(Ex. K, p. 7.)[4] Elson never explains how or why the trade secret damages "reflect[]" the contract damages. Elson did not link his trade secret damage calculation, which is based on Ford's alleged ***use*** of the trade secrets in PDO R1, to Versata's two alleged sources of contract damage, "reverse engineering" and "disclosure of Versata's confidential information." Nor did Elson discuss damages based on "the fee that [Versata] would have charged" Ford.

Besides incorporating Elson's 2018 report, Versata's belated supplemental interrogatory answer asserted:

> Regarding Versata's breach of contract claim, Versata further states that the evidence shows that Ford was willing to pay $17 million for a one-year extension of its license to ACM and MCA under the MSSA and Versata is entitled to recover at least this amount for every year or part of a year that Ford continued to use Versata confidential information in violation of its license. In addition, Versata is entitled to the reasonable royalty damages calculated by Mr. Elson and Mr. Bokhart for continued use of Versata's trade secrets and patented technologies in violation of the license.

(Ex. N, Versata's Second Suppl. Resp. to Int. No. 23, pp. 42-43.)

This untimely supplemental response adds two ***new*** ways of computing contract damages that Versata had never disclosed before: (1) some (unstated)

---

[4] This statement echoes footnote 4 of Elson's (now excluded) 2017 expert report: "[T]he damages associated with certain of Versata's breach of contract claims (assuming liability) are subsumed in the trade secret misappropriation damages quantified herein." (Ex. J, p. 3, fn. 4.)



amount at or above $17 million/year and (2) the reasonable royalty damages calculated by Mr. Elson and Mr. Bokhart. Versata still did not quantify its total contract damages, nor did it causally link the two alleged breaches (reverse engineering and disclosure) to the new ways of computing damages. Versata also supplied no evidence to support its claim that "Ford was willing to pay $17 million for a one-year extension of its license."

In July 2019, the Court excluded Versata's 2018 damages expert reports. (ECF No. 678.) Ford then moved for summary judgment on Versata's contract damages claims "because Versata failed to disclose a timely or proper damages theory." (ECF No. 707, PageID.53017.) Versata answered, first by asserting that it is entitled to "nominal damages" (ECF No. 712, PageID.53515), then by making never-before-disclosed arguments for actual damages without linking the arguments to (or even mentioning) the alleged improper "disclosure" and "reverse engineering" that Versata claimed caused damage. (ECF No. 712, PageID.53518-21). Without even identifying the alleged breach, Versata argued the Ford-Versata contracts are "important evidence of whether and to what extent Versata was (and continues to be) damaged by Ford's breach." (*Id*. at PageID.53518.) Versata vaguely referred to specific amounts (including "'8-1/2 million,' which Ford agreed to pay" and "at least $17 million") but it did not say how much Versata was seeking as contract damages. (*Id*. at PageID.53519.) And at the hearing on the motion, Versata said Ford would



11

first learn the amount during closing argument: "[T]he amount of the damages …, in the absence of expert testimony, is an issue for jury argument. A lawyer is going to have to get up, summarize the facts, summarize the amounts that were paid over time and ask the jury for a number based on those facts." (ECF No. 723, PageID.53917.)

The Court heard Ford's summary judgment motion with Versata's motion for reconsideration of the Court's Order excluding Messrs. Elson and Bokhart. (ECF No. 723.) Ultimately, the Court concluded Ford's motion was moot because the Court reinstated "Scenario 1" of the Elson/Bokhart 2018 expert report. (ECF No. 724.)

## C.    Ford attempted to resolve this matter without Court intervention

During a December 2021 status call, Ford raised Versata's nondisclosure of contract damages. The Court instructed Ford to identify for Versata what Ford believed was not disclosed and for Versata to identify where it believed the information was disclosed. (ECF No. 800, PageID.56439.) The parties engaged in that dialogue. Versata claimed it had "disclose[d] breach of contract damages in Mr. Elson's most recent expert report." (Ex. O, Mitby 1/7/22 Ltr., p. 1.) Specifically, according to Versata, Elson said, "'reasonable royalty damages' are the appropriate measure of damages for 'breach of existing license agreements,'" citing "Report, p. 7." (*Id*.) but that statement appears nowhere in Elson's report. The only mention of



12

"breach" on page 7 appears in footnote 11, where Elson (and Bokhart—it is a joint report) say the report's "reasonable royalty damages" calculation for trade secret and patent damages is "reflective of" breach of contract damages. (Ex. K, p. 7, n. 11.) The experts do not explain the phrase "reflective of," never mention "breach" again, and never quantify breach of contract damages.

