UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY,

    Plaintiff,

v.

VERSATA SOFTWARE, INC. *et al.*

    Defendants.

Case No. 15-cv-10628
(*consolidated with Case No. 15-11624*)
Hon. Matthew F. Leitman

_____/

## ORDER DENYING PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS FROM RELYING ON CONTRACT DAMAGES THEORIES (ECF No. 803)

On February 11, 2022, Plaintiff Ford Motor Company filed a motion *in limine* to preclude Defendants Versata Software, Inc., Trilogy Development Group, Inc., and Trilogy, Inc. (collectively, "Versata") "from offering argument, testimony, or other evidence of contract damages" at trial. (Mot., ECF No. 803, PageID.56461.) The Court held a hearing on Ford's motion on April 8, 2022. (*See* 4/8/2022 Hr'g Tr., ECF No 815.)  For the reasons explained below, the motion is **DENIED**.

**I**

Versata alleges that Ford breached the parties' contract by, among other things, using Versata's software after the contract expired.  Versata seeks at least $17 million per year in damages for the alleged breaches.  This damages theory rests

1

upon Versata's contention that Ford would have paid at least $17 million per year to continue to use Versata's software following the expiration of the contract.

Ford moves to preclude Versata from presenting this damages theory to the jury on two primary grounds. The Court will explain each ground in detail below. Neither persuades the Court that it should bar Versata from presenting its damages theory and evidence to the jury.

## A

Ford first argues that the Court should preclude Versata from presenting its damages theory and supporting evidence at trial because Versata failed to timely and properly disclose the theory and evidence during discovery. (*See* Mot., ECF No. 803, PageID.56461–56472, 56477–56479.) While Versata's disclosures were far from perfect, the Court concludes that they were minimally sufficient. It would therefore be inappropriate to bar Versata from presenting its damages theory to the jury on the ground advanced by Ford.

Versata made disclosures concerning its damages theory at several different points during the discovery period. First, in 2017, Versata explained in a supplemental interrogatory response that "Ford has breached its contract with Versata by, at a minimum, continuing to use Versata's software beyond the term of the relevant licenses and by using Versata's software beyond the scope of Ford's licenses." (ECF No. 803-2, PageID.56494.) Then, in a 2017 expert report authored

2

by Dr. Craig Elson, one of Versata's damages experts, Dr. Elson stated that "[q]uantitatively, the damages associated with certain of Versata's breach of contract claims (assuming liability) are subsumed in the trade secret misappropriation damages quantified herein." (Dr. Elson Rpt., ECF No. 803-11, PageID.56546 at fn.4.) In a second report jointly authored by Dr. Elson and Christopher Bokhart (another of Versata's experts) in 2018, Dr. Elson and Bokhart explained that "if [Ford's] unauthorized use [of Versata's software] is alternatively (or additionally) considered a breach of existing license agreements, reasonable royalty damages as calculated herein would also be reflective of damages under that construct." (Dr. Elson and Bokart Rpt., ECF No. 573-2, PageID.43168 at fn. 11.) The "reasonable royalty damages" identified in Dr. Elson and Bokhart's report were $17 million per year. (*See id.*, PageID.43232, 43238.) Dr. Elson and Bokhart explained that they based that amount, in part, on discussions with Mike Richards, a Versata employee who was involved in the license negotiations with Ford. Richards told Dr. Elson and Bokhart that Ford was willing to pay a license fee of $17 million for a one-year license of Versata's software. (*See id.*, PageID.43193, 43196.)

Finally, on March 12, 2019, Versata served an additional supplemental interrogatory response on Ford.[1] In that response, Versata explained its theory of contract damages in more detail:

> Versata states that Ford has breached its contract with Versata by, at a minimum, continuing to use Versata's software beyond the term of the relevant licenses and by using Versata's software beyond the scope of Ford's licenses. In connection with its breach of contract cause of action, Versata seeks actual damages, including damages suffered by Versata due to Ford's failure to abide by provisions prohibiting the disclosure of Versata's confidential information and Ford's reverse engineering of Versata's software. Versata was damaged by not being allowed to negotiate the fee that it would have charged to give Ford a right to reverse engineer Versata's software or to disclose Versata's software to unauthorized employees and contractors, including companies specifically identified as competitors in the relevant agreements. Damages calculations and evidence material to those calculations are the domain of expert testimony, and Versata will supplement its response in accordance with the court's deadline for the submission of expert reports.

