## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**Versata Software, Inc. f/k/a Trilogy Software, Inc., Versata Development Group, Inc., and Trilogy, Inc.,**

        Plaintiffs/
        Counter-Defendants,

v.

**Ford Motor Company,**

        Defendants/
        Counter-Plaintiffs.

**Case No. 15-10628-MFL-EAS**
*(consolidated with Case No. 15-cv-11624)*

**Hon. Matthew F. Leitman**

**JURY TRIAL DEMANDED**

## VERSATA'S TRIAL BRIEF REGARDING
## TRADE SECRET DISCLOSURE

# **TABLE OF CONTENTS**

Page

CONCISE STATEMENT OF ISSUES PRESENTED ............................................1

INTRODUCTION ..................................................................................................2

BACKGROUND ....................................................................................................4

ARGUMENT .........................................................................................................7

    I.    The DTSA and MUTSA require knowledge of a duty—not knowledge of the exact contours of the trade secret. ...........................7

    II.    Ford's cases are inapposite and unpersuasive, and more relevant case law refutes Ford's argument. ......................................................10

        a.    Ford's support starts and stops with outlier cases analyzing New York common law. ..........................................10

        b.    Other cases squarely refute Ford's position. ...........................14

    III.    Ford's argument defies common business practices and common sense. ...................................................................................16

    IV.    In the alternative, the Court should provide an appropriate jury instruction. ..........................................................................................21

CONCLUSION .....................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arconic Inc. v. Novelis Inc.*,
  2020 WL 7247112 (W.D. Pa. Dec. 9, 2020) ...............................................13, 14

*B&P Littleford, LLC v. Prescott Mach., LLC*,
  2021 WL 3732313 (6th Cir. Aug. 24, 2021) ..................................................3, 10

*Best Process Sols., Inc. v. Blue Phoenix Inashco USA, Inc.*,
  569 F. Supp. 3d 702 (N.D. Ohio 2021) .............................................................20

*Big Vision Private, Ltd. v. E.I. Dupont De Nemours & Co.*,
  1 F. Supp. 3d 224 (S.D.N.Y. 2014) ...................................................10, 11, 12, 13

*Black & Decker (U.S.) Inc. v. Techtronic Indus. Co.*,
  2009 WL 3762947 (W.D. Tenn. May 14, 2009) ..................................................6

*Boon Ins. Agency, Inc. v. Lloyd*,
  2020 WL 5052956 (D.S.C. Aug. 27, 2020).........................................................20

*Bytemark, Inc. v. Xerox Corp.*,
  2022 WL 120980 (S.D.N.Y. Jan. 11, 2022) ......................................................10

*Control Module, Inc. v. Data Mgmt., Inc.*,
  2007 WL 4333814 (D. Conn. Dec. 10, 2007) ....................................................21

*Corp. Ins. Advisors, LLC v. Addeo*,
  2022 WL 2718140 (S.D. Fla. June 27, 2022), *report and
  recommendation adopted*, 2022 WL 2713909 (S.D. Fla. July 13,
  2022.....................................................................................................................20

*Dana Ltd. v. Am. Axle & Mfg. Holdings, Inc.*,
  2013 WL 603104 (W.D. Mich. Feb. 19, 2013) ....................................................6

*Dura Global Techs, Inc. v. Magna Donnelly Corp.*,
  2008 WL 2064516 (E.D. Mich. May 14, 2008) .................................................6, 9

*Ford Motor Co. v. Lane*,
  67 F. Supp. 2d 745 (E.D. Mich. 1999) ...............................................................20

*Ford Motor Co. v. Launch Tech Co.*,
    2018 WL 1089276 (E.D. Mich. Feb. 26, 2018)....................................................19

*Forge Precision Co. v. Dana Corp.*,
    2005 WL 8167124 (E.D. Mich. Feb. 18, 2005)..................................................20

*Harsco Corp. v. Piontek*,
    2008 WL 686217 (M.D. Tenn. Mar. 5, 2008) ....................................................20

*InteliClear, LLC v. ETC Global Holdings, Inc.*,
    978 F.3d 653 (9th Cir. 2020) ........................................................................9, 13

*Interactive Sols. Grp., Inc. v. Autozone Parts, Inc.*,
    2012 WL 1288173 (E.D. Mich. Apr. 16, 2012) ........................................6, 9, 13

*Medidata Sols. v. Veeva Sys.*,
    2022 WL 585734 (S.D.N.Y. Feb. 25, 2022) ................................................10, 13

*Nesco Res. LLC v. Reid*,
    2021 WL 2043975 (W.D. Ky. May 21, 2021) ...................................................20

*Next Commc'ns, Inc. v. Viber Media, Inc.*,
    2017 WL 4402540 (S.D.N.Y. Sept. 30, 2017), *aff'd*, 758 F. App'x
    46 (2d Cir. 2018)...............................................................................................13

