## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**Versata Software, Inc. f/k/a Trilogy Software, Inc., Versata Development Group, Inc. and Trilogy, Inc.,**

*Plaintiffs.*

**v.**

**Ford Motor Company,**

*Defendant.*

Case No. 15-10628-MFL-EAS
*(consolidated with Case No. 15-cv-11624)*

Hon. Matthew F. Leitman

## FORD MOTOR COMPANY'S MOTION AND SUPPORTING BRIEF FOR ORDER REQUIRING PLAINTIFFS TO MAKE AN ELECTION OF REMEDY

## <u>CONCISE STATEMENT OF ISSUE PRESENTED</u>

Must Versata elect a remedy to avoid duplicative recovery where it asserted a single injury and alternative means of recovering damages for that injury?

**Ford Answers:  Yes**

## <u>CONTROLLING AUTHORITY</u>

- *Can IV Packard Square, LLC v. Schubiner*, 2022 WL 3335697 (6th Cir. Aug. 12, 2022)

- *Chicilo v. Marshall*, 460 N.W.2d 231 (Mich. Ct. App. 1990)

- *Corl v. Huron Castings, Inc.*, 544 N.W.2d 278 (Mich. 1996)

- *Ford Motor Co. v. Versata Software, Inc.*, 2022 WL 1493506 (E.D. Mich. May 11, 2022)

- *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558 (6th Cir. 2019)

- *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454 (6th Cir. 2022)

- *Midfield Concession Enters., Inc. v. Areas USA, Inc.*, 130 F. Supp. 3d 1122 (E.D. Mich. 2015)

- *Ohst v. Crehan*, 2021 WL 2390036 (Mich. Ct. App. June 10, 2021)

- *Parmet Homes, Inc. v. Republic Ins. Co.*, 314 N.W.2d 453 (Mich. Ct. App. 1981)

- *Trost v. Trost*, 525 F. App'x 335 (6th Cir. 2013)

- *U.S. ex rel. Augustine v. Century Health Servs., Inc.*, 289 F.3d 409 (6th Cir. 2002)

- *Walraven v. Martin*, 333 N.W.2d 569 (Mich. Ct. App. 1983)

# **TABLE OF CONTENTS**

**Page(s)**

CONCISE STATEMENT OF ISSUE PRESENTED ............................................... i

CONTROLLING AUTHORITY ........................................................................ ii

TABLE OF AUTHORITIES ............................................................................. iv

MOTION ........................................................................................................ vii

BRIEF IN SUPPORT ......................................................................................... 1

I.     INTRODUCTION ...................................................................................... 1

II.    FACTUAL BACKGROUND ...................................................................... 4

III.   LEGAL STANDARD................................................................................ 9

IV.   ARGUMENT .......................................................................................... 11

      A.    That Versata pursued alternative theories of liability does not entitle it to receive duplicative damage awards. ................................11

            1.    Both claims arose from the same asserted wrong. .................. 12

            2.    Both claims depended on the same operative facts................. 13

            3.    Both claims sought to compensate Versata for the fact Ford did not pay a license fee after January 15, 2015............ 16

      B.    The three breach of contract awards are likewise overlapping and for the same injury, so Versata may only elect one of the three.................................................................................................19

V.    CONCLUSION ........................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*,
   466 F.3d 1000 (Fed. Cir. 2006) ............................................................13, 14, 16

*American Sales Corp. v. Adventure Travel, Inc.*,
   862 F. Supp. 1476 (E.D. Va. 1994),
   *on reconsideration in part*, 867 F. Supp. 378 (E.D. Va. 1994) .......................... 11

*America's Collectibles Network, Inc. v. Sterling Com. (Am.), Inc.*,
   767 F. App'x 584 (6th Cir. 2019) .....................................................11, 12, 23, 24

*AMS Sensors USA Inc. v. Renesas Elecs. Am. Inc.*,
   554 F. Supp. 3d 870 (E.D. Tex. 2021) ............................................................ 2, 13

*Barnes v. Owens-Corning Fiberglass Corp.*,
   201 F.3d 815 (6th Cir. 2000) ............................................................................. 22

*BASF Corp. v. Brian's Auto Body, Inc.*,
   2019 WL 13234373 (D. Mass. Dec. 9, 2019) .................................................... 24

*Black v. Ryder/P.I.E. Nationwide, Inc.*,
   15 F.3d 573 (6th Cir. 1994) ................................................................................. 9

*Bowers v. Baystate Techs., Inc.*,
   320 F.3d 1317 (Fed. Cir. 2003) .......................................................................... 16

*Can IV Packard Square, LLC v. Schubiner*,
   2022 WL 3335697 (6th Cir. Aug. 12, 2022) ..................................................... 10

*Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*,
   150 F.3d 1354 (Fed. Cir. 1998) .................................................................... 23, 24

*Chicilo v. Marshall*,
   460 N.W.2d 231 (Mich. Ct. App. 1990) .............................................................. 9

# <u>TABLE OF AUTHORITIES</u>—Continued

**Page(s)**

*Clappier v. Flynn*,
  605 F.2d 519 (10th Cir. 1979) ........................................................................ 16

*Corl v. Huron Castings, Inc.*,
  544 N.W.2d 278 (Mich. 1996) ........................................................................ 22

*Ford Motor Co. v. Versata Software, Inc.*,
  2022 WL 1493506 (E.D. Mich. May 11, 2022) ................................................ 22