In the letter, Versata also claimed that Elson said, on page 71, that "the 'royalty rate' is … 'equal to $17 million annually.'" (Ex. O, Mitby 1/7/22 Ltr., p. 1.) That statement is incorrect. Elson's only discussion of a "royalty rate" on page 71 is for historical payments Ford made: "[T]he royalty rate for the period 2011 through 2014 is set equal to the actual license rates / payments from Ford to Versata over that period for the ACM and MCA software[.]" (Ex. K.) The "actual license rates" paid by Ford for "the ACM and MCA software" in 2011–2014 ranged from $8.95 million to $10.95 million. (*See id.*, Ex. 6.1 to Report.) Elson mentions Versata's $17 million figure in the next paragraph of the report, but he does not call that figure a "royalty rate." Instead, he says, "The $17 million annual payment is based on the annual amount at which ***Versata offered*** to license ACM and MCA to Ford (on a restricted basis) in connection with actual negotiations that took place in 2014." (Ex. K, p. 71.) As Michael Richards, Versata's president, admitted, Ford refused Versata's $17 million offer:

Q. … Versata wanted to charge Ford more money; is that accurate?



A. Yes.

Q. And *Ford wasn't willing to pay more money* and was not willing to go to the cloud, as we talked about before, so Versata terminated?

A. Well, *they were not willing to negotiate new terms, that's correct. Which would have been a price increase, yes*.

* * *

Q. That's why I asked that general – in general, Versata wanted more money for what Ford was currently using, and Ford wasn't ultimately willing to pay more. We can go back and figure out exactly what the –

A. Here's what – no. I would say it this way. Okay? *Versata made a proposal to Ford of what they wanted – we wanted in terms of compensation for our product. Ford never countered. They insisted on the 8-1/2 million.* So –

Q. Plus 3?

A. To my – I don't have anything in – I don't have anything in writing that says that; but, regardless, we wouldn't have accepted that.

Q. That was a question mark.

A. Okay. No, I don't – there was – *8-1/2 million is the only number that I remember being suggested to me.* I have some written communications I can give you from Baxter, 8-1/2 million.

* * *

Where we might have ended up, I don't know. We might have – we might have gone up, we might have stayed the same. We might have come down. We didn't get to that point.

(Ex. P, Richards Dep. at 131:4-12, 132:4-22; 133:4-9.)

Elson did not say, on page 71 or elsewhere, $17 million/year is the "reasonable royalty damages" that are "reflective of" breach damages. Instead, on page 72 of his



14

report, Elson computes "reasonable royalty damages" (for trade secrets only) of $11.9 million/year. (Ex. K, Table 3.)

In a return letter, Ford pointed out these flaws in Versata's arguments (Ex. Q, 1/14/22 Lewry Ltr.). Versata never answered.

Ford now brings this motion *in limine* to prevent Versata from relying on undisclosed contract damages theories and calculations. Neither Versata nor its experts have ever disclosed a contract damages theory that causally links damages to the two breaches it alleged resulted in damage: "reverse engineering" and "disclosure" of confidential information. And neither Versata nor its experts have ever quantified the "the fee that [Versata] would have charged" Ford for these rights. Even today, despite repeated requests, Ford does not know what damages Versata will seek for the alleged breach of contract, which, according to Versata, Ford will learn during closing argument.



## II.   ARGUMENT

### A.   Michigan law requires a party seeking breach of contract damages to show a causal link between the damages and the alleged breach

"In a breach of contract case, the plaintiff must establish a causal link between the asserted breach of contract and the claimed damages." *Gorman v. Am. Honda Motor Co.*, 302 Mich. App. 113, 118–19, 839 N.W.2d 223, 227 (2013); *Chelsea Inv. Grp. v. City of Chelsea*, 288 Mich. App. 239, 254, 792 N.W.2d 781, 792 (2010) ("To recover in a breach of contract action, a plaintiff must prove that the defendant's breach was the proximate cause of the harm the plaintiff suffered."). As the Sixth Judicial Circuit Court of Michigan explained:

> *[T]o establish a causal link between an asserted breach of contract and the claimed damages, the Plaintiff must prove that the actions or omissions of the Defendants were both a proximate cause (i.e., legal causation) and cause in fact (i.e., "but for" cause) of her claimed damages*. *Chelsea Inv Group v Chelsea*, 288 Mich App 239, 254 (2010) ("To recover in a breach of contract action, a plaintiff must prove that the defendant's breach was the proximate cause of the harm the plaintiff suffered"); [additional citation omitted].

*Rochlani v. Aaron*, 2016 Mich. Cir. LEXIS 1147, *6 (2016).

"There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only." *Gorman*, 302 Mich. App. at 119, quoting *Kaminski v. Grand Trunk W. R. Co.*, 347 Mich. 417, 422, 79 N.W.2d 899 (1956).