---

[1] Ford insists that Versata's March 12 supplemental interrogatory response was "belated" and "untimely." (Mot., ECF No. 803, PageID.56470-56471.) The Court disagrees. Versata served the supplemental interrogatory response at 7:22 p.m. on March 12, 2019, the day discovery closed. Ford has not identified any authority holding that discovery served on the final day of a discovery cutoff period, as opposed to *after* that date, is considered untimely. Moreover, Ford has not disputed Versata's contention that Ford also served a number of supplemental discovery responses on the final day of the discovery period.

(Versata Supp. Interrogatory Resp., ECF No. 803-15, PageID.56570–56571.) Versata further told Ford that it was seeking at least $17 million per year in contract damages:

> Versata incorporates the expert reports and deposition testimony of Craig Elson, Christopher Bokhart, and Sam Malek and the October 9, 2018 declaration and deposition testimony of Seth Krauss. Regarding Versata's breach of contract claim, Versata further states that the evidence shows that Ford was willing to pay $17 million for a one-year extension of its license to ACM and MCA under the MSSA and Versata is entitled to recover at least this amount for every year or part of a year that Ford continued to use Versata confidential information in violation of its license. In addition, Versata is entitled to the reasonable royalty damages calculated by Mr. Elson and Mr. Bokhart for continued use of Versata's trade secrets and patented technologies in violation of the license.

(*Id.*, PageID.56571–56572.)

The Court concludes, based on the totality of these disclosures, that Versata sufficiently revealed its contract damages theory and evidence to Ford. The Court acknowledges that the disclosures were imperfect. The timing and level of detail in Versata's disclosures is subject to reasonable criticism. Moreover, Versata repeatedly indicated during discovery that its contract damages would be established by expert testimony even though the theory actually rests almost exclusively on anticipated testimony from lay witness Mike Richards. However, for all of the reasons explained above, the Court cannot accept Ford's contention that Versata so completely failed to disclose its damages theory and supporting evidence such that

5

the Court should preclude Versata from presenting its theory and evidence to the jury.

Furthermore, the Court is not persuaded by Ford's contention that it will suffer substantial unfair prejudice if the Court permits Versata to present its allegedly-undisclosed damages theory at trial. Ford insists that by "waiting until 7:22 p.m. the day fact and expert discovery ended [to disclose its contract damages theory and evidence to Ford], Versata said, effectively, 'gotcha, we now base contract damages on an (undisclosed) witness who will say 'Ford was willing to pay $17 million' and we demand[ed] 'at least' that much.' … [T]hat prejudiced Ford because it was prevented from conducting fact discovery regarding these issues.'" (Ford Reply Br., ECF No. 810, PageID.56947; internal punctuation and citation omitted.) Ford contends that this would be "trial by ambush." (4/8/2022 Hr'g Tr., ECF No. 815, PageID.56993.)

The Court disagrees for two reasons. First, for all of the reasons explained above, the Court concludes that Versata's disclosures – while far from ideal – sufficiently disclosed its damages theory and evidentiary support to Ford. Moreover, contrary to Ford's assertion here, the witness who, according to Versata, will testify "Ford was willing to pay $17 million" was not "undisclosed." Versata disclosed that Mike Richards would be that witness. Dr. Elson and Bokhart, two of Versata's experts, identified Richards as the source of that contention in their 2018 expert

6

report. (*See, e.g.*, Dr. Elson and Bokart Rpt., ECF No. 573-2, PageID.43193 at fn. 110; PageID.43196.)  And Ford has previously recognized that Dr. Elson and Bokhart had identified Richards as the source for $17 million per year figure. (*See* Ford Mot., ECF No. 707, PageID.53020: "According to Elson, Versata's assertion that Ford was 'willing to pay' $17 million stems from a conversation Elson had with Versata's contract manager for the Ford account, Mike Richards").

Second, the Court can and will mitigate any possible prejudice from a "trial by ambush" by allowing Ford to re-depose Richards.  By questioning Richards concerning the facts underlying Versata's contract damages theory, Ford can avoid the "ambush" it fears.  Versata shall therefore make Richards available for a deposition within the next 30 days.  The deposition shall last for no more than 90 minutes and shall be limited to questions regarding Versata's breach of contract damages theory and evidence.