*Prudential Def. Sols., Inc. v. Graham*,
    498 F. Supp. 3d 928 (E.D. Mich. 2020) ...........................................................20

*SCR-Tech LLC v. Evonik Energy Servs. LLC*,
    2011 WL 3209080 (N.C. Super. July 22, 2011).................................................16

*Servo Corp. of America v. General Elec. Co.*,
    393 F.2d 551 (4th Cir. 1968) .......................................................................16, 22

*sit-up Ltd. v. IAC/InterActiveCorp.*,
    2008 WL 463884 (S.D.N.Y. Feb. 20, 2008) ....................................10, 11, 12, 13

*Town & Country Linen Corp. v. Ingenious Designs LLC*,
    556 F. Supp. 3d 222 (S.D.N.Y. 2021) ...............................................................13

*UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*,
    617 F. Supp. 2d 938 (N.D. Cal. 2007)...........................................14, 15, 16, 22

*Uni-Sys., LLC v. U.S. Tennis Ass'n*,
    2018 WL 1335354 (E.D.N.Y. Mar. 15, 2018) .................................................11

**Statutes**

18 U.S.C. § 1839 ...............................................................................................7, 8, 18

M.C.L. § 445.1902 .................................................................................................7, 8

**Other Authorities**

162 Cong. Rec. H2028-01 ........................................................................................19

Fed. R. Evid. 401 .....................................................................................................21

Fed. R. Evid. 402 ...............................................................................................4, 6, 21

Fed. R. Evid. 403 .........................................................................................4, 6, 21, 22

## CONCISE STATEMENT OF ISSUES PRESENTED

Should the Court prevent Ford from asking witnesses legally irrelevant and highly prejudicial questions about whether Versata disclosed to Ford, by the time of the alleged misappropriation, the exact contours of its combination trade secrets and their respective features, and whether it did so in a single communication?

Versata answers: Yes.


In the alternative, to remedy Ford's legally irrelevant and highly prejudicial questions, should the Court instruct the jury that it is for the jury to decide whether Versata's disclosures to Ford were sufficient under the circumstances and that it was not necessary for Versata to have disclosed an entire combination to Ford at one time or in one communication?

Versata answers: Yes.

1

# INTRODUCTION

Ford's trial strategy is apparent. It intends to ask each witness whether Versata disclosed to Ford the precise contours of its trade secrets and whether it did so "in a single communication" (and, if the answer is yes, on "what pages"). *See* Dkt. 961, Trial Tr. Day 4 AM at 81:15–83:11. And that goes for lay witnesses, despite Ford's own motion *in limine* prohibiting lay witnesses from testifying about "trade secrets."[1] Ford will likely move for a directed verdict on the basis that the evidence did not establish that Ford was "on notice" of the specific contours of the trade secrets when it used or disclosed them without authorization. And if that fails, Ford will take this argument to the jury.

But Ford is wrong on the law, and its trial strategy is thus unduly prejudicial to Versata. No reading of the Defend Trade Secrets Act or the Michigan Uniform Trade Secrets Act (and no reasonable interpretation of relevant cases) supports Ford's position that, under the circumstances of this case, Versata must have told Ford the exact parameters of its combination trade secrets before the alleged

---

[1] The Court granted that motion *in limine* because "lay witness use of the term 'trade secret' runs a serious risk of confusing the jury." Dkt. 867 at 176:18–20. It is unclear why lay *jurors* are expected to be confused by the term "trade secret" while, at the same time, lay *witnesses* are expected to answer questions about "trade secrets." *See* Dkt. 960, Trial Tr. Day 3 PM at 76:7–8 (When lay witness Ratton said he was confused by Ford's "trade secret" question, the Court stated: "It's not confusing. It's an important and specific question. Listen carefully and answer it."). These lay witnesses are corporate executives, software developers, and business consultants— not lawyers.

misappropriation (let alone "in a single communication"). Rather, the law requires only a showing (1) that Ford knew or should have known, before it used or disclosed Versata's trade secrets without authorization, that it had a duty to maintain the secrecy or limit the use of Versata's confidential information, and (2) that the confidential information included legally protected trade secrets.

The trial evidence presented to date satisfies the first prong. There is no dispute that Ford was on notice that it could not improperly use or disclose *any* of Versata's confidential information. *See* Dkt. 956, Trial Tr. Day 3 AM at 106–08. As to the second prong, whether that confidential information included trade secrets "is a fact-specific inquiry" for discovery and argument in litigation—and in this case, for jury resolution. *B&P Littleford, LLC v. Prescott Mach., LLC*, 2021 WL 3732313, at *6 (6th Cir. Aug. 24, 2021). The law does *not* require Versata to have told Ford in a single communication (or even in several), "By the way, the confidential information we are sharing with you includes four combination trade secrets with the following components—please don't steal them." Ford should not be permitted to suggest otherwise before the jury.