*Hickson Corp. v. Norfolk S. Ry. Co.*,
  260 F.3d 559 (6th Cir. 2001) ..........................................................1, 12, 17, 24

*Homeland Training Ctr., LLC v. Summit Point Auto. Rsch. Ctr.*,
  594 F.3d 285 (4th Cir. 2010) .......................................................................... 24

*Hubbell v. FedEx SmartPost, Inc.*,
  933 F.3d 558 (6th Cir. 2019) ........................................................................ 8, 9

*Junker v. Eddings*,
  396 F.3d 1359 (Fed. Cir. 2005) ...................................................................... 16

*Max Rack, Inc. v. Core Health & Fitness, LLC*,
  40 F.4th 454 (6th Cir. 2022) ............................................................................ 9

*Midfield Concession Enters., Inc. v. Areas USA, Inc.*,
  130 F. Supp. 3d 1122 (E.D. Mich. 2015) ........................................................ 10

*National Auto Grp., Inc. v. Van Devere, Inc.*,
  2022 WL 80324 (N.D. Ohio Jan. 7, 2022) ..............................................2, 12, 13

*Ohst v. Crehan*,
  2021 WL 2390036 (Mich. Ct. App. June 10, 2021) .......................................... 10

*Parmet Homes, Inc. v. Republic Ins. Co.*,
  314 N.W.2d 453 (Mich. Ct. App. 1981) .......................................................... 22

# <u>TABLE OF AUTHORITIES</u>—Continued

**Page(s)**

*Storagecraft Tech. Corp. v. Kirby*,
   744 F.3d 1183 (10th Cir. 2014) .......................................................... 19

*Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*,
   895 F.3d 1304 (Fed. Cir. 2018) ....................................................16, 18

*Trost v. Trost*,
   525 F. App'x 335 (6th Cir. 2013) .................................................10, 12

*U.S. ex rel. Augustine v. Century Health Servs., Inc.*,
   289 F.3d 409 (6th Cir. 2002) ........................................................ 1, 10

*Walraven v. Martin*,
   333 N.W.2d 569 (Mich. Ct. App. 1983) ........................................ 9, 10

*Weeco Int'l, Inc. v. Superior Degassing Servs., Inc.*,
   2011 WL 13272440 (S.D. Tex. Nov. 22, 2011)......................2, 10, 17

## Other Authorities:

22 Am. Jur. 2d Damages § 32 .............................................................. 10

D. Dobbs, Remedies § 1.5 (1973) ......................................................... 1

## <u>MOTION</u>

Ford Motor Company ("Ford") moves for an order requiring Plaintiffs Versata Software, Inc. f/k/a Trilogy Software, Inc.; Versata Development Group, Inc.; and Trilogy, Inc. (collectively "Versata") to make an election of damages remedy.

Because Versata cannot recover duplicative damages for a singular alleged harm—that Ford used Versata's confidential information, including trade secrets, after January 2015 without paying to do so—Versata must elect to recover *either* the jury's award of a reasonable royalty for continued use of the Grid, Buildability, and Workspaces trade secrets after January 15, 2015 ($22,386,000), *or* to recover the jury's calculation of a *single* license fee for the lack of a license fee paid after January 15, 2015 ($31,350,000, $50,160,000, *or* $750,000), because Versata expressly told the jury those were three redundant ways of awarding a single license fee to cover the post-January 15, 2015 time period.

## BRIEF IN SUPPORT

## I.    INTRODUCTION

No plaintiff is entitled to recover overlapping or duplicative damages for a single injury, regardless of whether the plaintiff pursues alternative theories for recovering damages for that injury before a jury. The foundational doctrine of election of remedies thus serves a basic legal principle: "Election of remedies is 'the legal version of the idea that a plaintiff may not have his cake and eat it too.'" *Hickson Corp. v. Norfolk S. Ry. Co.*, 260 F.3d 559, 566–67 (6th Cir. 2001) (quoting D. Dobbs, Remedies § 1.5 at 14 (1973)); *see also U.S. ex rel. Augustine v. Century Health Servs., Inc.*, 289 F.3d 409, 417 (6th Cir. 2002) ("[T]he election-of-remedies doctrine is properly invoked to prevent a double recovery based on two causes of actions that arose from the same wrong.").

Here, Versata tried to the jury its claims that Ford misused confidential information, including four combination trade secrets, in developing Ford's product configuration software (known as PDO) and then stopped paying Versata a license fee as of January 15, 2015 for Versata's product configuration software (known as ACM and MCA). Based on the fact that Ford stopped paying to license Versata's software on January 15, 2015, Versata asked the jury to award it damages under breach of contract and trade secret misappropriation theories. For each theory, Versata sought damages that would compensate it for the lack of a license fee paid

1

by Ford after January 15, 2015. The jury returned a verdict awarding Versata damages on three breach of contract theories and for misappropriation of three combination trade secrets. *See* ECF No. 1004.