**B.    Versata repeatedly Ford told during discovery that only Versata's experts would quantify and supply evidentiary support for contract damages**

From the day Versata served its initial disclosures in 2015 until discovery closed in 2019, Versata consistently and repeatedly told Ford that Ford would learn Versata's contract damages calculations in Versata's expert reports. (*See* Table 1, above.) Versata only disclosed two causes of contract damages, "reverse engineering" and improper "disclosure" of confidential information. (Ex. A, Versata's Second [*sic*-First] Suppl. Resp. to Int. No. 23, pdf p. 8.) Versata said the damage would be measured by "the fee that it would have charged to give Ford a right to [1] reverse engineer Versata's software or [2] to disclose Versata's software to unauthorized employees and contractors[.]" (*Id.*, bracketed numbers added.) Versata refused to quantify or supply evidence of its damages, saying, "Damages calculations and evidence material to those calculations are ***the domain of expert testimony***[.]" (*Id.*)

Ford awaited Versata's damages expert reports, which Versata initially served in 2017. But the only statement about contract damages appeared in Elson's report, where he said the contract damages "are subsumed in the trade secret misappropriation damages." (Ex. J, Elson 2017 Report, p. 3, fn. 4.) When deposed, Elson confirmed that contract damages are subsumed in the trade secret damages



17

and that he did not separately compute any contract damages. (Ex. L, 2017 Elson Dep., pp. 9-11.)

The Court excluded Elson's 2017 report but allowed him to prepare a second report. In his 2018 report, Elson again mentioned contract damages only in a footnote, saying the report's "reasonable royalty calculation" is "reflective of" contract damages. (Ex. K, 2018 Elson Report, p. 7, fn. 11.) Elson did not explain what "reflective of" means and did not compute damages linked to the alleged "reverse engineering" and "disclosure" contract prohibitions.

Fact and expert discovery closed March 12, 2019. At 7:22 p.m. that day, Versata served a supplemental response to Interrogatory No. 23 where it incorporated the "expert reports and deposition testimony of Craig Elson." (Ex. N, Versata's Second Suppl. Resp. to Int. No. 23, p. 42.) Versata also asserted, contrary to its president's testimony and without evidentiary support, that Ford was "willing to pay $17 million for a one-year extension of its license," so Versata "is entitled to recover at least this amount for every year or part of a year that Ford continued to use Versata confidential information in violation of its license." (*Id.*) Besides lack of evidence, Versata's supplemental answer did not tell Ford how Versata expected to meet the "causal link" and "but for" requirements or even the dollar value of "at least this amount." In addition, Versata, seemingly abandoned the "reverse engineering" and "disclosure" breaches it had asserted throughout discovery,



belatedly converting its contract theory to an undefined "use" of confidential information breach.

"One of the primary objectives of the discovery provisions embodied by the Federal Rules of Civil Procedure is elimination of surprise in civil trials." *Erskine v. Consol. Rail Corp.*, 814 F.2d 266, 272 (6th Cir. 1987). Versata's refusal to quantify and supply evidence of actual contract damages during discovery violates this primary objective. As Versata told the Court at the December 15, 2019 hearing, it plans to ambush Ford at trial because Versata believes "the amount of the damages … is an issue for jury argument," and Ford will learn the amount when Versata "ask[s] the jury for a number." (ECF No. 723, PageID.53917.) Versata's conduct is improper. *Erskine*, 814 F.2d at 272 ("The aggregate of defendant's conduct throughout the course of pretrial proceedings resulted in precisely the sort of 'trial by ambush' that the Federal Rules were designed to prevent.")

**C.    Versata's Rule 26(a) and discovery disclosures do not permit Versata to seek "at least" $17 million/year for belatedly alleged "use" of confidential information**

Nowhere in Versata's Rule 26(a) initial disclosures or in its discovery responses did Versata disclose (1) the amount of damages it seeks for breach of contract, (2) the evidentiary support for that (undisclosed) amount, or (3) how it causally links damages to the only damages bases it disclosed before discovery ended, namely "reverse engineering" and "disclosure" of confidential information.



Ford expressly challenges Versata to identify where it made these three disclosures, which are essential to Versata's contract damages claim.

Failure to link damages to the alleged breach results in exclusion of the contract claim. *Gorman v. Am. Honda*, 302 Mich. App. 113, 118-19 (2013) (affirming grant of summary judgment because there was no evidence of a causal link between the claimed damages and the breach of contract). A motion *in limine* is the proper vehicle for exclusion of claims not disclosed in discovery. *See, e.g.*, *MLC Intellectual Prop., LLC v. Micron Tech., Inc*., No. 14-cv-03657-SI, 2019 U.S. Dist. LEXIS 110882, 2019 WL 2847285, *14 (N.D. Cal. July 2, 2019), *aff'd,* 10 F.4th 1358 (Fed. Cir. 2021) (granting motion *in limine* to exclude undisclosed damages theory).