Finally, the Court turns to Ford's contention that the decision in *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358 (Fed. Cir. 2021), compels the Court to bar Versata from presenting its damages theory at trial on the basis that Versata did not sufficiently disclose that theory and the supporting evidence. (*See* Ford Mot., ECF No. 803, PageID.56480.)  The Court finds *MLC* to be distinguishable.  In *MLC*, the district court precluded the plaintiff from presenting expert testimony from a particular witness on the ground that the plaintiff failed to

7

disclose the facts underlying the expert's opinion during fact discovery. *See id.* at 1369.  On appeal, the plaintiff "primarily argue[d] that [under Rule 26 of the Federal Rules of Civil Procedure] it was not required to disclose the[] specific facts and documents supporting its damages theory during fact discovery because it ultimately disclosed them during expert discovery." *Id.*  The Federal Circuit disagreed and "reject[ed]" the plaintiff's "narrow reading of Rule 26." *Id.* at 1371.  The court held that "the district court was within its discretion in determining that, though [plaintiff] was not required to disclose its expert opinions during fact discovery, it was still required to disclose" during fact discovery certain key evidence that ultimately formed the foundation for the expert's opinion. *Id.*

In contrast to *MLC*, this case does not present any question concerning the proper interpretation of Rule 26.  More importantly, unlike the plaintiff in *MLC* (and as described above), during the fact discovery period Versata did disclose its damages theory (albeit imperfectly) and did identify Mike Richards as the witness with information concerning Ford's alleged willingness to pay $17 million per year for the continued use of Versata's software.  For these reasons, *MLC* does not persuade the Court that it should bar Versata from presenting its damages theory at trial.

For all of these reasons, the Court declines to prohibit Versata from presenting its breach of contract theory and supporting evidence at trial on the basis that it failed to disclose the theory and evidence during discovery.

B

Ford next argues that the Court should preclude Versata from seeking contract damages because Versata's damages theory "lacks any evidentiary support." (Ford Reply Br., ECF No. 810, PageID.56939.)  Ford says that the theory rests entirely upon Versata's contention that Ford was willing to pay $17 million per year to continue to use Versata's software, and Ford says that "[t]here is no evidence" it was willing to pay that amount. (*Id.*)  Thus, Ford says, "[b]ecause Versata has no admissible evidence on which to base its alleged contract damages, the Court should exclude that damages theory at trial." (*Id.*)

Ford's "lack of evidence" argument belongs in a motion for summary judgment, not in a motion *in limine*.  "Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of material fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2003).  "In other words, a mechanism already exists in civil actions to resolve non-evidentiary matters prior to trial—the summary-judgment motion. Allowing a party to litigate matters that have been or should have been resolved at

9

an earlier stage not only allows those dissatisfied with the court's initial ruling a chance to relitigate, but also deprives their opponents of the procedural protections that attach at summary judgment." *Id.* Thus, "[w]here, as here, the motion *in limine* is no more than a rephrased summary-judgment motion, the motion should not be considered." *Id.* at 563.[2] Indeed, Ford previously presented the same "lack of evidence" argument in its motion for summary judgment (more on that below). (*See* Ford Mot. for Summ. J., ECF No. 707, PageID.530022, arguing that "the Court should enter summary judgment in Ford's favor" on Versata's breach of contract claims because "Versata has no proof of damages resulting from any of the alleged breaches"). Because Ford's "lack of evidence" argument is in effect another request

---

[2] *See also* 75 Am. Jur. 2d Trial § 42 (2022) ("The use of motions *in limine* to summarily dismiss a portion of a claim has been condemned, and the trial courts are cautioned not to allow motions *in limine* to be used as unwritten and unnoticed motions for summary judgment or motions to dismiss."); *WEL Cos., Inc. v. Haldex Brake Prods. Corp.*, 467 F. Supp. 3d 545, 555–56 (S.D. Ohio 2020) (denying motion *in limine* that asked the court to "exclude all evidence of damages" because motion was "in effect a motion for summary judgment"); *Figgins v. Advance America Cash Advance Ctrs. of Michigan, Inc.*, 482 F. Supp. 2d 861, 870 (E.D. Mich. 2007) (denying motion *in limine* to prevent plaintiff from seeking punitive damages and holding that "[t]o the extent that the defendants are arguing that the facts are insufficient to allow the plaintiff to seek punitive damages from the jury, that argument must be rejected because it should have been raised in a motion for summary judgment" and not as a motion *in limine*); *Ordos City Hawtai Autobody Co. Ltd. v. Diamond Rigging Co., LLC*, 2015 WL 6865931, at ** 1, 6–7 (E.D. Mich. Nov. 9, 2015) (holding that court would "not entertain" "untimely summary judgment arguments" raised in motion *in limine* and explaining that "[a] motion *in limine* is not a vehicle for filing what is, in substance, an untimely motion for summary judgment").

for summary judgment, the Court will not consider it at the motion *in limine* stage of these proceedings.