Ford's position on this issue also defies common sense. No software company provides to its licensees a detailed explanation of the trade secrets within its software; this would present a roadmap for misappropriation. Instead, software companies provide their licensees with notice that the software itself, and

3

information about it, is *confidential*, and they place strict limits on its use and disclosure. That software and information often contain what are later determined— in litigation—to be trade secrets. If Ford's position were correct, there would be no effective trade secret protection for software. It cannot be the case that Congress passed a new federal law in 2016 to protect against trade secret theft in the digital age, and software companies cannot benefit from it without spilling their most valuable secrets. That defies common sense, legislative history, and Ford's own position as a trade secret plaintiff in software cases, as explained below.

The parties have briefed this disputed issue in connection with jury instructions, but the jury instruction conference has not yet taken place, and the Court has suggested the "importance" of Ford's questions before the jury. Dkt. 960, Trial Tr. Day 3 PM at 76:7–8. Resolution of this issue is thus appropriate now, before Ford continues to ask witnesses legally irrelevant, prejudicial, and confusing questions that should be precluded under Rule 402 and 403 (and the Court's prior motion *in limine* ruling). In the alternative to an order precluding such witness questioning and closing argument, Versata requests jury instructions as described at the end of this brief.

## BACKGROUND

For several months, the parties have disputed whether Versata must have disclosed to Ford, before the alleged misappropriation, the specific contours of its

trade secrets and their components. Ford first asserted the existence of such a requirement in opposition to Versata's motion *in limine* seeking to exclude evidence and argument about Versata's "changing" trade secret theory. Dkt. 820 (Versata's motion); Dkt. 835 (Ford's response). Ford next made the argument in supplemental briefing meant to show how Versata's "shifting" trade secret theory was relevant to witness credibility. Dkt. 880 at 10–14. The Court granted Versata's motion *in limine* (with a narrow exception to permit challenging an expert witness's credibility), but it did not make clear whether it agreed with Ford's theory. Dkt. 919 at 19–20.

Most recently, Ford asserted the existence of a specific-prior-disclosure rule in its objections and responses to the parties' proposed jury instructions, and it proposed an instruction stating that Versata must "prove that it described the Alleged Combination Trade Secrets to Ford with specificity" and that "[s]pecificity is required at the moment of divulging a trade secret so the party receiving the secret understands the contours of the secret information and does not inadvertently or purposefully intrude upon its boundaries." Dkt. 938 at 9, 12–16. Ford has even put the question in its proposed verdict form four times: "Did Versata disclose the _____ combination to Ford with sufficient particularity so that Ford understood its boundaries before the alleged misappropriation?" Dkt. 937.

All along, Versata has argued that Ford's theory is based on a misreading of the DTSA and MUTSA and an unexplained overreliance on New York common

law. *See* Dkt. 842 at 2–5; Dkt. 902 at 10–17; Dkt. 924 at 6–7. Versata has also argued—and Ford has completely ignored—the ample authority from this district and elsewhere providing that a party can define its trade secrets with sufficient specificity in discovery, which contradicts Ford's position on this issue. *See, e.g.*, *Dana Ltd. v. Am. Axle & Mfg. Holdings, Inc.*, 2013 WL 603104, at *1 (W.D. Mich. Feb. 19, 2013); *Interactive Sols. Grp., Inc. v. Autozone Parts, Inc.*, 2012 WL 1288173, at *3 (E.D. Mich. Apr. 16, 2012); *Black & Decker (U.S.) Inc. v. Techtronic Indus. Co.*, 2009 WL 3762947, at *1 (W.D. Tenn. May 14, 2009); *Dura Global Techs, Inc. v. Magna Donnelly Corp.*, 2008 WL 2064516, at *2 (E.D. Mich. May 14, 2008).

The Court has not yet issued a formal ruling on this dispute, but it has become an issue at trial. Ford has already asked several witnesses whether Versata disclosed the specific combinations of features to Ford and, sometimes, whether it did so "in a single communication." *See* Dkt. 961, Trial Tr. Day 4 AM at 81:21–82:20; Dkt. 962, Trial Tr. Day 4 PM at 62:2–4. And Ford will likely continue doing so because the Court has endorsed these questions before the jury. Dkt. 961, Trial Tr. Day 4 AM at 77:18–20 (The Court: "[T]hat's a fair question. Did you ever disclose, in a single communication, whether buildability consisted of six elements?"). For the reasons explained below, such questioning is irrelevant and unduly prejudicial. It should be prohibited.

## ARGUMENT

There are three problems with Ford's position on this issue. *First*, it ignores the language of the DTSA and MUTSA. *Second*, it depends on a misreading of a small group of outlier cases applying or relying on uniquely irrelevant New York common law. *Third*, it defies common practice and common sense.