As other courts have done in cases where plaintiffs have sought to recover damages for the same injury through claims for breach of contract and trade secret misappropriation, this Court should hold that Versata is not entitled to recover for the same injury multiple times over. *E.g.*, *National Auto Grp., Inc. v. Van Devere, Inc.*, 2022 WL 80324, at *4 (N.D. Ohio Jan. 7, 2022) (holding that "[w]hether cast as a breach of contract claim or DSTA claim, both causes of action arose from the same wrong and resulted in the same injury to plaintiffs—[defendant] used plaintiffs' trade secret and confidential customer information for his own benefit without plaintiffs' consent and injured plaintiffs"); *AMS Sensors USA Inc. v. Renesas Elecs. Am. Inc.*, 554 F. Supp. 3d 870, 882 (E.D. Tex. 2021) (explaining that plaintiff had to elect between misappropriation and contract damages because it "cannot recover twice for one wrong: the development and sale of the ISL29003"); *Weeco Int'l, Inc. v. Superior Degassing Servs., Inc.*, 2011 WL 13272440, at *3 (S.D. Tex. Nov. 22, 2011) (ordering plaintiff to "elect the theory or recovery under which judgment will be entered" where plaintiff sought "impermissible double recovery" after trying its case to the jury "on two theories: breach of contract and misappropriation of trade secrets" that allegedly resulted in "one injury").

This Court should direct Versata to elect its remedy here. As detailed below, Versata sought to recover for the same injury in multiple ways: On its trade-secret-misappropriation claim, Versata asked the jury to take its $17-million-per-year-for-five-years offer to renew the license agreement starting January 15, 2015, allocate portions of the $17 million to each asserted trade secret, and calculate the license fee that would have been paid for use of that trade secret—i.e., a reasonable royalty—from January 15, 2015 until January 23, 2020, when Versata said Ford could have developed PDO without use of the trade secrets. ECF No. 979, PageID.64143, 64145, 64149, 64152, 64154. On its breach of contract claim, Versata asked the jury to take Versata's $17-million-per-year-for-five-years offer to renew the license agreement starting in January 2015, multiply that by the 7.5 years between January 2015 and the October 2022 trial, and award that amount for each breach. ECF No. 953, PageID.61726–27; ECF No. 1006, PageID.65693.

Because Versata cannot recover duplicative damages for a singular alleged harm—that Ford did not license Versata's software after January 2015—Ford moves for an order requiring Versata to make an election of its damages remedy. Versata can recover for the lack of a license fee only *once*. It can *either* elect to recover through the jury's award of a reasonable royalty for continued use of the Grid, Buildability, and Workspaces trade secrets after January 15, 2015 ($22,386,000), *or* it can recover the jury's calculation of a single license fee for the lack of a license

3

fee paid after January 15, 2015 ($31,350,000, $50,160,000, or $750,000) because Versata expressly told the jury those were three redundant ways of awarding a single license fee to cover the post-January 15, 2015 period.[1]

## II.   FACTUAL BACKGROUND

Ford licensed the ACM and MCA product configuration software from Versata pursuant to a Master Subscription and Services Agreement ("MSSA") beginning in December 2004. In 2011, Ford began to develop its own PDO product configuration software. In 2014, Versata offered Ford a $17-million-per-year, five-year contract to license Versata's software when the current license term expired on January 14, 2015, but Ford never agreed to that offer. ECF No. 975, PageID.63974–76, 63986, 64000–12 (testimony of M. Richards of Versata about the offer, Ford's response, and the termination letter, and a related sidebar).

Versata alleged that Ford breached the MSSA by disclosing Versata's confidential information to unauthorized users at Ford, who reverse engineered aspects of Versata's software so that Ford continued to use those aspects after the license expired on January 15, 2015. ECF No. 244, PageID.13007, 13032. Versata further alleged that Ford "misappropriated Versata's Confidential Information," "includ[ing] specific trade secrets." *Id.* at PageID.13011, 13029.

---

[1] Once Versata has elected its remedy, Ford intends to renew its motion for judgment as a matter of law that will focus on whichever remedy Versata elects.

During discovery, Versata's position was that damages for breach of contract and trade secret misappropriation were alternative remedies. Their expert Renee McMahon expressly and specifically stated so in her report: "***Breach of contract damages should not be considered 'additive' to the quantification of trade secret misappropriation*** and patent infringement ***damages***. ***Rather, breach of contract damages represent an alternative remedy***." McMahon Rpt, ECF No. 860-2, PageID.58765 n.7 (emphasis added).

Versata tried its claims to a jury in October 2022. Versata told the jury that Ford's refusal to enter into a new license agreement is what "led to this litigation." ECF No. 1006, PageID.65613. It told the jury that Ford developed its PDO software so that Ford "could stop paying license fees to Versata." *Id.* at PageID.65612. And it argued that the "only way" Ford was able to develop its PDO software was by "misappropriating Versata's trade secrets and software." *Id.* at PageID.65613.

In its opening, Versata told the jury that breach of contract damages were the "license fees" Ford "owe[d]" to Versata for the last "seven-and-a-half years, based on the evidence of what the license fees would have been during that time period," which was "not a very complicated calculation" and came out to "approximately $130 million." ECF No. 953, PageID.61726–27. Versata argued it was owed this amount in compensatory damages because "since January 15, 2015 and up until

5

today, Ford has continued to use" Versata's "trade secret -- secrets and [Ford's] PDO product." *Id.*

On trade secret misappropriation, Versata's opening statement told the jury that it was seeking reasonable royalty damages—i.e., a calculation of how much Ford would have paid starting on January 15, 2015 to license just the asserted trade secrets—of "about $60 million." ECF No. 953, PageID.61727; *accord* ECF No. 979, PageID.64140 (R. McMahon's testimony of her "ultimate conclusion" that Versata's trade secret misappropriation damages "are 59.927 million, using a reasonable royalty damages methodology"). Ms. McMahon explained to the jury that she calculated that number by starting with the $17 million-per-year license fee that Versata offered to Ford in the fall of 2014 for a five-year renewal. She treated $17 million-per-year as the base royalty amount, allocated a portion of that annual base royalty to each of the four asserted trade secrets based on Seth Kraus's apportionment testimony, and calculated the license fee that she said Ford would have paid to use each trade secret from January 15, 2015 until January 23, 2020, the date Dr. Sam Malek testified Ford would have been able to develop PDO without using any trade secrets. ECF No. 979, PageID.64143, 64145, 64149, 64152–54.