Affirming the district court's grant of the motion *in limine*, the Federal Circuit explained, "Under Rule 37(c)(1), when 'a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *MLC*, 10 F.4th at 1369.

Like Ford, the defendant in *MLC*, served an interrogatory asking for "the factual and legal basis and supporting evidence for … [MLC's] contention that [it is] entitled to damages[.]" *Id*. Like Versata, MLC asserted "it was not required to disclose these specific facts and documents supporting its damages theory during



20

fact discovery because it ultimately disclosed them during expert discovery." *Id*. There, MLC ultimately disclosed its damages theory and calculation in its expert report, but the district court excluded it nonetheless because "MLC did not properly disclose its claim that the Hynix and Toshiba licenses reflect a 0.25% rate, as well as the extrinsic documents relied on by Mr. Milani to show that the Hynix agreement reflects a 0.25% royalty rate." *Id*. at 1370.

Here, Versata not only refused to disclose, in discovery, the facts and evidence supporting its contract damages (including the amount), Elson's expert report has no such disclosure. The Federal Circuit found "unpersuasive" MLC's argument that "it was outside of the district court's discretion to require MLC to identify which documents [its expert] would be using, how [its expert] would interpret those documents, and how [its expert] would use them to derive his reasonable royalty opinion." *Id*. at 1371. The court noted, "Rule 26(a)(1)(A)(iii) requires parties seeking damages to provide in their initial disclosures 'a computation of each category of damages' and 'the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based.'" *Id*. Like Versata, MLC's initial disclosures did not give the required information on damages.

The Federal Circuit also commended the use of contention interrogatories, like Ford's Interrogatory No. 23, because they "serve an important purpose in



helping to discover facts supporting the theories of the parties. Answers to contention interrogatories also serve to narrow and sharpen the issues thereby confining discovery and simplifying trial preparation." *Id*. at 1372, quoting *Woods v. DeAngelo Marine Exhaust, Inc*., 692 F.3d 1272, 1280 (Fed. Cir. 2012). It held MLC's argument "undermines Rule 33 of the Federal Rules of Civil Procedure." *Id*. Likewise, Versata's answer to Interrogatory No. 23 did not "sharpen the issues," nor did Versata's belated final supplementation, which merely said Versata should get "at least that amount [$17 million/year]" in contract damages. Versata cited no documents, expert reports, or testimony to support its new theory.



## III.   CONCLUSION

Versata has not enumerated its alleged contract damages. It has not causally linked damages to the two sources of damage it identified in discovery, "reverse engineering" and "disclosure" of confidential information or to any other alleged breach. Versata has not supplied evidence to support any contract damage claim at trial, including the belatedly asserted "at least this amount" theory served after the close of business the day discovery closed. The Court should prevent Versata from offering argument, testimony, or other evidence of contract damages, which Versata did not disclose during discovery.

Respectfully submitted,

Dated: February 11, 2022

By: /s/ Thomas A. Lewry
John S. LeRoy (P61964)
Thomas A. Lewry (P36399)
Christopher C. Smith (P73936)
Chelsea E. Pasquali (P77375)
Reza Roghani Esfahani (P83787)
1000 Town Center, 22nd Floor
Southfield, MI  48075
Tel.: 248-358-4400 / Fax: 248-358-3351
jleroy@brookskushman.com
tlewry@brookskushman.com
csmith@brookskushman.com
cpasquali@brookskushman.com
resfahani@brookskushman.com

James P. Feeney (P13335)
**DYKEMA GOSSETT PLLC**
39577 Woodward Ave, Suite 300
Bloomfield Hills, MI 48304



Ph: 248-203-0841
jfeeney@dykema.com

*Attorneys for Plaintiff, Ford Motor Co.*



## <u>CERTIFICATE OF ELECTRONIC SERVICE</u>

I hereby certify that on <u>February 11, 2022</u>, I electronically filed **FORD MOTOR COMPANY'S MOTION *IN LIMINE* AND SUPPORTING BRIEF TO PRECLUDE DEFENDANTS FROM RELYING ON CONTRACT DAMAGES THEORIES AND CALCULATIONS NOT DISCLOSED IN DISCOVERY along with Exhibits A-Q.**

**<u>Exhibits J and K</u>** were filed with the Clerk of the Court using the ECF System's SEALED DOCUMENT EVENT which will send notification to all registered participants of the ECF System.  I have also submitted copies of sealed Exhibits J and K via electronic means to counsel using the following information:

> *Counsel for Defendants:*
> *Versata Software, Inc., f/k/a Trilogy Software, Inc., Trilogy Development Group, Inc. and Trilogy, Inc.*
>
> AZA-Versata-Ford@AZALAW.COM
> (which includes all the ECF Registered users)

  /s/ Thomas A. Lewry
Thomas A. Lewry (P36399)
**BROOKS KUSHMAN P.C.**

*Attorneys for Plaintiff*



25