Ford counters that under *MLC*, *supra*, its "lack of evidence" argument is properly brought as a motion *in limine*. Ford contends that *MLC* stands for the proposition that a party may bring "as a proper motion *in limine*" a motion to "exclude damages theories that are unsupported by underlying evidence." (4/8/2022 Hr'g Tr., ECF No. 815, PageID.56973.) The Court disagrees. In the portions of *MLC* upon which Ford relies (which differ from the portion of the decision concerning lack of disclosure, discussed above), the court did not hold that a summary-judgment like argument is properly presented in a motion *in limine*. Instead, the Federal Circuit held that the district court properly excluded an expert's damages opinion under *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993), because the opinion did not rest upon a reliable foundation. *See MLC*, 104 F.4th at 1367–69, 1373–76. The court did not suggest that a lack-of-evidence argument may be brought as a motion *in limine* long after the deadlines to file summary judgment and *Daubert* motions have expired. Moreover, in other decisions, the Federal Circuit has cautioned district courts to avoid "essentially convert[ing a party's] motion *in limine* into a motion for summary judgment." *Meyer Intellectual Props., Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1378 (Fed. Cir. 2012); *see also id.* ("[W]hile argument regarding the sufficiency of the evidence 'might be a proper argument for summary

11

judgment or for judgment as a matter of law, it is not a proper basis for a motion to exclude evidence prior to trial.'") (quoting *Mid–America Tablewares, Inc. v. Mogi Trading Co.,* 100 F.3d 1353, 1362 (7th Cir. 1996)). The Court heeds that caution here.[3]

Next, declining to consider Ford's "lack of evidence" argument at the motion *in limine* stage is not unfair because Ford had the opportunity to secure a ruling on this argument earlier in these proceedings, but it failed to do so. Here is how Ford could have secured that ruling earlier. On July 24, 2019, the Court granted Ford's motion to exclude certain evidence from Versata's expert damages witnesses. (*See* Op. and Order, ECF No. 678.) The Court's ruling left Versata without any expert witnesses who could testify at trial regarding the damages Versata allegedly suffered from Ford's alleged breach of contract. (*See id.*) The parties each filed motions in response to the Court's ruling. Versata asked the Court to reconsider the exclusion of its damages experts (*see* Versata Mot., ECF No. 709); Ford sought summary judgment on the ground that, among other things, the Court's ruling left "Versata [] without proof of damages for its … contract [] claim[]." (Ford Mot. for Summ. J.,

---

[3] As explained above, the Federal Circuit agrees with the Sixth Circuit that a party may not present summary judgment arguments in a motion *in limine*. The Court nonetheless notes that, as Ford acknowledged at the hearing on its motion *in limine*, Ford's motion is governed by the law of the Sixth Circuit, not the Federal Circuit, because the motion pertains to matters of procedure. (*See* 4/8/2022 Hr'g Tr., ECF No. 815, PageID.56989.)

ECF No. 707, PageID.53001.) On January 22, 2020, the Court issued an order that (1) granted in part and denied in part Versata's motion for reconsideration and (2) terminated Ford's motion for summary judgment as moot. (*See* Order, ECF No. 724.) With respect to Versata's motion, the Court concluded that it would allow Versata's experts to present some testimony at trial of Versata's claimed damages. The Court then concluded that because Versata's experts would be allowed to present evidence of contract damages at trial, Ford's motion for summary judgment on Versata's breach of contract claim – which was based upon an alleged lack of evidence of contract damages – was moot:

> Ford moved for summary judgment on Versata's trade secret and breach of contract counterclaims on the basis that Versata could not support those claims with any evidence of damages. However, because the Court has reconsidered its decision that Versata cannot present evidence of damages to the jury, Ford's motion is now moot. The Court therefore **TERMINATES** Ford's motion.