### I.     The DTSA and MUTSA require knowledge of a duty—not knowledge of the exact contours of the trade secret.

Ford has previously argued that "particularized disclosure of the trade secrets to the defendant" is a "prerequisite to misappropriation" under the DTSA and MUTSA because it puts the defendant on "notice" of what should not be misappropriated. Dkt. 835 at 10–12; Dkt. 938 at 14. But the statutes say no such thing.

The DTSA defines "trade secret" as "all forms and types of financial, business, scientific, technical, economic, or engineering *information*" if "the owner thereof has taken reasonable measures to keep such *information* secret" and "the *information* derives independent economic value" from its secrecy. 18 U.S.C. § 1839(3) (emphases added). The language of MUTSA is substantively identical. M.C.L. § 445.1902(b)(ii)(B).

The DTSA then defines "misappropriation" to mean the "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, *knew or had reason to know* that the knowledge of the

trade secret was . . . acquired under *circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret.*" 18 U.S.C. § 1839(5) (emphases added). MUTSA is, again, substantially similar. M.C.L. § 445.1902(d).

Ford's argument that there can be no misappropriation absent specific, prior disclosure of a trade secret's exact bounds rests entirely on five words taken out of context: "knowledge of the trade secret." 18 U.S.C. § 1839(5). On Ford's reading, that phrase means that a person given confidential information containing a trade secret must know the precise bounds of the trade secret before it can be held liable for its misappropriation. But that reading cannot be reconciled with the statutory text. The statutory test is whether the alleged misappropriator had actual or constructive notice that the knowledge embodied in the trade secret was acquired under circumstances giving rise to a duty of secrecy or limited use—*not* whether the alleged misappropriator had knowledge of the precise boundaries of the trade secret contained within the confidential information. Ford effectively rewrites the statute so that liability would depend on knowing the exact contours of the trade secret rather than—as Congress and the state legislature specified—knowing the "circumstances" under which the trade secret was acquired. The Court should reject Ford's unsupported reading. *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 164 (1985) ("In construing a federal statute it is appropriate to assume that the ordinary meaning

of the language that Congress employed accurately expresses the legislative purpose.").

By their plain terms, these statutes do not require that the defendant know, at the time of disclosure, the exact contours of the trade secrets it is later alleged to have misappropriated. Instead, it is sufficient that the defendant knew (or should have known), at the time of misappropriation, that it had a "duty" to maintain the secrecy or limit its use of the "information." When a defendant breaches its duty with respect to this information, it can be liable for trade secret misappropriation if it is shown—*in litigation*—that the information qualifies as a trade secret because it (1) is subject to reasonable efforts to maintain its secrecy and (2) derives independent economic value by virtue of its secrecy.

This makes sense. As Ford has previously argued, whether something is in fact a "trade secret" is a legal conclusion. *See* Dkt. 834 at 10 (citing, among other cases, *Stonecoat of Tex. v. Procal Stone Design*, 2019 WL 9899920, at *11 (E.D. Tex. Jun. 28, 2019)). And in this district (as elsewhere), a party can identify its trade secrets with reasonable specificity through discovery. *Dura Global*, 2008 WL 2064516, at *2; *Interactive Sols.*, 2012 WL 1288173, at *3; *see also InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 662 (9th Cir. 2020) ("Refining trade secret identifications through discovery makes good sense."). Ford should not be permitted to elicit legally irrelevant testimony based on a misreading of the law.

9

## II.     Ford's cases are inapposite and unpersuasive, and more relevant case law refutes Ford's argument.

### a.     Ford's support starts and stops with outlier cases analyzing New York common law.

Unable to support its position under the DTSA and MUTSA, Ford has repeatedly cited a small handful of irrelevant cases. Versata has thoroughly distinguished them. *See* Dkt. 842 at 3–4; Dkt. 902 at 12–17; Dkt. 931 at 6–7 (discussing *Big Vision Private, Ltd. v. E.I. Dupont De Nemours & Co*., 1 F. Supp. 3d 224 (S.D.N.Y. 2014), and *Sit-Up Ltd. v. IAC/InterActiveCorp*., 2008 WL 463884 (S.D.N.Y. Feb. 20, 2008)).

To start, both *Big Vision* and *Sit-Up* applied New York common law, not the Uniform Trade Secrets Act that Michigan and every other state in the country has adopted and on which the DTSA was based. *See B&P Littleford*, 2021 WL 3732313, at *5 ("Both MUTSA, passed in 1998, and the DTSA, passed in 2016, were modeled on the Uniform Trade Secrets Act."). And even if New York law had any persuasive value, courts are divided on what New York law is. *See, e.g.*, *Medidata Sols. v. Veeva Sys.*, 2022 WL 585734, at *1 (S.D.N.Y. Feb. 25, 2022) (requiring a party only to "identify the alleged trade secrets with specificity during discovery" under New York law); *Bytemark, Inc. v. Xerox Corp.*, 2022 WL 120980, at *5 (S.D.N.Y. Jan. 11, 2022) (analyzing New York law and holding that "[p]laintiff is not required—as a prerequisite for obtaining relevant discovery from Defendants—to identify its trade

secrets with the specificity that Defendants demand."); *cf. Uni-Sys., LLC v. U.S. Tennis Ass'n*, 2018 WL 1335354, at *2 (E.D.N.Y. Mar. 15, 2018) (noting that a DTSA plaintiff was expected "to identify its claimed trade secrets with increased specificity" "[a]s discovery in this case proceeds"). These other New York cases support Versata's position, not Ford's.