At the close of trial, Versata renewed its request for the jury to award compensatory damages. For contract damages, Versata told the jury that because Ford continued to violate the contract's provisions about "confidential information,"

"reverse engineering," and "termination promises" from January 2015 to the present, and "h[as] not paid any license fees to us" during that time, the jury should decide on a license fee and multiply it by 7.5 years. ECF No. 1006, PageID.65690–91; *see also id.* at PageID.65691 ("So the only question then is … what license fee would Ford and Versata have agreed to because you know you're going to multiply that license fee times 7.5 years."). Versata argued that "the best evidence of what the license fee would be" was Mr. Richard's testimony that Versata offered a license for 2015 at $17 million per year. *Id.* at PageID.65692. By multiplying $17 million by 7.5 years, Versata told the jury that "the proper and fair compensatory damages for breach of contract is $127,500[,000]," *id.* at PageID.65693, and then asked the jury to enter that $127.5 million figure in three places on the verdict form—on the damages line for each of the three breach theories, *id.* at PageID.65698–700, confirming Versata's understanding that the damages amounts for the three breaches are not additive.

After Versata told the jury to enter $127.5 million in damages for a second time, Versata paused to explain why it had "asked for damages of 127,500,000 twice," and to "call [the jury's] attention" to Jury Instruction 31, *id.* at Page ID.65699, an instruction that Versata had asked the court to give, *see* ECF No. 996, PageID.65224. This instruction, Versata told the jury, meant that the jury did not "have to worry about rendering duplicate damages." ECF No. 1006, PageID.65699.

7

Versata even read Instruction 31 aloud to the jury, explaining that it did so "because your job is to independently decide each damage question based on the evidence, and if you start thinking, well, what if I'm duplicating, the Court will make that decision later and you don't have to worry about it." *Id.* at PageID.65700.[2]

Versata then turned to damages for trade secret misappropriation. It asked the jury to award compensatory damages based on its expert Ms. McMahon's "conclu[sion] that the parties would agree to a 17-million-per-year license fee for the—for the calculation of the reasonable royalty." *Id.* at PageID.65693. Versata asked the jury to use that $17-million-per-year figure in combination with testimony about the relevant time period for trade secret misappropriation damages and testimony apportioning the license fee to calculate damages. *Id.* at PageID.65694.

The jury returned a verdict awarding Versata contract damages as follows: $31,350,000 for "misusing and disclosing confidential information"; $50,160,000 for "reverse engineering Versata's software"; and $750,000 for refusing the audit

---

[2] Versata knew it would ask the jury to award multiple remedies for the same injury when it requested this instruction. ECF No. 996, PageID.65224–25. Instruction 31 told the jury to "answer each question [about damages] separately," "not increase or reduce the amount in one answer because of your answer to any other question about damages," and "not speculate about what a party's ultimate recovery may or may not be." ECF No. 1006, PageID.65699. The instruction explained that the Court would determine "[o]verall recovery, if any" when it "applie[d] the law to [the jury's] answers at the time of judgment." *Id.* The jury is presumed to follow its instructions. *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 574 (6th Cir. 2019).

"and/or by continuing to use Versata's software without a license." ECF No. 1004, PageID.65558–59. On trade secret misappropriation, the jury awarded compensatory damages of \$10.185 million on the Grid, \$4.494 million on Buildability, and \$7.707 million on Workspaces. *Id.* at PageID.65560–62.

## III.   LEGAL STANDARD

As is true in every jurisdiction, "Michigan law proscribes double recovery for the same injury." *Chicilo v. Marshall*, 460 N.W.2d 231, 232 (Mich. Ct. App. 1990) (per curiam); *see also Walraven v. Martin*, 333 N.W.2d 569, 574 (Mich. Ct. App. 1983). Federal common law likewise establishes that plaintiffs "must tie separate damages to a distinct harm and cannot seek a double recovery." *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 476 (6th Cir. 2022); *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 581 (6th Cir. 1994) ("[C]ommon wisdom" establishes that "an injured party may recover damages only for the actual loss he suffered and no more; he is to be made whole, but not entitled to be put in a better condition than he would be in had the wrong not been committed." (citation omitted)); *see generally* 22 Am. Jur. 2d Damages § 32 (Nov. 2022 update) ("A plaintiff may not receive a double recovery for the same injuries or losses arising from the same conduct or wrong," so "a double or duplicative recovery for a single injury is invalid.").

While there is no bar on pursuing multiple or alternative theories of liability at trial, a plaintiff may "not ultimately receive a double recovery." *Ohst v. Crehan*,

2021 WL 2390036, at *7 (Mich. Ct. App. June 10, 2021) (citing *Walraven*, 333 N.W.2d at 572). That means that if a plaintiff's "sole injury is coextensive" under two theories of liability, the plaintiff cannot recover under both. *Trost v. Trost*, 525 F. App'x 335, 346 (6th Cir. 2013). Indeed, "it is hornbook law that a claimant cannot receive a double recovery for the same injury, even where alternate legal theories will support the same finding of liability." *Midfield Concession Enters., Inc. v. Areas USA, Inc.*, 130 F. Supp. 3d 1122, 1141 (E.D. Mich. 2015) (citation omitted).