(*Id.*, PageID.53970.) Simply put, by terminating Ford's motion as moot, the Court expressed its view that Versata *did* have evidence to support its claimed contract damages.

Ford could have sought reconsideration of the Court's ruling on the same grounds that it presents in its current motion *in limine* – *i.e.*, that even when the testimony from Versata's expert witnesses is considered, Versata still has no

13

evidence to support its theory of contract damages.[4] But instead of filing such a motion for reconsideration, Ford waited two years to present that argument in its current motion *in limine*. (*See* Mot., ECF No. 803.) That Ford could have secured a ruling on its "lack of evidence" argument much earlier persuades the Court that it is appropriate to decline to consider that argument in Ford's current motion *in limine*.[5]

Finally, the Court rejects Ford's argument that it will suffer substantial unfair prejudice if the Court allows Versata to present its allegedly-unsupported contract damages theory at trial. Ford contends that unless the Court grants its current motion *in limine*, Versata will "spend days telling the jury there is some $17 million willingness [to pay] on Ford's account" that isn't supported by the evidence. (4/8/2022 Hr'g Tr., ECF No. 815, PageID.56976.) But Versata will "spend days"

---

[4] Ford may be correct that Versata lacks sufficient evidence to support its claimed contract damages; the Court's earlier assumption that Versata's expert testimony is sufficient to support Versata's contract damages theory may have been wrong. Ford may move for a directed verdict with respect to Versata's contract claim and/or Versata's demand for $17 million per year in contract damages at the close of Versata's proofs at trial.

[5] The parties in this case have not been shy about seeking reconsideration of the Court's rulings when the parties believe that the Court has erred. (*See*, *e.g.*, Ford Mot. for Reconsideration, ECF No. 503; Ford Mot. for Reconsideration, ECF No. 538; Ford Sec. Mot. for Reconsideration, ECF No. 594; Versata Mot. for Reconsideration, ECF No. 709.) And the Court has fully considered those motions (even where a motion for reconsideration would otherwise be untimely), allowed full briefing on them, held hearings on them, allowed Ford in one instance to file a second motion for reconsideration on the same subject matter, and granted the motions where appropriate. (*See*, *e.g.*, Op. and Order, ECF No. 678, granting in part motion for reconsideration).

14

focusing on the $17 million per year amount no matter how the Court rules on Ford's motion *in limine* because that same amount is the focal point of Versata's trade secret misappropriation claim. A few extra references to that amount in the context of Versata's breach of contract claim will not substantially mislead the jury.

Ford also says that it would be "confusing for the jury" if the jury is told that "there is a contract for [$]17 million on which Versata can seek damages" because there is no basis for Versata's contract damages claim. (4/8/2022 Hr'g Tr., ECF No. 815, PageID.56987.) Ford insists that "it's not proper to present a jury with confusing [and] unsupported factual allegations about a damages theory and then hope the defense counsel can unscrew it all." (*Id.*, PageID.56976.) But the Court can alleviate Ford's claimed prejudice during trial. If, as Ford predicts, Versata presents no evidence to support the damages it seeks on its breach of contract claim, then the Court can and will direct a verdict in Ford's favor as appropriate. And if the Court does so direct a verdict in favor of Ford, the Court will give Ford a full and fair opportunity to propose a jury instruction that makes clear to the jurors that they should disregard all evidence related to the claim and/or theory of damages on which the Court directed a verdict. The Court is confident that the jury will abide by that instruction. *See, e.g.*, *Hubbell v. Fedex Smartpost, Inc.*, 933 F.3d 558, 574 (6th Cir. 2019) (explaining that the "general rule [is] that a jury is presumed to follow its instructions") (internal punctuation omitted); *Barnes v. Owens-Corning*

15

*Fiberglass Corp.*, 201 F.3d 815, 822 (6th Cir. 2000) ("Federal courts generally presume the jury will follow the instructions correctly as given").

### III

For all of the reasons explained above, **IT IS HEREBY ORDERED** that Ford's motion *in limine* (ECF No. 803) is **DENIED**.

s/Matthew F. Leitman  
MATTHEW F. LEITMAN  
UNITED STATES DISTRICT JUDGE

Dated: May 11, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 11, 2022, by electronic means and/or ordinary mail.

s/Holly A. Ryan  
Case Manager  
(313) 234-5126