Moreover, *Big Vision* and *Sit-Up* are distinguishable on the facts. The court in *Big Vision* held that the plaintiff's disclosure of the alleged trade secret was too "vague and indefinite" because the relevant documents were not marked "confidential," there was "no written confidentiality agreement," and there were no "terms providing that all information disclosed . . . constituted confidential information." 1 F. Supp. 3d at 261. The court determined that the plaintiff "need not have said the words 'trade secret,' or put forth the same degree of detail as would be appropriate in litigation, but it must have done *something*." *Id.* (emphasis original).

The facts here are completely different. Versata has done more than "*something*," *id.*; the evidence has already established Versata's extensive efforts to maintain the confidentiality of its information and its requirements that Ford do the same. Here, Versata's documents *were* marked confidential, there *were* written confidentiality agreements in place, and there *were* contract terms providing for the

11

protection of confidential information.[2] Versata even put Ford on express notice that the software and confidential information contain "trade secrets" by stating so *twice* in the parties' governing contract. PX-100 (MSSA) §§ 7.4, 9.1.

As for *Sit-Up*—an unpublished, out-of-circuit case with *no* persuasive value to this Court—the plaintiff there "contend[ed] that each of more than one hundred items is itself a trade secret," and the court determined that "[i]n making such extensive claims, [the plaintiff] has a heavy burden to shoulder." 2008 WL 463884, at *11. The "burden" the *Sit-Up* court was talking about, however, was not proving disclosure of the trade secrets with specificity before the alleged misappropriation but "describing the alleged trade secret with adequate specificity *to inform the defendants what it is alleged to have misappropriated*." *Id.* (emphasis added). Thus, the *Sit-Up* court was focused on the plaintiff's attempt "to *advance* a trade secret *claim* in vague and ambiguous terms" that did not give the defendant sufficient notice for purposes of litigation. *Id*. (emphasis added).

---

[2] *See, e.g.*, Dkt. 253, Trial Tr. Day 2 PM at 108 (Ratton testimony regarding proprietary information agreements, confidentiality terms in the code of conduct and employee manual, and exit interviews); Dkt. 956, Trial Tr. Day 3 AM at 106–07, 110–12 (Ratton testimony regarding confidentiality provisions and limits on use in MSSA); Dkt. 961, Trial Tr. Day 4 AM at 25 (Nichols testimony regarding documents marked "Trilogy confidential"), 101–24 (Royston testimony regarding confidentiality policies and procedures).

Here, there can be no dispute that Versata has in the course of litigation clearly defined, and thus given ample notice of, the trade secrets that it claims Ford misappropriated. *See* Dkt. 786.

Thus, neither *Big Vision* nor *Sit-Up* supports Ford's contention that Versata was, under the circumstances presented here, required to precisely identify the bounds of its trade secrets before commencing litigation. That is not surprising. In this district and elsewhere (including New York), courts do not require precise specification of the trade secret at issue prior *before* discovery but instead allow a plaintiff to "[r]efin[e] trade secret identifications through discovery." *InteliClear*, 978 F.3d at 662; *Medidata Sols.*, 2022 WL 585734, at *1; *Interactive Sols.*, 2012 WL 1288173, at *3.

Aside from *Big Vision* and *Sit-Up*, which are neither persuasive nor analogous, Ford has little else to support its specific-prior-disclosure standard. Every other case Ford cites—including the singular non-New York case Ford could locate—relies on these two inapposite cases. *See Town & Country Linen Corp. v. Ingenious Designs LLC*, 556 F. Supp. 3d 222, 270 (S.D.N.Y. 2021) (relying on *Sit-Up*, 2008 WL 463884, at *11, and *Next Commc'ns, Inc. v. Viber Media, Inc.*, 2017 WL 4402540, at *3 (S.D.N.Y. Sept. 30, 2017), *aff'd*, 758 F. App'x 46 (2d Cir. 2018) (applying "New York law")); *Arconic Inc. v. Novelis Inc.*, 2020 WL 7247112, at *11 (W.D. Pa. Dec. 9, 2020) (citing *Big Vision* and *Sit-Up* without explanation). Ford's

13

support is wholly lacking and does nothing to show that this Court should apply unique New York law that has so far clawed its way only as far as Pennsylvania. *See Arconic Inc.*, 2020 WL 7247112, at *11.