In a case "based on two causes of actions that arose from the same wrong," "the election-of-remedies doctrine is properly invoked to prevent a double recovery." *U.S. ex rel. Augustine*, 289 F.3d at 417; *Trost*, 525 F. App'x at 346 ("The election-of-remedies doctrine … works to prevent double recovery."). It is "particularly evident" that the plaintiff "suffered one injury" "where the trade secrets misappropriated overlap with the confidential information underlying the breach of contract." *Weeco Int'l*, 2011 WL 13272440, at *3. In such cases, this election-of-remedies doctrine ensures that "double recovery is off the table." *Can IV Packard Square, LLC v. Schubiner*, 2022 WL 3335697, at *4 (6th Cir. Aug. 12, 2022); *see also America's Collectibles Network, Inc. v. Sterling Com. (Am.), Inc.*, 767 F. App'x 584, 586 (6th Cir. 2019).

# IV.   ARGUMENT

Versata articulated the same injury resulting from its breach of contract and trade secret misappropriation claims: that Ford used Versata's confidential information, including trade secret information, as part of its PDO software without paying a license fee to Versata after January 15, 2015. Each damages figure that Versata asked the jury to award was keyed to Versata's offer to license the ACM software to Ford at a price of $17 million per year, starting January 15, 2015. While Versata was entitled to pursue its case and seek damages on alternative theories of liability, Versata is not entitled to be compensated multiple times to make up for the lack of a license fee after January 15, 2015.

## A.   That Versata pursued alternative theories of liability does not entitle it to receive duplicative damage awards.

Versata pursued "recovery based on alternative theories—misappropriation of trade secrets and breach of contract." *American Sales Corp. v. Adventure Travel, Inc.*, 862 F. Supp. 1476, 1479 (E.D. Va. 1994), *on reconsideration in part*, 867 F. Supp. 378 (E.D. Va. 1994). But pursuing alternative theories of liability does not entitle Versata to a double recovery. Versata's misappropriation and breach claims arose from the same wrong and relied on the same operative facts. The damages Versata sought on each claim were premised on Ford's failure to pay Versata's proposed $17-million-per-year license fee after January 15, 2015. Versata must elect to recover a single remedy to compensate it for that lack of a license fee.

11

### 1.     Both claims arose from the same asserted wrong.

Versata identified the same wrongful conduct as the basis for both its breach and misappropriation claims: "Ford improperly used or disclosed Versata's trade secrets without Versata's permission in developing Ford's PDO software." ECF No. 1006, PageID.65639. This was the "nub" of Versata's case. *Id.* And it was a single, "coextensive" wrong resulting in a single injury. *Trost*, 525 F. App'x at 346.

While Versata argued that "there may be more than one legal reason why [Ford] is liable," Versata never argued that it was "harmed in a way that caused more than one distinct injury." *Hickson Corp.*, 260 F.3d at 567. Where there is "only one injury to redress," it does not matter how many theories of liability the plaintiff pursued. *America's Collectibles Network*, 767 F. App'x at 585–87. "Whether cast as a breach of contract claim or DSTA [or Michigan trade secret] claim," Versata's causes of action invoke the same alleged wrong—i.e., that Ford improperly "used" Versata's trade secret and confidential information "for [Ford's] own benefit" after January 2015—causing "the same injury" to Versata—i.e., Ford's non-payment despite its continued use of that information after January 15, 2015. *National Auto Grp.*, 2022 WL 80324, at *4.

The jury's verdict thus creates the same kind of "double recovery issue" as in other cases where the plaintiff raised both breach and misappropriation claims. *See, e.g.*, *AMS Sensors*, 554 F. Supp. 3d at 878. In that case, the plaintiff argued that the

defendant used the plaintiff's confidential information, which had been shared through a contract, to create a competing product. *Id.* That wrongful conduct served as the basis for both breach of contract and trade secret misappropriation claims. *Id.* The theories were alternative ways of raising "one wrong: the development and sale of the [competing product]." *Id.* at 882. Likewise, Versata asserted that Ford improperly used Versata's confidential information, including trade secret information, that had been shared pursuant to a contract to develop and use PDO after January 15, 2015, without paying a license fee while doing so. Versata cannot "recover twice" for that singular injury. *Id.* at 882; *see also National Auto Grp.*, 2022 WL 80324, at *4 ("Plaintiffs are not entitled to recover again for that loss.").

### 2. Both claims depended on the same operative facts.

Courts are clear that "in determining whether there has been an impermissible double recovery of damages, the inquiry focuses on whether the damages issue arose from the same set of operative facts." *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1018 (Fed. Cir. 2006). Here, that is plainly true. Versata presented no evidence of separate damages that stemmed from each claim.

"[A]ll of the damages awarded to [Versata] flowed from the same operative facts" concerning Ford's use of Versata's technology to develop PDO. *Id*. at 1019. Versata is fully compensated for Ford's use through *either* a reasonable royalty calculated based on Versata's $17-million-per-year offer to renew the license (i.e.,

13

Versata's proposed trade secret damages), *or* through a license fee calculation based on Versata's $17-million-per-year offer to renew the license (i.e., Versata's proposed breach of contract damages). It cannot be awarded both. *Id.* ("In short, all of the damages awarded to Aero flowed from the same operative facts: sales of the infringing Intex mattresses. Aero was fully compensated for defendants' patent infringement when it was awarded a reasonable royalty for patent infringement based on sales of the infringing Intex mattresses. It could not also be awarded defendants' profits for trademark infringement based on the same sales of the same accused devices.").