Moreover, although Ford's proposed verdict form asks whether each trade secret was disclosed "to Ford with sufficient particularity so that Ford understood its boundaries before the alleged misappropriation," we have scoured verdict forms from other DTSA cases and have found no such question asked of any jury *anywhere*. *See* Exs. 1–13 hereto.

Given the scant precedent for its position, Ford ultimately relies on a logical loop: the elements of trade secret misappropriation under New York law are similar to those under the DTSA, the DTSA is modeled off of the UTSA, Michigan adopted the UTSA, and therefore, New York law should apply. Dkt. 938 at 14. That logic is not only uncompelling but flatly contrary to Ford's prior contention that "New York law is much broader" than the DTSA and MUTSA. Dkt. 902 at 13. Ford's position holds no water.

### b.   Other cases squarely refute Ford's position.

If the plain text of the statutes were not enough to show that Ford's position is wrong, on-point cases confirm as much.

In a "case of first impression" on this specific issue in California, a plaintiff alleged that a defendant misappropriated its trade secrets "consist[ing] of particular

combinations of . . . features." *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F. Supp. 2d 938, 940, 942 (N.D. Cal. 2007).[3] The defendant "dispute[d] that it ever acquired knowledge of [plaintiff's] trade secrets" because the information it received "presented only hundreds of thousands of possible combinations of features, and [it] could not have known the specific combinations which [the plaintiff] claims are secret." *Id.* at 940. The defendant further argued that "summary judgment [was] appropriate because not a single document [the plaintiff] relie[d] on to support disclosure of its alleged trade secrets recite[d] all of the features for a given combination secret." *Id.* at 941 (internal quotation marks omitted). The defendant's theory, like Ford's, was "that [the plaintiff] must disclose its elements and secret combinations in a single form or on a single occasion." *Id.* (internal quotation marks omitted).

The court squarely rejected that argument. The court held that "it is not true as a matter of law that [the plaintiff's] claim will survive only if it disclosed to [the defendant] the exact combinations that make up its trade secrets." *Id.* at 942. The court further explained that when, as here, "the elements have only been disclosed to another party in a confidential relationship, the defendant might be deemed to

---

[3] *UniRAM* concerned the California UTSA, which—like the DTSA and MUTSA—requires that the defendant, "[a]t the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was . . . [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." *Id.* at 941 (emphasis added) (quoting Cal. Civ. Code § 3426.1(b)).

have constructive knowledge of a combination of elements even though only the separate elements have been disclosed." *Id.* In other words, "knowledge of the combination may be imputed to those with knowledge of the components," and "[i]nsisting on a unified description in a single integrated document," as Ford is currently doing, "is unnecessary." *Id.* at 943[4]; *see also Servo Corp. of America v. General Elec. Co.*, 393 F.2d 551, 554 (4th Cir. 1968) (phrasing the issue as "whether, taking into account *all* of the . . . relevant disclosures, it is reasonable to conclude that a competitor could have ascertained the working combination from an examination of those disclosures"); *SCR-Tech LLC v. Evonik Energy Servs. LLC*, 2011 WL 3209080, at *12 (N.C. Super. July 22, 2011) (same). These on-point cases directly refute Ford's argument.

### III. Ford's argument defies common business practices and common sense.

Finally, Ford's argument makes no logical sense, especially given the facts of this case and the purpose of the DTSA.

It is undisputed that Versata provided Ford with confidential information that Ford was obligated to keep confidential and use only within the scope of its license.

---

[4] The court further suggested "that knowledge of the combination may be presumed as long as one skilled in the art could view the [individual] elements and replicate the combination without undue difficulty." *Id.* at 942.

16

*See* PX-100 (MSSA).[5] The confidential information included, among other things,

manuals, user guides, presentations, other technical documentation, and (according

to the contract) "trade secrets." *See id.* §§ 7.1.1, 7.1 ("Nothing in this Agreement

shall be construed to convey any title or ownership rights to the Software or other

Trilogy Confidential Information to Ford or to any . . . trade secret embodied

therein."); *see also* Dkt. 956, Trial Tr. Day 3 AM at 108 (Versata witness testimony

that it "disclosed confidential information to Ford" in "PowerPoints [and] in the user

documentation" because "you because you have to tell them how to use the

software . . . .").

Furthermore, witness testimony has already established that every component

of every trade secret was disclosed in these confidential materials. Dkt. 961, Trial

Tr. Day 4 AM at 57 (Mr. Nichols: "Yesterday, in my direct testimony, I shared a

functional walkthrough document which included elements of the trade secrets and,

specifically, elements of the subcomponents of the combination trade secrets, of

things like the dynamic Grid, Workspaces and buildability."); Dkt. 962, Trial Tr.

Day 4 PM at 62 ("Mr. Little: "[W]e shared all of those details [about MCA.]").