Versata's closing arguments to the jury make this crystal clear. It argued that "when Ford allowed PDO developers to use ACM information to **misappropriate and steal our trade secrets, that obviously is a misuse, a strong, powerful misuse of our confidential information**." ECF No. 1006, PageID.65668 (emphasis added). As a result, according to Versata, "there's no question that **the evidence from Dr. Malek not only relates to misappropriation of trade secrets but it also relates to breach of contract**." *Id.* (emphasis added).

Further emphasizing the overlap, Versata pointed to evidence that certain Ford employees developing PDO had access to confidential ACM information and argued that "Dr. Malek and Seth Krauss' testimony showing that they did clearly [have access] **not only proves misappropriation of trade secrets, it proves breach of**

**the contracts**." *Id.* at PageID.65669 (emphasis added).[3] Versata argued its reverse-engineering breach claim was likewise based on evidence that Ford employees had access to ACM, which allowed them to "stud[y] our software in order to make a similar competing software." *Id.* at PageID.65675; *see also id.* ("If they examine our software in order to make PDO like-for-like, they are reverse engineering our product and they can't do that."). And on the termination contract provisions, Versata likewise argued that the misappropriation, developer access, and reverse-engineering meant Ford "did not stop using our confidential information because Ford put our features and functions into PDO." *Id.* at PageID.65679.

This overlap in operative facts results from Versata's core theory—and single injury—being that Ford injured Versata by "develop[ing] a competing product that would be used to exit us out the door and stop us from receiving license fees." *Id.* at PageID.65669. As courts have held in this type of situation, "even though damages are claimed based upon separate statutes or causes of action, when the claims arise out of the same set of operative facts, as is the case here, there may be only one recovery." *Aero Prods. Int'l*, 466 F.3d at 1020; *see also Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1328 (Fed.

---

[3] The closing argument builds on what Versata repeatedly said in its opening statement about the "same evidence" proving misappropriation of trade secrets and the various breaches of contract. ECF No. 953, PageID.61719, 61721.

Cir. 2018) (patent infringement and trade secret misappropriation awards "duplicative" where "all of the damages" "flowed from the same operative facts: sales of the [same] infringing [products]" (citation omitted)); *Junker v. Eddings*, 396 F.3d 1359, 1368 (Fed. Cir. 2005) (breach of contract and patent infringement damages awards "would constitute a double recovery" where "[b]oth claims arose out of the same set of operative facts regarding … unauthorized use of the design [plaintiff] had developed"); *Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1327–28 (Fed. Cir. 2003) (same for "duplicative" copyright and contract damages).

Because Versata's claims "arose from the same, identical, operative facts, both of which sought identical relief, i.e., compensatory damages," Versata cannot recover "under more than one theory of liability." *Clappier v. Flynn*, 605 F.2d 519, 531 (10th Cir. 1979). "To do so [would] constitute[] 'double recovery.'" *Id.*

### 3.    Both claims sought to compensate Versata for the fact Ford did not pay a license fee after January 15, 2015.

Because Versata claimed to "suffer[] only one injury" from Ford's misappropriation and breach, Versata "cannot collect a double recovery for actual damages that are coextensive under the contract and [misappropriation] claims." *Hickson Corp.*, 260 F.3d at 567. But Versata's measure of damages would allow exactly that kind of impermissible double recovery.

Versata sought "compensatory damages for breach of contract [and] trade secret misappropriation," which "basically means that we are able to get the amount

16

of financial harm that was caused by the illegal acts of Ford." ECF No. 1006, PageID.65690. For trade secrets, Versata sought a reasonable royalty, which meant, "sitting at the hypothetical negotiation table," "what the payment might be for Versata to allow Ford to use the trade secrets." ECF No. 979, PageID.64148; *see also id.* at PageID.64149 (seeking recovery for "the period that Ford wasn't paying Versata anything"). For breach of contract, Versata asserted it was owed "license fees for seven-and-a-half years, based on the evidence of what the license fees would have been during that time period." ECF No. 953, PageID.61726; *see also* ECF No. 1006, PageID.65597–98 ("Contract damages are intended to give the non-breaching party the benefit of the party's bargain by awarding it a sum of money that will, to the extent possible, put it in as good a position as it would have been in had the contract been fully performed.").

As a result, Versata's "measure of damages was the same on each theory": the amount it would have received after January 15, 2015 had Ford not used confidential, including trade secret, information it had previously licensed from Versata to develop PDO. *Weeco Int'l*, 2011 WL 13272440, at *3. Indeed, it was Versata's entire theory of the case. *See* ECF No. 953, PageID.61699 ("Ford didn't want to pay us license fees anymore, so then they had to go out and figure out a way to build a competing product.").