Especially under these circumstances, there is no requirement that Versata

have disclosed to Ford the exact contours of its trade secrets, let alone in a single

---

[5] Sections 1.5 ("Use"), 1.6 ("Authorized Users"), 1.7 ("Additional Restrictions"),
3.3 ("Marking"), 7 ("Confidentiality"), 7.2 ("Marking"), 7.5 ("Non-Disclosure").

document. Ford knew it had a duty not to publish or misuse *any* of Versata's confidential information. There is nothing unfair about holding a defendant liable for trade secret misappropriation where it breached a known duty to limit its use of, or protect the secrecy of, information given to it in confidence—even if that information is not called a "trade secret" when it is disclosed, and even if it includes other proprietary information.

Ford's assertion that the owner of a trade secret must disclose the secret in particularized detail to those with whom it is in a confidential relationship makes no sense. All agree that a trade secret owner must take reasonable measures to protect its trade secrets. *See* 18 U.S.C. § 1839(3)(A). Yet under Ford's view of the law, for a trade secret to have any legal protection, the owner must compile the details of the trade secret and hand them over. The far more reasonable—and realistic—approach is to withhold disclosure of, or even obscure, the exact boundaries of the trade secret, including from those with whom there is a confidential relationship; instead provide the components of the trade secret under the label "confidential information"; and limit the use or disclosure of *all* confidential information pursuant to clear contractual terms. After all, the law is meant to *protect* trade secrets, not force their detailed disclosure to others. Yet Ford's position would permit a defendant to say, "We knew we were provided *confidential* information; we knew we could not *disclose* the information; we knew we could not *use* the information in certain ways;

but we can't be held liable for violating all of these duties because we didn't know that a jury might one day conclude that there are *trade secrets* in there." Ford's position turns the law on its head.

For enterprise software companies like Versata, confidential, proprietary information is *the* key asset. And these companies simply do not explain the details of their trade secrets to their licensees because doing so would only increase the risk of their misappropriation. But that does not insulate defendants from liability—or spare them from the remedies provided by the DTSA that are unavailable in contract—when they improperly disclose or use valuable, confidential information in breach of a known duty. To hold otherwise would be to gut the purpose of the DSTA, which was passed in 2016 in part to protect against trade secret theft in the digital age. *See* 162 Cong. Rec. H2028-01, H2031 ("Trade secrets occupy a unique place in the IP portfolios of our most innovative companies . . . ."); *id.* ("[Technology] companies are at the forefront of innovation and have some of the largest trade secret and patent portfolios in the world . . . . Our companies pour billions of dollars into research and development to create products and services that ultimately become the backbone of their businesses. . . . It is long overdue for our trade secrets law to be modernized to keep pace with the rapid developments of our companies . . . ."). Indeed, Ford itself has recognized these commercial realities when the shoe was on the other foot. *See Ford Motor Co. v. Launch Tech Co.*, 2018

WL 1089276, at *2, *17  (E.D. Mich. Feb. 26, 2018) (Ford surviving a motion to dismiss as the plaintiff in a combination trade secret software case by pointing to the contractual protections governing the parties' license relationship). Ford cannot have it both ways.

This not a unique case. Even a quick review of other trade secret misappropriation cases shows that the typical case concerns a situation where a defendant is alleged to have breached a duty to maintain the secrecy or limit the use of *confidential or proprietary information* that the plaintiff later alleges—via litigation—contains trade secrets. Such cases make clear that statutes requiring proof that the defendant "knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit [its] use" does *not* mean the defendant must have "knowledge that the confidential information is a trade secret" or "knowledge of the contours of the trade secret found within the confidential information," as Ford suggests.

Rather, it is enough for the defendant to know that the information containing the trade secret was acquired under the statutorily specified circumstances. *See, e.g.*, *Forge Precision Co. v. Dana Corp.*, 2005 WL 8167124, at *3 (E.D. Mich. Feb. 18, 2005) (denying motion to dismiss where plaintiff alleged defendant "acquired knowledge of [plaintiff's] *proprietary information* 'under circumstances giving rise

to a duty to maintain its secrecy or limit its use' and notwithstanding that duty to maintain its secrecy, 'disclosed' the *proprietary information* to a third party" (emphases added)); *Prudential Def. Sols., Inc. v. Graham*, 498 F. Supp. 3d 928, 938 (E.D. Mich. 2020); *Ford Motor Co. v. Lane*, 67 F. Supp. 2d 745, 747–48 (E.D. Mich. 1999).[6]

The weight of this authority shows why Ford's trial questioning is unfair and unduly prejudicial. The Court should enter an order prohibiting Ford from examining witnesses on Ford's legally flawed, confusing, and misleading position. *See* Fed. R. Evid. 401, 402, 403.