17

Moreover, the "double recovery is clear" from Versata's method of calculating damages. *Texas Advanced*, 895 F.3d at 1328. On each theory, Versata sought to be compensated for Ford's failure to pay a license fee after January 15, 2015. ECF No. 1006, PageID.65691–92. On each theory, Versata calculated damages based on its $17-million-per-year-for-five-years offer in the fall of 2014. *Id.* at PageID.65691; *see also* ECF No. 985, PageID.64304 (R. McMahon's testimony that she used "this $17 million number" as "the starting point" to calculate Versata's trade secret misappropriation damages). Misappropriation damages, in other words, were "based on a subset" of the license fee damages for breach. *Texas Advanced*, 895 F.3d at 1328; *see* ECF No. 979, PageID.64145, 64152 (describing apportionment). On each theory, Versata also sought damages for the same post-January 15, 2015 time period. *Texas Advanced*, 895 F.3d at 1328 (same time period indicates duplicate recovery); ECF No. 1006, PageID.65690–91 (breach of contract); ECF No. 953, PageID.61726 (same); ECF No. 979, PageID.64149, 64154 (trade secret misappropriation).

Versata's arguments at trial were consistent with how its experts described the relationship between contract and misappropriation damages before trial—which was that they were "alternative," and "should not be considered additive." McMahon Rpt., ECF No. 860-2, PageID.58765 n.7. Versata's 2018 expert report likewise explained that "reasonable royalty damages as calculated [for trade secret

18

misappropriation] would also be reflective of damages under … breach of existing license agreements." Elson and Bokart Rpt., ECF No. 573-2, PageID.43168 n.11.

Versata should acknowledge that damages for breach of contract and trade secret misappropriation overlap, consistent with what its experts' reports said. *Cf. Storagecraft Tech. Corp. v. Kirby*, 744 F.3d 1183, 1192 n.3 (10th Cir. 2014) (Gorsuch, J.) (noting that plaintiff "stipulated that [its] misappropriation and breach of contract damages awards were duplicative"). The Court should direct Versata to elect a single recovery of license-fee-based compensatory damages for the post-January 15, 2015 time period.

## B.   The three breach of contract awards are likewise overlapping and for the same injury, so Versata may only elect one of the three.

Versata asked for damages that would give it the "'benefit-of-the-bargain,' had Ford paid Versata for its continuing use of Versata's confidential information." ECF No. 983, PageID.64250. Versata valued its benefit-of-the-bargain at $127.5 million—a $17 million annual license fee for 7.5 years, from January 15, 2015, through trial. ECF No. 953, PageID.61726–27; ECF No. 1006, PageID.65693.

Versata accordingly told the jury that "the only question" the jury had to decide was "what license fee would Ford and Versata have agreed to because you know you're going to multiply that license fee times 7.5 years." ECF No. 1006, PageID.65691. According to Versata, "the best evidence of what the license fee would be" was "$17,000[,000] per year times 7.5 years for each breach of contract."

19

*Id.* at PageID.65692. Versata told the jury that "the proper and fair compensatory damages for breach of contract is $127,500[,000]," and Versata asked the jury to enter that $127.5 million figure in three separate places on the verdict form—on the damages line for each of the three breach theories included on the verdict form. *Id.* at PageID.65693, 65698–700.

Versata agreed that it "brought *one* count for breach of contract," ECF No. 983, PageID.64247 (emphasis added), and it offered three different ways Ford breached the contract. In defending a belatedly offered lost-profits theory of contract damages, Versata emphasized to the Court the overlap in their breach theories: "[Ford's] unauthorized use refers to their reverse engineering. The unauthorized use refers to their disclosure of confidential information. The unauthorized use refers to their refusal to allow us to inspect the properties to confirm that they had adequately deleted and removed all of that confidential information." ECF No. 919, PageID.60370. Similarly, in arguing against Ford's Rule 50(a) JMOL motion, Versata made this clear: "'But for' Ford's breaching conduct (reverse-engineering Versata's software; improperly disclosing confidential information to PDO developers; failing to return the trade secrets embedded within Ford's copycat software), Ford would have renewed the MSSA at a rate of at least $17 million per year." ECF No. 983, PageID.64251.

In other words, while Versata argued that the breaches of these three sets of provisions were "interrelated," *see* ECF No. 919, PageID.60365–66; ECF No. 983, PageID.64249, the end result was the same: it "caused [Ford] not to renew [Versata's] contract," ECF No. 919, PageID.60366; *accord* ECF No. 989, PageID.64428. And so Versata told the jury to enter the full amount of the unpaid license fee it sought—$127.5 million—three times on the verdict form. ECF No. 1006, PageID.65698–700.

Versata foresaw that asking jurors to enter $127.5 million in damages three separate times on the verdict form might cause "worry about rendering duplicate damages." *Id.* at PageID.65699. So Versata offered its assurances that the jury "d[id]n't have to worry about" duplication because *the court* would "make that decision later." *Id.* at PageID.65700. Versata then urged the jury to "independently" consider damages for each contract theory, "look at the evidence[,] and render a verdict based on what you believe the evidence has established." *Id.* And the Court subsequently instructed the jury to answer each question on damages "separately," not to "increase or reduce the amount in one answer because of your answer to any other question about damages," and not to "speculate" about "a party's ultimate recovery." *Id.* at PageID.65699. The jury presumably followed those instructions.[4]

---

[4] That the jury returned three different numbers may well be relevant to whether there was sufficient evidence that the damages were causally linked to the breach.

*Ford Motor Co. v. Versata Software, Inc.*, 2022 WL 1493506, at \*6 (E.D. Mich. May 11, 2022) ("Federal courts generally presume the jury will follow the instructions correctly as given." (quoting *Barnes v. Owens-Corning Fiberglass Corp.*, 201 F.3d 815, 822 (6th Cir. 2000))).