## IV.   In the alternative, the Court should provide an appropriate jury instruction.

As explained above, Versata need not have disclosed its trade secrets with particularity to Ford prior to Ford's misappropriation of those secrets because each was contained in "confidential information" with contractually specified limits placed on Ford's right to use or disclose them. Accordingly, any jury instruction that

---

[6] *See also Corp. Ins. Advisors, LLC v. Addeo*, 2022 WL 2718140, at *5 (S.D. Fla. June 27, 2022), *report and recommendation adopted,* 2022 WL 2713909 (S.D. Fla. July 13, 2022); *Nesco Res. LLC v. Reid*, 2021 WL 2043975, at *1–2 (W.D. Ky. May 21, 2021); *Best Process Sols., Inc. v. Blue Phoenix Inashco USA, Inc.*, 569 F. Supp. 3d 702, 704–05 (N.D. Ohio 2021); *Boon Ins. Agency, Inc. v. Lloyd*, 2020 WL 5052956, at *5 (D.S.C. Aug. 27, 2020); *Harsco Corp. v. Piontek*, 2008 WL 686217, at *10–11 (M.D. Tenn. Mar. 5, 2008); *Control Module, Inc. v. Data Mgmt., Inc.*, , 2007 WL 4333814, at *2 (D. Conn. Dec. 10, 2007).

would impose a specific-prior-disclosure standard is wrong as matter of law and thus should not be given.

But if the Court decides nonetheless to instruct the jury on this issue, it should reject Ford's proposal outright (*see* Dkt. 938 at 9) and instead provide an instruction that accurately captures the law and circumstances of this case, similar to the following:

> It is for you to determine whether Versata sufficiently disclosed its combination trade secrets to Ford. As long as Versata has proved that it owns valid combination trade secrets and that it provided Ford with the contents of those trade secrets under terms of confidentiality or limited use, it is not necessary for Versata to have told Ford the exact boundaries or contents of those trade secrets. It is also not necessary for Versata to have disclosed an entire combination to Ford at one time or in one communication. Rather, disclosure of individual trade secret components across several communications or over a period of time may be sufficient. In making this determination, you may consider Ford's skill in the relevant art or science and its ability to ascertain the combination from its constituent parts.[7]

At minimum, the Court should also give a curative, limiting instruction cautioning the jury not to consider the Court's remarks about the "importance" of questions concerning the specificity of Versata's disclosures to Ford.

---

[7] *See Servo Corp. of America v. General Elec. Co.*, 393 F.2d 551, 554 (4th Cir. 1968); *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F. Supp. 2d 938, 940, 942 (N.D. Cal. 2007).

## CONCLUSION

The testimony elicited by Ford when asking witnesses whether Versata disclosed the exact combinations of features to Ford, whether Versata told Ford that its confidential information included trade secrets, and whether those trade secrets were disclosed in a single communication, is "irrelevant" as a matter of law and thus "not admissible." Fed. R. Evid. 402. And even if there were some marginal relevance to the testimony elicited through those questions, its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, and misleading the jury." Fed. R. Evid. 403. It would also be improper and unfairly prejudicial if Ford were allowed to argue at closing that Versata's trade secret claims fail because Versata did not meet the legally incorrect and unsupported "specificity" requirement that Ford seeks to impose.

For these reasons, the Court should prohibit Ford from continuing to ask such questions and from making such an argument at closing. In the alternative, the Court should provide the jury instruction proposed above and reject Ford's competing (and again, unsupported) proposed instruction on the specificity standard. At minimum, a curative instruction addressing the Court's comments is warranted.

Dated: October 11, 2022         Respectfully submitted,

                          */s/ Matthew R. Carter*

                          Dan K. Webb
                          DWebb@winston.com

Matthew R. Carter
MCarter@winston.com
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600

Steven J. Mitby
smitby@mitbylaw.com
Timothy Johnson
tjohnson@mitbylaw.com
**MITBY PACHOLDER JOHNSON PLLC**
Telephone: (713) 234-1446

Jaye Quadrozzi
quadrozzi@youngpc.com
**YOUNG, GARCIA & QUADROZZI, PC**
27725 Stansbury Blvd., Suite 125
Farmington Hills, MI 48334
Telephone: (248) 353-8620

Sharoon Saleem
Sharoon.saleem@jonesspross.com
**JONES & SPROSS, PLLC**
1605 Lakecliff Hills Ln., Suite 100
Austin, TX 78732-2437

**ATTORNEYS FOR PLAINTIFFS
VERSATA SOFTWARE, INC. f/k/a
TRILOGY SOFTWARE, INC.,
VERSATA DEVELOPMENT GROUP,
INC., AND TRILOGY, INC.**

24

## PROOF OF SERVICE

Matthew R. Carter certifies that on October 11, 2022, he served Versata's Trial Brief Regarding Trade Secret Disclosure upon all counsel of record via electronic filing.

I declare under the penalty of perjury that the statements made above are true to the best of my knowledge, information, and belief.

*/s/Matthew R. Carter*
MCarter@winston.com
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600