Versata cannot now aggregate all three awards and claim they *collectively* add up to the jury's view of the total license fee Ford would have paid. Indeed, had the jury written down $127.5 million on each line of the verdict form as Versata requested, the proper amount of damages would be $127.5 million—the amount Versata told the jury was its damages—not a windfall of three times that, or $382.5 million. *See Corl v. Huron Castings, Inc.*, 544 N.W.2d 278, 280 (Mich. 1996) (compensatory damages are about "mak[ing] the nonbreaching party whole").

The same is true for any compensatory award that is calculated by adding up three separate values the jury wrote down on the verdict form. Such a three-component license fee, where each component covers overlapping injury, would place Versata in a far "better position than [it] would have been had the contract not been broken." *Parmet Homes, Inc. v. Republic Ins. Co.*, 314 N.W.2d 453, 458 (Mich. Ct. App. 1981) (per curiam). In the real world, Ford would have paid a single license fee. And so Versata can only recover the jury's calculation of a single license fee.

---

But each number is presumed to answer what license fee Ford should have paid— and Versata never argued that Ford would have paid more than one license fee.

That conclusion is even easier to reach than in a recent Sixth Circuit case, where the plaintiff sought to aggregate $13 million damages awarded on each of three separate overlapping theories of liability, for a total judgment of $39 million. *America's Collectibles Network*, 767 F. App'x at 585–87. The Sixth Circuit held that the proper total award was $13 million, not $39 million, because, just as in this case, the district court instructed the jury "not to increase an award on one claim because of the jury's answer on another claim." *Id.* But unlike the plaintiff in *America's Collectibles Network*, which asked the jury for *total* damages of $56 million, *id.* at 588 (Guy, J., concurring), Versata asked the jury to enter its total damages of $127.5 million for *each* breach of contract. *See* ECF No. 1006, PageID.65692 ("[T]he license fee would be $17,000[,000] per year times 7.5 years for *each* breach of contract." (emphasis added)); *id.* at PageID.65698–700 (asking jury to enter $127.5 million three times for "breach[ing] three different provisions").

It is "clear from the record," *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1362 (Fed. Cir. 1998), that Versata sought $127.5 million in contract damages based on any single breach. Versata did not apportion that total value among its three theories of breach—it even told the court that "we don't want to have our damages recharacterized as apportioned for breach of contract." ECF No. 919, PageID 60363. Versata "cannot now avoid its stipulation in an attempt to increase its overall damage award." *Celeritas Techs.*, 150 F.3d at 1362; *see also id.*

23

("It ill lies in the mouth of a party who waives a form of damages in the district court in order not to be greedy to be seeking to override that waiver in the appeals court.").

While Versata is entitled to pick the largest single license fee, it cannot recover *three* license fees. And because the jury "was instructed to determine the damages on each claim independently and return verdicts awarding damages separately on each claim," *America's Collectibles Network*, 767 F. App'x at 588 (Guy, J., concurring), it is "incumbent on the trial judge to ensure that the awards are not duplicative or overlapping," *id.* at 587 (majority opinion) (quoting *Hickson*, 260 F.3d at 568); *see also BASF Corp. v. Brian's Auto Body, Inc.*, 2019 WL 13234373, at *5 (D. Mass. Dec. 9, 2019) ("[T]his court must be cognizant of the Michigan doctrine of election of remedies."). To avoid a duplicative recovery—and in this case, a *triple* recovery—Versata must accordingly elect just one of its three theories of breach on which to recover damages.

\*     \*     \*

This case "presents what is in essence a straightforward question of election of remedies law." *Homeland Training Ctr., LLC v. Summit Point Auto. Rsch. Ctr.*, 594 F.3d 285, 292 (4th Cir. 2010). "The basic purpose of the doctrine is to prevent a plaintiff from obtaining a windfall recovery," such as when, as here, the plaintiff seeks "overlapping remedies for the same legal injury." *Id.* at 293.

24

Versata pursued alternative theories of liability for the same wrong. And the jury awarded overlapping damages after being told not to worry about duplicative damages. Versata must accordingly choose either the trade secret misappropriation damages or one of the breach of contract awards, each of which reflect the jury's assessments of the value of Versata's injury caused by Ford declining to enter into a new contract.

## V.    CONCLUSION

For these reasons, Ford respectfully requests that the court order Versata to submit an election of remedy.

Respectfully submitted,

Dated:   December 8, 2022          By: /s/ Thomas A. Lewry
                                    John S. LeRoy (P61964)
                                    Thomas A. Lewry (P36399)
                                    Christopher C. Smith (P73936)
                                    Chanille Carswell (P53754)
                                    Reza Roghani Esfahani (P83787)
                                    **BROOKS KUSHMAN P.C.**
                                    1000 Town Center, 22nd Floor
                                    Southfield, MI 48075
                                    jleroy@brookskushman.com
                                    tlewry@brookskushman.com
                                    csmith@brookskushman.com
                                    ccarswell@brookskushman.com
                                    resfahani@brookskushman.com

                                    James P. Feeney (P13335)
                                    **DYKEMA GOSSETT PLLC**
                                    39577 Woodward Ave, Suite 300
                                    Bloomfield Hills, MI 48304
                                    jfeeney@dykema.com

25

Jessica L. Ellsworth (D.C. Bar # 484170)
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, D.C. 20004
jessica.ellsworth@hoganlovells.com

*Attorneys for Ford Motor Company*

26